Cabot Christianson, Esq.
Gary Spraker, Esq.
CHRISTIANSON & SPRAKER
911 W. 8th Avenue, Suite 201
Anchorage, AK 99501
Telephone: (907) 258-6016
Telefax: (907) 258-2026
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SOUTH COAST, INC., an Alaska corporation, KLUKWAN, INC., and Alaska Native Village corporation, and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation, | ) ) ) ) ) ) | **Case No. A06-00063 (TMB)** |
| Defendants. | ) ) | |
| SOUTH COAST, INC., an Alaska corporation, KLUKWAN, INC., and Alaska Native Village corporation, and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation, | ) ) ) ) ) ) | |
| Counter-Claim and Third Party Plaintiff, | ) ) ) | |
| v. | ) | |

TRAVELERS CASUALTY AND SURETY     )
COMPANY OF AMERICA, a Connecticut     )
corporation, STEWART, SOKOL & GRAY          )
L.L.C., THOMAS A LARKIN and     )
JAN D. SOKOL,     )
                                                )
                    Counterclaimant and     )
                    Third Party Defendants.     )
————————————————————)

### DEFENDANTS' MOTION FOR DENIAL OF SUMMARY JUDGMENT AS PREMATURE UNDER RULE 56(f) , OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS AND THIRD PARTY CLAIMS

Defendants Klukwan, Inc., South Coast, Inc., and Chilkat's Portage Cove Development Company (collectively, Defendants) move pursuant to Fed.R.Civ.P. 56(f) for an order denying Plaintiff Travelers Casualty and Surety Company's (Travelers) *Motion for Summary Judgment* as premature, or for a continuance to conduct discovery. Alternatively, Defendants oppose Travelers' motion for summary judgment and cross move for summary judgment on their defense and counterclaim and third-party claims.

### Introduction

On the day it served its complaint, Travelers filed its motion for summary judgment to recover of $6,084,719.05 for breach of contract without the benefit of any accounting.  Admittedly, Defendants have not made the payments required under a promissory note in the principal amount of $5,388,306.48, bearing 6% annual interest. Defendants have, however, made $1,889,863.99 in payments for which Travelers has not properly accounted.  The absence of any accounting is fatal to its motion, as is its failure

to establish its underlying losses required under the December 6, 2002 *Repayment Agreement.*  Travelers and Third Party Defendant Stewart Sokol & Gray also failed to timely prosecute professional negligence claims against Defendants' accountants which, according to Travelers, would have completely offset its losses.  The negligent waste of that asset offsets any amounts owed by Defendant.

### Facts

Travelers issued payment and performance bonds for a number of construction projects for South Coast, Inc., South Coast, Inc., dba Klukwan Contracting, Klukwan, Inc., Klukwan Construction, Inc., Klukwan Forest Products, Inc., SouthCoast, Inc./Agate, Inc. (JV) and Klukwan Contracting/Agate, Inc. (JV), (collectively "South Coast).  South Coast defaulted on a number of those projects (the "Bonded Contracts") causing South Coast to enter into an Acknowledgment of Default on those projects and enter into an assignment of those project contract to Travelers.[1]  Under the assignments, South Coast assigned Travelers the rights to receive all progress payments, earned or unearned, retainages, whether in the form of Certificates of Deposit, escrow accounts, or similar instruments or accounts or claims for additional compensation or claims of any nature due or to become due under the Bonded Contracts.  South Coast remained liable to Travelers for project losses incurred on the assigned projects under the Agreements of Indemnity.

---

[1]     Declaration of Thomas Crandall (Crandall Declaration), ¶ 3.

In May 2002, Travelers began a forensic review of South Coast's and Klukwan's financial condition.[2]  As a result of that process, together with other information acquired, Travelers discovered that Peterson Sullivan had negligently prepared Klukwan's and South Coast's 2000 financial statements.[3]  In particular, Peterson Sullivan had failed to investigate substantial project underbillings carried as assets on the financial statements.  The underbillings constitute an asset so long as there is a reasonable belief that the underbillings will be paid.[4]  Where the underbillings are not likely to be paid, as where costs exceed the contract's budget amount, they are a liability.[5]

Travelers entered into a *Repayment Agreement* dated December 6, 2002, with Travelers to establish the terms on which they would repay the losses on the Bonded Contracts.[6]  As of that time, Travelers had not determined the total amount of its loss. Nor had Travelers provided Defendants the opportunity to review the evidence supporting its loss claim.  Travelers represented, however, that the total losses net of all receipts, would exceed $8 million.[7] If total losses did not exceed $8 million, Travelers

---

[2]     Affidavit of Charles Langfitt, ¶5 (Langfitt Affidavit).  Travelers previously submitted the Affidavit within *Travelers Casualty and Surety Company of America v. Gelbrich, et al,* Case No. 04-0165 (D. Alaska).  A copy of the Langfitt Affidavit is attached as Opposition Exhibit 1.

