# TAB 3
## Deposition Exhibits

Attachment to Declaration of James T. Hopkins
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)

Travelers' Motion for Summary Judgment
Index of Exhibits

| Ex. No. | Description | |
|---|---|---|
| 26 | Klukwan, Inc. 2002 Annual Meeting Powerpoint presentation | 6-14 |
| 31 | 6/12/02 letter agreement, with attached acknowledgement of default | |
| 32 | Indemnity Agreements | |
| 35 | 6/22/02 letter, T. Crandall to C. Langfitt with attached spreadsheet | |
| 42 | 12/14/02 Repayment Agreement with Exs. A and B | |
| 72 | 5/6/04 Klukwan Board Meeting minutes | |
| 81 | 10/20/03 letter, T. Crandall to Peterson Sullivan | |
| 82 | 10/10/03 letter, T. Crandall to Peterson Sullivan | |
| 83 | 1/9/04 email, J. Sokol to C. Christianson | |
| 87 | 1/23/04 email, J. Sokol to C. Christianson and 2/10/04 email, C. Christianson to J. Sokol | |
| 88 | 1/23/04, 2/10/04 and 2/13/04 emails, J. Sokol and C. Christianson | |
| 89 | 2/17/04 facsimile, T. Crandall to J. Sokol with attahced petition | |
| 90 | 5/26/04 email, C. Langfitt to T. Crandall | |
| 91 | 6/29/04 letter, T. Crandall to C. Christianson | |
| 93 | 1/31/02 letter, R. Gelbrich and T. Crandall to Peterosn Sullivan | |
| 95 | 9/12/04 Board update | p. 1 & 6 |
| 97 | 9/16/04 Klukwan, Inc. Minutes | |
| 128 | Complaint (Action for Negligent Misrepresentation), 8/2/04. | |
| 170 | Billing Records for January, February and March 2004 | |
| 176 | 1/21/04 memorandum, G. Spraker to C. Christianson | |
| 177 | 2/6/04 email, C. Christianson to T. Crandall | |
| 178 | 2/21/04 memorandum, G. Spraker to C. Christianson | |
| 179 | 3/16/04 email, C. Christianson to G. Spraker | |
| 181 | 7/6/04 letter, C. Christianson to KPMG | |

Travelers' Motion for Summary Judgment
Index of Exhibits

| | | |
|---|---|---|
| 183 | 1/19/06 email exchange, C. Christianson, T. Crandall with attached draft letter | |
| 190 | Klukwan privilege document 406 | |
| 191 | 1/15/04 email, J. Sokol /C. Christianson/T. Crandall | |
| 193 | 2/11/04 email, T. Crandall to C. Christianson | |
| 201 | 2/3/05 email, T. Crandall to C. Christianson | |



# Klukwan, Inc.



## 2002
## Annual Meeting

000232

6

# South Coast, Inc.

## A History
## November 1997
## to
## Present

001867

# History 1997

- Nov. 1997
  - Alan Coffin, President, terminated
  - Bid review committee set $2 million limit
  - FMI Corporation hired to design and implement operational improvements, policies & procedures
- Dec. 1997
  - FMI's first report

7

001088

# History 1998

- Mar. – Aug. 1998
  - Interviewed candidates
  - Received FMI's reports
  - SCI report card system implemented using FMI
- Sep. 1998
  - Hired Jerry Renich as SCI President

8

001000

# History 1999

- General 1999
  - Continue with quarterly report cards using FMI
  - Bid review committee set $3 million limit
  - Apr. 1999 -- Mike Houts promoted to Vice President / Chief Financial Officer
  - Oct. 1999 -- Possible underbid on Big Salt Lake Road Project on Prince of Wales Island and justification by SCI management

9

001070

000236

10

# History 2000

- General 2000
  - Moved report cards in-house
  - SCI reported $2.3 million net income for 2000
  - Policies and procedures appeared to be working

00187

# History 2001

- Apr. 2001
  - Forged an agreement with Ketchikan Bureau and Gateway Forest Products and was paid $2 million on a $2.25 million claim
  - Chinle claim reported

- Aug. 2001
  - Tax problem in Arizona of $750 thousand
  - Estimated 2001 results still expected to be positive at $300 thousand
  - SCI management reported that FMI developed procedures were being followed

11

# History 2001(cont.)

- Nov. 2001
  - Richardson Highway project reports a loss
  - Project management terminated
  - SCI still reports to break-even at year-end
  - Klukwan hires Peterson & Sullivan to do a special audit on the Richardson Highway Project
  - SCI management reported that FMI developed procedures were being followed

