## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of                Klukwan, Inc.

duly called and held on the 24th day of May                           19 95 , a quorum being present, the
following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that                  Don Argetsinger                                    President
                                 (Name of person authorized)                        (Official Title)


                                 (Name of person authorized)                        (Official Title)
of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for

South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I, Ronald Sparks              Secretary of       Klukwan, Inc.
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this 23rd day of February                    , 19 96

                                                     By: _Ronald Sparks_
                                                         Ronald Sparks, Secretary

BD-1412 4/94

TRAV 56972

000253

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of    South Coast, Inc.

duly called and held on the  24th  day of  May                                      19 95, a quorum being present, the
following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY
COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or
RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this
Company, therefore be it

"RESOLVED, that                    Alan Coffin                                      President
                            (Name of person authorized)                            (Official Title)


                            (Name of person authorized)                            (Official Title)

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE
COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite
to the execution by it of the bonds or undertakings for

Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC
INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the
Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the
Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or
agreements on behalf of the Company are hereby ratified."

I,  Robert G. Loiselle          Secretary of   South Coast, Inc.
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said
Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this  18th  day of  December                       , 19 95

By: _____
Robert G. Loiselle, Secretary

BD-1412 4/94

TRAV 56973

000254

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of      Chilkat Electrical Construction, Inc.

duly called and held on the   24ᵗʰ   day of   May      19 95 , a quorum being present, the
following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

     South Coast, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that             Ronald D. Moon                     President

                            (Name of person authorized)                            (Official Title)

                            (Name of person authorized)                            (Official Title)

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for

     South Coast, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.

In connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I,   Jan Clayton-Hill          Secretary of      Chilkat Electrical Construction, Inc.
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this   26ᵗʰ      day of   February           , 19 96

                                 By: *Jan Clayton-Hill*

                                 Jan Clayton-Hill, Secretary

BD-1412 4/94

**TRAV 56974**

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of    **Klukwan Construction, Inc.**

duly called and held on the  24th  day of  May                                              19 95, a quorum being present, the
following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

**South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan, Inc.**

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY
COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or
RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this
Company, therefore be it

"RESOLVED, that          **Don Argetsinger**                                        **President**
                          (Name of person authorized)                               (Official Title)


                          (Name of person authorized)                               (Official Title)
of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE
COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite
to the execution by it of the bonds or undertakings for

**South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan, Inc.**

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC
INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the
Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the
Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or
agreements on behalf of the Company are hereby ratified."

I,  **Edward Hotch**                    Secretary of  **Klukwan Construction, Inc.**
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said
Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this  18th   day of  December

                                                                                    , 1995

                                                    By: _Edward L. Hotch_
                                                        Edward Hotch, Secretary

BD-1412 4/94

**TRAV 56975**

000256



**RELIANCE SURETY COMPANY**
Philadelphia, Pennsylvania

**RELIANCE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**UNITED PACIFIC INSURANCE COMPANY**
Philadelphia, Pennsylvania

**RELIANCE NATIONAL INDEMNITY COMPANY**
Philadelphia, Pennsylvania

This fifth page is attached to and forms a part of the Continuing Agreement of
Indemnity Contractor's Form dated ___12·18·95___ naming South Coast, Inc.;
Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.
as Contractor.

Exhibit I

Twenty-First:

It is hereby understood and agreed that Klukwan, Inc.'s Permanent Fund Investment
is Exempt from this agreement and that the Surety shall in no way claim under
this Agreement or otherwise any interest in said investments.  Other than as
expressly modified by this Twenty-First paragraph, all other terms, conditions
and obligations of this Agreement remain the same and are hereby ratified in
total.

BD-1420 (4/94)

TRAV 56976

000257

 **Reliance**

| | |
|---|---|
| **RELIANCE SURETY COMPANY**<br>Philadelphia, Pennsylvania | **UNITED PACIFIC INSURANCE COMPANY**<br>Philadelphia, Pennsylvania |
| **RELIANCE INSURANCE COMPANY**<br>Philadelphia, Pennsylvania | **RELIANCE NATIONAL INDEMNITY COMPANY**<br>Philadelphia, Pennsylvania |

## CONTINUING AGREEMENT OF INDEMNITY—CONTRACTOR'S FORM

THIS AGREEMENT is made by the Undersigned for the continuing benefit of RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY (collectively the Surety) for the purpose of saving each and all of them harmless and indemnifying each and all of them from all loss and expense in connection with any Bonds executed on behalf of any one or more of the following persons, firms or corporations:

KLUKWAN FOREST PRODUCTS, INC.; WEST COAST CONSTRUCTION SERVICES, INC.; KLUKWAN, INC.

OR ON BEHALF OF ANY OF ITS SUBSIDIARIES, AFFILIATES OR DIVISIONS OF THEIR SUBSIDIARIES
AFFILIATES OR DIVISIONS OR ON BEHALF OF ANY INDIVIDUALS, PARTNERSHIPS, WHETHER GENERAL OR
LIMITED OR CORPORATIONS OR LIMITED LIABILITY COMPANIES, NOW IN EXISTENCE OR HEREAFTER
FORMED OR ACQUIRED

(Contractor).

### WITNESSETH,

WHEREAS, the Contractor, individually or jointly with others, may desire or be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds"), and

WHEREAS, upon the express condition that this instrument be executed, the Surety has executed or procured the execution of, and may hereafter execute or procure the execution of such Bonds.

NOW, THEREFORE, in consideration of the execution of any such Bond or Bonds and as an inducement to such execution, we, the Undersigned, agree and bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

FIRST: To pay all premiums on said Bonds computed in accordance with the Surety's regular manual of rates in effect on the date said Bonds are executed.

SECOND: To indemnify, and keep indemnified, and hold and save harmless the Surety against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond or Bonds, or any other Bonds, which may be already or hereafter executed on behalf of the Contractor, or renewal or continuation thereof; or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand.

THIRD: To furnish money to the Contractor or to the Surety as needed for the prompt payment of labor, materials, and any other costs or expenses in connection with the performance of contracts when and as requested to do so by the Surety.

FOURTH: To assign, transfer and convey, and each of the Undersigned does by these presents assign, transfer and convey to the Surety, as of the date of execution of said Bond or Bonds, as collateral security for the full performance of the covenants and agreements herein contained and the payment of any other indebtedness or liability of the Undersigned to the Surety, whether heretofore or hereafter incurred, the following:

(a) All right, title and interest of the Undersigned in and to all machinery, equipment, plant, tools and materials which are, on the date of execution of any such Bond or Bonds, or may thereafter be, about or upon the site of the work to be performed under the contract referred to in and guaranteed by such Bond, or elsewhere for the purpose thereof, including as well materials purchased for or chargeable to said contract which may be in process of construction or in storage elsewhere or in transportation to said site;

(b) All rights, actions, causes of action, claims and demands of the undersigned in, or arising from or out of, said contract or any extensions, modifications, changes or alterations thereof or additions thereto;

(c) All rights, actions, causes of action, claims and demands whatsoever which the Undersigned or any of them may have or acquire in any subcontract in connection with said contract, and against any subcontractor or any person, firm or corporation furnishing or agreeing to furnish or supply labor, materials, supplies, machinery, tools or other equipment in connection with or on account of said contract, and against any surety or sureties of any such materialmen, subcontractor, laborer or other person, firm or corporation;

(d) All right, title and interest to all monies due or to become due to the undersigned arising out of or in any way relating to said contract including, but not limited to progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof that, at the time of abandonment, forfeiture or breach of said contract or such Bond or Bonds or of the terms of this Agreement or at the time of any advance, payment or guaranty by the Surety for the purpose of avoiding such abandonment, forfeiture or breach, may be due or may thereafter become due under said contract to or on behalf of the Undersigned, together with any and all sums due or which may thereafter become due under or on all other contracts, bonded or unbonded, in which any or all of the Undersigned have an interest.

