## COMMON ALLEGATIONS

1.      Plaintiff now is, and at all times material has been, a corporation duly organized and existing under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut, and registered, authorized and engaged in the insurance business and authorized to issue surety bonds in the State of Alaska.

2.      Defendants Ronald Gelbrich, Jerald Renich, Brad Finney, Jan Paulson, Michael Houts and Edwin Johnson are former directors and officers (collectively, the "director-defendants") of South Coast, Inc. ("South Coast"), a non-party Alaska construction corporation wholly owned by non-party Klukwan, Inc. ("Klukwan"), an Alaska Native Village corporation. Upon information and belief, all of the directors and officers are citizens of Alaska.

3.      Defendant Peterson Sullivan, P.L.L.C. is a Washington professional limited liability company of certified public accountants ("Peterson Sullivan"), with its principal place of business in a state other than the State of Connecticut. Peterson Sullivan provides accounting services to Alaska entities, including Klukwan and South Coast.

4.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) based upon the complete diversity of citizenship between Plaintiff and Defendants, and the fact that the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

5.      The director-defendants, as officers and directors of South Coast, were responsible, at all relevant times, for all aspects of the management of South Coast.

6.      Included in the directors-defendants' responsibility was, at all relevant times, managing all aspects of South Coast's accounting of its work as a construction

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

COMPLAINT - Page 2 of 6

contractor, and all aspects of South Coast's reporting of its financial condition.

7. Also included in the director-defendants' responsibility was, at all relevant times, obtaining for South Coast the surety credit required of a public works contractor under the Miller Act and Alaska's Little Miller Act.

8. Peterson Sullivan, as accountant to Klukwan, audited the books and records of Klukwan's subsidiaries, including South Coast, and prepared independent auditors' reports intended to provide reasonable assurance that Klukwan's and its subsidiaries' financial statements were free of material misstatement and to assess the accounting principles used and significant estimates made by South Coast's and Klukwan's management.

9. The director-defendants, as officers and directors South Coast, negligently reported the anticipated gross profit of South Coast as of December 31, 2000 in its financial statements.

10. There were indications in the December 31, 2000 statements that the gross profit of South Coast was overstated, which Peterson Sullivan had a duty to investigate, but negligently failed to investigate and/or negligently failed to report the overstatement of South Coast's gross profit.

11. Peterson Sullivan negligently reported that South Coast's financial statements were free of material misstatement, based on proper accounting principles, and/or contained reasonably accurate significant estimates.

12. Travelers relied on the negligently reported financial statements and negligently performed audit in providing surety credit to South Coast in 2001, including

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

COMPLAINT - Page 3 of 6

posting surety bonds for South Coast, as principal, in favor of various public entities, as obligees (the "bonds").

13.    Had South Coast's true financial status been reported to Travelers, it would not have posted the bonds.

## FIRST CLAIM FOR RELIEF

### (Negligent Misrepresentation – The Director-Defendants)

14.    Realleges the allegations in paragraphs 1-13, above.

15.    The director-defendants provided information regarding South Coast's financial status to guide Travelers in deciding whether or not to post the bonds on South Coast's behalf.

16.    The director-defendants had a duty to exercise reasonable care and competence in obtaining and communicating the information regarding South Coast's financial status.

17.    In breach of their duty of care, the director-defendants negligently misrepresented South Coast's financial status, including but not limited to negligently misrepresenting the amount of South Coast's anticipated gross profits in South Coast's financial statements.

18.    The director-defendants intended that Travelers rely on the financial statements, and knew that Travelers did rely on the financial statements, and intended the financial statements to influence Travelers' decision to post the bonds.

19.    Travelers posted the bonds in reliance on the defendant-directors' representations in the financial statements.

COMPLAINT - Page 4 of 6

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

000328

20.    Travelers has been damaged by its justifiable reliance on the information in the financial statements provided by the defendant-directors, in that but for the negligent misrepresentations therein, Travelers would not have posted the bonds and incurred a loss of at least $8,876,788.68, which losses continue.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation – Peterson Sullivan)

21.    Travelers incorporates by reference the allegations of paragraphs 1-20.

22.    Peterson Sullivan provided information regarding South Coast's financial status, accounting practices, and significant estimates in performing and reporting on its audit of Klukwan and South Coast.

23.    Peterson Sullivan negligently performed its audit and negligently provided information regarding South Coast's financial status, accounting practices, and significant estimates by, at a minimum, failing to investigate information indicating that South Coast's gross profit was overstated.

24.    Peterson Sullivan intended that Travelers would rely on its audit, and intended to supply the information in its audit to Travelers, or knew from the nature of South Coast's business as a construction contractor engaged in public works contracts, or otherwise, that South Coast intended to supply the information in Peterson Sullivan's audit to Travelers or to another surety to obtain surety credit like the bonds.

25.    Peterson Sullivan intended the information in its audit to influence Travelers or another surety in making the decision to provide surety credit like the bonds to South Coast.

**COMPLAINT** - Page 5 of 6

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

000329

26.    Travelers posted the bonds in reliance on Peterson Sullivan's representations in its audits.

27.    Travelers has been damaged by its justifiable reliance on Peterson Sullivan's negligently performed audit of South Coast's financial status, in that but for Peterson Sullivan's negligence, Travelers would not have posted the bonds and incurred a loss of at least $8,876,788.68, which losses continue.

WHEREFORE, Plaintiff demands Order and Judgment as follows:

1.    Against all defendants, and each of them individually, jointly, and severally for damages in the amount of $8,876,788.68 caused by their negligent misrepresentations concerning South Coast's financial status, its accounting practices, and its significant estimates;

2.    For its reasonable attorney fees and costs and disbursements incurred; and

3.    For such other and further relief as may be just and proper.

Respectfully submitted this 2nd day of August, 2004.

STEWART SOKOL & GRAY LLC

Thomas A. Larkin, ASB # 0009055
Jan D. Sokol
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone:    (503) 221-0699
Fax:    (503) 227-5028
E-mail:    tlarkin@lawssg.com
            jdsokol@lawssg.com
Of Attorneys for Plaintiff

W:\WORK\RBC\Travelers\South Coast\D&O and Acct\Pleadings\Complaint.wpd

**COMPLAINT - Page 6 of 6**

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 225-5706
www.lawssg.com

**Bundy & Christianson**
An Association of Professional Corporations
911 West 8th Avenue, Suite 302
Anchorage, Alaska 99501
Telephone (907) 258-6016
Telefax (907) 258-2026
EIN 92-0141306

