# Tab D

Deposition Testimony of Jan D. Sokol

Declaration of Gary Spraker
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)

Defendants' Opposition to Motion for Summary Judgment and Cross Motion

Index of Deposition Testimony of Jan D. Sokol

| Page # |
|--------|
| 161 |
| 162 |
| 163 |
| 222 |
| 223 |
| 224 |
| 225 |

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

TRAVELERS CASUALTY AND SURETY
COMPANY of AMERICA, a Connecticut
corporation,

    Plaintiff,

v.    No. A05-00063 (TMB)

SOUTH COAST, INC., an Alaska
Corporation, KLUKWAN, INC.,
an Alaska Native Village
Corporation, and CHILKATS'
PORTAGE COVE DEVELOPMENT
COMPANY, an Alaska corporation,

    Defendants.

---

SOUTH COAST, INC., an Alaska
Corporation, KLUKWAN, INC.,
an Alaska Native Village
Corporation, and CHILKATS'
PORTAGE COVE DEVELOPMENT
COMPANY, an Alaska corporation,

Counterclaim and
Third Party Plaintiff,

1  V.

2  TRAVELERS CASUALTY AND SURETY . . .

3  COMPANY of AMERICA, a Connecticut

4  corporation, STEWART SOKOL & GRAY,

5  L.L.C., and JAN D. SOKOL,

6  Counterclaim and

7  Third Party Defendants.

8  _____

9

10          DEPOSITION OF JAN D. SOKOL

11      TAKEN ON BEHALF OF THE PLAINTIFF

12          THURSDAY, OCTOBER 4, 2007

13                   - - -

14  BE IT REMEMBERED THAT, pursuant to the Oregon Rules

15  of Civil Procedure, the deposition of JAN D. SOKOL

16  was taken before Janette Dukic, Court Reporter and

17  Notary Public, on Thursday, October 4, 2007,

18  commencing at the hour of 8:35 a.m., the

19  proceedings being reported at 2300 Southwest First

20  Avenue, Suite 200, Portland, Oregon.

21

22

23

24

25

1   APPEARANCES

2   RICHARD E. SPOONEMORE

3   Sirianni Youtz Meier & Spoonemore

4   1100 Millenium Tower, 719 Second Avenue

5   Seattle, Washington   98104

6   Phone:  206.223.0303

7   Fax:  206.223.0246

8   E-mail:  rspoonemore@sylaw.com

9   Appearing on behalf of the Plaintiff

10

11  JAMES GILMORE

12  Clapp Peterson VanFlein Tiemessen Thorsness

13  711 H Street, Suite 620

14  Anchorage, Alaska   99501

15  Phone:  907.272.9272

16  Fax:  907.272.9586

17  E-mail:  anch@cplawak.com

18  Appearing on behalf of the Counterclaim and Third Party

19  Defendants Stewart Sokol & Gray, and Jan Sokol

20

21

22

23

24

25

1   APPEARANCES (Continued)
2
3   GARY A. SPRAKER
4   Law Office of Christianson & Spraker
5   911 West 8th Avenue, Suite 201
6   Anchorage, Alaska  99501
7   Phone:  907.258.6016
8   Fax:  907.258.2026
9   E-mail:  gary@cslawyers.net
10  Appearing on behalf of the Defendants South Coast, Inc.,
11  Klukwan, Inc., and Chilkats' Portage Cove Development
12  Company
13
14
15
16
17
18
19
20
21
22
23
24
25

EXHIBIT INDEX

| EXHIBIT: | DESCRIPTION: | PAGE MARKED: |
|---|---|---|
| NO. 228 | E-mail, 04-02-03, TRAV80060 | 62 |
| NO. 229 | E-mail, 06-03-03, TRAV80062 | 67 |
| NO. 230 | E-mail, with Attachment, TRAV80071 - 076 | 82 |
| NO. 231 | Petition to Require the Production of Documents Before Action | 85 |
| NO. 232 | Minute Order, TRAV81573 | 87 |
| NO. 233 | E-mail Chain, TRAV80089 - 090 | 88 |
| NO. 234 | E-mail, 06-03-04, TRAV80080 | 98 |
| NO. 235 | E-mail, 06-08-04, TRAV80082 | 102 |
| NO. 236 | E-mail, 06-21-04, TRAV80086 - 087 | 104 |
| NO. 237 | E-mail Chain, TRAV80032 | 117 |

EXHIBIT INDEX (Continued)

| EXHIBIT: | DESCRIPTION: | PAGE MARKED: |
|---|---|---|
| NO. 238 | E-mail Chain, TRAV80037 - 038 | 122 |
| NO. 239 | E-mail Chain, TRAV80303 - 304 | 127 |
| NO. 240 | E-mail Chain, TRAV80359 -062 | 130 |
| NO. 241 | E-mail, with Attachment, TRAV80420 - 422 | 136 |
| NO. 242 | E-mail, 03-03-05, TRAV80459 | 137 |
| NO. 243 | E-mail, with Attachment, TRAV80494 - 501 | 139 |
| NO. 244 | E-mail, 03-10-05, TRAV80503 | 143 |
| NO. 245 | E-mail, 03-11-05, TRAV80511 | 144 |
| NO. 246 | E-mail, 04-04-05, TRAV80520 | 146 |
| NO. 247 | E-mail, 05-06-05, TRAV80547 | 149 |