[3]     *Id.* at ¶ 8.  Klukwan and South Coast utilized a combined financial statement.

[4]     *Id.* ¶ 10.

[5]     *Id.*

[6]     A true and accurate copy of the *Repayment Agreement* is attached as Exhibit 1 to the Crandall Declaration.

[7]     *Id.* at ¶ 8.

agreed to credit the difference to the amount owed.[8]   Based upon these representations, and at Travelers' request, South Coast executed a promissory note in the principal amount of $5,388,306.48, accruing at 6% annual interest (the, "Note").[9]

Under the Note, South Coast agreed to make payments beginning September 2004, and every May through November starting May 1, 2005.[10]  South Coast made the first eight payments under the Note in the amount of $450,000.[11]   Additionally, the Defendants had settled what was referred to as the Chinle claim for payment of $1,421,828.99 net of litigation costs.[12]  The *Repayment Agreement* expressly provided that the settlement funds, net of litigation costs, would be applied to the balance owed under the *Promissory Note*.[13]  The Chinle settlement proceeds were turned over to Travelers, although Defendants are not exactly sure when though no later than January 1, 2003.  South Coast has also liquidated certain equipment and applied 50% of the proceeds, net of the costs of sale, to the Note.[14]

---

[8]      *Id.*

[9]      Travelers secured the obligation with a variety of property owned by South Coast, Klukwan, and CPC, including a deed of trust on a tank farm owned by CPCD that Travelers agreed it would not foreclose upon in the event of a default.  *See Repayment Agreement*, ¶ 10.d (Crandall Exhibit 1).

[10]      A true and correct copy of the executed Promissory Note is attached as Exhibit 2 to the Crandall Declaration.

[11]      Crandall Declaration, ¶ 14.

[12]      *Id.* at ¶ 16.

[13]      Crandall Exhibit 1, ¶ 12.

[14]      Crandall Declaration, ¶ 15; Exhibit 1, ¶ 10.a.

Thomas L. Crandall had become president of South Coast and Klukwan shortly before South Coast had entered into the Acknowledgment of Default. Crandall advised Travelers that it should strongly consider potential negligence claims against Defendants' accountants, Peterson Sullivan.[15] Crandall had become aware that Peterson Sullivan's financial statements materially overstated Defendants' financial health and believed that Peterson Sullivan were negligent in performing their due diligence required to issue an audit opinion largely based on inadequate internal controls.[16] Unbeknownst to Crandall and Defendants, Travelers had discovered the claims against Peterson Sullivan roughly six months previously and were already analyzing those claims.[17] Any recovery on such claims benefitted both Travelers and Defendants as it reduced Travelers' losses, thereby reducing Defendants' liability for those losses.[18]

Defendants and Travelers agreed that Defendants' accountants, Peterson Sullivan, had negligently overstated South Coast's financial condition in its financial statements as of December 31, 2000. Defendants had relied upon those financial statements in obtaining the surety bonds from Travelers. Travelers had relied upon the overstated

---

[15]    *Id.* at ¶ 20.

[16]    *Id.*

[17]    Judge Beistline has previously held that Travelers discovered the cause of action against Peterson Sullivan on or around June 20, 2002. *See Order Granting Motion for Summary Judgment (Docket No. 118)* entered in *Travelers Casualty and Surety Company of America v. Gelbrich, et al,* Case No. 04-0165 (D. Alaska). A copy of the *Order* is attached as Opposition Exhibit 2.

[18]    Crandall Declaration, ¶ 21.

financial statements in issuing the bonds.[19]  But for the negligently prepared financial statements, Travelers has said that it would have never issued the bonds to South Coast necessary for its jobs.[20]  Without the surety bonds, South Coast would not have incurred millions in losses that it could not pay, thereby creating its current obligation to Travelers.

Travelers ' counsel, Jan Sokol with Stewart Sokol & Gray, approached Crandall for Klukwan's assistance in establishing the negligence claims.[21]  Sokol wanted to obtain Peterson Sullivan's work papers before filing the substantive negligence action.[22]  The law firm had Traveler's accounting expert, Jordan Rosenfeld, prepare a letter for Klukwan to request the Peterson Sullivan's working papers.[23]  At Traveler's behest, Klukwan sent the letter.

When Peterson Sullivan denied that request, Stewart Sokol & Gray conferred with Crandall and Defendants regarding an action to compel the turn-over of the work papers prior to filing the negligence action.[24]  Klukwan agreed to allow Sokol to

---

[19]     Complaint, ¶ 12; *Travelers Casualty and Surety Company of America v. Gelbrich, et al,* Case No. 04-0165 (D. Alaska) (the, "Peterson Sullivan Complaint").  A copy of the Peterson Sullivan Complaint is attached as Opposition Exhibit 3.

[20]     *Id.* at ¶ 13.

[21]     Crandall Declaration, at ¶ 22.  All references to Stewart Sokol & Gray include Jan Sokol unless otherwise indicated.

[22]     *Id.*.

[23]     *Id.*; Exhibit 5 thereto.