12

000239

# History 2001 (cont.)

- Dec. 2001
  - 12/8 Board meeting
    - Losses continue to mount
    - SCI estimated loss of $1.8 million for the year
  - 12/15 SCI revised estimated loss to $2.7 million
  - Klukwan expanded the role of Peterson & Sullivan
  - Klukwan hired Sutor Consulting to review all remaining jobs
  - SCI management reported that FMI developed procedures were being followed

13

00187

# History 2002

- Jan. 2002
  - 1/10 Misc. conversations SCI revised estimated loss to $4.8 million
  - 1/14 meeting in Ketchikan SCI revised estimated loss to $5.5 million
  - 1/26 Board meeting
    - Peterson & Sullivan reported lack of internal controls and the SCI management reported that FMI developed procedures were NOT being followed
    - Terminated Jerry Renich President, Brad Finney Vice President Operations, and Mike Houts Vice President CFO
  - Note: Final loss was $7.7 million

14

000241



*Originals in safe (m.)*

 **South Coast Inc.**

FAX (907) 247-8125
Telephone (907) 225-6125
Post Office Box 8820
6649 Tongass Avenue
Ketchikan, Alaska 99901

June 12, 2002

Mr. Charles W. Langfitt, Vice President
Travelers Casualty & Surety Company
3455 South 344th Way, suite 200
Auburn, WA 98001

Dear Mr. Langfitt:

      **FIRST:** South Coast, Inc., South Coast, Inc., dba Klukwan Contracting, for itself and as successor in interest to South Coast, Inc./Agate, Inc (JV) and Klukwan, Inc. (collectively "South Coast") executed various Continuing Agreements of Indemnity Contractor's Form dated March 1, 1999, December 18, 1995 and February 23, 1996, respectively (collectively "Indemnity Agreement"). In consideration, therefore, Travelers Casualty & Surety Company ("Travelers") has executed bonds on behalf of South Coast. South Coast is currently unable to make payroll and has requested financial assistance from Travelers. Travelers is willing to fund South Coast payroll for the week ending 05/31/02 in the amount of $250,000.

      **SECOND:** In exchange, South Coast shall reimburse Travelers $75,000 from the funds south Coast shall receive from the Trident project, immediately upon receipt thereof. South Coast affirmatively represents that South Coast has no other sources from which to pay the 05/31/02 payroll. Travelers, at its sole discretion, may advance to South Coast other funds for payroll or other purposes, but is not obligated to do so.

      **THIRD:** In exchange for funding payroll, South Coast is executing an Acknowledgement of Default, Letters of Direction, assignments and other documents in favor of Travelers.

      **FOURTH:** Pending reaching a definitive agreement, but prior thereto, South Coast and Travelers immediately intent to mutually cooperate to negotiate and close out all projects Travelers bonded, but with the understanding that Travelers reserves all of its rights under the Indemnity Agreement, including, but not limited to, those rights to re-let the projects under Section Fifth and Ninth, thereof. South Coast acknowledges and agrees that, at a minimum, Travelers and South Coast will negotiate for terminations for convenience, re-lets or owner assumptions of the Toksook project, Unalaska Airport project and the San Carlos project, with the remaining work to be reviewed for disposition, subject to Travelers rights under the Indemnity Agreement to re-let the remaining work.

      **FIFTH:** As part of these agreements, Travelers and South Coast shall mutually cooperate in the resolution of valid payment bond claims, including Travelers paying, in its sole discretion, as provided for in the Indemnity Agreement, valid payment bond claims.

*Alaskans Building a Future for Alaska*

*Crandall*
**DEPOSITION
EXHIBIT
#31**
PENGAD 800-631-6989

TRAV 024041

000242

SIXTH: This ..... .er is subject to Travelers and South Coast ... ..aching a definitive agreement, but prior thereto: (1) Travelers shall advance the $250,000 for the May 31, 2002 payroll, and South Coast shall reimburse Travelers $75,000 as provided herein; and (2) South Coast and Travelers shall cooperate as provided for in paragraph FOURTH, hereof.

SEVENTH:  Travelers may make further future advances to South Coast in Travelers sole discretion.

South Coast, Inc.
South Coast, Inc. dba Klukwan Contracting,
(for itself and as successor in interest to South Coast, Inc.
/Agate, Inc. (JV) )
Klukwan, Inc.