FIFTH: Each of the Undersigned does hereby irrevocably nominate and appoint any officer of the Surety the true and lawful attorney-in-fact of the Undersigned, with full right and authority, in the event the Contractor fails or is unable to complete the work called for by the contract guaranteed by any Bond or in the event of the breach of any provision of this Agreement to execute on behalf of, and sign the names of each of the Undersigned to, any voucher, release, satisfaction, check, bill of sale of all or any property by this Agreement assigned to the Surety or any other paper or contract necessary or desired to carry into effect the purposes of this Agreement; with full right and authority also, in such event, to dispose of the performance of said contract by subletting the same in the name of the Contractor or otherwise; and each of the Undersigned does hereby ratify and confirm all that such attorney-in-fact or the Surety may lawfully do in the premises and further authorizes and empowers the Surety and such attorney-in-fact and each of them to enter upon and take possession of the tools, plant, equipment, materials and subcontracts and all other collateral security mentioned in this Agreement and enforce, use, employ and dispose

**TRAV 56977**

000258

thereof for the purposes set forth in this Agreement. ...n of the Undersigned specifically agrees to protect, indemn... and hold harmless the Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise or grow out of the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which any Undersigned has or might hereafter have against the Surety or such attorney-in-fact on account of anything done in enforcing the terms of this agreement, assignments and power-of-attorney.

SIXTH: That the entire contract price of any contract referred to in a Bond or Bonds, whether in the possession of the Undersigned or another, shall be and hereby is impressed with a trust in favor of Surety for the payment of obligations incurred for labor, materials and services in the performance of the contract work for which Surety would be liable under such Bond or Bonds and for the purpose of satisfying the conditions of the Bond executed in connection with the contract.

SEVENTH: That if Surety shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, suit, order, judgment or adjudication under or on any Bond or Bonds or for any other reason whatsoever, to immediately upon demand deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, such funds to be held by Surety as collateral, in addition to the indemnity afforded by this instrument, with the right to use such funds or any part thereof, at any time, in payment or compromise of any liability, claims, demands, judgment, damages, fees and disbursements or other expenses; and the Undersigned, in the event of their failure to comply with such demand, hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and to confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds, with costs, interest and reasonable attorneys' fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Undersigned to Surety under the terms of this Agreement. Demand shall be sufficient if sent by registered or certified mail to the Undersigned at the address or addresses given herein or last known to Surety, whether or not actually received. The authority to confess judgment as set forth herein shall not be exhausted by any one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Undersigned to Surety shall have been paid in full.

EIGHTH: All collateral security held by or assigned to the Surety may be used by the Surety at any time in payment of any claim, loss or expense which the Undersigned have agreed to pay hereby, whether or not such claim, loss or expense arises out of or in connection with such Bond or contract under which such collateral is held. The Surety may sell or realize upon any or all such collateral security, at public or private sale, with or without notice to the Undersigned or any of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Undersigned only for such surplus or remainder of such collateral security or the proceeds thereof as may be in the Surety's possession after it has been fully indemnified as in this Agreement provided. The Surety shall not be liable for decrease in value or loss or destruction of or damage to such security, however caused.

NINTH: The Surety shall have the right, at its option and in its sole discretion:

(a) To deem this Agreement breached should the Contractor become involved in any agreement or proceeding of liquidation, receivership, or bankruptcy, voluntarily or involuntarily, or should the Contractor if an individual die, be convicted of a felony, become a fugitive from justice, or for any reason disappears and cannot immediately be found by the Surety, by use of usual methods.

(b) To take possession of the work under any contract and at the expense of the Undersigned to complete or to contract for the completion of the same, or to consent to the re-letting of the completion thereof by the obligee in said contract Bond or Bonds, or to take such other steps as in the discretion of the Surety may be advisable or necessary to obtain its release or to secure itself from loss thereunder.

(c) To adjust, settle or compromise any claim, demand, suit or judgment upon said Bond or Bonds, or any of them.

TRAV 56978

(d) To increase or decrease the penalty or penalties of any such Bond or Bonds, to change the obligee or obligees therein, to execute any continuations, enlargements, modifications and renewals thereof or substitute therefore with the same or different conditions, provisions and obligees, and with the same or larger or smaller penalties; it being agreed that this instrument shall apply to and cover such new or changed bonds or renewals even though the consent of the Surety may or does substantially increase the liability of the Contractor and the Undersigned and to take such steps as it may deem necessary or proper to obtain release from liability under any such Bond or Bonds.

All damage, loss or expense of any nature which the Surety may incur under Section Ninth shall be borne by the Undersigned.

TENTH: The Surety shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit or judgment upon said Bond or Bonds shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the Undersigned; and any loss, costs, charges, expense or liability thereby sustained or incurred, as well as any and all disbursements on account of costs, expenses and attorneys' fees, deemed necessary or advisable by the Surety, shall be borne and paid immediately by the Undersigned, together with legal interest. In the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by any officer of the Surety or the voucher or vouchers or other evidence of such payment, settlement or compromise, shall be prima facie evidence of the fact and extent of the liability of the Undersigned to the Surety in any claim or suit hereunder and in any and all matters arising between the Undersigned and the Surety.

ELEVENTH: The Surety is further authorized and empowered to advance money or to guarantee loans to the Contractor which the Surety may see fit to advance to said Contractor for the purpose of any contract referred to in or guaranteed by said Bond or Bonds; and all money so loaned or advanced and all costs, attorneys' fees and expenses incurred by the Surety in relation thereto, unless repaid with legal interest when due, shall be conclusively presumed to be a loss by the Surety for which each and all of the Undersigned shall be responsible, notwithstanding said money or any part thereof so loaned or advanced to the Contractor for the purpose of any such contract should not be so used by the Contractor. The Undersigned hereby waive all notice of such advance or loan, or of any default or any other act or acts giving rise to any claim under any said Bond or Bonds, and waive notice of any and all liability of the Surety under any said Bond or Bonds or any and all liability on the part of the Undersigned to the effect and end that each of the Undersigned shall be and continue liable to the Surety hereunder notwithstanding any notice of any kind to which the Undersigned might have been or be entitled and notwithstanding any defenses which the Undersigned might have been or be entitled to make.

TWELFTH: No assent, assignment, change in time or manner of payment or other change or extension in the terms of any Bond or of any contract referred to in such Bond or in the general conditions, plans or specifications incorporated in such contract, granted or authorized by the Surety or the refusal to so grant or authorize, shall release, discharge or in any manner whatsoever affect the obligations assumed by the Undersigned in executing this Continuing Agreement of Indemnity. This Agreement shall apply to any and all renewal, continuation or substitution bonds executed by the Surety. The Surety shall not be required to notify or obtain the approval or consent of the Undersigned prior to granting, authorizing or executing any assent, assignment, change or extension. The Surety shall have the absolute right to cancel any bond in accordance with any cancellation provision contained therein and the Surety is hereby released from any liability for expenses, costs, or damage alleged to be sustained by the Undersigned by reason of such cancellation.

THIRTEENTH: Until the Surety shall have been furnished with competent legal evidence of its discharge without loss from any and all Bonds, the Surety shall have the right at all times to free access to the books, records and accounts of each of the Undersigned for the purpose of examining the same. Each of the Undersigned hereby authorizes and requests any and all depositories in which funds of any of the Undersigned may be deposited to furnish to the Surety the amount of such deposits as of any date requested and any person, firm or corporation doing business with the Undersigned is hereby authorized to furnish any information requested by the Surety concerning any transaction. The Surety may furnish copies of any and all statements, agreements and financial statements and any information which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

FOURTEENTH: Each of the Undersigned does hereby waive all right to claim any property, including homestead as exempt from levy, execution, sale or other legal process under the law of any state, province or other government as against the rights of the Surety to proceed against the same for indemnity hereunder.