Page:
May 31, 20
Account No: 2501-0
Statement No:    117

Southcoast Inc. - Klukwan
PO Box 32077
Juneau  AK  99801

Attn: Tom Blanton

|  |  | | Hours |
|---|---|---|---|
| 05/13/02 | CC | Meet with Bob Blasco, Tom Crandall, Kimberly Strong, Tom Blanton, Ron Gilchrist (phone) | 1.00 |
| 05/14/02 | CC | | 2.00 |
| 05/15/02 | CC | Calls with Blasco and Gilchrist. | |
| | | | 0.60 |
| | | | 0.40 |
| | CC | Talk to Tom Crandall. | |
| 05/21/02 | CC | Attend telephonically board meeting of Klukwan/Southcoast. | 0.50 |
| 05/22/02 | CC | Talk to Bob Blasco | 0.50 |
| 05/28/02 | CC | | 0.50 |
| 05/29/02 | CC | | 1.50 |
| | | | 7.00 |
| | | Cabot Christianson | 7.00 |
| | | For Current Services Rendered | |

| Timekeeper | Recapitulation Hours | Rate | Total |
|---|---|---|---|
| Cabot Christianson | 7.00 | | |

5/31/02

Total Expenses

Total Current Work



*Christianson*
DEPOSITION
EXHIBIT
# 170
PENGAD 800-631-6989

004834

( · · ( · · : · (

**Christianson, Boutin & Spraker**
**An Association of Professional Corporations**
911 West 8th Avenue, Suite 302
Anchorage,   Alaska 99501
Telephone. (907) 258-6016
Telefax (907) 258-2026
EIN 52-2384922

Page:
January 31, 200(
Account No: 2501-01
Statement No:   135(

Klukwan, Inc.
425 Saw Mill Rd
PO Box 209
Haines  AK   99827

Attn: Thomas L. Crandell

Previous Balance

|            |    | Hours |
|------------|----|-------|
| 01/02/04   | CC | 2.50  |
| 01/05/04   | CC | 3.00  |
|            | CC | 0.50  |
| 01/06/04   | CC | 0.40  |
| 01/07/04   | CC | 3.00  |
|            | CC | 0.50  |
| 01/13/04   | CC | 3.00  |
|            | CC | 0.30  |
| 01/14/04   | CC | 1.30  |
|            | CC | 2.30  |
|            | CC | 0.30  |

004787

Page: 2
January 31, 2004
Klukwan, Inc.                                          Account No: 2501-01M
                                                       Statement No:    13543

|  |  |  | Hours |
|---|---|---|---|
| 1/15/04 CC | Talk to Tom C about how to handle Travelers request for joint cooperation against accountants. | | 0.30 |
| CC | | | 1.00 |
| 1/16/04 CC | Talk to Tom C about getting waiver of poison pill as part of our deal with Travelers. | | 0.30 |
| 1/19/04 CC | | | 0.30 |
| 1/21/04 CC | | | 0.40 |
| 1/31/04 CC | | | 0.10 |
| CC | | | 1.00 |
| | | | 20.50 |

Cabot Christianson

| | | Hours |
|---|---|---|
| 01/07/04 GS | Legal research re: accountant liability to parent corporation for erroneous information in financial statements, Restatement 2d Torts sec. 552. | 1.50 |
| 01/13/04 GS | Legal research re: review Alaska cases re: accountant liability and adoption of Restatement sec. 552 (.5); review Restatement sec. 552 and cases discussing and citing Restatement, research and review ALR article on same (2.0). | 2.50 |
| 01/14/04 GS | Legal research re: accountant liability - review ALR article and get relevant cases cited in article. | 1.70 |
| 01/15/04 GS | Review cases cited by ALR article, Alaska cases, and begin drafting memorandum re: accountant liability. | 4.00 |
| 01/16/04 GS | Legal research re: Alaska application of Restatement 552, draft memorandum, re: same. | 4.50 |
| 01/20/04 GS | Work on memo, re: accountant liability - Selden analysis and auditor reports in general. | 3.30 |
| 01/21/04 GS | Finalize memorandum on accountant liability. | 3.20 |
| 01/28/04 GS | | 0.50 |
| 01/29/04 GS | | 1.30 |
| | | 22.50 |

Gary Spraker

For Current Services Rendered                                        43.00

Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Cabot Christianson | 20.50 | | |
| Gary Spraker | 22.50 | | |

Page:

Klukwan, Inc.

January 31, 200
Account No: 2501-01
Statement No:     1354

01/30/04
01/30/04

Total Expenses

01/30/04
01/30/04

Total Advances

Total Current Work

01/12/04

Balance Due

01/08/04 F

Closing Balance

004789

000334

Christianson, Boutin & Spraker
An Association of Professional Corporations
911 West 8th Avenue, Suite 302
Anchorage,  Alaska 99501
Telephone (907) 258-6016
Telefax (907) 258-2026
EIN 52-2384922

Page: 1
February 29, 2004
Account No: 2501-01M
Statement No:    13604

Klukwan, Inc.
425 Saw Mill Rd
PO Box 209
Haines  AK  99827

Attn: Thomas L. Crandell


Previous Balance


| | | Hours |
|---|---|---|
| | | |
| 02/02/04 CC | Review memo re accountant liability.  Review Sutor and PS reports. | 2.50 |
| | | 1.40 |
| 02/03/04 CC | Research accountant liability. | 0.50 |
| 0_, 04/04 CC | | |
| CC | | 0.20 |
| | | 2.00 |
| 02/05/04 CC | Research accountant liability issues. | |
| 02/06/04 CC | Further review of Sutor and Peterson Sullivan reports, discuss case law with GAS.  Email to Tom Crandall with some thoughts. | 3.00 |
| 02/10/04 CC | Talk to Tom Crandall about claim against P&S; Review petition, etc, prepared by Jan Sokol to recover information from P&S. | 1.80 |
| 02/12/04 CC | | 2.00 |
| | | 0.50 |
| 02/13/04 CC | Compose email to Travelers re: double billing. | |
| CC | | 0.20 |
| 02/17/04 CC | | 0.30 |
| 02/18/04 CC | | 0.80 |
| CC | | |

5663

000335

Klukwan, Inc.

|  |  | Hours |
|---|---|---|
| 2/20/04 CC |  | 0.20 |
|  |  | 15.40 |
|  | Cabot Christianson |  |
| 2/06/04 GS | Office conference with C. Christianson, re: analysis of accountant claims, review email from Cabot to client. | 0.30 |
| 2/11/04 GS | Legal research re: accountant liability for negligence, failure to discover errors in subsidiary. | 1.20 |
| 2/12/04 GS | Legal research re: accountant negligence claims for failure to discover, controls (2.0); draft memorandum, re: same (.5). | 2.50 |
|  |  | 4.00 |
|  | Gary Spraker |  |
|  |  | 19.40 |
|  | For Current Services Rendered |  |

Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Cabot Christianson | 15.40 |  |  |
| Gary Spraker | 4.00 |  |  |

02/29/04
02/29/04

Total Expenses

02/26/04
02/26/04
02/29/04

Total Advances

Total Current Work

02/09/04

Balance Due

| | | Past Due Amounts | | | |
|---|---|---|---|---|---|
| 0-30 | 31-60 | 61-90 | 91-120 | 121-180 | 181+ |

000336

Page: 
February 29, 200·
Account No: 2501-01J
Statement No:   1360·

Klukwan, Inc.