Page 7

EXHIBIT INDEX (Continued)

| EXHIBIT: | DESCRIPTION: | PAGE MARKED: |
|---|---|---|
| No. 248 | E-mail, with Attachment, TRAV80572 - 584 | 151 |
| No. 249 | E-mail, with Attachment, TRAV80588 - 596 | 151 |
| No. 250 | Letter, 6-15-05, TRAV81817 | 153 |
| No. 251 | Travelers' Opposition to Peterson Sullivan's Motion For Summary Judgment, with Attachment | 157 |
| No. 252 | Letter, 07-15-05, TRAV81179 - 181 | 159 |
| No. 253 | Affidavit of Charles W. Langfitt | 160 |
| No. 254 | Letter, 08-10-05, TRAV81148 | 164 |
| No. 255 | E-mail Chain, TRAV80805 | 165 |
| No. 256 | E-mail Chain, TRAV80807 | 166 |

Page 8

EXHIBIT INDEX (Continued)

| EXHIBIT: | DESCRIPTION: | PAGE MARKED: |
|---|---|---|
| NO. 257 | E-mail Chain, TRAV80811 - 812 | 167 |
| NO. 258 | E-mail, 08-30-05, TRAV80830 - 831 | 172 |
| NO. 259 | E-mail, 10-03-05, TRAV80927 | 179 |
| NO. 260 | E-mail Chain, TRAV80941 - 942 | 180 |
| NO. 261 | E-mail, 12-12-05, TRAV80944 | 188 |
| NO. 262 | Letter, Re: Repayment Agreement, 04-06-06, 001218 - 220 | 190 |
| NO. 263 | E-mail Chain, TRAV80078 | 199 |
| NO. 264 | Billing, Christianson, Boutin & Spraker | 202 |
| NO. 265 | Fax, 10-17-03, 000772 - 773 | 204 |
| NO. 266 | E-mail, 01-21-04, 001247 | 206 |

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Page 9

1                    EXHIBIT INDEX (Continued)
2
3    EXHIBIT:        DESCRIPTION:                      PAGE MARKED:
4
5     267            Letter, 12-16-04, 001129 - 132        224
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1   affidavit of Mr. Langfitt concerning the CR 11 motion,
2   without exhibits.
3       A.   That's what it appears to be.
4       Q.   I know Mr. Coleman testified yesterday that he
5   was involved in drafting or working with Mr. Langfitt to
6   draft this declaration.
7            Did you have any participation in that
8   process?
9       A.   I would believe that Mr. Coleman and
10  Mr. Langfitt came up with the draft. I would have
11  certainly reviewed it before it was finalized and given
12  my input. Sitting here today, I can't tell you what, if
13  any, changes I made or what the extent of my review was.
14      Q.   Do you know who made the suggestion to include
15  that as an attachment to his affidavit?
16      A.   No, I can't tell you.
17      Q.   I will have you pull out what was marked
18  yesterday as 219.
19      A.   Okay.
20      Q.   I am looking at the first page. I will ask
21  you, first of all, if you can confirm to me that this is
22  an e-mail that you sent to Mr. Langfitt, attaching an
23  e-mail string, which includes in the second block an
24  e-mail that you received from Mr. Coleman on August 4th,
25  2005.

1   A.   Yes, that's what it appears to be.
2   Q.   In the August 4th, 2005 e-mail to you from
3   Mr. Coleman, he raises an additional possible theory,
4   e-mails to damages, but yesterday he talked about
5   liability.
6        Do you recall that testimony?
7   A.   I do.
8   Q.   Do you recall having discussions with
9   Mr. Coleman about this additional possible theory?
10  A.   I recall having a discussion with Chuck
11  Langfitt and Jordan Rosenfeld about this. I am not sure
12  you call it different theory, but, in any event, I
13  have -- I recall discussions with Chuck Langfitt and
14  Jordan, and we did believe that it would be very helpful
15  if we could get into those boxes at that warehouse, see
16  what the underlying South Coast documents had within
17  them for these particular projects, so that we could
18  then assert that had they looked more deeply or into
19  those boxes, they would have revealed such and such.
20  Q.   So would --
21  A.   But I don't recall discussing that
22  specifically with Rob Coleman, but I do remember
23  discussing that with Chuck Langfitt. I don't even know
24  if it was before or after this date.
25  Q.   This was a theory, though, that you were

1   working on, at least in this August 2005 time period?