[24]     *Id.* at ¶¶ 23-26.

represent it and to file the action on its behalf to compel production of the work papers.

Klukwan conditioned approval of the *Petition,* however, upon Travelers bearing the cost

of the litigation, indemnifying Klukwan from any damages resulting from the litigation,

and applying any proceeds directly to the Note.[25]  Sokol, on behalf of Travelers,

responded in an email dated February 13, 2004, which stated in relevant part:

> I revised the petition per Tom's email to me and forwarded to
> him on Wednesday the revised petition.  I have no [sic] yet
> received his signature page.  Yes Travelers will bear the costs
> in connection with bringing the discovery litigation in Federal
> Court.  While we did not previously discuss indemnity (I'm
> not sure what claims your former accountants could bring;
> I'm assuming you are referring to costs, etc.) Travelers will
> indemnify Klukwan from claims by Peterson Sullivan directly
> related to this litigation.
>
> With respect to the third paragraph, I know Chuck [Charles
> Langfitt] and Tom [Crandall] have discussed this.  While
> Travelers understands Klukwan's expectation, it is not
> consistent with the prior arrangements between Klukwan and

---

[25]    In an email from Cabot Christianson, Klukwan's attorney dealing with Travelers, dated February 10, 2004, stated in relevant part:

> Jan -
> These documents look good.  I am forwarding them to Tom Crandall, and he
> will fax you the signature page.
>
> This email will confirm our previous conversations that Travelers will bear
> all the costs associated with bringing this suit and will indemnify Klukwan
> from any claims associated with the bringing or prosecution of this suit.
>
> If Travelers wishes to bring a substantive cause of action against P&S,
> Klukwan's expectation is that the net litigation proceeds from that suit will
> be applied first to the Klukwan/SCI note to Travelers.  Also, as you are
> aware, Klukwan is considering its own action against P&S, and has
> developed some ideas about how to proceed.  You and I should discuss.

A true and accurate copy of this e-mail is attached as Exhibit 7 to the Crandall Declaration.

> Travelers. Rather than continuing to disagree at this point,
> let's get the petition filed and review the documents received.
> We may be disagreeing about nothing if the documents do not
> yet yield viable claims.

A true and accurate copy of the e-mail dated February 13, 2004 is attached as Exhibit 8 to

the Crandall Declaration.

On February 19, 2004, Stewart Sokol & Gray filed *In the Matter of the Petition of*

*Klukwan, Inc. and Travelers Casualty and Surety Company of America,* Case No. MS04-

014 (W.D. Wash) (*Petition*) on behalf of Klukwan and Travelers to compel production of

Peterson Sullivan's work papers.[26]  The court denied the request.[27]

Defendants had numerous conversations with Travelers, and Jan Sokol, about the

negligence claims against Peterson Sullivan, including a discussion with Chuck Langfitt

on August 6, 2004, two days after Travelers had sued Peterson Sullivan.[28]  Langfitt and

Crandall specifically discussed whether Klukwan should join the action against Peterson

Sullivan.[29]  They ultimately decided that Travelers should bring the action alone to avoid

potential questions concerning Klukwan's ability to sue its own accountants for failing to

catch South Coast's errors.[30]  Klukwan's participation in the lawsuit was not considered

---

[26]     A true and accurate copy of the Petition is attached as Exhibit 6 to the Crandall Declaration.

[27]     A true and accurate copy of the order denying the *Petition* is attached as Exhibit 9 to the
Crandall Declaration.

[28]     Crandall Declaration, ¶ 30.

[29]     *Id.*

[30]     *Id.*

to be critical because any recovery would benefit both Travelers and Defendants by reducing Travelers' total losses, and Defendants' exposure for those losses.[31]

Defendants relied upon Travelers and Stewart Sokol & Gray, to timely and properly sue Peterson Sullivan on the professional negligence claims they had been discussing and coordinating.[32] Throughout those discussions, neither Travelers, nor Stewart Sokol & Gray, ever raised any question regarding the statute of limitations.[33] There was no suggestion that Travelers' claims against Peterson Sullivan were time barred.[34] If there had been any such indication, Klukwan would have either joined the action, or filed its own lawsuit.[35]

Some four months after denial of the *Petition,* Stewart Sokol & Gray sued Peterson Sullivan on behalf of Travelers for negligence claiming damages of at least $8,876,788.68.[36] The claims were based upon Travelers' forensic review of South Coast and Klukwan's finances, and supported by the expert opinion of Jordan Rosenfeld, a certified public accountant specializing in construction accounting. Travelers retained Mr. Rosenfeld to provide expert analysis regarding the 2000 audit and financial

---

[31]     *Id.*

[32]     *Id.* at ¶ 31.

[33]     *Id.*.

[34]     *Id.*

[35]     *Id.*

[36]     Opposition Exhibit 3.

statements.[37]  He concluded that Peterson Sullivan negligently performed the 2000 audit

by failing to meet the standard of care in several material aspects:

1.    The audit procedures were not appropriately adjusted to reflect an 82% increase in South Coast's revenue from the prior year.