By: _____
      Thomas L. Crandall, President


Travelers Casualty & Surety Company of America

By: _____
      Charles W. Langfitt, Vice President


Indemnitor Letter – South Coast

TRAV 024042

000243

# EXHIBIT "A" TO ACKNOWLEDGEMENT OF DEFAULT

**Principal Name: South Coast, Inc./Klukwan**
**Master Claim No:           689687**

| # | Principal Name | Claim Number | Bond Number | Bond Effective Date | Contract Description | Bond Amount |
|---|---|---|---|---|---|---|
| 1 | South Coast dba Klukwan | 091SC689687RG | 103527563 | 5/24/01 | Tuba City-Window/Rock | $6,806,278 |
| 2 | South Coast dba Klukwan | 091SCW010056BNR | B27810720000 | 05/23/00 | Sitka Rky. Gult Airport | $1,693,625 |
| 3 | South Coast dba Klukwan | 090SC689623NR | 103619765 | 07/24/01 | Yakutat Seaplane Fac. | $291,960 |
| 4 | South Coast dba Klukwan | 091SC689776NR | 103527527 | 02/12/01 | Richardson Hwy.Rehab | $2,446,958 |
| 5 | South Coast dba Klukwan | 091SC690436NR | 103527515 | 01/15/01 | Ketchikan Transfer Fac | $2,463,830 |
| 6 | South Coast dba Klukwan | 091SCR010179 7NR | B27810740000 | 05/31/00 | Coal Mine Rd. Ft.Def. | $7,437,565 |
| 7 | South Coast dba Klukwan | 091SCR010798RG | B27810560000 | 09/28/99 | Rd.Constr.Chinle Tsaile | $7,142,131 |
| 8 | South Coast dba Klukwan | 091SCR020016 7NR | B27810570000 | 09/29/99 | Big Salt Lake Road | $13,655,307 |
| 9 | South Coast dba Klukwan | 091SC689712NR | 103527526 | 01/01/99 | Constr.1.085 KM of Rd | $1,813,573 |
| 10 | South Coast dba Klukwan | 091SC689720NR | 103527564 | 05/24/01 | Tuba City Window | $1,997,920 |
| 11 | South Coast dba Klukwan | 091SC690017NR | 103527521 | 01/29/01 | Borrego Pass | $3,334,391 |
| 12 | South Coast dba Klukwan | 091SC691639NR | 103619753 | 06/27/01 | Subcontract to Jacabs | $308,818 |
| 13 | South Coast dba Klukwan | 091SC691638NR | 103619763 | 07/24/01 | Pave Upper Base Rdy. | $97,488 |
| 14 | South Coast dba Klukwan | 091SC691645NR | 103737398 | 03/07/02 | Karigan Estates Subd. | $235,000 |
| 15 | South Coast dba Klukwan | 091SC691646NR | 103674305 | 09/21/01 | Unalaska Marine Ctr. | $6,499,000 |
| 16 | South Coast dba Klukwan | 091SC691610NR | 103619782 | 09/05/01 | Toksook Bay Airprt. | $4,247,352 |
| 17 | South Coast dba Klukwan | 090SC691519NR | 103737385 | 01/16/02 | San Carlos Indian Res. | $1,042,792 |
| 18 | South Coast dba Klukwan | 901SCR020037 0NR | B27810650000 | 11/23/99 | Ketchikan Tongass Av. | $3,950,592 |
| 19 | South Coast dba Klukwan | 091SC691636NR | 103674316 | 10/16/01 | Spit Light Cargo & Pol | $114,450 |
| 20 | South Coast dba Klukwan | 091SC691611NR | 103674309 | 09/27/01 | Unalaska Aprt.Safety | $2,614,245 |
| 21 | South Coast dba Klukwan | 091SC691612NR | 103674310 | 09/28/01 | Rep. 12" Sewer Main | $395,000 |
| 22 | South Coast dba Klukwan | 091SC691266NR | 103389111 | 09/14/00 | Wide Ruins Contract | $428,231 |
| 23 | ** | | | | | |
| | **TOTAL** | | | | | **$69,016,506** |

Exhibit "A" to Acknowledgement of Default

TRAV 024043

000244

# EXHIBIT "A" TO ACKNOWLEDGEMENT OF DEFAULT

** Any other project Reliance or Travelers bonded which may be added later and be covered by this letter.

Exhibit "A" to Acknowledgement of Default

## ACKNOWLEDGEMENT OF DEFAULT

WHEREAS, TRAVELERS BOND (hereinafter called the SURETY) is the SURETY on certain Payment and Performance Bonds of South Coast, Inc., South Coast, Inc., dba Klukwan Contracting, for itself and as successor in interest to South Coast, Inc./Agate, Inc (JV) and Klukwan, Inc. (hereinafter called the PRINCIPAL), which for the purpose of this Acknowledgement of Default are designated on Exhibit "A" attached hereto and incorporated herein by reference as if fully set forth herein; and