FIFTEENTH: The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Surety might have if this instrument were not executed. The Undersigned will, on request of the Surety procure the discharge of the Surety from any Bonds, and all liability by reason thereof. Separate suits may be brought hereunder as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action. The Surety shall be notified immediately by the Undersigned of any claim or action which may result in a claim against the Surety, such notice to be given by registered mail to the Surety at its Home Office. In the event of legal proceedings against the Surety, upon or on account of any said Bond or Bonds, the Surety may apply for a court order making any or all of the Undersigned parties defendants, and each Undersigned hereby consents to the granting of such application and agrees to become such a party defendant and to allow judgment, in the event of judgment against the

**SIXTEENTH:** The Surety reserves the right to decline to execute any such Bond; and if it shall execute any proposed Bond, and if the Contractor is awarded the contract, the Contractor shall not be obligated to obtain any Bond or Bonds required by the contract from the Surety nor shall the Surety be obligated to execute such Bond or Bonds.

**SEVENTEENTH:** This Agreement shall, in all its terms and agreements, be for the benefit of and protect any person or company joining with the Surety in executing said Bond or Bonds, or any of them, or executing at the request of the surety said Bond or Bonds, or any of them as well as any company or companies assuming co-suretyship or reinsurance thereon.

**EIGHTEENTH:** The Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond. Failure to execute, or defective execution, by any party, shall not affect the validity of this obligation as to any other party executing the same and each such other party shall remain fully bound and liable hereunder. Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portions hereof invalid. Execution of any application for any Bond by the Contractor, or of any other indemnity agreement by any Undersigned for the Contractor shall in no way abrogate, waive or diminish any rights of Surety under this Agreement. The Undersigned acknowledge that the execution of this Agreement and the undertaking of indemnity was not made in reliance upon any representation concerning the financial responsibility of any Undersigned, or concerning the competence of the Contractor to perform.

**NINETEENTH:** Each of the Undersigned expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Surety and that the rights of indemnification of each Surety signatory to this Agreement shall be individual and not joint with those of the other signatory Sureties as to any and all Bonds (whether or not covered by any application signed by Contractor—such application to be considered between the parties hereto as merely supplemental to this Continuing Agreement of Indemnity) heretofore or hereafter executed by Surety on behalf of Contractor (whether contracting alone or as a Co-venture) until this Agreement shall be canceled in the manner hereinafter provided. Any of the Undersigned may notify the Surety(ies) at its Head Office, of such Undersigned's withdrawal from this Agreement; such notice shall be sent by certified or registered mail and shall state when, not less than thirty days after receipt of such notice by the Surety, such withdrawal shall be effective. Such Undersigned will not be liable under this Agreement as to any Bonds executed by the Surety after the effective date of such notice; provided, that as to any and all such Bonds executed or authorized by the Surety prior to effective date of such notice and as to any and all renewals, continuations and extensions thereof or substitutions therefore (and, if a proposal or Bid Bond has been executed or authorized prior to such effective date, as to any contract Bond executed pursuant thereto) regardless of when the same are executed, such Undersigned shall be and remain fully liable hereunder, as if said notice had not been served. Such withdrawal by any Undersigned shall in no way affect the obligation of any other Undersigned who has given no such notice of termination.

**TWENTIETH:** That this Agreement or a carbon, photographic, xerographic or other reproduction or copy of this Agreement shall constitute a Security Agreement to Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, but that the filing or recording of this Agreement shall be solely at the option of Surety and that the failure to do so shall not release or impair any of the obligations of the Undersigned under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of Surety under this Agreement or otherwise.

**TWENTY-FIRST:   See Exhibit I**

Signed, sealed, and dated this ___23rd___ day of ___February___, 19 96.

| | |
|---|---|
| _____ (Seal) | **KLUKWAN FOREST PRODUCTS, INC.** _____ (Seal) |
| **ATTEST** | By: _Robert G. Loiselle_ (Seal) |
| By: _Edward L. Hotch_ (Seal) | Robert G. Loiselle, President |
| Edward L. Hotch, Secretary | |
| _____ (Seal) | _____ (Seal) |
| _____ (Seal) | **WEST COAST CONSTRUCTION SERVICES, INC.** (Seal) |
| **ATTEST** | By: _Janet H. Dunbar_ (Seal) |
| By: _Johanna E. Hotch_ (Seal) | Janet H. Dunbar, President |
| Johanna E. Hotch, Secretary | |
| _____ (Seal) | _____ (Seal) |
| _____ (Seal) | **KLUKWAN, INC.** (Seal) |
| **ATTEST** | By: _Don Argetsinger_ (Seal) |
| By: _Ronald Sparks_ | Don Argetsinger, President |
| Ronald Sparks, Secretary | |
| _____ (Seal) | _____ (Seal) |
| | Name of Surety(ies) |
| | By: _____ |

**IMPORTANT:** Print or type the name and address of each signatory to this agreement. Each signature must be acknowledged—See REVERSE HEREOF.

BD-2009 4/94

TRAV 56979

000260

STATE OF _____
COUNTY OF _____ ss.
On this _____ day of _____, 19____ before me personally appeared _____

_____

_____

to me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that _____ he
executed the same for the purposes, considerations and uses therein set forth as _____ h _____ free and voluntary act and deed.

_____
Notary Public, residing at _____
(Commission expires _____)

*INDIVIDUAL AND PARTNERSHIP ACKNOWLEDGEMENT*

---

STATE OF ALASKA
COUNTY OF FIRST JUDICIAL DISTRICT ss.
On this 23RD day of February 19 96 before me personally came
Robert G. Loiselle/Edward L. Hotch
to me known, who being by me duly sworn, did repose and say: that he resides in _____,
that he is the President/Secretary of the Klukwan Forest Products, Inc.

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument
is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

Monica Rossermm
Notary Public, residing at Juneau AK
(Commission expires 7·14·98 )

*CORPORATE ACKNOWLEDGEMENT*

---

STATE OF ALASKA
COUNTY OF First Judicial District ss.
On this 23RD day of February 19 96 before me personally came
Janet H. Dunbar/Johanna E. Hotch
to me known, who being by me duly sworn, did repose and say: that he resides in _____,
that he is the President/Secretary of the West Coast Construction Services, Inc.

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument
is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

Monica Rossermm
Notary Public, residing at Juneau AK
(Commission expires 7·14·98 )

*CORPORATE ACKNOWLEDGEMENT*

---

STATE OF ALASKA
COUNTY OF First Judicial District ss.
On this 23RD day of February 19 96 before me personally came
Don Argetsinger/Ronald Sparks
to me known, who being by me duly sworn, did repose and say: that he resides in _____,
that he is the President/Secretary of the Klukwan, Inc.

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument
is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

Monica Rossermm
Notary Public, residing at Juneau AK
(Commission expires 7·14·98 )

*CORPORATE ACKNOWLEDGEMENT*

---

**IMPORTANT:** Attach certified copy of Resolution authorizing execution of this instrument by Corporation.

TRAV 56980



**RELIANCE SURETY COMPANY**
Philadelphia, Pennsylvania

**RELIANCE INSURANCE COMPANY**
Philadelphia, Pennsylvania

**UN... PACIFIC INSURANCE COMPANY**
Philadelphia, Pennsylvania

**RELIANCE NATIONAL INDEMNITY COMPANY**
Philadelphia, Pennsylvania

February 23, 1986

This fifth page is attached to and forms a part of the Continuing Agreement of Indemnity Contractor's Form dated June 17, 1985 _____ naming Klukwan Forest Products, Inc.; West Coast Construction Services, Inc.; Klukwan, Inc. as Contractor.