02/06/04 1

Closing Balance

004786

000337

**Christianson, Boutin & Spraker**
An Association of Professional Corporations
911 West 8th Avenue, Suite 302
Anchorage, Alaska 99501
Telephone (907) 258-6016
Telefax (907) 258-2026
EIN 52-2384922

Page: 1
March 31, 2004
Account No: 2501-01M
Statement No: 13673

Klukwan, Inc.
425 Saw Mill Rd
PO Box 209
Haines  AK  99827

Attn: Thomas L. Crandell

Previous Balance

|  |  | Hours |
|---|---|---|
| 03/01/04 CC | Meet with Tom Crandall re: Peterson Sullivan lawsuit, mainly. | 2.00 |
| 03/02/04 CC |  | 0.40 |
| 03/04/04 CC |  | 0.50 |
| | | 0.20 |
| 03/09/04 CC | Telephone conference with Tom Crandall | |
| 03/10/04 CC | | 1.00 |
| | | 0.20 |
| CC | | 0.10 |
| CC | Talk to Tom again about P&S denying access to new auditors, | 0.20 |
| | | 0.50 |
| CC | | |
| 03/15/04 CC | | 0.80 |
| | | 0.30 |
| 03/16/04 CC | Review and forward to Tom C P-S's response to Travelers. | 0.20 |
| /17/04 CC | | |
| 03/22/04 CC | | 0.50 |

5659

000338

Klukwan, Inc.

Page: 2
March 31, 2004
Account No: 2501-01M
Statement No: 13673

|  | | Hours |
|---|---|---|
| 03/31/04 CC | | 2.00 |
| | | 8.90 |
| | Cabot Christianson | |
| 03/17/04 GS | Legal research re: accrual of cause of action for accountant malpractice. | 0.70 |
| 03/24/04 GS | Legal research re: limitations analysis for professional malpractice claims. | 0.70 |
| | Gary Spraker | 1.40 |
| | For Current Services Rendered | 10.30 |

### Recapitulation

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Cabot Christianson | 8.90 | | |
| Gary Spraker | 1.40 | | |

03/31/04

Total Expenses

03/26/04
03/31/04
03/31/04

Total Advances

Total Current Work

Balance Due

### Past Due Amounts

| 0-30 | 31-60 | 61-90 | 91-120 | 121-180 | 181+ |
|---|---|---|---|---|---|

5661

# MEMORANDUM

To:        Cabot Christianson

From:      Gary Spraker

Date:      January 21, 2004

Subject:   Claim against Peterson, Sullivan for misrepresentations in financial
           statements of South Coast, Inc.

---

You requested a memorandum setting forth the legal elements and potential issues for a claim against Peterson, Sullivan for financial statements prepared on South Coast, Inc. (SCI). Klukwan, Inc., as shareholder of SCI, would sue Peterson, Sullivan for damages suffered as a result of Peterson, Sullivan's financial statements. For purposes of this memorandum, I am assuming that (1) Peterson, Sullivan prepared audited financial statements on SCI; and (2) these financial statements materially misrepresented SCI's true financial condition. A claim against Peterson, Sullivan raises a number of potential issues. Some of these may be more or less significant based upon the actual facts involving the financial statements.

## I.    Choice of Law.

Peterson, Sullivan is a Washington professional limited liability corporation. It performed work for an Alaska corporation. As a result there is an initial question as to whether Alaska or Washington law applies to the misrepresentation claim. It appears that Alaska has the most significant contacts with facts relevant to the misrepresentations. *See generally* Restatement (Second) of Conflicts of Laws, § 148(2) (1971). Even though the misrepresentation can be said to have originated in Washington, both Southcoast and Klukwan are Alaska corporations, received the misrepresentation in Alaska, and any reliance on the financial statements presumably occurred in Alaska. *See In re Smartalk Teleservices, Inc.*, 124 F.Supp.2d 505, 521 (S.D. Ohio 2000). As a practical matter, it does not appear that Washington's and Alaska's laws on negligent misrepresentation to third parties do not appear to be in conflict. As a result, Alaska may apply its own law to determine any claim against Peterson, Sullivan arising from its work on SCI's financial condition. *Williams v. Stone*, 109 F.3d 890, 893 (3rd Cir.), *cert. denied* 522 U.S. 956



*Christianson*
DEPOSITION
EXHIBIT
#176

5048

000340

(1997) (where a court would reach the same result under either state's laws, there is no conflict and the law of the forum applies.)

II.    Claims for Negligence and Negligent Misrepresentation.

Any claims against Peterson, Sullivan sound in negligence whether couched as a straight negligence claim or for negligent misrepresentation. The negligence claim is technically directed to the errors in the financial statement, while the misrepresentation is directed to the transmission of the financial statement. In most cases, the differences between the two causes of action are glossed over but there are differences. Negligence claims are usually limited to the client, not third parties, due to difficulties in proving the foreseeability of harm necessary to create a duty. *See Thom v. Cleary,* 768 P.2d 1090 (Alaska 1989) (accountant malpractice); *Bily v. Arthur Young & Co.,* 834 P.2d 745, 768 (Cal. 1992) (accountant liability); *Blair v. Ing,* 21 P.3d 452 (Hawaii 2001) (no duty). While misrepresentation claims ultimately hinge on similar concerns, courts have an easier time conceptually when claims brought by a third party are phrased as negligent misrepresentation. Most courts require proof of reliance on a negligent misrepresentation whereas negligence does not technically require this reliance although such evidence is largely subsumed within negligence's causation requirement.

Third party claims against accountants have been analyzed under one of three tests, generally described as: near-privity, foreseeability, and the Restatement tests. At one extreme, near-privity is the most restrictive analysis limiting third party claims for negligent misrepresentation to those who with a relationship "sufficiently approaching privity." *Walpert, Smullian & Blumenthal, P.A. v. Katz,* 762 A.2d 582 (Md. 2000). At the other extreme, Wisconsin and Mississippi allow third parties to sue for negligent misrepresentation if the accountant could have reasonably foreseen that the third party would have obtained and relied on his financial statements. *Touche Ross & Co. v. Commercial Union Ins. Co.,* 514 So.2d 315 (Miss. 1987). The majority of jurisdictions have adopted the Restatement (Second) of Torts, § 552, which governs "Information Negligently Supplied for the Guidance of Others." The Restatement provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable competence in obtaining or communicating the information.

Page 2    Memo re: Accountant Liability
H:\2501\Travelers workout documents\Travelers v Officers and Peterson Sullivan\Memo - Accountant Liability.wpd

5049

000341

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

A copy of the pertinent pages of Restatement (Second) of Torts, § 552 is attached.

Section 552(2) is viewed as a reasoned limitation upon potential liability that is more restrictive than the foreseeability test, but more expansive than those requiring privity or near privity. *See generally* Feinman, *Liability of Accountants for Negligent Auditing: Doctrine, Policy and Ideology*, 31 Fla. State Univ. Law Rev. 17 (2003). Alaska has adopted § 552(1) to define the elements of negligent misrepresentation for information supplied to others. *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374, 380 (Alaska 1984). ("The Restatement (Second) of Torts § 552 succinctly defines the tort of negligent misrepresentation and sets out four elements to a cause of action predicated upon it."). The Alaska Supreme Court reads the Restatement to require:

1.   The party accused of the misrepresentation must have made the statement "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest.