2   A.   It was certainly raised in these messages. I
3   don't recall the first time that I talked to Chuck and
4   Jordan about that or it may have been that Jordan
5   brought that up. I know Rob has an e-mail that talks
6   about that there, but for some reason, I think Jordan
7   suggested we ought to look in those boxes or get ahold
8   of those boxes and do that. I just don't remember Rob
9   bringing it up, although that is certainly what it says
10  here.

11  Q.   Is this something that you were in the process
12  of doing; i.e., planning to go up to visit the warehouse
13  or wherever that is -- I think it's in Haines, Alaska --
14  at the time the decision came down dismissing the case?

15  A.   Well, even before then.

16       As this last string on 219 reflects, I think
17  what had happened was that Peterson Sullivan's counsel
18  served a subpoena for request for information on Cabot
19  Christianson. I don't remember whether it was a
20  subpoena or whatever it was to get their records, and
21  then I don't know whatever happened with it, and I think
22  we started to follow up, and Will Earnhart told me that
23  his assistant was up there for some other thing and went
24  to see this and reported on this information, and that
25  we were going to go up and look at it, and, in fact, had

1  Q. Do you recall any conversations in which
2  Mr. Langfitt indicated that Klukwan was asking how
3  Travelers was going to proceed against Peterson
4  Sullivan, in light of the denial of the request for
5  production of the work papers?
6  A. You mean other than this e-mail?
7  Q. Well, including this e-mail.
8  A. So, what? I am sorry. What was the question?
9  Q. Did you have any discussions with Mr. Langfitt
10 regarding this e-mail?
11 A. I don't recall any specific discussions
12 regarding this e-mail.
13 Q. Were you aware that on May 26, 2004 that
14 Klukwan was asking how Travelers was going to proceed,
15 in light of the denial of the Rule 27 action?
16 A. That's what Mr. Crandall is asking me.
17    And I think Mr. Langfitt responds, we are
18 reviewing filing suit and we will keep you posted.
19 Q. I think you do have Exhibit 210, which is a
20 June 10, 2004 e-mail from you to Mr. Langfitt and
21 Mr. Rosenfeld. You did earlier.
22 A. I am sure I did earlier. 210, yes.
23 Q. Okay. I believe, as I understand your
24 testimony, that this is the string originating from
25 Mr. Rosenfeld, the June 8th e-mail at the very end of

1   Q.   Did anyone ever tell you that Klukwan had
2   decided not to sue Peterson and Sullivan?
3   A.   At this time?
4   Q.   At any time.
5   A.   No. No one ever formally told me that.
6   Q.   Did you ever send an engagement letter to
7   Klukwan for any matter?
8   A.   No.
9   Q.   After the work product action, did you ever
10  send a disengagement letter?
11  A.   No.
12       (Whereupon, Letter, 12-16-04, 001129 - 132,
13  was marked Exhibit 267 for identification.)
14  BY MR. SPRAKER:
15  Q.   Could you take a look at what has been marked
16  as 267 and identify it for the record, please.
17  A.   It appears to be a letter I wrote Cabot
18  Christianson, dated December 16th, 2004.
19  Q.   And the primary focus of this letter, as I
20  understand it, is a discussion regarding what has been
21  referred to as the affiliate defense.
22       Is that a fair characterization?
23  A.   That was the substantial reason for this. I
24  think it had also to do with, apparently, they had some
25  default in payments.

1   Q.   Okay. Is it fair to say that -- do you
2   understand what I mean when I use the term the
3   "affiliate defense"?
4   A.   Yes, I do.
5   Q.   Okay. Is it fair to say that the raising of
6   the affiliate defense affected the relationship between
7   Klukwan and Travelers?
8   A.   I would say it probably did.
9   Q.   How so?
10  A.   How so? Well, we were asserting a claim
11  against some of the officers, former officers of South
12  Coast. Klukwan had provided that information to us, and
13  then took the position after providing that information
14  and knowing that Travelers was going to file that
15  action, that somehow the repayment agreement barred the
16  action against those individuals, and I don't think
17  Travelers took that very kindly.
18  Q.   And that's my next question. That was an
19  adverse effect on the relationship between Travelers and
20  Klukwan?
21  A.   Yes.
22  Q.   On the second page on the middle of the page,
23  there is the first line reads:
24          (Reading) I specifically recall when I was
25  preparing the Rule 27 A petition against Peterson

1    MR. SPRAKER: I don't believe I have any
2  further questions.
3  BY MR. SPOONEMORE:
4    Q.   Do you recall the question posed to you by
5  counsel about a disengagement letter?
6    A.   Yes, I do.
7    Q.   Did you feel it was necessary to send a
8  disengagement letter at the end of the Peterson Sullivan
9  work papers Rule 27 project?
10   A.   No, because it was -- everybody understood
11 that the only thing that I was representing Klukwan was
12 in connection with the work papers, and when that was
13 done, it was done. They had their own counsel.
14         MR. SPOONEMORE: I have nothing further.
15         MR. GILMORE: No questions.
16         MR. SPOONEMORE: Thank you. Same as
17 yesterday.
18         (The deposition was concluded at 4:20 p.m.)