2.    The audit failed to meet the industry standard for understanding South Coast's internal controls or gathering sufficient evidentiary matter.

3.    The procedures for evaluating the status of South Coast's work in progress were inadequate.

4.    It failed to recognize indications, including underbillings, that South Coast's project status report underestimated costs to complete and total estimated costs.

5.    It failed to meet the standard of care in its audit of South Coast's inventory.

6.    It failed to perform testing of South Coast's internal controls, which were essential to determine what audit procedures should be performed.[38]

Mr. Rosenfeld's analysis was buttressed by the *Affidavit of Charles Langfitt* and

his subsequent deposition.[39]

The District Court never decided the merits of the negligence claims.  Rather,

Peterson Sullivan established that the action was commenced more than two years after

Travelers discovered the claim, and was untimely.  On September 27, 2005, Judge

---

[37]    Affidavit of Jordan S. Rosenfeld (Rosenfeld Affidavit), ¶ 3.  Travelers previously submitted the Affidavit within *Travelers Casualty and Surety Company of America v. Gelbrich, et al,* Case No. 04-0165 (D. Alaska).  A copy of the Rosenfeld Affidavit is attached as Opposition Exhibit 4.

[38]    *Id*. at ¶ 3.

[39]    The Langfitt Affidavit and the excerpts of Mr. Langfitt's deposition submitted in the Peterson Sullivan action are attached as Opposition Exhibits 1 and 5.

Beistline granted the motion for summary judgment agreeing that the action was barred by the applicable statute of limitations.[40]  Judge Beistline found that "the evidence and affidavits thus proffered ... further convince the Court that [Travelers] had '<u>sufficient</u> information to prompt an inquiry into the cause of action.'  Thus, the Court concludes Plaintiff's 'negligence cause of action accrued more than two years before the [C]omplaint' was filed."[41] (Emphasis in original).

South Coast made its last payment on the Note in September 2005.[42]  Travelers has commenced the instant action to recover on the Note, and has filed for summary judgment motion for damages in the amount of $6,084,719.05.

**Analysis**

I.    **TRAVELERS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED TO ALLOW DISCOVERY PURSUANT TO RULE 56(f).**

Travelers waited 20 days after filing its complaint before serving it on Defendants.  On the 20th day, Travelers also filed its motion for summary judgment. While Travelers properly filed its summary judgment motion on the earliest day possible, this case is in its infancy.  Defendants only recently filed their answer, and asserted counterclaims and third party claims which negate or offset any liability.  As a result of those claims, Travelers has retained new counsel and requested until June 19th to file its

---

[40]    A true and correct copy of the *Order Granting Motion for Summary Judgment* (Docket No. 118) is attached as Opposition Exhibit 2.

[41]    *Id.*

[42]    Crandall Declaration, ¶ 35.

answer.  The parties have yet to exchange initial disclosures, much less conduct

discovery.  Defendants are entitled to the time to (1) ascertain from Travelers and Stewart

Sokol & Gray what issues are actually in dispute, and (2) conduct discovery on those

issues.  As a result, Travelers' motion for summary judgment is premature and should be

denied as such under Rule 56(f).[43]

Ordinarily, to obtain a Rule 56(f) dismissal or continuance, the movant must: (1)

set forth in an affidavit the specific facts that they hope to elicit from further discovery,

92) that such facts exist, and (3) that the facts sought are "essential" to resist the

summary judgment motion.  *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir.

1998). These requirements are considerably relaxed, however, when summary judgment

is sought early in the case.  Surveying the state of the law regarding Rule 56(f), the Ninth

Circuit has made it clear that motions for continuance under Rule 56(f) should be

"freely" granted when summary judgment is sought early in the case:

> Rule 56(a) permits a party asserting a claim to move for
> summary judgment any time after the expiration of 20 days
> from the commencement of the action.   BN's early filing of
> its summary judgment motion was therefore permissible.
> Where, however, a summary judgment motion is filed so
> early in the litigation, before a party has had any realistic
> opportunity to pursue discovery relating to its theory of the
> case, district courts should grant any Rule 56(f) motion fairly
> freely.  *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832,
> 846 (9th Cir. 2001) ("Although Rule 56(f) facially gives

---

[43]     Rule 56(f) provides that where the non-moving party establishes facts by affidavit showing
that it cannot present facts essential to its opposition by affidavit, "the court may refuse the application for
judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery
to be had or may make such other order as is just."  Fed.R.Civ.P. 56(f).

judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.' ") (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see also Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1414 (D.C.Cir.1995) (describing "the usual generous approach toward granting Rule 56(f) motions"); *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 n. 4 (5th Cir.1992) (Rule 56(f)-based "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence" (internal quotation marks and citation omitted)); *Sames v. Gable,* 732 F.2d 49, 52 (3d Cir.1984) (same).

... where, as in the present litigation, no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid.