WHEREAS, PRINCIPAL has executed Continuing Agreements of Indemnity with the SURETY's predecessor in interest attached hereto as Exhibit "B", and incorporated herein by reference as if fully set forth herein, pursuant to which SURETY issued the above-described bonds; and

WHEREAS, claims have been made against the SURETY for PRINCIPAL'S failure to perform and for materials and labor furnished on behalf of Principal for the Contracts listed on Exhibit "A" ("Bonded Contracts"); and

WHEREAS, PRINCIPAL is unable to make payment for labor and materials and complete performance under said Bonded Contracts and its cash flow has been critical to the point that there are not adequate funds to pay these obligations and complete performance of the Bonded Contracts; and

WHEREAS, PRINCIPAL acknowledges that it is in default under the terms of its Continuing Agreement of Indemnity and on the Bonded Contracts and its bonds with SURETY;

NOW, THEREFORE, PRINCIPAL hereby states as follows:

1.  PRINCIPAL hereby reaffirms it Assignment to the SURETY of all of its rights under the above described Bonded Contracts in accordance with the terms of the Continuing Agreements of Indemnity, including, but not limited to, the right to receive all progress payments, earned or unearned, retainages, whether in the form of Certificates of Deposit, escrow accounts, or similar instruments or accounts or claims for additional compensation or claims of any nature (collectively "Contract Funds") due or to become due to the PRINCIPAL under said Bonded Contracts, and the PRINCIPAL does hereby direct the Obligees and owners under said Bonded Contracts to make all further payments under such bonded Contracts to the SURETY.

2.  PRINCIPAL hereby acknowledges that it is in default under the above-described Bonded Contracts and that it is unable to make payment on its obligations under its bonds with the SURETY as indicated above.

3.  PRINCIPAL further agrees that neither the execution of this Acknowledgement nor any action taken by the SURETY pursuant hereto shall, in any way, release, reduce, or modify its obligations to the SURETY under the Continuing Agreements of Indemnity or in any manner, alter or affect SURETY'S rights and remedies at law or in equity, including, without limitation, the above-mentioned Continuing Agreements of Indemnity, which are hereby fully ratified and affirmed in all respects.

Executed this _13_ day of June, 2002.

Attest:                          **South Coast, Inc.**

By: _____           By: _____
    Secretary                       Thomas L. Crandall, President


Attest:                          **South Coast, Inc. dba Klukwan Contracting
                                 (for itself and as successor in interest to South
                                 Coast, Inc./Agate, Inc. (IV).)**

By: _____           By: _____
    Secretary                       Thomas L. Crandall, President


Attest:                          **Klukwan, Inc.**

By: _____           By: _____
    Secretary                       Thomas L. Crandall, President


Acknowledgement of Default – South Coast, Inc.

TRAV 024046

000247



Charles W Langfitt
06/12/2002 03:28 PM

*File 68 9687*
*SuSu M*

To:      Tomc@klukwan.com
CC: and BCC: fields are in this section - must be expanded to print
Subject:   Payroll

Here you go.  Other was misdelivered.
————————— Forwarded by Charles W Langfitt/BD/Travelers on 06/12/2002 03:25 PM —————————

Charles W Langfitt
06/12/2002 03:24 PM

To:      tom@klukwan.com
CC: and BCC: fields are in this section - must be expanded to print

Hi Tom.  I have the check, but need the letter and Acknowledgment signed to process pay roll.  I also need the payroll so we can reach number for payroll and your check back to us.  Also need no offset letter from Key Bank.  Will it be good enough for me to overnight check tomorrow for Friday delivery?  We are late today, so will probably not happen tonight.  I have asked Chuck Stup to contact Jan for the Alaska jobs and for Rick Tasker to contact Ken on the AZ. work.  Best Regards.

TRAV 024047

000248

3-2-96

 **Reliance**

**RELIANCE SURETY COMPANY**
Philadelphia, Pennsylvania

**RELIANCE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**UNITED PACIFIC INSURANCE COMPANY**
Phil...hia, Pennsylvania

**RELIANCE NATIONAL INDEMNITY COMPANY**
Philadelphia, Pennsylvania

## CONTINUING AGREEMENT OF INDEMNITY—CONTRACTOR'S FORM

THIS AGREEMENT is made by the Undersigned for the continuing benefit of RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY (collectively the Surety) for the purpose of saving each and all of them harmless and indemnifying each and all of them from all loss and expense in connection with any Bonds executed on behalf of any one or more of the following persons, firms or corporations: _____

SOUTH COAST, INC.; CHILKAT ELECTRICAL CONSTRUCTION, INC.; KLUKWAN CONSTRUCTION, INC.;

KLUKWAN, INC.