### EXHIBIT I

**TWENTY-FIRST:**

It is hereby understood and agreed that Klukwan, Inc.'s Permanent Fund Investment is Exempt from this agreement and that the Surety shall in no way claim under this Agreement or otherwise any interest in said investments.  Other than as expressly modified by this Twenty-First paragraph, all other terms, conditions and obligations of this Agreement remain the same and are hereby ratified in total.

TRAV 56981

000262

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of        Klukwan Forest Products, Inc.

duly called and held on the   24th   day of   May                               19 95 , a quorum being present, the
following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

West Coast Construction Services, Inc.; Klukwan, Inc.

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that                     Robert G. Loiselle                          President
                                    (Name of person authorized)                 (Official Title)

                                    (Name of person authorized)                 (Official Title)
of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for

West Coast Construction Services, Inc.; Klukwan, Inc.

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I,   Edward L. Hotch           Secretary of   Klukwan Forest Products, Inc.
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this   21st   day of   February                      , 19 96

                                    By: Edward L. Hotch
                                        Edward L. Hotch, Secretary

BD-1412 4/94

TRAV 56982

000263

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of    **West Coast Construction Services, Inc.**

duly called and held on the  24th   day of  May                                    19 95 , a quorum being present, the
following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

**Klukwan Forest Products, Inc.; Klukwan, Inc.**

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that              **Janet H. Dunbar**                              **President**
                        (Name of person authorized)                        (Official Title)


                        (Name of person authorized)                        (Official Title)

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for

**Klukwan Forest Products, Inc.; Klukwan, Inc.**

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I,   **Johanna E. Hotch**           Secretary of  **West Coast Construction Services, Inc.**
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this  16th   day of  December                      , 19 95

                                By:  _Johanna E. Hotch_
                                     Johanna E. Hotch, Secretary

BD-1412 4/94

**TRAV 56983**

000264



## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of          Klukwan, Inc.

duly called and held on the   24th   day of   May                          19 95 , a quorum being present, the
following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

West Coast Construction Services, Inc.; Klukwan Forest Products, Inc.

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY
COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or
RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this
Company, therefore be it

"RESOLVED, that                      Don Argetsinger                                      President
                                     (Name of person authorized)                         (Official Title)


                                     (Name of person authorized)                         (Official Title)

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE
COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite
to the execution by it of the bonds or undertakings for

West Coast Construction Services, Inc.; Klukwan Forest Products, Inc.

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC
INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the
Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the
Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or
agreements on behalf of the Company are hereby ratified."

I,   Ronald Sparks               Secretary of   Klukwan, Inc.
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said
Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this   23rd   day of   February                          , 19 96

                                             By: Ronald Sparks
                                             Ronald Sparks, Secretary

BD-1412 4/94

TRAV 56984

May 30 2002   7:40      P. 02

# RELIANCE INSURANCE COMPANIES

**RELIANCE SURETY COMPANY**
PHILADELPHIA, PENNSYLVANIA
**RELIANCE INSURANCE COMPANY**
PHILADELPHIA, PENNSYLVANIA

**UNITED PACIFIC INSURANCE COMPANY**
PHILADELPHIA, PENNSYLVANIA
**RELIANCE NATIONAL INDEMNITY COMPAN**
PHILADELPHIA, PENNSYLVANIA

## CONTINUING AGREEMENT OF INDEMNITY - CONTRACTOR'S FORM

THIS AGREEMENT is made by the Undersigned for the continuing benefit of RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY (hereinafter referred to collectively as the "Surety") for the purpose of saving each and all of them harmless and indemnifying each and all of them from all loss and expense in connection with any Bonds executed on behalf of any one or more c the following persons, firms or corporations:

South Coast, Inc./Agate, Inc. (A Joint Venture);
Klukwan Contracting/Agate, Inc. (A Joint Venture);
South Coast, Inc., dba Klukwan Contracting

(hereinafter referred to as "Contractor").

### WITNESSETH,

WHEREAS, the Contractor, individually or jointly with others, or on behalf of any of its subsidiaries, affiliates, or divisions or their subsidiaries, affiliates or divisions now in existence or hereafter formed or acquired; or on behalf of individuals, partnerships, corporations or limited liability companies, may desire or be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds"), and

WHEREAS, upon the express condition that this instrument be executed, the Surety has executed or procured the execution of, and may hereafter execute or procure the execution of such Bonds.

OW, THEREFORE, in consideration of the execution of any such Bond or Bonds and as an inducement to such execution, we, the Undersigned, agree and bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

FIRST: To pay all premiums on said Bonds computed in accordance with the Surety's regular manual of rates in effect on the date said Bonds are executed.

SECOND: To indemnify, and keep indemnified, and hold and save harmless the Surety against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor, sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond or Bonds, or any other Bonds, which may be already or hereafter executed on behalf of the Contractor, or renewal or continuation thereof, or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand.

THIRD: To furnish money to the Contractor or to the Surety as needed for the prompt payment of labor, materials, and any other costs or expenses in connection with the performance of contracts when and as requested to do so by the Surety.

FOURTH: To assign, transfer and convey, and each of the Undersigned does by these presents assign, transfer and convey to the Surety, as of the date of execution of said Bond or Bonds, as collateral security for the full performance of the covenants and agreements herein contained and the payment of any other indebtedness or liability of the Undersigned to the Surety, whether heretofore or hereafter incurred, the following:

(a) All right, title and interest of the Undersigned in and to all machinery, equipment, plant, tools and materials which are, on the date of execution of any such Bond or Bonds, or may thereafter be, about or upon the site of the work to be performed under the contract referred to in and guaranteed by such Bond, or elsewhere for the purpose thereof, including as well materials urchased for or chargeable to said contract which may be in process of construction or in storage elsewhere or in transportation said site;

R-7008-Rev 4/98

000266

(b)All rights, actions, causes of action, claims and demands of the undersigned in, or arising from or out of, said contract or any extensions, modifications, changes or alterations thereof or additions thereto;

(c)All rights, actions, causes of action, claims and demands whatsoever which the Undersigned or any of them may have or acquire in any subcontract in connection with said contract, and against any subcontractor or any person, firm or corporation furnishing or agreeing to furnish or supply labor, materials, supplies, machinery, tools or other equipment in connection with or on account of said contract, and against any surety or sureties of any such materialmen, subcontractor, laborer or other person, firm or corporation;

(d)All right, title and interest to all monies due or to become due to the undersigned arising out of or in any way relating to said contract including, but not limited to progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof that at the time of abandonment, forfeiture or breach of said contract or such Bond or Bond or of the terms of this Agreement or at the time of any advance, payment or guaranty by the Surety for the purpose of avoiding such abandonment, forfeiture or breach, may be due or may thereafter become due under said contract to or on behalf of the Undersigned, together with any and all sums due or which may thereafter become due under or on all other contracts, bonded or unbonded, in which any or all of the Undersigned have an interest.