2.   The representation must supply "false information."

3.   There must be "justifiable reliance" on the false information supplied.

4.   The accused party must have failed "to exercise reasonable care or competence in obtaining or communicating the information."

*Id.*

**5050**

000342

Generally, the Alaska Supreme Court has considered claims of negligent misrepresentation from professional to client. *See Bank of California, N.A. v. First American Title Ins.*, 826 P.2d 1126 (Alaska 1992) (title company negligently misrepresented title of property to client); *Bubbel*, 682 P.2d at 381-82 (representation that employment of replacement pilot during strike was permanent challenged by pilot later fired); *Clary Insurance Agency v. Doyle*, 620 P.2d 194 (Alaska 1980) (representation as to existence of insurance); *Transamerica Title Insurance Co. v. Ramsey*, 507 P.2d 492 (Alaska 1973). (failure to discovery revocation of power of attorney).

I have found only one reported decision from the Alaska Supreme Court discussing accountant liability to third persons. Although acknowledging § 552, the Alaska Supreme Court adopted a distinction between acts done by the accountant in a "private" capacity versus "public" acts. The Court discussed liability for actions performed in a private capacity, and adopted a more restrictive scope of accountant liability that provided in the Restatement. The decision implies, however, that "public" accounting acts such as financial statements would be governed by § 522(2) of the Restatement.

A.    Scope of Accountant Liability Under Alaska Law.

In *Selden v. Burnett*, 754 P.2d 256 (Alaska 1988), an accountant (Burnett) counseled a number of clients to invest in a sale/leaseback program for the purchase of airplanes to obtain a large investment tax credit to lower their taxes. Burnett's clients not only invested, but told friends that were not Burnett's clients about the investment. When the investment program proved to be a scam, clients and non-clients sued him for negligent misrepresentation. The Alaska Supreme Court relied upon the concept of duty to resolve the case. Citing *Howarth v. Pfeifer*, 442 P.2d 39, 43 (Alaska 1968), the Court explained that "before there can be liability for negligent misrepresentation ... there must be a relationship between the parties, whether growing out of contract or otherwise, such that in morals and good conscience the plaintiff has the right to rely upon the defendant for information, and the latter owes a duty to give the information with care." *Selden*, 754 P.2d at 259.

While recognizing the application of § 522 to the non-clients' claims against the accountant, the drew a clear distinction between the public and private functions of an accountant. The Court viewed tax advice as being inherently different from "public" accounting functions. In distinguishing the private nature of tax advice, the Court noted "[a] single set of financial statements may routinely be relied upon in a variety of transactions by lenders, trade creditors, shareholders, investors, market analysts, and governmental agencies. *See* Restatement (Second) of Torts § 552 comment h, illustration

5051

000343

10 (1977). It is in that context that courts have broadly extended accountants' duty of care to include unknown plaintiffs." *Id.*

The Court proceeded to hold that when giving personal tax advice regarding a particular investment, "the accountant owes a duty of care to third parties only if the accountant specifically intends the third parties to invest relying on his advice, and only if he makes his intent known." *Id.* Comparing this rule to § 552 of the Restatement (Second) of Torts, the Court believed that it "may be somewhat different from the approach in [the Restatement]." *Id.* at 260. The Court then remarked that it read subsections (1) and (2) of § 552 to be "somewhat inconsistent":

> We read subsection (1) to impose liability only when the provider of information supplies it for the guidance of the injured party. This would require intent. However, subsection (2) purports to *limit* the liability of subsection (1) to persons to whom the provider intended to supply information or knew that the recipient intended to relay it. This limitation of the rule can easily be read to be broader than the rule itself. This ambiguity is replicated in the comments, which state:
>
>> The rule in this Section subjects the negligent supplier of misinformation to liability only to those persons for whose benefit and guidance it is supplied ....
>> ... It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, person, or group.
>
> Restatement (Second) of Torts § 552 comment h (1977). The first sentence quoted above seems to indicate that liability must be predicated by intent, while the second sentence indicates that mere knowledge may be sufficient.
>
> Subsections (1) and (2) of section 552 appear to offer a uniform rule for liability a compromise position - that does not distinguish between the public and private capacities of accountants. We find it helpful to recognize such a distinction, because it reflects a difference in societal attitudes and expectations in the two different contexts. Thus, we do not

5052

000344

adopt section 552 to the extent it is inconsistent with the rule we decided upon in this case.

*Id.* at 260-61.

Applying its interpretation of the law to the facts, the Court admitted that the affidavits submitted in opposition could support an inference that Burnett ought to have known, or did know, that his investment advice would be relied upon by non-clients. This was insufficient to state a claim for misrepresentation. Rather, plaintiffs failed to submit any evidence that the accountant *intended* for non-clients to rely upon his investment advice. *Id.* at 261. As a result, the Court affirmed summary judgment against the plaintiffs.

Under *Selden*, to state a claim for negligent misrepresentation in Alaska, where an accountant is acting in his "private" capacity, the plaintiff must plead and prove the accountant intended his representation be transmitted to the plaintiff, and that plaintiff rely upon it. The Court's exclusion of knowledge from intent indicates that subjective intent is required on the part of the accountant. Implied in the Court's distinction between private and public accounting functions, is that knowledge will suffice to maintain a third party claim where the accountant acts in a public capacity. This is the position advocated in the Restatement, which provides:

> [i]t is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that he maker of the representation knows that his recipient intends to transmit the information to a similar person, persons, or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given. It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, an the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated.

Restatement (Second) Torts, § 552 comment h.

The only other case discussing third party liability of accountants under Alaska law is *F.D.I.C. v. Whitmore*, 1994 WL 594607 (D. Alaska 1994). There, officers and directors of a failed bank sued Price Waterhouse on a third party complaint for negligently representing the bank's compliance with federal and state laws. The court essentially transformed the officers' and directors' negligence claims into negligent misrepresentation claims given that Price Waterhouse's client was the failed bank. *Id.* at 4. ("The liability to which the duty of care to third parties attaches is not general negligence, however, but negligent misrepresentation.") But, relying on *Selden*, Judge Holland held that the officers and directors could state a claim if the accountants owed some duty beyond that owed to its client. Judge Holland interpreted Alaska law to recognize a claim against an accountant for providing "personal financial advice to a client" only where "the accountant specifically intends and manifests the intent that the third party rely on that advice." *Id.* The court also found that *Selden* controlled because Price Waterhouse was privately supplying financial information to the bank, "as opposed to a public capacity like preparing financial statements." *Id.* at 4, n. 23. Judge Holland found that complaint sufficiently alleged that Price Waterhouse intended to convey the representations to the directors and officers, but due to the nature of the action, they would not be able prove that they reasonably relied upon the representations. *Id.* at 5.