*Burlington Northern Santa Fe Railroad Co. v. Assiniboine and Sioux Tribes of the Fort Beck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003).

In this case, Travelers is suing for breach of a promissory note that was expressly conditioned upon proof of Travelers' losses exceeding $8 million.  Travelers has failed to adduce any evidence in support of those losses, and Defendants are entitled to examine the factual basis of those losses.   Defendants are aware of at least one instance in which Travelers acknowledges that it was overbilled for the work performed on the Bonded Contracts that comprise its losses.  Travelers has previously acknowledged that West

Construction billed for unused equipment on the Dutch Harbor dock project.[44]
Defendants are entitled to conduct discovery on the amount of Travelers' losses as well as the calculation and support of its damage claim.

Defendants have also asserted that Travelers, and Stewart Sokol & Gray's, actions breached their duties to reasonably prosecute the negligence claims against Peterson Sullivan, and the damages from that breach reduces or offsets any liability they may have. Given the sworn statements and positions advanced in the Peterson Sullivan case, Defendants believe that there is no genuine issue of material dispute as to these claims. If the Court disagrees, however, Defendants are entitled to discovery to establish those claims which are discussed in detail in Sections II and III, *infra*.[45]

Travelers controls the information relating to its losses and surely must have the support for the determination of its own losses. If it is necessary to establish the validity of the time barred negligence claims against Peterson Sullivan additional discovery will be required to establish the liability and damages related to the loss of that asset. The facts supporting these issues were largely the subject of the prior litigation held by Travelers and Stewart Sokol & Gray, and are discoverable to rebut the amount of Defendants' liability, and its mitigation defense and negligence counterclaims. Under

---

[44]     Crandall Declaration, ¶ 11, Exhibit 3 thereto.

[45]     The Declaration of Thomas Crandall is submitted pursuant to the requirement of Rule 56(f), but the other exhibits, including the affidavits and deposition from the Peterson Sullivan action, also support Defendants' Rule 56(f) motion and the claims asserted.

Rule 56(f), Defendants are entitled to denial of the Travelers' motion for summary judgment as premature to allow Defendants' to develop its case.

## II.     TRAVELERS HAS FAILED TO ESTABLISH THAT DEFENDANTS OWE ANY AMOUNTS UNDER THE *REPAYMENT AGREEMENT.*

Should the Court deny Defendants' motion for continuance under Rule 56(f), summary judgment is still inappropriate.  Travelers bears the burden of establishing all the elements of its contract claim, and its entitlement to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  All evidence and reasonable inferences presented by the non-moving party must be construed in its favor.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248-9 (1986).  Travelers, as the moving party, bears the initial burden of production, and where "a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970)).

Defendants admit they have not made all the payments required under the Note. This fact alone, however, does not entitle Travelers to summary judgment.  Rather, Travelers must prove the amount South Coast owes under the Note.  The only evidence submitted by Travelers is the conclusory statement from Charles Langfitt that Defendants owe $6,084,719.05.[46]  Moreover, Traveler's failure to mitigate its damages precludes

---

[46]        Langfitt Declaration, ¶ 6.

summary judgment.  Travelers', and their attorneys', negligence in pursuing the Peterson

Sullivan claims offsets any amounts Defendants owe.

> ### A.     Travelers Has Failed to Establish Its Damages, and the Amounts, if any, Owed under the Repayment Agreement and Promissory Note.

As a predicate to any damages, Travelers is required under the *Repayment*

*Agreement* to prove that it has reasonably sustained losses on the Bonded Contracts in

excess of $8 million.  Section 9 of the *Repayment Agreement* provides that the

Defendants are relying on Travelers' representation that its total losses would exceed $8

million.  But, "[i]n the event that Travelers' total loss, net of all receipts from the Bonded

Contracts, is less than $8 million, Travelers shall credit the Note with the amount of the

difference."[47]

The need for an accounting is elementary and obvious.  In this instance, it is

specifically required under the *Repayment Agreement.*  Defendants are entitled to review

this accounting to assure themselves that the damages are supported by evidence and are

fair, reasonable, and non-duplicative.  Based on very limited knowledge, and without the

benefit of discovery, Defendants are aware of at least one instance in which Travelers

acknowledges that it was overbilled by West Construction for unused equipment on the

Dutch Harbor dock project.[48]  At the very least, at this point in the litigation Defendants

---

[47]      *Repayment Agreement*, at ¶ 9.