OR ON BEHALF OF ANY OF ITS SUBSIDIARIES, AFFILIATES OR DIVISIONS OF THEIR SUBSIDIARIES, AFFILIATES OR DIVISIONS OR ON BEHALF OF ANY INDIVIDUALS, PARTNERSHIPS, WHETHER GENERAL OR LIMITED OR CORPORATIONS OR LIMITED LIABILITY COMPANIES, NOW IN EXISTENCE OR HEREAFTER

(Contractor). FORMED OR ACQUIRED

### WITNESSETH,

WHEREAS, the Contractor, individually or jointly with others, may desire or be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds"), and

WHEREAS, upon the express condition that this instrument be executed, the Surety has executed or procured the execution of, and may hereafter execute or procure the execution of such Bonds.

NOW, THEREFORE, in consideration of the execution of any such Bond or Bonds and as an inducement to such execution, we, the Undersigned, agree and bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

FIRST: To pay all premiums on said Bonds computed in accordance with the Surety's regular manual of rates in effect on the date said Bonds are executed.

SECOND: To indemnify, and keep indemnified, and hold and save harmless the Surety against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond or Bonds, or any other Bonds, which may be already or hereafter executed on behalf of the Contractor, or renewal or continuation thereof; or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand.

THIRD: To furnish money to the Contractor or to the Surety as needed for the prompt payment of labor, materials, and any other costs or expenses in connection with the performance of contracts when and as requested to do so by the Surety.

FOURTH: To assign, transfer and convey, and each of the Undersigned does by these presents assign, transfer and convey to the Surety, as of the date of execution of said Bond or Bonds, as collateral security for the full performance of the covenants and agreements herein contained and the payment of any other indebtedness or liability of the Undersigned to the Surety, whether heretofore or hereafter incurred, the following:

(a) All right, title and interest of the Undersigned in and to all machinery, equipment, plant, tools and materials which are, on the date of execution of any such Bond or Bonds, or may thereafter be, about or upon the site of the work to be performed under the contract referred to in and guaranteed by such Bond, or elsewhere for the purpose thereof, including as well materials purchased for or chargeable to said contract which may be in process of construction or in storage elsewhere or in transportation to said site;

(b) All rights, actions, causes of action, claims and demands of the undersigned in, or arising from or out of, said contract or any extensions, modifications, changes or alterations thereof or additions thereto;

(c) All rights, actions, causes of action, claims and demands whatsoever which the Undersigned or any of them may have or acquire in any subcontract in connection with said contract, and against any subcontractor or any person, firm or corporation furnishing or agreeing to furnish or supply labor, materials, supplies, machinery, tools or other equipment in connection with or on account of said contract, and against any surety or sureties of any such materialmen, subcontractor, laborer or other person, firm or corporation;

(d) All right, title and interest to all monies due or to become due to the undersigned arising out of or in any way relating to said contract including, but not limited to progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof that, at the time of abandonment, forfeiture or breach of said contract or such Bond or Bonds or of the terms of this Agreement or at the time of any advance, payment or guaranty by the Surety for the purpose of avoiding such abandonment, forfeiture or breach, may be due or may thereafter become due under said contract to or on behalf of the Undersigned, together with any and all sums due or which may thereafter become due under or on all other contracts, bonded or unbonded, in which any or all of the Undersigned have an interest.

FIFTH: Each of the Undersigned does hereby irrevocably nominate and appoint any officer of the Surety the true and lawful attorney-in-fact of the Undersigned, with full right and authority, in the event the Contractor fails or is unable to complete the work called for by the contract guaranteed by any Bond or in the event of the breach of any provision of this Agreement to execute on behalf of, and sign the names of each of the Undersigned to, any voucher, release, satisfaction, check, bill of sale of all or any property by this Agreement assigned to the Surety or any other paper or contract necessary or desired to carry into effect the purposes of this Agreement; with full right and authority also, in such event, to dispose of the performance of said contract by subletting the same in the name of the Contractor or otherwise; and each of the Undersigned does hereby ratify and confirm all that such attorney-in-fact or the Surety may lawfully do in the premises and further authorizes and empowers the Surety and such attorney-in-fact and each of them to enter upon and take possession of the tools, plant, equipment, materials and subcontracts and all other collateral security mentioned in this Agreement and enforce, use, employ and dispose

BD-2009 4/94



*Crandall*
DEPOSITION
EXHIBIT
#32
PENENGO 800-631-6989

TRAV 56968

000249

thereof for the purposes set forth in this Agreement. Each of the Undersigned specifically agrees to protect, indemnify and hold harmless the Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise or grow out of the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which any Undersigned has or might hereafter have against the Surety or such attorney-in-fact on account of anything done in enforcing the terms of this agreement, assignments and power-of-attorney.