FIFTH: Each of the Undersigned does hereby irrevocably nominate and appoint any officer of the Surety the true and lawful attorney-in-fact of the Undersigned, with full right and authority, in the event the Contractor fails or is unable to complete the work called for by the contract guaranteed by any Bond or in the event of the breach of any provision of this Agreement to execute on behalf of, and sign the names of each of the Undersigned to, any voucher, release, satisfaction, check, bill of sale of all or any property by this Agreement assigned to the Surety or any other paper or contract necessary or desired to carry into effect the purpose of this Agreement; with full right and authority also, in such event, to dispose of the performance of said contract by subletting the same in the name of the Contractor or otherwise; and each of the Undersigned does hereby ratify and confirm all that such attorney-in-fact or the Surety may lawfully do in the premises and further authorizes and empowers the Surety and such attorney-in-fact and each of them to enter upon and take possession of the tools, plant, equipment, materials and subcontracts and all other collateral security mentioned in this Agreement and enforce, use, employ and dispose thereof for the purposes set forth in this Agreement. Each of the Undersigned specifically agrees to protect, indemnify and hold harmless the Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise or grow out of the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which any Undersigned has or might hereafter have against the Surety or such attorney-in-fact on account of anything done in enforcing the terms of this Agreement, assignments and power-of-attorney.

SIXTH: That the entire contract price of any contract referred to in a Bond or Bonds, whether in the possession of the Undersigned or another, shall be and hereby is impressed with a trust in favor of Surety for the payment of obligations incurred for labor, materials and services in the performance of the contract work for which Surety would be liable under such Bond or Bonds and for the purpose of satisfying the conditions of the Bond executed in connection with the contract.

SEVENTH: That if Surety shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, suit, order, judgment or adjudication under or on any Bond or Bonds or for any other reason whatsoever, to immediately upon demand deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, such funds to be held by Surety as collateral, in addition to the indemnity afforded by this instrument, with the right to use such funds or any part thereof, at any time, in payment or compromise of any liability, claims, demands, judgment, damages, fees and disbursements or other expenses; and the Undersigned, in the event of their failure to comply with such demand, hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and to confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds, with costs, interest and reasonable attorneys' fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Undersigned to Surety under the terms of this Agreement. Demand shall be sufficient if sent by registered or certified mail to the Undersigned at the address or addresses given herein or last known to Surety, whether or not actually received. The authority to confess judgment as set forth herein shall not be exhausted by any one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Undersigned to Surety shall have been paid in full.

EIGHTH: All collateral security held by or assigned to the Surety may be used by the Surety at any time in payment of any claim, loss or expense which the Undersigned have agreed to pay hereby, whether or not such claim, loss or expense arises out of or in connection with such Bond or contract under which such collateral is held. The Surety may sell or realize upon any or all such collateral security, at public or private sale, with or without notice to the Undersigned or any of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Undersigned only for such surplus or remainder of such collateral security or the proceeds thereof as may be in the Surety's possession after it has been fully indemnified as in this

Agreement provided. The Surety shall not be liable for decrease in value or loss or destruction of or damage to such security however caused.

**NINTH:** The Surety shall have the right, at its option and in its sole discretion:

(a) To deem this Agreement breached should the Contractor become involved in any agreement or proceeding of liquidation receivership, or bankruptcy, voluntarily or involuntarily, or should the Contractor, if an individual, die, be convicted of a felony become a fugitive from justice, or for any reason disappear and cannot immediately be found by the Surety by use of usual methods.

(b) To take possession of the work under any contract and at the expense of the Undersigned to complete or to contract for the completion of the same, or to consent to the re-letting of the completion thereof by the obligee in said contract Bond or Bonds or to take such other steps as in the discretion of the Surety may be advisable or necessary to obtain its release or to secure itself from loss thereunder.

(c) To adjust, settle or compromise any claim, demand, suit or judgment upon said Bond or Bonds, or any of them.

(d) To increase or decrease the penalty or penalties of any such Bond or Bonds, to change the obligee or obligees therein, to execute any continuations, enlargements, modifications and renewals thereof or substitute therefore with the same or different conditions, provisions and obligees, and with the same or larger or smaller penalties, it being agreed that this instrument shall apply to and cover such new or changed bonds or renewals even though the consent of the Surety may or does substantially increase the liability of the Contractor and the Undersigned and to take such steps as it may deem necessary or proper to obtain release from liability under any such Bond or Bonds.

All damage, loss or expense of any nature which the Surety may incur under Section NINTH shall be borne by the Undersigned.

**TENTH:** The Surety shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim demand, suit or judgment upon said Bond or Bonds shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the Undersigned; and any loss, costs, charges, expenses or liability thereby sustained or incurred, as well as any and all disbursements on account of costs, expenses and attorneys' fees deemed necessary or advisable by the Surety, shall be borne and paid immediately by the Undersigned, together with legal interest the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages expenses or attorneys' fees, sworn to by any officer of the Surety or the voucher or vouchers or other evidence of such payment settlement or compromise, shall be prima facie evidence of the fact and extent of the liability of the Undersigned to the Surety in any claim or suit hereunder and in any and all matters arising between the Undersigned and the Surety.

**ELEVENTH:** The Surety is further authorized and empowered to advance money or to guarantee loans to the Contractor which the Surety may see fit to advance to said Contractor for the purpose of any contract referred to in or guaranteed by said Bond or Bonds and all money so loaned or advanced and all costs, attorneys' fees and expenses incurred by the Surety in relation thereto, unless repaid with legal interest when due, shall be conclusively presumed to be a loss by the Surety for which each and all of the Undersigned shall be responsible, notwithstanding said money or any part thereof so loaned or advanced to the Contractor for the purpose of any such contract should not be so used by the Contractor. The Undersigned hereby waive all notice of such advance or loan, or of any default or any other act or acts giving rise to any claim under any said Bond or Bonds, and waive notice of any and all liability of the Surety under any said Bond or Bonds or any and all liability on the part of the Undersigned to the effect and end that each of the Undersigned shall be and continue liable to the Surety hereunder notwithstanding any notice of any kind to which the Undersigned might have been or be entitled and notwithstanding any defenses which the Undersigned might have been or be entitled to make.

**TWELFTH:** No assent, assignment, change in time or manner of payment or other change or extension in the terms of any Bond or of any contract referred to in such Bond or in the general conditions, plans or specifications incorporated in such contract, granted or authorized by the Surety or the refusal to so grant or authorize, shall release, discharge or in any manner whatsoever affect the obligations assumed by the Undersigned in executing this Continuing Agreement of Indemnity. This Agreement shall apply to any and all renewal, continuation or substitution bonds executed by the Surety. The Surety shall not be required to notify or obtain the approval or consent of the Undersigned prior to granting, authorizing or executing any assent, assignment, change or extension. The Surety shall have the absolute right to cancel any bond in accordance with any cancellation provision contained therein and the Surety is hereby released from any liability for expenses, costs, or damage alleged to be sustained by the Undersigned by reason of such cancellation.

**THIRTEENTH:** Until the Surety shall have been furnished with competent legal evidence of its discharge without loss from any and all Bonds, the Surety shall have the right at all times to free access to the books, records and accounts of each of the Undersigned for

the purpose of examining the same. Each of the Undersigned hereby authorizes and request any and all depositories in which funds of any of the Undersigned may be deposited to furnish to the Surety the amount of such deposits as of any date requested and any person, firm or corporation doing business with the Undersigned is hereby authorized to furnish any information requested by the Surety concerning any transaction. The Surety may furnish copies of any and all statements, agreements and financial statements I any information which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

FOURTEENTH: Each of the Undersigned does hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process under the law of any state, province or other government as against the rights of the Surety to proceed against the same for indemnity hereunder.

FIFTEENTH: The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Surety might have if this instrument were not executed. The Undersigned will, on request of the Surety, procure the discharge of the Surety from any Bonds, and all liability by reason thereof. Separate suits may be brought hereunder as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action. The Surety shall be notified immediately by the Undersigned of any claim or action which may result in a claim against the Surety, such notice to be given by registered mail to the Surety at its Home Office. In the event of legal proceedings against the Surety, upon or on account of any said Bond or Bonds, the Surety may apply for a court order making any or all of the Undersigned party defendants, and each Undersigned hereby consents to the granting of such application and agrees to become such a party defendant and to allow judgment, in the event of judgment against the Surety, to be rendered also against such Undersigned in like amount and in favor of the Surety, if the Surety so desires.