Although the *Selden* decision criticizes § 522 as internally inconsistent, at least with regard to liability for actions taken in a "public" capacity, the Alaska Supreme Court appears to reach the same conclusion adopted by the Restatement. Given the statements in *Selden*, it appears that Alaska will hold accountants liable for negligently misrepresenting the financial condition of a client to third parties where the accountant *knows* that the third party will rely on that information so long as the accountant was acting in a "public" capacity. That is not to say that there is no liability for "private" accounting actions. Where the accountant acts in a "private" capacity the court will require clearer evidence that the accountant not only knew of the third party, but intended its work product to be relied upon by that third party.

   B.   The Requirement of Unique Damages by Shareholders in Third Party Actions Against an Accountant.

Assuming that knowledge, as construed by the Court in *Selden*, includes what the accountant knew, or had reason to know, a plaintiff must plead and prove that the accountant knew, or should have known, that his client would provide the financial statements to it and that the third party would rely upon it. General awareness that third

Page 7   Memo re: Accountant Liability
H:\2501\Travelers workout documents\Travelers v Officers and Peterson Sullivan\Memo - Accountant Liability.wpd

5054

000346

parties, including shareholders, read and rely upon financial statements is not enough to support a claim of negligent misrepresentation by a third party. "Under the Restatement rule, an auditor retained to conduct an annual audit and to furnish an opinion for no particular purpose generally undertakes no duty to third parties." *Bily v. Arthur Young & Co.*, 834 P.2d 745.

The illustrations provided to comments h to § 552 of the Restatement emphasize the requirement that the accountant know, and approve, of the client's intent to disburse the financial statements to a person or defined group for a specific purpose which he intends to influence. Illustration 10, referenced but undiscussed in *Selden*, is directly applicable:

> A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is not informed of any intended use of the financial statements; but A knows that the financial statements, accompanied by an auditor's opinion, are customarily used in a wide variety of financial transactions by the corporation and that they may be relied upon by the lenders, investors, shareholders, creditors, purchasers and the like, in numerous possible kinds of transactions. In fact B Company uses the financial statements and accompanying auditors opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company, and through reliance upon it X Bank suffers pecuniary loss, A is not liable to X Bank.

Restatement (Second) Torts, § 552 comment h, illustration 10. *Contrast* illustration 7 (liability exists where client informs accountant financial statements are necessary to obtain loan without disclosing a specific bank).

In *Nycal Corp. v. KPMG Peat Marwick, LLP*, 688 N.E.2d 1368 (Mass. 1998), the buyer of a controlling interest in a corporation sued KPMG Peat Marwick for misrepresentations in its auditors report. The buyer alleged the report was materially misleading that it had relied on it. KPMG had actual knowledge of the buyer's "interest" in acquiring its client's stock. Though adopting § 552 of the Restatement, the court affirmed dismissal for failure to prove "that the defendant knew (or intended) that the plaintiff, or any limited group of which the plaintiff was a member, would rely on the

000347

audit report in connection with an investment in [its client].) *Id.* at 499. Equally as important, the court noted that the "defendant neither intended to influence the transaction entered into by the plaintiff and Gulf nor knew that Gulf intended to influence the transaction by use of the audit report." *Id.* No claim existed because the "audit report was prepared for inclusion in Gulf's annual report and not for the purpose of assisting Gulf's controlling shareholders in any particular transaction." *Id.* Contrast *Kohala Agriculture v. Deloitte & Touche*, 949 P.2d 141 (Hawaii App. 1997)(finding liability where accountant issues financial statements to its client for the known purpose of procuring investors); *Simpson v. Specialty Retail Concepts, Inc.*, 908 F. Supp. 323 (M.D.N.C. 1995).

The duty element necessary to establish negligent misrepresentation can become intertwined with the requirements for justifiable reliance and damages where the third party is a shareholder of the client. Shareholder cases involve the rules prohibiting derivative actions. Absent unique injury, shareholders will not be permitted to maintain a separate action against an accountant. This is because shareholders may not "pursue individual causes of actions against third parties for wrongs or injuries to the corporation that result in the diminution or destruction of the value of their stock." *Barger v. McCoy Hillard & Parks*, 488 S.E.2d 215, 219 (N.C. 1997). A shareholder does have standing if it can establish: (1) a special duty owed by the accountant to the shareholder; and (2) the shareholder suffers and injury separate from other shareholders. *Id.* (quoting 12B *Fletcher Cyclopedia of the Law of Private Corporations*, § 5911 at 484 (perm. ed. 1993). The requirement of a special duty largely duplicates the above discussion regarding the accountant's knowledge of the intended use of the financial statements. It is the requirement of a unique injury that represents an additional element for shareholder actions against an accountant.

In *Barger v. McCoy Hillard & Parks*, 488 S.E.2d 215 (N.C. 1997), shareholders sued a local accounting firm for misrepresentations regarding the financial condition of the corporation. The North Carolina Supreme Court held that the shareholders did not have a claim against the accountants because they could not establish a special duty owed to them. *Id.* at 220 ("To support the right to an individual lawsuit, the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual.") Such duty must be personal to the shareholder and distinct from that owed to the corporation. *Id.* Other courts had found such duties exist where the representations induced one to become a shareholder, the party violated a fiduciary duty to the shareholder, the party performed services directly for the shareholder, and where the party advised the shareholders separately. *Id.* While the shareholders could not prove such a duty in their capacities as shareholders, they also alleged that they had guaranteed additional corporate debt based upon the accountant's financial representations. Unlike the shareholder claims, the court

000348

found that reliance upon the financial statement to become guarantors satisfied stated a unique injury distinct from harm to the corporation satisfied this requirement.

In *Boykin v. Arthur Andersen & Co.*, 639 So.2d 504 (Ala. 1994), shareholders of a bank sued Arthur Andersen for negligent misrepresentation of the bank's financial condition incorporated into certified annual reports. The trial court had dismissed the case finding that the shareholders were not in sufficient "near privity" to the client to have a claim for negligent misrepresentation. The Alabama Supreme Court rejected the argument that an accountant had to have actual knowledge of the identity of the third party and the particular reliance upon the financial statement. *Id.* at 509. Rather, that court held: "[i]n this case, the stockholders who received the certified annual reports were members of a group or class that Arthur Andersen had 'special reason to expect to be influenced by' its certification." *Id.* Addressing the accountant's argument that the shareholders lacked standing to sue, the court held that the shareholders stated an individual cause of action separate from the corporation where they alleged damages "based on the purchase, retention, and/or sale of stock with a fair market value of substantially less than that represented by the defendants and on the diminution of the value of the plaintiffs' stock." *Id.* at 506.

If Klukwan sues Petersen, Sullivan it must allege and prove that it relied on the misleading financial information in taking some action that resulted in damages. Continued financial loses would seem to be insufficient to state an injury distinct from the corporation. Rather, some additional investment, guarantees, or additional capital would be sufficient. The *Boykins* decision, however, suggests that devaluation of shareholder value is sufficient harm to support an individual action.