[48]      Crandall Declaration, ¶ 11.

are entitled to conduct discovery on Travelers' actual losses under Rule 56(f) for the very

reasons set for in Section I, *supra.*

Travelers has failed to meet its initial burden of establishing the amounts owed

under the Note, and summary judgment must be denied on this basis alone.  Travelers

summarily states that it is owed $6,084.719.05.[49]  It does not provide any computation of

that alleged current balance.   It appears that Travelers does not give South Coast credit

for any payments, the Chinle settlement, or the sale of its equipment.  The magnitude of

this differential is substantial as it represents roughly a $1.75 million deduction, as the

maximum amount due under the Note is $4,363,710.43, calculated as follows:

| Date | | Interest @ 6% | | Payments | | Balance |
|------|------|------|------|------|------|------|
| 12/6/2002 | Note amount | | | | $ | 5,388,306.48 |
| 1/1/2003 | Chinle credit | $ | 23,029.47 | $ 1,421,828.99 | $ | 3,989,506.96 |
| 1/31/2003 | Equipment Proceeds | $ | 19,674.28 | $ 2,700.00 | $ | 4,006,481.25 |
| 2/10/2003 | Equipment Proceeds | $ | 6,586.00 | $ 7,600.00 | $ | 4,005,467.24 |
| 2/10/2003 | Equipment Proceeds | $ | - | $ 5,500.00 | $ | 3,999,967.24 |
| 3/7/2003 | Equipment Proceeds | $ | 16,438.22 | $ 2,235.00 | $ | 4,014,170.46 |
| 9/1/2004 | Payment | $ | 358,965.82 | $ 50,000.00 | $ | 4,323,136.28 |
| 10/1/2004 | Payment | $ | 21,319.58 | $ 50,000.00 | $ | 4,294,455.86 |
| 11/1/2004 | Payment | $ | 21,884.08 | $ 50,000.00 | $ | 4,266,339.93 |
| 5/1/2005 | Payment | $ | 126,938.22 | $ 50,000.00 | $ | 4,343,278.16 |
| 6/1/2005 | Payment | $ | 22,132.87 | $ 50,000.00 | $ | 4,315,411.03 |
| 7/1/2005 | Payment | $ | 21,281.48 | $ 50,000.00 | $ | 4,286,692.51 |
| 8/1/2005 | Payment | $ | 21,844.52 | $ 50,000.00 | $ | 4,258,537.02 |
| 9/1/2005 | Payment | $ | 21,701.04 | $ 100,000.00 | $ | 4,180,238.06 |
| 5/26/2006 | | $ | 183,472.37 | | $ | 4,363,710.43 |
| | Total Payments | | | $ 1,889,863.99 | | |

It appears that Travelers is attempting to base its recovery on an $8 million

obligation.  The $8 million represents the total amount South Coast agreed to pay

---

[49]     Langfitt Declaration, ¶ 6.

PAGE 18     RULE 56(F) MOTION AND OPPOSITION TO SUMMARY JUDGMENT - 3:06-CV-00063

H:\2501\TRAVELERS V SCOAST\SUMMARY JUDGMENT OPP.WPD

Travelers with future interest through August 1, 2010.  Yet, Travelers appears to sue on the assumption that the $8 million is the principal owed, and asks for interest under the note at 6% beginning September 1, 2002, the date of the Note.[50]

Travelers negotiated and created a promissory note in the principal amount of $5,388,306.48.  Under that Note, Travelers is only entitled to recover its principal and accrued unpaid interest through the judgment date.  It cannot recast interest as principal for the purpose of determining South Coast's liability.

Travelers has also failed to establish Klukwan's or CPC's independent liability. The *Repayment Agreement* does not impose any independent liability upon either Klukwan or CPCD.  Rather, it only commits their property as security for the debt.  South Coast is the only maker of the Note.  Accordingly, Travelers has failed to establish the basis for either Klukwan's or CPC's independent liability.

### B.     Travelers Has Failed to Mitigate its Damages.

"The duty to mitigate damages is a well recognized rule of contract law in Alaska."  *Alaska Children's Services, Inc. v. Smart,* 677 P.2d 899, 902 (Alaska 1984) (citing *Anchorage Independent School District v. Stephens,* 370 P.2d2 531, 533 (Alaska 1962)).  As explained in *Alaska Children's Services*, "the duty rests on the party claiming damages but the burden of proving mitigation or failure to mitigate falls on the breaching party."  *Id*. at 902.  To prove that Travelers failed to mitigate its losses, Defendants must

---

[50]     Travelers' *Memorandum in Support of Motion for Summary Judgment*, p. 2.

show that Travelers "failed to exercise reasonable diligence to minimize the loss."

*Tripps Restaurant of North Carolina v. Showtime Enterprises, Inc.,* 595 S.E. 2d 765, 768

N.C. App. 2004); *Sheppard v. Stanich*, 749 N.E. 2d 609, 612 (Ind. App. 2001) ("the

breaching party has the burden to prove that the non-breaching party has not used

reasonable diligence to mitigate its damages.")

The reasonableness of Travelers' actions mirrors the duty element within

Defendants' negligence claims against Travelers and Stewart Sokol & Gray. Both

Travelers and Stewart Sokol & Gray coordinated the negligence claims with Defendants

and induced Defendants to rely upon their action to recover against Peterson Sullivan.

Travelers directed the original request for the accountants' working papers. Stewart

Sokol & Gray formally represented Klukwan and Travelers in its efforts to compel

production of those papers. When those efforts failed, the decision was made to maintain

only one action against Peterson Sullivan to streamline the matter and avoid additional

potential issues.