SIXTH: That the entire contract price of any contract referred to in a Bond or Bonds, whether in the possession of the Undersigned or another, shall be and hereby is impressed with a trust in favor of Surety for the payment of obligations incurred for labor, materials and services in the performance of the contract work for which Surety would be liable under such Bond or Bonds and for the purpose of satisfying the conditions of the Bond executed in connection with the contract.

SEVENTH: That if Surety shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, suit, order, judgment or adjudication under or on any Bond or Bonds or for any other reason whatsoever, to immediately upon demand deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, such funds to be held by Surety as collateral, in addition to the indemnity afforded by this instrument, with the right to use such funds or any part thereof, at any time, in payment or compromise of any liability, claims, demands, judgment, damages, fees and disbursements or other expenses; and the Undersigned, in the event of their failure to comply with such demand, hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and to confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds, with costs, interest and reasonable attorneys' fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Undersigned to Surety under the terms of this Agreement. Demand shall be sufficient if sent by registered or certified mail to the Undersigned at the address or addresses given herein or last known to Surety, whether or not actually received. The authority to confess judgment as set forth herein shall not be exhausted by any one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Undersigned to Surety shall have been paid in full.

EIGHTH: All collateral security held by or assigned to the Surety may be used by the Surety at any time in payment of any claim, loss or expense which the Undersigned have agreed to pay hereby, whether or not such claim, loss or expense arises out of or in connection with such Bond or contract under which such collateral is held. The Surety may sell or realize upon any or all such collateral security, at public or private sale, with or without notice to the Undersigned or any of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Undersigned only for such surplus or remainder of such collateral security or the proceeds thereof as may be in the Surety's possession after it has been fully indemnified as in this Agreement provided. The Surety shall not be liable for decrease in value or loss or destruction of or damage to such security, however caused.

NINTH: The Surety shall have the right, at its option and in its sole discretion:

(a) To deem this Agreement breached should the Contractor become involved in any agreement or proceeding of liquidation, receivership, or bankruptcy, voluntarily or involuntarily, or should the Contractor if an individual die, be convicted of a felony, become a fugitive from justice, or for any reason disappears and cannot immediately be found by the Surety by use of usual methods.

(b) To take possession of the work under any contract and at the expense of the Undersigned to complete or to contract for the completion of the same, or to consent to the re-letting of the completion thereof by the obligee in said contract Bond or Bonds, or to take such other steps as in the discretion of the Surety may be advisable or necessary to obtain its release or to secure itself from loss thereunder.

(c) To adjust, settle or compromise any claim, demand, suit or judgment upon said Bond or Bonds, or any of them.

(d) To increase or decrease the penalty or penalties of any such Bond or Bonds, to change the obligee or obligees therein, to execute any continuations, enlargements, modifications and renewals thereof or substitute therefore with the same or different conditions, provisions and obligees, and with the same or larger or smaller penalties, it being agreed that this instrument shall apply to and cover such new or changed bonds or renewals even though the consent of the Surety may or does substantially increase the liability of the Contractor and the Undersigned and to take such steps as it may deem necessary or proper to obtain release from liability under any such Bond or Bonds.

All damage, loss or expense of any nature which the Surety may incur under Section Ninth shall be borne by the Undersigned.

TENTH: The Surety shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit or judgment upon said Bond or Bonds shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the Undersigned; and any loss, costs, charges, expense or liability thereby sustained or incurred, as well as any and all disbursements on account of costs, expenses and attorneys' fees, deemed necessary or advisable by the Surety, shall be borne and paid immediately by the Undersigned, together with legal interest. In the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by any officer of the Surety or the voucher or vouchers or other evidence of such payment, settlement or compromise, shall be prima facie evidence of the fact and extent of the liability of the Undersigned to the Surety in any claim or suit hereunder and in any and all matters arising between the Undersigned and the Surety.

ELEVENTH: The Surety is further authorized and empowered to advance money or to guarantee loans to the Contractor which the Surety may see fit to advance to said Contractor for the purpose of any contract referred to in or guaranteed by said Bond or Bonds; and all money so loaned or advanced and all costs, attorneys' fees and expenses incurred by the Surety in relation thereto, unless repaid with legal interest when due, shall be conclusively presumed to be a loss by the Surety for which each and all of the Undersigned shall be responsible, notwithstanding said money or any part thereof so loaned or advanced to the Contractor for the purpose of any such contract should not be so used by the Contractor. The Undersigned hereby waive all notice of such advance or loan, or of any default or any other act or acts giving rise to any claim under any said Bond or Bonds, and waive notice of any and all liability of the Surety under any said Bond or Bonds or any and all liability on the part of the Undersigned to the effect and end that each of the Undersigned shall be and continue liable to the Surety hereunder notwithstanding any notice of any kind to which the Undersigned might have been or be entitled and notwithstanding any defenses which the Undersigned might have been or be entitled to make.