SIXTEENTH: The Surety reserves the right to decline to execute any such Bond; and if it shall execute any proposal Bond, and if the Contractor is awarded the contract, the Contractor shall not be obligated to obtain any Bond or Bonds required by the contract from the Surety nor shall the Surety be obligated to execute such Bond or Bonds.

SEVENTEENTH: This Agreement shall, in all its terms and agreements, be for the benefit of and protect any person or company joining with the Surety in executing said Bond or Bonds, or any of them, or executing at the request of the Surety said Bond or Bonds, or any of them as well as any company or companies assuming co-suretyship or reinsurance thereon.

GHTEENTH: The Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond. Failure to execute, or defective execution, by any party, shall not affect the validity of this obligation as to any other party executing the same and each such other party shall remain fully bound and liable hereunder. Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portions hereof invalid. Execution of any application for any Bond by the Contractor, or of any other indemnity agreement by any Undersigned for the Contractor shall in no way abrogate, waive or diminish any rights of Surety under this Agreement. The Undersigned acknowledge that the execution of this Agreement and the undertaking of indemnity was not made in reliance upon any representation concerning the financial responsibility of any Undersigned, or concerning the competence of the Contractor to perform.

NINETEENTH: Each of the Undersigned expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Surety and that the rights of indemnification of each Surety signatory to this Agreement shall be individual and not joint with those of the other signatory Sureties as to any and all Bonds (whether or not covered by any application signed by Contractor-such application to be considered between the parties hereto as merely supplemental to this Continuing Agreement of Indemnity) heretofore or hereafter executed by Surety on behalf of Contractor (whether contracting alone or as a co-venture) until this Agreement shall be canceled in the manner hereinafter provided. Any of the Undersigned may notify the Surety at its Head Office, of such Undersigned's withdrawal from this Agreement; such notice shall be sent by certified or registered mail and shall state when, not less than thirty days after receipt of such notice by the Surety, such withdrawal shall be effective. Such Undersigned will not be liable under this Agreement as to any Bonds executed by the Surety after the effective date of such notice; provided, that as to any and all such Bonds executed or authorized by the Surety prior to effective date of such notice and as to any and all renewals, continuations and extensions thereof or substitutions therefore (and, if a proposal or Bid Bond has been executed or authorized prior to such effective date, as to any contract Bond executed pursuant thereto) regardless of when the same are executed, such Undersigned shall be and remain fully liable hereunder, as if said notice had not been served. Such withdrawal by any Undersigned shall in no way affect the obligation of any other Undersigned who has given no such notice of termination.

TWENTIETH: This Agreement or a carbon, photographic, xerographic or other reproduction or copy of this Agreement shall constitute a Security Agreement to Surety and also a Financing Statement, both in accordance with the provisions of the Uniform ommercial Code of every jurisdiction wherein such Code is in effect, but that the filing or recording of this Agreement shall be olely at the option of Surety and that the failure to do so shall not release or impair any of the obligations of the Undersigned under

this Agreement or otherwise arising, nor shall such failure be in any manner in ~~~~~on of the rights of Surety under this Agreement or otherwise.

**TWENTY-FIRST:** This Agreement is intended to be supplemental to the existing Indemnity Agreements held by the Sureties. It is ~e construed as an addition to those Agreements and in no way supersedes or compromises them.

**TWENTY-SECOND:** Regardless of the date this Agreement is signed, sealed and dated, it is hereby understood and agreed that this Agreement will also cover any and all bonds previously issued, under all the terms and conditions previously stated and it is hereby understood and agreed that the effective date of this Agreement is the 20th day of February, 1999.

Signed, sealed, and dated this ___1st___ day of _____March_____, 1999 .

ATTEST:

By: _____, Secretary
Name & Title: George Piercey, Secretary

By: _____
Name & Title: Mike Houts, Secretary

By: _____
Name & Title: George Piercey, Secretary

By: _____
Name & Title: Mike Houts, Secretary

By: _____
Name & Title: George Piercey, Secretary

By: _____
Name & Title: Mike Houts, Secretary

**SOUTH COAST, INC./AGATE, INC. (A JOINT VENTURE) AGATE, INC. (JOINT VENTURER)**

By: _____ (Seal)
Name & Title: Jim Uhl, President

**SOUTH COAST, INC. ( JOINT VENTURER)**

By: _____ (Seal)
Name & Title: Jerry Renich, President

**KLUKWAN CONTRACTING/ AGATE, INC. (A JOINT VENTURE) AGATE, INC. (JOINT VENTURER)**

By: _____ (Seal)
Name & Title: Jim Uhl, President

**KLUKWAN CONTRACTING (JOINT VENTURER)**

By: _____ (Seal)
Name & Title: Jerry Renich, President

**AGATE, INC.**

By: _____ (Seal)
Name & Title: Jim Uhl, President

**SOUTH COAST, INC.**
**SOUTH COAST, INC., dba KLUKWAN CONTRACTING**

By: _____ (Seal)
Name & Title: Jerry Renich, President

**RELIANCE SURETY COMPANY**

By: _____

**RELIANCE INSURANCE COMPANY**
**UNITED PACIFIC INSURANCE COMPANY**
**RELIANCE NATIONAL INDEMNITY COMPANY**

By: _____

**IPORTANT:** Print or type the name and address of each signatory to this Agreement. Each signature must be acknowledged - See REVERSE HEREOF.

000270

**CORPORATE ACKNOWLEDGMENT**

e of __Arizona_____ ss.

nty of ___Maricopa_____

On this __2nd__ day of ___April___, 19 99 before me personally appeared Jim Uhl/George Piercey to be known, who being by me duly sworn, did repose and say; that he/she resides in ___Scottsdale, AZ_____, that he/she is the President/Secretary of Agate, Inc., the corporation described in and which executed the foregoing instrument; that he/she knows the seal of said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he/she signed his/her name to the said instrument by like order.

_Evelyn C. Loder_
Notary Public, residing at __Scottsdale, AZ___
(Commission expires ___Nov. 28, 1999___)

OFFICIAL SEAL
EVELYN C. LODER
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 28, 1999

**CORPORATE ACKNOWLEDGMENT**

State of __Alaska_____ ss.
**First Judicial District**_____

On this _19th_ day of _March_____, 19 99 before me personally appeared Jerry Renich/Mike Houts to be known, who being by me duly sworn, did repose and say; that he/she resides in _Ketchikan Alaska_____, that he/she is the President/Secretary of South Coast, Inc., the corporation described in and which executed the foregoing instrument; that he/she knows the seal of said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he/she signed his/her name to the said instrument by like order.

_Pegay Giesrich_
Notary Public, residing at _Ketchikan, Alaska_
(Commission expires _12/05/01_____)

**IMPORTANT:** Attach certified copy of Resolution authorizing execution of this instrument by Corporation or Limited Liability Company members.