Page 10    Memo re: Accountant Liability
H:\2501\Travelers workout documents\Travelers v Officers and Peterson Sullivan\Memo - Accountant Liability.wpd

5057

000349

ot Christianson

**From:**    "Cabot Christianson" <cabot@cbslawyers.com>
**To:**    "Tom Crandall" <tomc@klukwan.com>
**Cc:**    <gary@cbslawyers.com>
**Sent:**    Friday, February 06, 2004 4:12 PM
**Subject:**    Peterson Sullivan

Tom -
I am getting into the Peterson Sullivan claim and would like to talk to you Monday about the following issues. I'll give you some of
my questions now so you can think about them when we talk.

1. I need a review of the history - timing and background - of hiring, and then terminating, the services of the third party whose job
it was to confirm compliance with contract administration procedures.
2. Can you clarify the references in the Peterson Sullivan report to "FMI manuals" "procedure manuals" and "administrative
manuals".
3. The Peterson Sullivan report is undated. When was it prepared?
4. ARe there engagement letters or other documents which set forth the scope of services to be provided to SCI/Klukwan in the
2000, 2001 and 2002 time frame.
5. When did Peterson Sullivan actually perform the 2000 audit? 2001 audit? What other times were they doing projects for
SCI/Klukwan which should have brought them face-to-face with SCI's administrative problems.?
6. Assuming PS was on the ball, when should they have discovered the problems at SCI? Can we assume that things would
have already been pretty bad by this time?
7. Assuming PS followed normal, professional standards, what would be an approriate response to this discovery? A letter to
Klukwan blowing the whistle on SCI? What would the letter say?
   Assuming PS had responded to the SCI problem in #6 appropriately according to our answer to #7, can we realistically predic
r t Klukwan's response would have been? Apart from firing all of SCI top management, what would Klukwan's range of
   ~~s have been if PS had given timely warning of problems at SCI?  If PS blew the whistle too late, it mig
   : blew the whistle too early, Klukwan might have had difficulty perceiving a problem.  If PS blew the whistle too late, it mig
h~~  ~~een too late for Klukwan's actions to make a difference. True?
10. Starting with the assumption that things would have to have been pretty bad at SCI to (a) cause P&S to spot the problem an
notify Klukwan, and (b) cause Klukwan to take drastic measures to solve the problem, what would have been the financial
outcome for Klukwan and SCI after Klukwan had taken its remedial steps?
11. How does the financial outcome in the answer to #10 compare with what actually happened?
12. Look at a specific ingredient of our damages - Travelers. Is it our contention that, had P&S acted appropriately, Klukwan co
have stemmed the tide sufficiently so that Travelers would not have had to step in? (I would think so.)
13. Let's say for discussion that Travelers took a $12 million net loss by having to take over our bonded jobs. (Do you know the
real number?) What would SCI's loss have been if SCI had finished those jobs on its own?
   a.  Given that we are EITHER utilizing a dysfunctional management team which has somehow been rehabilitated, OR a
brand new management team that is supposed to pull SCI out of its nose dive, could we have finished the bonded jobs more, o
less, efficiently than Travelers? On which jobs would we have been more efficient than Travelers, and why?
   b. Is is realistic for us to believe that we could have finished the jobs for, say, only a $10M loss?
   c. The loss, whatever it is, is all cash, right?
14. How does the answer to #13(b)and (c) compare to the workout we eventually negotiated with Travelers? (term settlement
with present value of about $6M) Did every dollar we save in the Travelers workout equate to a one dollar reduction in our clair
against P&S?
15. Is there correspondence or documentation in your files that deals with any of these issues?
16. Do you have a copy of the 2000 audit?

Thanks. As you can see, these issues group around two basic questions (1) were the acts complained of within the scope of
P&S's work? (2) what were the damages caused by P&S's negligence? I see issue (2) - causation and damages - as particula
problematic. Not unlike the cause of action we contemplated, once upon a time, against Key Bank.

c?~~ ~~me a call Monday after you've mulled these matters over.

*Christianson*
DEPOSITION
EXHIBIT
# 177

4908

000350

Cabot Christianson
tianson, Boutin & Spraker
st 8th Ave., Suite 302
age, AK 99501
Phone 907/258-6016; Fax 907/258-2026
E-mail: cabot@cbslawyers.com

# MEMORANDUM

To:      Cabot Christianson

From:    Gary Spraker

Date:    February 12, 2004

Subject: Standards for Accountant Negligence.

I've taken a quick look at cases dealing with accountant negligence. In Alaska, as elsewhere, the elements for a claim of professional negligence are:

> (1) a duty, (2) breach of that duty, (3) a proximate causal connection between the negligent conduct and the resulting injury, and (4) actual loss or damage resulting from the professional's negligence.

*Thomas v. Cleary*, 768 P.2d 1090, 1092 (Alaska 1989) (citing *Linck v. Barokas & Martin*, 667 P.2d 171, 173 n 4. (Alaska 1983). This necessarily requires "proof that there was a departure from the accepted standards of practice and that the departure was a proximate cause of the injury." *Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, 639 N.Y.S. 2d 329, 335 (1996).

The cases dealing with accountant negligence that I have found discuss primarily damages. *Thomas*, 667 P.2d at 1093 (no claim for professional negligence where no damages sustained); *Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, 639 N.Y.S. 2d 329, 335 (1996) (discussing appropriate measure of damages); *World Radio Laboratories, Inc. v. Coopers & Lybrand*, 538 N.W.2d 501, 514-15 (Neb. App. 1995) (discussing application of lost profits). In *Coopers & Lybrand v. Trustees of the Archdiocese of Miami*, 536 So.2d 278, 281 (Fla. App. 1989), the court noted that "[f]or failure to discover defalcations or fraud, liability of an accountant is limited to losses which were the proximate result of the accountant's breach of duty."

*Christiansen*
DEPOSITION
EXHIBIT
#178
PENGAD 800-631-6989

5058

000352

*Kemin Indus., Inc. v. KPMG Peat Marwick*, 2002 WL 1767178 (Iowa App. 2002)

5059

000353

## Cabot Christianson

**From:** "Cabot Christianson" <cabot@cbslawyers.com>
**To:** <gary@cbslawyers.com>
**Sent:** Tuesday, March 16, 2004 8:44 AM
**Subject:** Peterson Sullivan statute of limitations

Have you had a chance to look at this issue yet?

Cabot Christianson, Esq.
Christianson, Boutin & Spraker
911 West 8th Ave., Suite 302
Anchorage AK 99517
907/258-6016 phone
907/258-2026 fax
cabot@cbslawyers.com



Christianson
DEPOSITION
EXHIBIT
# 179

LAW OFFICE OF
# CHRISTIANSON, BOUTIN & SPRAKER
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
911 WEST 8TH AVENUE, SUITE 302
ANCHORAGE, ALASKA 99501

CABOT CHRISTIANSON
MICHELLE L. BOUTIN
\ SPRAKER

PHONE: (907) 258-6016
FAX: (907) 258-2026

July 6, 2004

KPMG, LLP
Suite 600
701 West Eighth Ave
Anchorage, AK 99501

Re: Klukwan, Inc. and subsidiaries,

Dear KPMG,

By letter dated June 29, 2004, Klukwan, Inc. (KINC) and its subsidiaries have requested certain information involving matters as to which this firm has been engaged and to which this firm has devoted substantial attention on behalf of the company in the form of legal representation or consultation. This reply is effective as of December 31, 2003 and also as of the date of this letter.