All actions related to Peterson Sullivan were taken with the single purpose of

maximizing the recovery against Peterson Sullivan to eliminate or reduce Travelers'

losses, which eliminated or reduced Defendants' liabilities. By their actions, Travelers,

and Stewart Sokol & Gray, were aware that Defendants had foregone its claims against

Peterson Sullivan in favor of Travelers claims and that they were relying upon recovery

from that action. At no time did Travelers, or Stewart Sokol & Gray, ever advise

Defendants of any issue relating to the timeliness of its action.

In this instance, the duty to mitigate encompassed the duty to timely bring the Peterson Sullivan action. As a general rule, a party asserting a cause of action has a duty "to institute suit within the prescribed statutory period." *Pocono Int'l Raceway v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa.1983). Failure to timely bring a suit within the statute of limitations period constitutes a breach of duty. *See Bebo Const. Co. v. Mattow & O'Brien*, P.C. 990 P.2d 78, 83 (Colo. 1999)(failure to timely file lawsuit constituted a breach of the duty of care.); *Allyn v. McDonald,* 910 P.2d 263, 266 (Nev. 1996) ("The situation whereby an attorney has allowed the statute of limitations to run against his or her client's cause of action is an example of the sort of negligence so apparent as to make expert evidence as to the standard of care and deviation unnecessary."); *Williams v. Bashman*, 457 F.Supp. 322, 329 (E.D.Pa.1978) (holding that law firm breached duty of care to client failed to institute personal injury claim on behalf of client; *Fuschetti v. Bierman,* 319 A.2d 781, 784 (N.J. Super. 1974) ("The failure of an attorney to commence an action within the time of the statute would ordinarily be considered neglect."); Mallen & Smith, 3 *Legal Malpractice*, § 22.3 (3rd Ed).

Ordinarily, a genuine dispute of fact may exist whether an action was timely commenced. The untimeliness of the Peterson Sullivan case, however, has been previously, and conclusively, established by Judge Beistline's adverse ruling in the prior litigation. Travelers, and Stewart Sokol & Gray are collaterally estopped from denying

the action was untimely.[51]  *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004).  Travelers' failure to timely sue Peterson Sullivan, therefore, constitutes unreasonable conduct as a matter of law.

Travelers valued the negligence claims against Peterson Sullivan in the amount of at least $8,876,788.68 in its Peterson Sullivan complaint.[52]  Travelers has previously provided the sworn testimony of Charles Langfitt and the expert report of Jordan Rosenfeld to establish that Peterson Sullivan negligently prepared South Coast's relevant financial statements.[53]  It has repeatedly stated and testified that but for the negligently prepared financial statements it would never have issued the surety bonds that enabled South Coast to receive the projects that comprise the losses for which Travelers now sues to recover.  Those sworn statements constitute judicial admissions which it is now judicially estopped from retracting. *See generally Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 601 (9th Cir. 1996) ("Judicial estoppel is intended to protect against a litigant from playing fast and loose with the courts....")

Having chosen to bring the negligence action against Peterson & Sullivan for its and Defendants' benefit, Travelers was under an obligation to act with reasonable

---

[51]     Collateral estoppel, or issue preclusion, requires that "the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *McQuillion*, 369 F.3d at 1096 (*Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996).  All of the elements are present here.

[52]     Peterson Sullivan Complaint (Motion Exhibit), ¶ 27.

[53]     Motion Exhibits 1, 4, and 5.

diligence.  It failed to do so.  As a result, Travelers has wasted a claim that it has admitted was valid and worth the amount of its losses on the Bonded Contracts.  Having failed to mitigate its damages, Travelers cannot now recover against Defendants.

### C.    Any Liability is Offset by the Failure to Timely Prosecute the Professional Negligence Action against Peterson Sullivan.

As explained above, Travelers and Stewart Sokol & Gray , owed a duty to Defendants to reasonably prosecute its claim against Peterson Sullivan.  That duty may be considered as a duty to mitigate its losses, or within the construct of a traditional negligence claim.[54]  Such negligence claims require evidence of duty, breach of that duty, a proximate causal connection between the negligent conduct and the resulting injury, and actual loss resulting from the negligence.  *Linck v. Barokas & Martin*, 667 P.2d 171, 173 n. 4 (Alaska 1983).   The analysis of the negligence claim generally tracks that of Travelers' duty to mitigate, except that Defendants must prove the existence of a duty whereas such obligation is imposed as a matter of law within the mitigation analysis.