TWELFTH: No assent, assignment, change in time or manner of payment or other change or extension in the terms of any Bond or of any contract referred to in such Bond or in the general conditions, plans or specifications incorporated in such contract, granted or authorized by the Surety or the refusal to so grant or authorize, shall release, discharge or in any manner whatsoever affect the obligations assumed by the Undersigned in executing this Continuing Agreement of Indemnity. This Agreement shall apply to any and all renewal, continuation or substitution bonds executed by the Surety. The Surety shall not be required to notify or obtain the approval or consent of the Undersigned prior to granting, authorizing or executing any assent, assignment, change or extension. The Surety shall have the absolute right to cancel any bond in accordance with any cancellation provision contained therein and the Surety is hereby released from any liability for expenses, costs, or damage alleged to be sustained by the Undersigned by reason of such cancellation.

THIRTEENTH: Until the Surety shall have been furnished with competent legal evidence of its discharge without loss from any and all Bonds, the Surety shall have the right at all times to free access to the books, records and accounts of each of the Undersigned for the purpose of examining the same. Each of the Undersigned hereby authorizes and requests any and all depositories in which funds of any of the Undersigned may be deposited to furnish to the Surety the amount of such deposits as of any date requested and any person, firm or corporation doing business with the Undersigned is hereby authorized to furnish any information requested by the Surety concerning any transaction. The Surety may furnish copies of any and all statements, agreements and financial statements and any information which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

FOURTEENTH: Each of the Undersigned does hereby waive all right to claim any property, including homestead as exempt from levy, execution, sale or other legal process under the law of any state, province or other government as against the rights of the Surety to proceed against the same for indemnity hereunder.

FIFTEENTH: The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Surety might have if this instrument were not executed. The Undersigned shall, on request of the Surety procure the discharge of the Surety from any Bonds, and all liability by reason thereof. Separate suits may be brought hereunder as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action. The Surety shall be notified immediately by the Undersigned of any claim or action which may result in a claim against the Surety, such action to be given by registered mail to the

TRAV 56969

000250

SIXTEENTH: The Surety reserves the right to decline to execute any such Bond; and if it shall execute any proposal Bond, and if the Contractor is awarded the contract, the Contractor shall not be obligated to obtain any Bond or Bonds required by the contract from the Surety nor shall the S █ ny be obligated to execute such Bond or Bonds.

SEVENTEENTH: This Agreement shall, in all its term █ █ agreements, be for the benefit of and protect any person or █ █ pany joining with the Surety in executing said Bond or Bonds, or any of them, or executing at the request of the surety said Bond or Bonds, or any of them as well as any company or companies assuming co-suretyship or reinsurance thereon.

EIGHTEENTH: The Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond. Failure to execute, or defective execution, by any party, shall not affect the validity of this obligation as to any other party executing the same and each such other party shall remain fully bound and liable hereunder. Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portions hereof invalid. Execution of any application for any Bond by the Contractor, or of any other indemnity agreement by any Undersigned for the Contractor shall in no way abrogate, waive or diminish any rights of Surety under this Agreement. The Undersigned acknowledge that the execution of this Agreement and the undertaking of indemnity was not made in reliance upon any representation concerning the financial responsibility of any Undersigned, or concerning the competence of the Contractor to perform.

NINETEENTH: Each of the Undersigned expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Surety and that the rights of indemnification of each Surety signatory to this Agreement shall be individual and not joint with those of the other signatory Sureties as to any and all Bonds (whether or not covered by any application signed by Contractor—such application to be considered between the parties hereto as merely supplemental to this Continuing Agreement of Indemnity) heretofore or hereafter executed by Surety on behalf of Contractor (whether contracting alone or as a Co-venture) until this Agreement shall be canceled in the manner hereinafter provided. Any of the Undersigned may notify the Surety(ies) at its Head Office, of such Undersigned's withdrawal from this Agreement; such notice shall be sent by certified or registered mail and shall state when, not less than thirty days after receipt of such notice by the Surety, such withdrawal shall be effective. Such Undersigned will not be liable under this Agreement as to any Bonds executed by the Surety after the effective date of such notice; provided, that as to any and all such Bonds executed or authorized by the Surety prior to effective date of such notice and as to any and all renewals, continuations and extensions thereof or substitutions therefore (and, if a proposal or Bid Bond has been executed or authorized prior to such effective date, as to any contract Bond executed pursuant thereto) regardless of when the same are executed, such Undersigned shall be and remain fully liable hereunder, as if said notice had not been served. Such withdrawal by any Undersigned shall in no way affect the obligation of any other Undersigned who has given no such notice of termination.