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of Agate, Inc. duly called and held on the ___15th___ day of ___December___,
___1999___, a quorum being present, the following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which
South Coast, Inc./Agate, Inc. (A Joint Venture); Klukwan Contracting/Agate, Inc. (A Joint Venture)

has applied, or may hereafter apply to the RELIANCE SURETY COMPANY, RELIANCE INSURANCE COMPANY, UNITED
PACIFIC INSURANCE COMPANY, and/or RELIANCE NATIONAL INDEMNITY COMPANY for various bonds or
undertakings, and

"WHEREAS, the RELIANCE SURETY COMPANY, RELIANCE INSURANCE COMPANY, UNITED PACIFIC
INSURANCE COMPANY, and/or RELIANCE NATIONAL INDEMNITY COMPANY is willing to consider such bonds or
undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that     Jim Uhl,                          President,

George Piercey,                      Secretary,

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required
by the RELIANCE SURETY COMPANY, RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY,
and/or RELIANCE NATIONAL INDEMNITY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for
South Coast, Inc./Agate, Inc. (A Joint Venture); Klukwan Contracting/Agate, Inc. (A Joint Venture)

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE SURETY
COMPANY, RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, and/or RELIANCE
NATIONAL INDEMNITY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix
the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in
executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I, George Piercey, Secretary of Agate, Inc. have compared the foregoing Preamble and Resolution with the original thereof,
as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and
true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this ___2nd___ day of ___April___, ___1999___.

George Piercey, Secretary

BD-1412 Ed. 9/90

Page 1 of 1

000272

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of South Coast, Inc. duly called and held on the 12<u>th</u> day of <u>December</u>, 1998, a quorum being present, the following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which South Coast, Inc./Agate, Inc. (A Joint Venture); Klukwan Contracting/Agate, Inc. (A Joint Venture) South Coast, Inc., dba Klukwan Contracting

has applied, or may hereafter apply to the RELIANCE SURETY COMPANY, RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, and/or RELIANCE NATIONAL INDEMNITY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE SURETY COMPANY, RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, and/or RELIANCE NATIONAL INDEMNITY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that      Jerry Renich,                        President,

Mike Houts,                  Asst Secretary,

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE SURETY COMPANY, RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, and/or RELIANCE NATIONAL INDEMNITY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for South Coast, Inc./Agate, Inc. (A Joint Venture); Klukwan Contracting/Agate, Inc. (A Joint Venture) South Coast, Inc. dba Klukwan Contracting

connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE SURETY COMPANY, RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, and/or RELIANCE NATIONAL INDEMNITY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I, Mike Houts, Secretary of South Coast, Inc. have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this 19<u>th</u> day of March, 1999.

Mike Houts, Secretary Asst

BD-1412 Ed. 9/96

000273



June 22, 2002


Fax 253-946-7156


Charles W. Langfitt
Vice President
Travelers Bond
3455 S. 344th Way
Auburn, WA 98001


Re:    Repayment proposal term sheet

Dear Chuck,

Attached is a proposed term sheet showing how SCI proposes to repay funds advanced by Travelers to complete the outstanding bonded jobs. The proposal shows what Travelers proposed along for comparison. Once we have agreed to the basic terms of the repayment schedule, we will have Cabot Christianson draft a contract document for execution.


Sincerely,

Thomas L. Crandall
President


Encl.    Spreadsheet on repayment proposal

Cc:    Cabot Christianson
       Bundy Christianson
       Fax 907-225-2026

## South Coast, Inc.
### 1049 Tongass Ave. • Ketchikan, AK 99901
### 907-225-6125 Phone • 907-247 6125 Fax

Page 1 of 1



Crandall
DEPOSITION
EXHIBIT
#35
PENGAD 800-631-6989

000478

000274

FROM KLUKWAN, INC. 9027890675

South Coast, Inc.
Travelers repayment proposals
6/20/02
(amounts are in thousands)

| | Travelers Proposal | Our Counter |
|---|---|---|
| Gross amount | 12,500 | 12,500 |
| Initial Discount | 15% | 30% |
| Discount on each payment made timely | 10% | 20% |
| Interest | deferred & forgiven if payment made as agreed | deferred & forgiven if payment made as agreed |
| Note | w/ SCI | w/ SCI |
| Parent guarantee | Klukwan | Klukwan |
| Assets pledged | KeyBank claim, Chinle claim, Jones Point property, second on Klukwan office building, Atlas stock, Kply stock, timber rights, Tank farm property, CPC assets | KeyBank claim, Chinle claim, Atlas stock |

Results under:

| | Travelers Proposal | | | Our Counter | | |
|---|---|---|---|---|---|---|
| | Payment | Discount | Balance | Payment | Discount | Balance |
| Beginning Balance | | | | | | |
| Initial discount | | | 12,500 | | | 12,500 |
| Payments year 1 | | 1,875 | 10,625 | | 3,750 | 8,750 |
| Sale of Atlas (see note below) | | | | | | |
| Settlement of Chinle claim | 3,100 | 310 | 7,215 | 3,100 | 310 | 5,340 |
| Payments year 2 | 1,500 | 150 | 5,565 | - | | 5,340 |
| Sale of equipment | | | | | | |
| Settlement of Chinle claim | 1,308 | 131 | 4,127 | 1,308 | 262 | 3,771 |
| Balance | | | 4,127 | 1,500 | 300 | 1,971 |
| Payment year 3 | | | 4,127 | | | 1,971 |
| Payment year 4 | 1,876 | 188 | 2,063 | 205 | 41 | 1,725 |
| Payment year 5 | 1,876 | 188 | | 205 | 41 | 1,479 |
| Payment year 6 | | | | 205 | 41 | 1,233 |
| Payment year 7 | | | | 205 | 41 | 987 |
| Payment year 8 | | | | 205 | 41 | 741 |
| Payment year 9 | | | | 205 | 41 | 495 |
| Payment year 10 | | | | 205 | 41 | 249 |
| | | | | 208 | 42 | - |
| Totals    $$ | 9,660 | 2,841 | 12,500 | 7,550 | 4,950 | 12,500 |
| %% | 77% | 23% | 100% | 60% | 40% | 100% |

000479

000275

**Notes:**

The payments to Travelers in years 1 and 2 are conditional upon certain events occuring. The amounts actually received would be paid as outlined but may differ from projections. The payments in subsequent years would be adjusted so that any unpaid balance at the end of year 2 would be paid over the remaining term of this agreement. A shortfall in payments due to this uncertainty would not be considered a default and therefore interest would not be payable but would continue to be deferred and forgiven if the remaining balance is paid according to the adjusted repayment schedule.

**Sale of Atlas**

| | | |
|---|---|---:|
| Gross amount | | 5,000 |
| Paid on seller / financing (assume 3 payments remaining | | (450) |
| Paid to KeyBank | | (1,200) |
| Purchase CD to collateralize Letter of credit | | (250) |
| Net | | 3,100 |

If Atlas fails to sell, then approximately $400 per year is available to 1) repay KeyBank and 2) accelerate payments to Travelers starting year 4.

**Sale of Equipment**

| | | |
|---|---|---:|
| Value of rolling stock | | 9,515 |
| Less: Leased equipment | | (6,400) |
| Value of marine equipment | | 3,900 |
| Value of equipment | | 7,015 |
| Discount for fast sale | 50% | (3,508) |
| Net equipment value | | 3,508 |
| Value of land in Ketchikan | | 4,000 |
| Payment to KeyBank on equipment | | (2,500) |
| Payment to KeyBank on Land | | (3,200) |
| Used to collateralize Arizona startup | | (500) |
| Net available to pay Travelers | | 1,308 |

**Chinle Claim**

Claim amount less pass through

| | |
|---|---:|
| Gross Amount | 2,900 |
| Pass through claims | (600) |
| Net amount | 2,300 |
| Value in x years | |

(in millions)

| Year Settled | Discount Factor | | | |
|---|---|---|---|---|
| | 2.5% | 5.0% | 7.5% | 10.0% |
| 1 | 2,244 | 2,190 | 2,140 | 2,091 |
| 2 | 2,189 | 2,088 | 1,990 | 1,901 |
| 3 | 2,136 | 1,987 | 1,851 | 1,728 |
| 4 | 2,084 | 1,892 | 1,722 | 1,571 |
| 5 | 2,033 | 1,802 | 1,602 | 1,428 |

Therefore,     2,300 today is worth     1,901 in     2 years at     7.5% return.
Used 1,500 for this amount.