**Litigation matters**

Redacted



Christianson
DEPOSITION
EXHIBIT
# 181
PENGAD 800-631-6989

5686

000355

KPMG
July 6, 2004
Page 2

Redacted

**Other potential litigation**

SCI and/or Klukwan have potential litigation claims against Peterson & Sullivan, and also against SCI's former directors.   SCI and Klukwan have not decided whether to pursue these matters.

Redacted

**Page Redacted**

5698

KPMG
July 6, 2004
Page 4

# Redacted



Very truly yours,
CHRISTIANSON, BOUTIN & SPRAKER

By_____
Cabot Christianson

cc:    Tom Crandall

H:\2501\ltr\kpmg audit.wpd

**5689**

000358

**Cabot Christianson**

| | |
|---|---|
| **From:** | "Cabot Christianson" <cabot@cslawyers.net> |
| **To:** | <tomc@klukwan.com> |
| **Sent:** | Thursday, January 19, 2006 6:54 PM |
| **Attach:** | earnhart3.doc |
| **Subject:** | Re: Lane Powell letter re: Peterson Sullivan |

This is the kind of letter that I draft, and then wait a few days or longer before sending out.
-Cabot

---

—— Original Message ——
**From:** Tom Crandall
**To:** 'Cabot Christianson'
**Sent:** Thursday, January 19, 2006 3:46 PM
**Subject:** Lane Powell letter re: Peterson Sullivan

Cabot,

Please review the letter from Peterson Sullivan and then let's chat. The letter was faxed to your office today.

The facts in Mr. William A. Earnhart's letter are in error. In the second paragraph he states "It is my understanding that as the CFO of Klukwan, you are one of the main proponents of South Coast's rapid growth,................" Note that I joined Klukwan on August 8, 2001, significantly after the company had made the decisions regarding growth. Also, Klukwan was not in payment default on its obligations to Key Bank on May 13, 2001 – the day that the bank ceased Klukwan's cash and investment assets. Rather, they defaults were all surrounding the issues of covenants and had to do with South Coast failing to perform. Again, given when I joined the company and involvement with South Coast, the fault does not lie with me.

William A. Earnhart also mischaracterizes my relationship with Robert Sutor and Charles Langfitt. He characterizes them a .ds and I would not. Also, I would say that Mr. Langfitt made up his own mind to sue Peterson Sullivan and any input I gav was just my opinions.

I think this is interesting. I'm being threatened with being sued for defamation of character etc. Given the "black listing" going on by Peterson Sullivan (remember the information I told you about why Shee Atika decided not to investigate hiring me) there are likely plenty of opportunities for suits to go around.

Please contact Mr. Earnhart and inform him that you are representing Klukwan and to direct further correspondence regarding this matter to your attention.

Lastly, do we need to contact our insurance carrier about the threatened suit? If so, what carrier?

Sincerely,

Thomas L. Crandall

Primary contact information
Klukwan, Inc.
Attn: Thomas L. Crandall, President
425 Sawmill Road
PO Box 209
Haines, Alaska 99827
(907) 766-2211 office
(907) 766-2973 fax
    ) 637-8641 eFax
    ) 223-1072 cell


Christianson
DEPOSITION
EXHIBIT
#183

Alternative contact information
Kply, Inc.
    Marine Drive (98363)
    Box 2318
Port Angeles, WA 98362-0297
(360) 457-4421 office
(360) 457-1634 fax

tomc@klukwan.com email
www.klukwan.com

This E-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

September 27, 2006

William A. Earnhart
Lane Powell
301 West Northern Lights Blvd, Suite 301
Anchorage, AK 99503-2648

Dear Bill,

Your letter of January 19, 2006 contains several misstatements which, when corrected, may affect your client's view of this situation.

Mr. Crandall's first day of work at Klukwan was August 8, 2001, well after the company made its ill-fated decision to grow.

KeyBank's seizure of Klukwan's liquid assets on May 13, 2002, was solely the result of Klukwan's breach of financial covenants (2001 year-end net worth, and financial ratios). No Klukwan entity was in payment default at the time. Klukwan's default was due to historical facts over which Mr. Crandall had no control, not to a lack of accounting controls within the company.

Your sarcastic reference to Mr. Crandall's "friends" at Travelers is uninformed. The relationship between Travelers and Klukwan has been, and continues to be, a difficult and adversarial one.

Travelers had Peterson & Sullivan in its sights in June, 2002, at the latest, many months before Travelers told anyone at Klukwan. Jerry Renich's joinder in Peterson Sullivan's motion for summary judgment motion in the Travelers suit reveals an in-house email dated June 19, 2002, from David Hombach, the Travelers Vice President in charge of the SCI account, to Chuck Langfitt, which stated in part:

What about their wonderous [sic] CPA firm who obviously must have missed a whole [sic] in the boat in their 12/3/100 audit ....

May be crying in spilled milk, Chuck, but those bastards must be tagged somehow.

This email is dated June 19, 2002.

4957

000361

Beginning in late July, 2002, Tom Crandall and I, and Kim Strong, a Klukwan board member, negotiated a tentative settlement with Chuck Langfitt concerning settlement of Klukwan's indemnity obligation on the Travelers performance bonds. It took more than four months for the last details to be negotiated and the final documents prepared and signed. As you know, the final documents were signed December 6, 2002.

I can personally testify that there was not a hint, in those negotiations or document draftings, that Travelers intended to sue Peterson & Sullivan or the Klukwan directors. Frankly, if we had had wind that those were Travelers' intentions, I would have inserted language to protect Klukwan from being brought in through the back door, which as you know almost happened through Jan Paulson.

In short, if Peterson & Sullivan has its nose out of joint in the belief that Klukwan sicced Travelers on Peterson & Sullivan, that belief is in error. Klukwan happens to hold the view that Peterson & Sullivan's performance was substandard, and Klukwan is entitled to its own opinion.

Your own letter supports Klukwan's view. If it is so obvious to Peterson & Sullivan, now, that South Coast was doomed because of "South Coast's 10-year track record of failure every time it expanded its operations outside of Southeast Alaska," is that not the sort of observation that Peterson & Sullivan should share with its client of those same ten years?

Keep in mind that Peterson & Sullivan was dismissed on a statute of limitations basis, not on the merits. This is a file that Peterson & Sullivan should close, and be glad that its loss is limited to uncollected fees.