---

[54]    Although Stewart Sokol & Gray failed to timely file the action, Defendants are entitled to offset the damages caused by the failure to do so under the doctrine of respondeat superior.  The relationship between Travelers as client, and Stewart, Sokol & Gray as counsel, is one of principal and agent. *Anaya v. Coello*, - S.E.2d -, 2006 WL 1426215, 2 (Ga. App. 2006)("It is fundamental that a client's relationship to an attorney is that of principal and agent.") ; *Brecada v. Whi*, 187 S.W.3d 148, 152 (Tex. App. 2006); *Wentland v. Wass*, 25 Cal.Rptr. 3d 109, 117 (Cal. App. 2005).  It is hornbook law that a principal can be held liable for the negligent acts of its agent made within the scope of its conduct.  *Austin v. Fulton Ins. Co.*, 498 P.2d 702, 705 (Alaska 1972) ("as it is hornbook law that a principal may be held liable for such acts of an agent."); *City of Delta Junction v. Mack Trucks, Inc.*, 670 P.2d 1128, 1129 (Alaska 1983).

In this instance, both Travelers and Stewart Sokol & Gray had a duty to reasonably prosecute the Peterson Sullivan claims. This duty arose from its common interest in reducing the losses on the Bonded Contract by pursuing those claims. It was solidified by Travelers' and Stewart Sokol & Gray's conduct with regard to those claims which induced Defendants to rely upon them to pursue and recover upon those claims for their joint benefit. Travelers and Stewart Sokol & Gray had Klukwan request the accountants' working papers to develop the cause of action and actually wrote the letter for Klukwan. They proceeded to formalize that relationship when they had Stewart Sokol & Gray represent not only Travelers but also Klukwan in the action to compel the turn-over the working papers. When that failed, they induced Defendants to forego their individual claims against Peterson Sullivan in favor of their action. Having elected to bring the negligence claims against Peterson Sullivan for their joint benefit, Travelers (and Stewart Sokol & Gray) was duty bound to do so reasonably. This required it to timely file that action, and it failed to do so.

As explained in Section II.B, *supra,* Travelers' sworn statements and positions in the prior litigation establish the other elements of Defendants' negligence case. The failure to timely file a lawsuit is a breach of duty to reasonably prosecute those claims. Travelers has admitted that Peterson Sullivan was negligent in the preparation of the financials on which it relied in issuing the surety bonds and but for the failure to timely file its action, Travelers would have recovered its damages which exceeded $8.8 million.

To impose respondeat superior, the negligence must be within the scope of the agent's representation. Timely filing the action for which it was retained is clearly within that scope, particularly where Stewart Sokol & Gray was involved in the matter since South Coast's original default. Accordingly, Stewart Sokol & Gray was negligent in filing the Peterson Sullivan action, and such negligence has damaged Defendants by exposing it to additional liability than it otherwise would have faced. Defendants are able to offset any amounts owed on the Note because Travelers is liable for Stewart Sokol & Gray's negligence under the doctrine of respondeat superior.

## Conclusion

Travelers' motion should be denied as premature given the infancy of this litigation. But, if the Rule 56(f) motion is denied, Traveler's motion for summary judgment must also be denied. Travelers cannot rely upon the unsubstantiated and conclusory statement that Defendants owe $6,084,719.05 for summary judgment. Moreover, its waste of the Peterson Sullivan claims precludes it from collecting against Defendants whether viewed as failure to mitigate its damages, or as damages for which Stewart Sokol & Gray and Travelers are liable. Because the material facts relating to Travelers', and Stewart Sokol & Gray's, duty, breach of duty, and damages caused by the breach of duty are either admitted in, or established by, the Peterson Sullivan action, Defendants are entitled to summary judgment that any losses for which they are liable are negated and offset by Travelers' and Stewart Sokol & Gray's failure to properly maintain the prior action.

Respectfully submitted in Anchorage, Alaska, this 26th day of May, 2006.

By: /s/ Gary Spraker
Gary Spraker
CHRISTIANSON & SPRAKER
911 West 8th Avenue, Suite 201
Anchorage, AK 99501
Phone: (907) 258-6016
Fax: (907) 258-2026
Email: gary@cslawyers.net
Alaska Bar No. 9107066
Attorneys for Defendants

# EXHIBITS TO OPPOSITION TO TRAVELERS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION

## TABLE OF CONTENTS

| Exhibit No. | Exhibit | Originally Filed In: |
|---|---|---|
| 1 | Affidavit of Charles Langfitt | Travelers Cas. and Surety Co. of Am. v. Gelbrich, et al, Case No. 04-0165 (D. Alaska) |
| 2 | Order Order Granting Motion for Summary Judgment (Docket No. 118) | Travelers Cas. and Surety Co. of Am. v. Gelbrich, et al, Case No. 04-0165 (D. Alaska) |
| 3 | Complaint | Travelers Cas. and Surety Co. of Am. v. Gelbrich, et al, Case No. 04-0165 (D. Alaska) |
| 4 | Affidavit of Jordan Rosenfeld | Travelers Cas. and Surety Co. of Am. v. Gelbrich, et al, Case No. 04-0165 (D. Alaska) |
| 5 | Excerpt of Deposition of Charles Langfitt | Travelers Cas. and Surety Co. of Am. v. Gelbrich, et al, Case No. 04-0165 (D. Alaska) |