TWENTIETH: That this Agreement or a carbon, photographic, xerographic or other reproduction or copy of this Agreement shall constitute a Security Agreement to Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, but that the filing or recording of this Agreement shall be solely at the option of Surety and that the failure to do so shall not release or impair any of the obligations of the Undersigned under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of Surety under this Agreement or otherwise.

**TWENTY-FIRST:  See exhibit I.**

Signed, sealed, and dated this _Eighteenth_ day of _December_ , 19 95 .

_____ (Seal)

ATTEST _Robert G. Loiselle_
By: _____ (Seal)
Robert G. Loiselle, Secretary

SOUTH COAST, INC. _____ (Seal)
By: _Alan J. Coffin_ (Seal)
Alan Coffin, President

_____ (Seal)

ATTEST _Jan Clayton Hill_
By: _____ (Seal)
Jan Clayton-Hill, Secretary

CHILKAT ELECTRICAL CONSTRUCTION, INC. (Seal)
By: _Ronald D. Moon_ (Seal)
Ronald D. Moon, President

_____ (Seal)

ATTEST _Edward L. Hotch_
By: _____ (Seal)
Edward Hotch, Secretary

KLUKWAN CONSTRUCTION, INC. (Seal)
By: _Don Argetsinger_ (Seal)
Don Argetsinger, President

_____ (Seal)

ATTEST _Ronald Sparks_
By: _____ (Seal)
Ronald Sparks, Secretary

KLUKWAN, INC. (Seal)
By: _Don Argetsinger_ (Seal)
Don Argetsinger, President

_____ (Seal)

Name of Surety(ies)

By: _____

**IMPORTANT:** Print or type the name and address of each signatory to this agreement. Each signature must be acknowledged—See REVERSE HEREOF.

BD-2009 4/94

**TRAV 56970**

000251

STATE OF _Alaska_
COUNTY OF _First Judicial District_ ss.
On this _Eighteenth_ day of _December_ , 19_95_ before me personally came
_Don Argetsinger/Ronald Sparks_
to me known, who being by me duly sworn, did repose and say: that he resides in _Juneau AK / Haines AK_
that he is the _President/Secretary_ of the _Klukwan, Inc._

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_Monica Westervson_
Notary Public, residing at _Juneau AK_
(Commission expires _7.14.98_ )

CORPORATE ACKNOWLEDGEMENT

STATE OF _Alaska_
COUNTY OF _First Judicial District_ ss.
On this _Eighteenth_ day of _December_ , 19_95_ before me personally came
_Alan Coffin/Robert G. Loiselle_
to me known, who being by me duly sworn, did repose and say: that he resides in _Ketchikan AK / Juneau AK_
that he is the _President/Secretary_ of the _South Coast, Inc._

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_Monica Westervson_
Notary Public, residing at _Juneau AK_
(Commission expires _7.14.98_ )

CORPORATE ACKNOWLEDGEMENT

STATE OF _Alaska_
COUNTY OF _First Judicial District_ ss.
On this _Eighteenth_ day of _December_ , 19_95_ before me personally came
_Ronald D. Moon/Jan Clayton-Hill_
to me known, who being by me duly sworn, did repose and say: that he resides in _Anchorage AK / Haines AK_
that he is the _President/Secretary_ of the _Chilkat Electrical Construction, Inc._

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_Monica Westervson_
Notary Public, residing at _Juneau AK_
(Commission expires _7.14.98_ )

CORPORATE ACKNOWLEDGEMENT

STATE OF _Alaska_
COUNTY OF _First Judicial District_ ss.
On this _Eighteenth_ day of _December_ , 19_95_ before me personally came
_Don Argetsinger/Edward Hotch_
to me known, who being by me duly sworn, did repose and say: that he resides in _Juneau AK_
that he is the _President/Secretary_ of the _Klukwan Construction, Inc._

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_Monica Westervson_
Notary Public, residing at _Juneau AK_
(Commission expires _7.14.98_ )

CORPORATE ACKNOWLEDGEMENT

**IMPORTANT: Attach certified copy of Resolution authorizing execution of this instrument by Corporation.**

TRAV 56971

000252