# REPAYMENT AGREEMENT

This Agreement is made as of December 6, 2002 between Travelers Casualty & Surety Company of America (Travelers), South Coast, Inc., South Coast, Inc. dba Klukwan Contracting (for itself and as successor in interest to South Coast, Inc./Agate, Inc. (JV), (collectively SCI), Klukwan, Inc. (Klukwan) and Chilkats' Portage Cove Development Company (CPC).

## WHEREAS:

Travelers has issued payment and performance bonds to SCI and its affiliates. Those bonds are now in default. Travelers is incurring expenses performing under those bonds and is looking to SCI and its affiliates for repayment. The parties hereto have entered into this Agreement in order to settle that repayment obligation.

## NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1.      Definitions.

Bonded Contract(s) shall mean any contract that is referenced or described in any Bond issued on behalf of any Klukwan Entity.

Event(s) of Default shall mean any one or more of the following:

a.      Any default or failure to remit or distribute any funds when due or required by this Agreement, the Note or any other instrument or agreement between Travelers and SCI, Klukwan or CPC which is not cured within ten (10) business days of SCI, Klukwan and CPC receiving written notice from Travelers to cure; or

b.      Failure to observe and perform any of the covenants or conditions of this Agreement, the Note or any other agreement or instrument between Travelers and SCI, Klukwan or CPC which is not cured within thirty (30) business days of SCI, Klukwan and CPC receiving written notice from Travelers to cure; or

c.      The filing of a petition under any applicable provision of the Bankruptcy Code of 1978 or any amendments thereto, by or against SCI, Klukwan or CPC, or any of them which is not dismissed within sixty (60) days, the making by SCI, Klukwan or CPC, or any of them, of any assignment for the benefit of creditors, the filing of a federal or state tax lien against SCI, Klukwan or CPC, or any of them which is not satisfied in full within thirty (30) days; the filing of a petition for the appointment of a receiver or trustee with respect to SCI, Klukwan or CPC, or any of them, or the commencement of any proceeding by or against SCI, Klukwan or CPC, or any of them, under any reorganization, arrangement, readjustment of debts,

Page 1:  Repayment Agreement


DEPOSITION EXHIBIT #42

TRAV 009909

000277

dissolution, liquidation or assignment for the benefit of creditors provided by the statute or law of any jurisdiction, which is not dismissed within sixty (60) days; or

        d.     The failure of SCI, Klukwan or CPC, or any of them, at the request of Travelers to furnish financial information, permit inspection or copying of books and records during regular business hours and after Travelers has first provided SCI, Klukwan or CPC, or any of them, with at least seven (7) business days prior written notice; or

        e.     The total assets or total liabilities of the Klukwan Entities are Materially Different than represented in Exhibit C; or

        f.     Any representation or warranty made by SCI, Klukwan or CPC or any of them, proves to have been inaccurate when made in any material respect.

        Materially Different shall mean that the dollar value of the Klukwan Entities assets or liabilities vary in amount by ten (10) percent or more from the value as represented on Exhibit C, as of the date of Exhibit C.

        Guaranty shall mean the guaranties executed by Klukwan and CPC substantially contemporaneously with this Agreement

        2.     Subject Matter of this Agreement.  This Agreement covers the Continuing Agreements of Indemnity Contractor's Forms dated March 1, 1999, December 18, 1995 and February 23, 1996 (collectively "Indemnity Agreements") issued by SCI and its affiliates, in favor of Travelers or its predecessors in interest, and the Payment and Performance Bonds (Bonds) issued by Travelers listed on Exhibit A, concerning the construction contracts (Bonded Projects) listed thereon.

        3.     Mutual Cooperation.  Travelers and SCI agree to cooperate, and provide each other with information and documentation, in order to minimizes Travelers' exposure under the Bonds and which enables SCI to be informed, on a regular basis, of Travelers' actual exposure under the Bonds.  Upon reasonable request, each party agrees to provide the other with information and documentation concerning the status of payments under the Bonds and Bonded Contracts, and to provide each other with information as to payroll, material and supplies, labor, freight arrangements, overhead, and the like, together with appropriate backup documentation. These obligations of mutual cooperation shall be ongoing until the Bonded Contracts are complete and SCI's obligations under the Note have been performed.  As and when requested by Travelers, SCI, Klukwan and CPC agree to execute all letters, instruments or agreements necessary to carryout the purposes and intent of this Agreement, including, but not limited to Takeover Agreements, Assignments, Acknowledgments of Default, Deeds of Trust and Security Agreements.

**Page 2:  Repayment Agreement**

TRAV 009910

4.     Travelers' Right to Bonded Contract Funds.  SCI and Klukwan hereby reaffirm their Assignment to Travelers of all of their rights under the Bonded Contracts in accordance with the terms of the Indemnity Agreements, including, but not limited to, the right to receive all progress payments, earned or unearned, proceeds, retainages, whether in the form of Certificates of Deposit, escrow accounts, or similar instruments or accounts, and claims for additional compensation or claims of any nature (collectively "Contract Funds") due or to become due to SCI or Klukwan under the Bonded Contracts.  SCI and Klukwan further acknowledge Travelers right to the Contract Funds pursuant to Travelers' equitable right of subrogation.  SCI and Klukwan shall furnish to the Travelers a complete written narrative of any claims for additional compensation or claims of any nature and all material documents which substantiate and backup these claims.  SCI and Klukwan will further assist in the presentation of any and all such claims.  SCI and Klukwan irrevocably grant to Travelers the right to act as attorney-in-fact for SCI and Klukwan to demand receipt of, commence suit, settle, compromise or adjust any and all claims SCI and Klukwan have or may have against any party with respect to the Bonded Contract(s), including providing releases or satisfaction therefore, except for the Chinle claim.  The settlement authority for the Chinle claim is governed by paragraph 12 of this Agreement.

5.     Power of Attorney/Settlement Rights.  SCI, Klukwan and CPC hereby irrevocably nominate Travelers their true lawful attorney-in-fact, with full right and authority to execute on behalf of, and sign the names of each to any voucher, release, satisfaction, check, bill of sale or any other paper or contract necessary or desired to carry into effect the purposes of this Agreement.  Further, SCI, Klukwan and CPC irrevocably grant Travelers the right to act as their attorney-in-fact to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, including, but not limited to, the payment of any attorney's fees or costs in prosecuting or defending any claim, demand, suit or judgment, as Travelers deems appropriate in its sole discretion, and whether or not SCI, Klukwan or CPC agree with Travelers' decision.

6.     Time.  Time is the essence of this Agreement and a material consideration.

7.     Waiver/Automatic Stay.  In partial consideration (and as new value) for this Agreement and Travelers' forebearances, and in the event that SCI, Klukwan or CPC, or any of them, are the subject of any insolvency, bankruptcy, receivership, dissolution, reorganization or similar proceeding under Federal or State law, voluntary or involuntary, then:

a.     SCI, Klukwan or CPC, or any of them, shall not assert, or request any other party to assert, that the automatic stay provisions provided under 11 U.S.C. § 362 shall operate, or be interpreted to operate, to stay, modify, preempt, condition, reduce or limit the ability of Travelers to enforce any rights it has by virtue of this Agreement, the Indemnity Agreements, or any other agreement or instrument between Travelers and SCI, Klukwan, CPC, or any of them, or at law or in equity, or any other rights Travelers has now or may hereafter acquire against SCI, Klukwan or CPC, or any of them, or the collateral; and

**Page 3:  Repayment Agreement**

TRAV 009911