Very truly yours,
CHRISTIANSON & SPRAKER

By_____
      Cabot Christianson

H:\2501\ltr\earnhart3.wpd

4958

000362

# Klukwan, Inc.

## Cabot Christianson Report
## January 8, 2004

**EX. 190**

7.2

**5565**

**Page Redacted**

000364

| Other potential litigation | |
|---|---|
| Travelers v. Peterson & Sullivan | Errors and omissions case. Still unfilled. Klukwan and / or South Coast may participate in this. |
| Travelers v. Ron Gelbrich, Jerry Renich, Jan Paulson, Mike Houts, Brad Finney | Directors and Officers case. Still unfilled. Klukwan and / or South Coast may participate in this. |



Redacted

000365

**Page Redacted**

5568

**Page Redacted**

Page Redacted

5570

000368

**.ot Christianson**

From:     "Cabot Christianson" <cabot@cbslawyers.com>
To:       "Tom Crandall" <tomc@klukwan.com>
Sent:     Thursday, January 15, 2004 11:08 AM
Subject:  Fw: Travelers/South Coast/ Accountant work papers

Tom -
I overlooked this email that came in last week while I was gone. I assume our answer is, hell yes.
-Cabot
—— Original Message ——
From: Jan D Sokol
To: Cabot Christianson
Cc: Charles.W.Langfitt@travelers.com
Sent: Friday, January 09, 2004 11:42 AM
Subject: Travelers/South Coast/ Accountant work papers

I have had no further response to my request for the work papers from either the accounting firm or the lawyer. I want to proceed
with the filing of the petition under Fed. R. Civ. P. 27 in USDC, Western District of Washington. As I previously discussed with
you, I believe the petition will be much stronger if Klukwan is party. Please advise if I can file the petition on behalf of both
Travelers and Klukwan.


*************************************
Jan D. Sokol
.vart Sokol & Gray, LLC
. SW First Avenue
. 00
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
*************************************

<u>NOTICE</u>:

THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT
PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR
TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOU
COMPUTER SYSTEM.



Christiansen
DEPOSITION
EXHIBIT
#191

**Cabot Christianson**

From:     <klukwan@earthlink.net>
To:       "'Cabot Christianson'" <cabot@cbslawyers.com>; "'Jan Sokol'" <jdsokol@lawssg.com>
Sent:     Wednesday, February 11, 2004 7:47 AM
Subject:  RE: Travelers/South Coast

Cabot,

I use Thomas L. Crandall when signing documents. Can you have Jan Sokol correct the documents and then resend?

Thank you,

Tom C.

_____

Klukwan, Inc.
Attn: Thomas L. Crandall, President
425 Sawmill Road
PO Box 209
Haines, Alaska 99827
(907) 766-2211 office
(907) 766-2973 fax
(270) 637-8641 eFax
(907) 223-1072 cell
tomc@klukwan.com email

⬤   attached files are in Acrobat PDF format. If Adobe™ Reader® if it is not currently installed on your computer, you can download it here. To go to the download site, please hold down the Ctrl key and click the icon below.



Adobe, the Adobe logo, and Reader are ether registered trademarks or trademarks of Adobe Systems Incorporated in the United States and / or other countries.

This E-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

_____

-----Original Message-----
From: Cabot Christianson [mailto:cabot@cbslawyers.com]
Sent: Tuesday, February 10, 2004 10:50 AM
To: Jan Sokol
Cc: Tom Crandall
Subject: Fw: Travelers/South Coast

Jan -
These documents look good. I am forwarding them to Tom Crandall, and he will fax you the signature page.

⬤   This email will confirm our previous discussions that Travelers will bear all the costs associated with bringing this suit and will indemnify Klukwan from any claims associated with the bringing or prosecution of this suit.

*Christianson*
DEPOSITION
EXHIBIT
#193

001271

9/27/200

Page 2 of 3

If Travelers wishes to bring a substantive cause of action against P&S, Klukwan's expectation is that the net litigation proceeds from that suit will be applied first to the Klukwan/SCI note to Travelers. Also, as you are aware, Klukwan is considering its own action against P&S, and has developed some ideas about how to proceed. You and I should discuss.

As I mentioned in my email, Klukwan is an Alaska Native corporation organized under Alaska state law pursuant to 43 USC 1601 et seq. All of its shareholders are individuals.

Let me know if you need anything else.

-Cabot

---- Original Message ----
**From:** Jan D Sokol
**To:** Cabot Christianson
**Cc:** Chuck Langfitt
**Sent:** Friday, January 23, 2004 11:59 AM
**Subject:** Travelers/South Coast

Attached are proposed pleadings for your review and comment. I will need to file a corporate disclosure (Fed.R. Civ. P. 7.1) on behalf of Klukwan. Is it owned partially or in whole by a publicly traded company? if so, what is the company, the percentage ownership and the exchange it is traded on?

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**NOTICE:**

**THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOUR COMPUTER SYSTEM.**

001272

9/27/2006

000371

**Cabot Christianson**

| | |
|---|---|
| **From:** | "Tom Crandall" <tomc@klukwan.com> |
| **To:** | "Cabot Christianson'" <cabot@cbslawyers.com> |
| **Cc:** | "'Karen Taug'" <karent@klukwan.com> |
| **Sent:** | Thursday, February 03, 2005 2:06 PM |
| **Subject:** | Travelers |

Cabot,

I have scheduled a meeting with Chuck Langfit / Travelers to discuss how we might negotiate a settlement in full on our debt to them. The meeting is 9:00am on February 18 in their office in Seattle. (Although based on snow in Haines I've had to reschedule tomorrow's board meeting – no one can get here. The preferred date by the board is the 18th as well.)

My thoughts on this are:
1) Reschedule the repayment schedule / balloon so we can cash flow
2) Find out what they accept as a walk away number, ie, would they accept $2.5 million now as an example
3) They retain any options they now have against Peterson & Sullivan and prior officers
4) We offer cutting rights to Long Island that are retained by Klukwan. There is approx 18 -22 million board feet of second growth where Klukwan retained the cutting rights. Rights expire in 2011 so Travelers rights would expire in 2011.
5) We refinance with a traditional lender to repay Travelers. We use KPly as collateral.
6) We find a way to use the trust assets to repay Travelers (I don't like this option, don't know if we can do actually / legally do this option and it might take a vote of the shareholders).
7) Anything we do has to be a final and / or livable solution.

I guess my preference would be for Klukwan to assign any rights they have against Peterson & Sullivan, former officers or Marsh to Travelers, pay Travelers some very small amount and transfer to Travelers the cutting rights Klukwan has in the timber.

her ideas.

Tom

Klukwan, Inc.
Attn: Thomas L. Crandall, President
425 Sawmill Road
PO Box 209
Haines, Alaska 99827
(907) 766-2211 office
(907) 766-2973 fax
(270) 637-8641 eFax
(907) 223-1072 cell
tomc@klukwan.com email

*[Deposition exhibit stamp:]* Christianson DEPOSITION EXHIBIT #201

Some attached files are in Acrobat PDF format. If Adobe™ Reader® if it is not currently installed on your computer, you can download it here. To go to the download site, please hold down the Ctrl key and click the icon below.



Adobe, the Adobe logo, and Reader are ether registered trademarks or trademarks of Adobe Systems Incorporated in the Unit States and / or other countries.

his E-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. This ation is confidential information and is intended only for the use of the individual or entity named above. If the reader of age is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.