# Tab E

## Deposition Exhibits

Declaration of Gary Spraker
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)

Defendants' Opposition to Motion for Summary Judgment and Cross Motion

Index of Deposition Exhibits

| | | |
|---|---|---|
| 11 | Crandall Declaration | 5/26/2006 |
| 17 | SCI Consolidated Financial Report | 12/31/2002 |
| 32 | Continuing Agreement of Indemnity | 4/2/1999 |
| 35 | Letter from Crandall to Langfitt | 6/22/2006 |
| 40 | First draft of Repayment Agreement | 8/1/2002 |
| 41 | Email from Langfitt to Christianson | 8/30/2002 |
| 43 | Guaranty Agreement | 12/6/2002 |
| 58 | Email from Hopkins to Spraker cc Gilmore & Olson | 6/6/2006 |
| 67 | Handwritten notes | 6/2/2003 |
| 78 | Letter from Sokol to Christianson | 11/17/2004 |
| 79 | Letter from Sokol to Christianson | 12/16/2004 |
| 80 | Email from Rosenfeld to Crandall cc Langfitt | 6/17/2003 |
| 81 | Letter from Crandall to Holmdahl | 10/20/2003 |
| 82 | Letter from Crandall to John Ferris | 10/3/2006 |
| 83 | Email from Sokol to Christianson cc Langfitt | 1/9/2004 |
| 86 | Email from Sokol to Christianson cc Langfitt | 2/9/2004 |
| 88 | Email from Sokol to Christianson cc Crandall | 2/13/2004 |
| 90 | Email from Langfitt to Crandall cc Sokol | 5/26/2004 |
| 120 | Email from Sokol to Langfitt cc Eckardt | 6/3/2003 |
| 121 | Email from Langfitt to Sokol & Rosenfeld | 9/9/2003 |
| 122 | Email from Langfitt to Sokol | 9/17/2003 |
| 123 | Minute Order | 4/13/2004 |
| 124 | Email from Sokol to Langfitt | 4/14/2004 |
| 127 | Email from Sokol to Langfitt cc Rosenfeld & Coleman | 6/21/2004 |
| 133 | Langfitt Affidavit - Statute of Limitations | 9/2/2005 |
| 143 | Email from Langfitt to Rosenfeld cc Eckardt & Sokol | 6/18/2003 |
| 144 | Email from Langfitt to Sokol | 5/10/2004 |
| 145 | Email from Rosenfeld to Langfitt | 7/21/2003 |
| 149 | Email from Langfitt to Lybeck | 5/5/2006 |
| 150 | Email from Sokol to Christianson cc Crandall & Langfitt | 2/13/2004 |
| 154 | Email from Langfitt to Crandall cc Langfitt & Eckardt | 7/2/2002 |
| 170 | Christianson & Spraker billing statements | |
| 181 | Letter from Christianson to KPMG | 7/6/2004 |
| 184 | Email from Christianson to Crandall | 6/19/2003 |
| 187 | Fax from Sokol to Christianson | 10/17/2003 |
| 189 | Memorandum from Crandall to Klukwan Board | 12/8/2003 |
| 196 | Letter from Christianson to Jurca, Wagner, Wuestenfeld, Keene, McKeever | 11/10/2004 |
| 209 | Stewart, Sokol & Gray Billing statements | |
| 210 | Email from Sokol to Coleman | 6/10/2004 |
| 219 | Email from Sokol to Langfitt cc Rosenfeld & Coleman | 8/4/2005 |
| 235 | Email from Rosenfeld to Sokol cc Langfitt | 6/8/2004 |

Defendants' Opposition to Motion for Summary Judgment and Cross Motion

Index of Deposition Exhibits

| | | |
|---|---|---|
| 244 | Email from Sokol to Langfitt | 3/10/2005 |
| 253 | Langfitt Affidavit - Sanctions | 7/25/2005 |
| 263 | Email Sokol to Langfitt | 12/24/2003 |
| 265 | Fax from Sokol to Christianson | 10/17/2003 |
| 301 | Response to Defendants' First Discovery Request | 2/6/2007 |

Case 3:06-cv-00063-TMB Document 31-1 Filed 05/26/2006 Page 1 of 14

Cabot Christianson, Esq.
Gary Spraker, Esq.
CHRISTIANSON & SPRAKER
911 W. 8th Avenue, Suite 201
Anchorage, AK 99501
Telephone: (907) 258-6016
Telefax: (907) 258-2026
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,

Plaintiff,

v.

SOUTH COAST, INC., an Alaska corporation, KLUKWAN, INC., and Alaska Native Village corporation, and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation,

Defendants.

Case No. A06-00063 (TMB)

SOUTH COAST, INC., an Alaska corporation, KLUKWAN, INC., and Alaska Native Village corporation, and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation,

Counter-Claim and Third Party Plaintiff,

v.

PENGAD 800-631-6989
DEPOSITION
EXHIBIT
#11

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, STEWART, SOKOL & GRAY L.L.C., THOMAS A LARKIN and JAN D. SOKOL, )

Counterclaimant and Third Party Defendants. )

## DECLARATION OF THOMAS L. CRANDALL

I, Thomas L. Crandall, hereby declare under penalty of perjury as follows:

1. My name is Thomas L. Crandall. I am president of Klukwan, Inc., a village corporation for the village of Klukwan, Alaska, organized pursuant to the Alaska Native Claims Settlement Act, 43 U. S. C. § 1601 *et seq*. I am also president of South Coast, Inc. and Chilkat's Portage Cove Development Company (CPCD), subsidiaries of Klukwan and also defendants, counterclaimants and third party-plaintiffs herein. I have personal knowledge of the facts stated in this affidavit.

2. Travelers Casualty and Surety Company of America (Travelers), or its predecessors, issued payment and performance bonds for a number of construction projects for South Coast, Inc., South Coast, Inc., dba Klukwan Contracting, (collectively, "South Coast"), Klukwan, Inc. (Klukwan), Klukwan Construction, Inc., Klukwan Forest Products, Inc., SouthCoast, Inc./Agate, Inc. (JV) and Klukwan Contracting/Agate, Inc. (JV).

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

3.     South Coast defaulted on a number of those projects causing South Coast to enter into an Acknowledgment of Default on those projects and assigned those project contracts to Travelers as part of an overall agreement to assist Travelers to minimize its losses and reduce South Coast's and Klukwan's liability by working together.

4.     Under the assignments, South Coast assigned to Travelers the rights to receive all progress payments, earned or unearned, retainages, whether in the form of Certificates of Deposit, escrow accounts, or similar instruments or accounts or claims for additional compensation or claims of any nature due or to become due under said bonded contracts. South Coast remained liable to Travelers for project losses incurred on the assigned projects under the Agreements of Indemnity.

5.     Defendants South Coast, Klukwan, and Chilkats' Portage Cove Development Company (CPC) entered into a *Repayment Agreement* dated December 6, 2002, with Travelers to establish the terms on which they would repay the losses on the bonded contracts. A true and accurate copy of the *Repayment Agreement* is attached hereto as Exhibit 1. The exhibits to the *Repayment Agreement* are voluminous and for the most part are not relevant to this litigation; therefore, only the Note, Exhibit B to the *Repayment Agreement*, is attached.

6.     As called for in the *Repayment Agreement*, South Coast signed that Note, prepared by Travelers, in the principal amount of $5,388,306.48, accruing at 6% annual interest for a term of just less than eight (8) years. As projected under the Note, principal

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

and interest payments would total $8,000,000. A true and accurate copy of the signed Note is attached as Exhibit 2.

7.      Travelers secured the Note with a variety of property owned by South Coast, Klukwan, and CPC, including a deed of trust on what is referred to as a tank farm owned by CPC, that Travelers agreed it would not foreclose upon in the event of a default.

8.      At the time the parties negotiated the *Repayment Agreement*, Travelers was uncertain as to the total amount of loss. The parties operated on the assumption that the total loss would be in excess of $8 million. Due to this uncertainty, and the Defendants' lack of opportunity to review the support for loss calculations, Travelers specifically represented in the *Repayment Agreement* that Travelers' loss on the bonded projects would be greater than $8 million. If Travelers' loss is less than $8 million, Travelers is obligated to credit the Note with the difference.

9.      I have not been provided with a final accounting which purports to establish the actual amount of the loss on the bonded contracts, net of receipts on the construction contracts at issue and net of any other appropriate credits. I have seen various interim summary accountings, but I have not been provided with a final accounting. The interim accountings I have seen have been summary in nature and have not had sufficient detail for me to determine how the amounts were calculated.

10.     An example of one of the last interim accountings I received is an e-mail dated March 17, 2005, from Marc Eckardt, claims counsel for Travelers. A true and accurate copy of the e-mail is attached as Exhibit 3.

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

11. Although Defendants have not had the opportunity to review the basis and support for Travelers' losses, I know of at least one situation where the stated losses included overbillings for which Defendants should have not been liable. As mentioned in the March 17, 2005 e-mail from Marc Eckhardt, West Construction over-charged Travelers $103,400.94 for equipment use on days when the equipment was not actually used. *See* Exhibit 3.

12. Given the amounts at issue, Defendants should have the opportunity to review Travelers' evidence of losses to ensure that it has properly calculated the amount of its losses. This review should include the solicitations and bids to complete the projects taken over by Travelers, as well as the operation and administration of the completion of those projects.

13. Under the Note, South Coast agreed to make payments beginning September 2004, and every May through November starting May 1, 2005.

14. South Coast made the first eight payments under the Note in the total amount of $450,000 (seven payments of $50,000 each, plus one payment of $100,000).

15. South Coast has also sold a few pieces of equipment, and applied the proceeds of those sales net of costs to the Note. Amount paid on the 50% of the Note is $18,035.00.

16. The *Repayment Agreement* also provided, at paragraph 12, that the settlement of the Chinle claim would be applied to the obligation created by the *Promissory Note.* The *Repayment Agreement* states that the claim was settled for $1.35

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

million. The final gross settlement amount was $1,483,030.46, before litigation costs. Travelers applied $1,421,828.99 to the Note as the proceeds net of litigation costs.

17. I have reviewed Travelers' motion for summary judgment seeking judgment in the amount $6,084,719.05. There is no accounting in either the motion or the *Affidavit of Charles Langfitt* which shows how this figure was arrived at. However, it is apparent to me that this amount is substantially in error.

18. Assuming that Travelers received the proceeds from the Chinle claim on January 1, 2003, and crediting the payments made when due, as of May 26, 2006, South Coast owes a total of $4,363,710.43 under the Note as shown on the spreadsheet attached as Exhibit 4 to this affidavit. Before any other offsets, adjustments, or counterclaims for the claims asserted against Travelers and Stewart, Sokol & Gray, Travelers has overstated the amounts owed under the Note (assuming the reasonableness of its losses) by $1,726,008.63.

19. I now know, from a review of some of the pleadings in *Travelers Casualty and Surety Company of America v. Gelbrich et al.*, Case No. 04-0165 (D. Alaska) in which Travelers sued Defendants' accountants, Peterson Sullivan, for negligence and misrepresentation, that Travelers contemplated a suit for professional negligence against Peterson Sullivan even before the *Repayment Agreement.*

20. I advised Charles Langfitt with Travelers and its counsel, Jan Sokol, that they should take a very long look at potential negligence claims against Defendants' accountants, Peterson Sullivan, for overstating South Coast's financial condition in its

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

financial statements as early as December 31, 2000, and other misstatements. I had come to the conclusion that South Coast had inadequate internal controls on its finances, and in light of that could not see how any audit could be performed. South Coast and Klukwan were considering its own negligence action against Peterson Sullivan.

21. Regardless of who brought the malpractice claims, any recovery would reduce Travelers' exposure on the bonds and would bring Travelers' loss closer to, and possibly under, the $8 million threshold contained in the *Repayment Agreement*. In that event, each dollar recovered against Peterson Sullivan would result in a one dollar reduction in the Note obligation. And of course, if the parties agreed or if the *Repayment Agreement* were construed such that a recovery against Peterson Sullivan was a credit to both the total Travelers' claim and to the Note, then the interests of Travelers and South Coast would be completely aligned with respect to a claim against Peterson Sullivan. The interests of Travelers and South Coast were aligned in this respect.

22. Travelers and its counsel, Jan Sokol of Stewart Sokol & Gray, wanted to obtain Peterson Sullivan's work papers before it filed the substantive negligence action. The law firm first approached me and asked that Klukwan, as Peterson Sullivan's client, request the work papers. Travelers' expert, Jordan Rosenfeld, prepared the letter requesting the documents for me to send out on Klukwan's behalf. A true and accurate copy of the forwarding e-mail from Mr. Rosenfeld with the body of the letter is attached as Exhibit 5. At Travelers' request, I sent the letter asking for Peterson Sullivan's work papers. Peterson Sullivan refused to produce the papers.

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

23. When Peterson Sullivan refused, Sokol prepared a *Petition to Require the Production of Documents Before Action*, Exhibit 6 hereto, on behalf of Klukwan, Inc. and Travelers. I and my attorney reviewed the *Petition* prior to it being filed and coordinated the matter with Travelers and its counsel.

24. Shortly before Sokol filed the *Petition* for Klukwan and Travelers, Klukwan and South Coast raised the issue of whether how the proceeds from any Peterson Sullivan claim would be applied. The question was whether the proceeds would: (a) be a direct credit to South Coast's liability under the Note, as well as to the Travelers claim, or (b) a credit to the Travelers claim and an indirect credit to the Note only if the proceeds reduced Travelers' total losses to under the $8 million threshold set by the *Repayment Agreement*. All parties recognized that this issue had not been addressed in the *Repayment Agreement.*

25. Klukwan conditioned approval of the *Petition* upon application of any proceeds from Peterson Sullivan directly to the Note. In an email from Cabot Christianson, Klukwan's attorney dealing with Travelers, dated February 10, 2004, stated in relevant part:

> Jan -
>
> These documents look good. I am forwarding them to Tom Crandall, and he will fax you the signature page.
>
> This email will confirm our previous conversations that Travelers will bear all the costs associated with bringing this suit and will indemnify Klukwan from any claims associated with the bringing or prosecution of this suit.

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

> If Travelers wishes to bring a substantive cause of action against P&S, Klukwan's expectation is that the net litigation proceeds from that suit will be applied first to the Klukwan/SCI note to Travelers. Also, as you are aware, Klukwan is considering its own action against P&S, and has developed some ideas about how to proceed. You and I should discuss.

A true and accurate copy of this e-mail is attached as Exhibit 7.

26. Sokol responded in an email dated February 13, 2004, which stated in relevant part:

> I revised the petition per Tom's email to me and forwarded to him on Wednesday the revised petition. I have no [sic] yet received his signature page. Yes Travelers will bear the costs in connection with bringing the discovery litigation in Federal Court. While we did not previously discuss indemnity (I'm not sure what claims your former accountants could bring; I'm assuming you are referring to costs, etc.) Travelers will indemnify Klukwan from claims by Peterson Sullivan directly related to this litigation.
>
> With respect to the third paragraph, I know Chuck [Charles Langfitt] and Tom [Crandall] have discussed this. While Travelers understands Klukwan's expectation, it is not consistent with the prior arrangements between Klukwan and Travelers. Rather than continuing to disagree at this point, let's get the petition filed and review the documents received. We may be disagreeing about nothing if the documents do not yet yield viable claims.

A true and accurate copy of the e-mail dated February 13, 2004 is attached as Exhibit 8.

27. Stewart Sokol & Gray filed the *Petition* in an action styled *In the Matter of the Petition of Klukwan, Inc. and Travelers Casualty and Surety Company of America*, Case No. MS04-014 (W.D. Wash) for discovery.

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

Case 3:06-cv-00063-TMB Document 31-1 Filed 05/26/2006 Page 10 of 14

28. Stewart Sokol & Gray represented both Klukwan and Travelers in the action against Peterson Sullivan, and filed the *Petition* on behalf of each. The court denied the request to compel turn over of the accountant's working papers. A true and accurate copy of the order denying the petition is attached as Exhibit 9.

29. I had numerous conversations with Travelers, some of which included Jan Sokol, about the negligence action against Peterson Sullivan, as well as breach of fiduciary duty claims against the prior officers and directors of South Coast both before and after the denial of the *Petition*. I wanted to make sure that the action against Peterson Sullivan was pursued, whether by Travelers, Klukwan, or both, to reduce any liability Defendants may have to Travelers.

30. I specifically recall a discussion with Chuck Langfitt on August 6, 2004, on the proposed officer and director action as well as the proposed Peterson Sullivan negligence suit. We specifically discussed whether Klukwan should join the action against Peterson Sullivan. We ultimately decided that Travelers should bring the action alone in its own name. As an unrelated third party, Travelers had a cleaner case against the accountants because its action avoided potential questions regarding a client's ability to sue its own accountant for failing to catch its errors. Klukwan's participation in the lawsuit was not considered to be critical because any recovery would benefit both Travelers and Defendants.

31. Defendants relied upon Travelers and Stewart Sokol & Gray, to timely and properly sue Peterson Sullivan on the negligence claims we had been discussing and

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

coordinating. Neither Travelers, nor Stewart Sokol & Gray, ever raised any question regarding the statute of limitations. There was no suggestion that Travelers' claims against Peterson Sullivan were time barred. If there had been any such indication, Klukwan would have either joined the action, or filed its own lawsuit.

32. On August 2, 2004, Stewart Sokol & Gray sued Peterson Sullivan on behalf of Travelers for negligence claiming damages of at least $8,876,788.68. A true and accurate copy of the Complaint filed against Peterson Sullivan, *Travelers Casualty and Surety Company of America v. Gelbrich et al.*, Case No. 04-0165 in the United States District Court for the District of Alaska, is attached separately to Defendants' Opposition to the Motion for Summary Judgment (Opposition) as Exhibit 3.

33. I do not understand the discrepancy between the $8,876,788.68 loss Travelers claimed in the Peterson Sullivan complaint, and the $11,339,518.10 loss detailed in Marc Eckardt's earlier e-mail to me.

34. On September 27, 2005, the District Court granted a motion for summary judgment against Travelers based upon its conclusion that the action was not timely filed. A true and correct copy of the *Order Granting Motion for Summary Judgment (Docket No. 118)* is attached separately as Opposition Exhibit 2.

35. South Coast made its last payment on the Note in September 2005.

36. Travelers has commenced the instant action to recover on the promissory note, and has filed its summary judgment motion claiming $6,084,719.05 in damages under the Note.

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

37. Travelers waited 20 days after filing the complaint in this case before serving it on Defendants.

38. On the 20th day Travelers also filed its motion for summary judgment.

39. Defendants have obtained two extensions of time to oppose the summary judgment, but no discovery has yet to take place. Rather, due to Defendants' counterclaims Travelers has retained new counsel, and Stewart Sokol & Gray have retained separate counsel. The parties have not yet conferred as to initial disclosures.

40. Defendants have not had sufficient time to organize its case or the opportunity to conduct discovery.

41. Although this is a contract case, the amount actually owed on that contract depends upon establishment of Travelers' losses and determination of its responsibility for not timely bringing the Peterson Sullivan action. These issues require discovery on the following broad issues: (1) the amount and reasonableness of Travelers' losses on the individual bonded contracts; (2) Travelers's failure to mitigate its losses, and its negligence, together with that of Stewart, Sokol & Gray, in failing to timely bring the Peterson Sullivan action to the extent it is not established as a matter of law; and (3) the damages caused by such failure to mitigate its losses and negligence.

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

FURTHER DECLARANT SAYETH NAUGHT.

Dated May 26, 2006.

Thomas L. Crandall

The undersigned hereby certifies that on May 26, 2006 a true and correct copy of the above document was served on:

- Thomas A. Larkin, Esq.
- Garth A. Schlemlein, Esq.
- Jan D. Sokol, Esq.
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047

by first class regular mail, to the address noted above, or by electronic means through the ECF system as indicated on the Notice of Electronic filing.

By: /s/ Susan VanSchooten
Susan VanSchooten

CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, #201 • ANCHORAGE, ALASKA 99501
(907) 258-6016 • Fax (907) 258-2026

PAGE 13 DECLARATION OF THOMAS CRANDALL - 3:06-CV-00063
H:\2501\TRAVELERS V SCOAST\CRANDALL DECLARATION REVISED.WPD

# EXHIBITS TO DECLARATION OF THOMAS L. CRANDALL

## TABLE OF CONTENTS

| Exhibit No. | Exhibit |
|---|---|
| 1 | Repayment Agreement |
| 2 | Promissory Note (executed) |
| 3 | Email from Marc Eckardt |
| 4 | Spreadsheet re: Amounts Payable under Note |
| 5 | E-mail from Jordan Rosenfeld |
| 6 | Petition to Require Production of Documents |
| 7 | E-mail from Cabot Christianson dated Feb. 10, 2004 |
| 8 | E-mail from Jan Sokol dated February 13, 2004. |
| 9 | Order Denying Petition |

# REPAYMENT AGREEMENT

This Agreement is made as of December 6, 2002 between Travelers Casualty & Surety Company of America (Travelers), South Coast, Inc., South Coast, Inc. dba Klukwan Contracting (for itself and as successor in interest to South Coast, Inc./Agate, Inc. (JV), (collectively SCI), Klukwan, Inc. (Klukwan) and Chilkats' Portage Cove Development Company (CPC).

WHEREAS:

Travelers has issued payment and performance bonds to SCI and its affiliates. Those bonds are now in default. Travelers is incurring expenses performing under those bonds and is looking to SCI and its affiliates for repayment. The parties hereto have entered into this Agreement in order to settle that repayment obligation.

NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1. Definitions.

Bonded Contract(s) shall mean any contract that is referenced or described in any Bond issued on behalf of any Klukwan Entity.

Event(s) of Default shall mean any one or more of the following:

a. Any default or failure to remit or distribute any funds when due or required by this Agreement, the Note or any other instrument or agreement between Travelers and SCI, Klukwan or CPC which is not cured within ten (10) business days of SCI, Klukwan and CPC receiving written notice from Travelers to cure; or

b. Failure to observe and perform any of the covenants or conditions of this Agreement, the Note or any other agreement or instrument between Travelers and SCI, Klukwan or CPC which is not cured within thirty (30) business days of SCI, Klukwan and CPC receiving written notice from Travelers to cure; or

c. The filing of a petition under any applicable provision of the Bankruptcy Code of 1978 or any amendments thereto, by or against SCI, Klukwan or CPC, or any of them which is not dismissed within sixty (60) days, the making by SCI, Klukwan or CPC, or any of them, of any assignment for the benefit of creditors, the filing of a federal or state tax lien against SCI, Klukwan or CPC, or any of them which is not satisfied in full within thirty (30) days; the filing of a petition for the appointment of a receiver or trustee with respect to SCI, Klukwan or CPC, or any of them, or the commencement of any proceeding by or against SCI, Klukwan or CPC, or any of them, under any reorganization, arrangement, readjustment of debts,

dissolution, liquidation or assignment for the benefit of creditors provided by the statute or law of any jurisdiction, which is not dismissed within sixty (60) days; or

d. The failure of SCI, Klukwan or CPC, or any of them, at the request of Travelers to furnish financial information, permit inspection or copying of books and records during regular business hours and after Travelers has first provided SCI, Klukwan or CPC, or any of them, with at least seven (7) business days prior written notice; or

e. The total assets or total liabilities of the Klukwan Entities are Materially Different than represented in Exhibit C; or

f. Any representation or warranty made by SCI, Klukwan or CPC or any of them, proves to have been inaccurate when made in any material respect.

Materially Different shall mean that the dollar value of the Klukwan Entities assets or liabilities vary in amount by ten (10) percent or more from the value as represented on Exhibit C, as of the date of Exhibit C.

Guaranty shall mean the guaranties executed by Klukwan and CPC substantially contemporaneously with this Agreement

2. Subject Matter of this Agreement. This Agreement covers the Continuing Agreements of Indemnity Contractor's Forms dated March 1, 1999, December 18, 1995 and February 23, 1996 (collectively "Indemnity Agreements") issued by SCI and its affiliates, in favor of Travelers or its predecessors in interest, and the Payment and Performance Bonds (Bonds) issued by Travelers listed on Exhibit A, concerning the construction contracts (Bonded Projects) listed thereon.

3. Mutual Cooperation. Travelers and SCI agree to cooperate, and provide each other with information and documentation, in order to minimizes Travelers' exposure under the Bonds and which enables SCI to be informed, on a regular basis, of Travelers' actual exposure under the Bonds. Upon reasonable request, each party agrees to provide the other with information and documentation concerning the status of payments under the Bonds and Bonded Contracts, and to provide each other with information as to payroll, material and supplies, labor, freight arrangements, overhead, and the like, together with appropriate backup documentation. These obligations of mutual cooperation shall be ongoing until the Bonded Contracts are complete and SCI's obligations under the Note have been performed. As and when requested by Travelers, SCI, Klukwan and CPC agree to execute all letters, instruments or agreements necessary to carryout the purposes and intent of this Agreement, including, but not limited to Takeover Agreements, Assignments, Acknowledgments of Default, Deeds of Trust and Security Agreements.

4. Travelers' Right to Bonded Contract Funds. SCI and Klukwan hereby reaffirm their Assignment to Travelers of all of their rights under the Bonded Contracts in accordance with the terms of the Indemnity Agreements, including, but not limited to, the right to receive all progress payments, earned or unearned, proceeds, retainages, whether in the form of Certificates of Deposit, escrow accounts, or similar instruments or accounts, and claims for additional compensation or claims of any nature (collectively "Contract Funds") due or to become due to SCI or Klukwan under the Bonded Contracts. SCI and Klukwan further acknowledge Travelers right to the Contract Funds pursuant to Travelers' equitable right of subrogation. SCI and Klukwan shall furnish to the Travelers a complete written narrative of any claims for additional compensation or claims of any nature and all material documents which substantiate and backup these claims. SCI and Klukwan will further assist in the presentation of any and all such claims. SCI and Klukwan irrevocably grant to Travelers the right to act as attorney-in-fact for SCI and Klukwan to demand receipt of, commence suit, settle, compromise or adjust any and all claims SCI and Klukwan have or may have against any party with respect to the Bonded Contract(s), including providing releases or satisfaction therefore, except for the Chinle claim. The settlement authority for the Chinle claim is governed by paragraph 12 of this Agreement.

5. Power of Attorney/Settlement Rights. SCI, Klukwan and CPC hereby irrevocably nominate Travelers their true lawful attorney-in-fact, with full right and authority to execute on behalf of, and sign the names of each to any voucher, release, satisfaction, check, bill of sale or any other paper or contract necessary or desired to carry into effect the purposes of this Agreement. Further, SCI, Klukwan and CPC irrevocably grant Travelers the right to act as their attorney-in-fact to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, including, but not limited to, the payment of any attorney's fees or costs in prosecuting or defending any claim, demand, suit or judgment, as Travelers deems appropriate in its sole discretion, and whether or not SCI, Klukwan or CPC agree with Travelers' decision.

6. Time. Time is the essence of this Agreement and a material consideration.

7. Waiver/Automatic Stay. In partial consideration (and as new value) for this Agreement and Travelers' forebearances, and in the event that SCI, Klukwan or CPC, or any of them, are the subject of any insolvency, bankruptcy, receivership, dissolution, reorganization or similar proceeding under Federal or State law, voluntary or involuntary, then:

a. SCI, Klukwan or CPC, or any of them, shall not assert, or request any other party to assert, that the automatic stay provisions provided under 11 U.S.C. § 362 shall operate, or be interpreted to operate, to stay, modify, preempt, condition, reduce or limit the ability of Travelers to enforce any rights it has by virtue of this Agreement, the Indemnity Agreements, or any other agreement or instrument between Travelers and SCI, Klukwan, CPC, or any of them, or at law or in equity, or any other rights Travelers has now or may hereafter acquire against SCI, Klukwan or CPC, or any of them, or the collateral; and



b. Travelers shall be entitled to the automatic and absolute lifting of and relief from any automatic stay imposed by § 362, Title 11 of the U.S. Code, as amended, or otherwise, on or against the exercise of the rights and remedies otherwise available to Travelers; andc. Travelers shall be entitled, and SCI, Klukwan and CPC, hereby irrevocably consent to an order granting relief from any and all stays, and equitable relief under 11 U.S.C. § 105, or other applicable law, in order to permit Travelers to foreclose upon any collateral and to exercise any and all other rights and remedies of Travelers under this Agreement, the Indemnity Agreement, or other agreements or instruments between Travelers and SCI, Klukwan and CPC, or at law or in equity, and SCI, Klukwan and CPC hereby irrevocably waive any right to object to such relief.

8. Waiver of Klukwan and CPC Rights Against SCI. Klukwan and CPC hereby waive any claim, right or remedy which Klukwan or CPC may now have or hereafter acquire against SCI that arises hereunder, under the Guaranty, the Indemnity Agreements, or by operation of law, and/or from the performance by Klukwan or CPC hereunder, under the Guaranty, the Indemnity Agreements, or by operation of law, including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Travelers against SCI or any security or collateral which Travelers now has or hereafter acquires, and whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, by operation of law or otherwise.

9. Note. In reliance upon Travelers' representation that its total liability under the Bonds, net of all receipts from the Bonded Contracts, will exceed $8 million, SCI shall execute a Note, in the form attached as Exhibit B, in the amount $5,388.306.48, which calls for payments to Travelers totaling $8 million, payable on the terms set forth therein. In the event that Travelers' total loss, net of all receipts from the Bonded Contracts, is less than $8 million, Travelers shall credit the Note with the amount of the difference.

10. Security.

a. As security for payment of the Note, SCI shall execute, or arrange for the execution, of the following security instruments which shall encumber the following assets owned by SCI, Klukwan, and CPC:

| Collateral | Owner | Exhibit |
|---|---|---|
| All of net proceeds of Chinle claim | SCI | G-1 |
| Stock in Atlas Alaska, Inc. | Klukwan | G-2 |
| 1/2 of net equipment proceeds | SCI | G-1 |
| 3rd deed of trust on Juneau office building | Klukwan | H |
| Deed of Trust on Jones Point property | Klukwan | H |
| 2d deed of trust on SCI Ketchikan property | SCI | J |
| Deed of trust on tank farm property | CPC | I |

b. In the event that Travelers receives payment on account of the sale or refinancing of the foregoing collateral, such payments shall be a credit to the principal amount owed on the Note but shall not reduce the amount of the monthly payments due on the Note.

c. Except as provided in paragraph 12 concerning the Chinle claim, the parties agree that the owner of the collateral identified in each security agreements and deeds of trust given to secure payment of the Note shall retain full control over the collateral, and shall have full rights to refinance the collateral and accept or reject any offers of purchase. Travelers agrees to subordinate its security interest to any new financing, provided that Travelers receives all the proceeds of such financing net of payment to senior secured liens on the collateral. Travelers also agrees to release its security interests in the event of a sale of the collateral, and agrees to execute appropriate UCC-3's or requests for reconveyance or other such documents, provided that the sale is to a bona fide third party and that Travelers receives all sale proceeds (or, in the case of SCI equipment, one-half of the sale proceeds), net of closing costs, real estate commissions, and payments to senior secured liens on the collateral. SCI, Klukwan and CPC represent that equipment sales have occurred which may yield $200,000 for Travelers.

d. The deed of trust on the tank farm property shall contain a provision prohibiting Travelers from foreclosing on the property in the event of default. Traveler's deed of trust on the property shall entitle it to proceeds from sale or refinance of the property as provided above.

e. Where noted above, SCI, Klukwan and CPC represent that they are the sole owners of the foregoing collateral. SCI, Klukwan and CPC also agree to defend, indemnify and hold harmless Travelers with respect to any claims, demands, liability, loss, costs, expenses or attorney's fees related to, or arising from the collateral, or title thereto, or the pledging thereof, made or presented by any person against Travelers, including, but not limited to any persons claiming adversely to any of them or Travelers, but other than a senior secured lien holder with a security interest preceding Travelers' security interest in the collateral. SCI, Klukwan and CPC further agree that Travelers shall have no obligation to do so but may, upon breach or default by SCI, Klukwan or CPC under the Note or this Agreement, collect principal, interest or dividends, exercise any rights or options of SCI, Klukwan or CPC and make presentment, demand or protest, give notice of protest, non-acceptance or nonpayment, or perform any act for the protection, enforcement, collection or liquidation of the collateral.

11. Satisfaction of liability. Except as otherwise provided in this paragraph of this Agreement, and paragraph 14 hereof, delivery of the Note and security instruments to Travelers as set forth above shall constitute full and final satisfaction of the all the claims against, or liabilities of, SCI, Klukwan and CPC, and all persons and entities named in the Indemnity Agreements, and their affiliates (collectively, Klukwan Entities) relating to or arising out of the Indemnity Agreements, Bonds or the Bonded Contracts, and without regard to the total loss experienced by Travelers in connection with the Bonds and Bonded Contracts. However, if either SCI, Klukwan or CPC, or any of them, file a voluntary petition in bankruptcy, which is not dismissed within sixty (60) days, then the delivery of the Note and security instruments to

Travelers shall not constitute full and final satisfaction of the Klukwan Entities liability to Travelers. Instead all payments received by Travelers on account of the Note shall be applied instead to the Indemnity Agreements, and the Klukwan Entities shall be liable to Travelers according to the terms of the Indemnity Agreement. If, however, an involuntary petition in bankruptcy is filed against any one or more of the Klukwan Entities, or there is an order of relief entered against the Klukwan Entities, or any one of them following an involuntary petition which is not dismissed within sixty (60) days, and if there are no existing or subsequent payment defaults under the Note, which Note must be paid in full by one or all of the Klukwan Entities (or their Bankruptcy Estates) then delivery of the Note and security instruments to Travelers shall constitute full and final satisfaction of the Klukwan Entities liability to Travelers, if the Note is paid in full. The foregoing provision shall have no effect if the Klukwan Entities or any one of them, directly or indirectly, causes, encourages or procures, in any manner, the filing of an involuntary petition in bankruptcy. This Agreement and the preceding sentences do not impair or release Travelers' claims or causes of action against any person or entity other than the Klukwan Entities.

12. Chinle claim. The Chinle claim has settled for $1,350,000, plus interest and SCI has directed the Owner to remit the settlement funds to Travelers. Those funds, net of attorneys fees or other litigation costs paid by Travelers, shall be credited to the Note.

13. Financial Representations. The Klukwan Entities have furnished sworn to financial statements. Attached as Exhibit C are true and accurate Financial Statements. By Exhibit C, the Klukwan Entities acknowledge their Financial Statements fully and truly represent the assets and liabilities of the Klukwan Entities as of the date of the execution of this Agreement. SCI, Klukwan and CPC acknowledge that Travelers is relying upon the accuracy of these financial representations as to the Klukwan Entities' current financial condition in entering into this Agreement. This representation is a material consideration for Travelers agreeing to the repayment terms set forth in this Agreement. If the Klukwan Entities' future assets or total liabilities are Materially Different than represented in Exhibit C, then that difference is an Event of Default. The Klukwan Entities further represent that any timber cutting rights, of any nature or description, vested or unvested, are not subject to alienation by operation of applicable law.

14. K-Ply Bond. Travelers furnished Bond #U2428106 in the amount of at least $114,003.96 on behalf of K-Ply, Inc., in favor of the Port of Port Angeles (K-Ply Bond). This Agreement does not apply to the K-Ply Bond. Instead, the Indemnity Agreement, and Travelers rights of reimbursement, exoneration and subrogation apply to K-Ply, Inc., and the K-Ply Bond. Travelers has advised K-Ply, Inc., through Klukwan, that Travelers is canceling the K-Ply Bond.

15. Equipment and Materials – Release. SCI and Klukwan have negotiated with Travelers about equipment usage and material. In partial consideration for this Agreement, SCI and Klukwan hereby release any and all claims of any nature against Travelers related to equipment charges and usage, including, but not limited to hot plants or other equipment, and whether any such claims are against contractors completing the projects for Travelers or directly

against Travelers, or otherwise. The foregoing does not prohibit Travelers and Klukwan from subsequently consummating their negotiations for equipment utilization agreements for the Unalaska Marine Center United States Coast Guard Dock project. SCI and Klukwan hereby release any and all claims of any nature related to material furnished or supplied to any of the Bonded Contracts. SCI and Klukwan shall cause all the Klukwan Entities to execute a release in the same form as Exhibit D. This foregoing release covers all claims of any nature against Travelers related to or concerning equipment charges and usage and material.

16. Litigation. There is no action, suit or proceeding pending against, or to the knowledge of SCI, Klukwan or CPC threatened against or affecting, any of the Klukwan Entities, before any court or arbitrator or any government body, agency or official in which there is a reasonable possibility of an adverse decision which could materially adversely affect the business, financial position or results of operations of Klukwan Entities and their subsidiaries or which in any manner draws into question the validity of this Agreement except those matters referred to in Exhibit E attached hereto and made a part hereof.

17. Books and Records. Until SCI, Klukwan and CPC have fully performed all their obligations under this Agreement, the Note, and the Guaranty, Travelers shall have the right, upon at least seven (7) business days written notice, to free access to the papers of the Klukwan Entities, including, without limitation, their books, records, accounts, computer software and other computer stored information, for the purpose of examining, copying or reproducing the same. Klukwan shall cause the Klukwan Entities to retain and not dispose of all of the aforementioned papers without Travelers express prior written approval.

18. Non-Waiver/Conduct. Each and every right, remedy and power hereby granted to Travelers or allowed it by law or other agreement shall be cumulative and shall not be exclusive of any other right, remedy and power, and may be exercised by Travelers concurrently, consecutively, or separately at any time and from time to time, in Travelers' sole discretion. No failure or neglect on the part of Travelers to exercise, and no delay in exercising any right, remedy or power hereunder or any other agreement, or any other document executed and delivered to Travelers in connection herewith, shall in any way release or reduce the liability of SCI, Klukwan or CPC to Travelers hereunder, or under the Note or Guaranty, or in any way reduce, condition or limit the obligations of SCI, Klukwan or CPC hereunder to Travelers. Neither this Agreement nor any course of conduct of the parties pursuant thereto shall be construed to establish rights of any party not a party to this Agreement.

19. Opinion of Counsel. SCI, Klukwan and CPC shall furnish an opinion of counsel satisfactory in form to Travelers, which opines as to, and confirms the authority of SCI, Klukwan and CPC, their signatures, the enforceability of this Agreement and related agreements or instruments, and the absence of legal impediments to this Agreement and the related agreements and instruments. The opinion of counsel shall be substantially in the form of Exhibit F, subject to standard qualifications and from a firm acceptable to Travelers.

20. Event(s) of Default/Remedies. SCI, Klukwan and CPC agree that upon the occurrence of an Event(s) of Default, Travelers has, but is not limited to, the following remedies:

a. Any and all indebtedness under this Agreement, the Note, the Guaranty, or under any other agreements or instruments between Travelers, SCI, Klukwan, or CPC, or any other obligations of any of them to Travelers, shall, at the election of Travelers, become immediately due and payable and Travelers may exercise such rights in the collateral as Travelers has under this Agreement, the Note, Deeds of Trust or any other agreement or instrument between Travelers and SCI, Klukwan or CPC, or any applicable law or statute.

b. Furthermore, Travelers shall have and shall be entitled to exercise some or any or all of its rights and remedies under this Agreement, the Guaranty, or under any other agreement or instrument which has been or which may hereafter be executed and delivered to Travelers by SCI, Klukwan or CPC, as well as any and all rights and remedies Travelers may have under any applicable law or statute. SCI, Klukwan and CPC expressly waive presentment, demand, Notice of Default, protest or other notice.

21. Notice. When this Agreement calls for notice to Klukwan, Inc., South Coast, Inc. or Chilkats' Portage Cove Development Company, such notice shall be in writing and shall be given to that entity by regular mail, with fax attempted, at:

P. O. Box 32077
Juneau, AK 99801
Fax: (907) 789-3525

and to:

Cabot Christianson, Esq.
911 West 8th Ave., Suite 302
Anchorage, AK 99501
Fax: (907) 258-1016

When this Agreement calls for notice to be given to Travelers, such notice shall be in writing and shall be given by regular mail, with fax attempted, at:

Charles W. Langfitt
Vice President, Bond Claims Department
3455 S. 344th Way, Suite 200
Auburn, WA 98001
Fax: (253) 946-7156

These addresses and fax numbers may be changed upon written notice to the other parties.

22. Further assurances. Both parties agree to execute such additional documents as may be necessary or appropriate to carry out the intent of this Agreement.

23. Entire agreement; amendment. This is the entire agreement between the parties with respect to the subject matter of this Agreement. This Agreement may not be amended except in writing.

24. Rule of construction. Both parties are represented by counsel or have the benefit of counsel, and have contributed toward the drafting of this Agreement. Accordingly, the rule of construction that a document is construed against its drafter shall not apply.

25. Corporate approval. This Agreement has been approved by the Boards of Directors of SCI, Klukwan, and CPC.

26. Validity of Agreement. Failure to execute, or defective execution, by any party shall not affect the validity of this Agreement as to any other party executing the same and each other party shall remain fully bound and liable hereunder. Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portions invalid.

27. AS 10.20.280 Effect of. Travelers, SCI, Klukwan and CPC do not believe that AS 10.20.280, affects, in any respect, this Agreement or any of the security instruments provided for in paragraph 10 of this Agreement, or otherwise. In the unlikely event that in a subsequent proceeding this Agreement, or any part thereof, or any of the aforementioned security agreement, or any part thereof, are determined to be void, voidable or otherwise unenforceable, then the Indemnity Agreements shall be fully enforceable against the Klukwan Entities and the signatories to this Agreement, just as if this Agreement had never been executed. The signatories to this Agreement waive and agree not to raise any defenses of any nature to the enforcement of the Indemnity Agreements, including, but not limited to, any statute of limitations.

Executed ~~December~~ [handwritten: January 23, 2003] ____, ~~2002~~ by: Travelers Casualty & Surety Company of America

By [signature]
Charles W. Langfitt, Vice President

Case 3:06-cv-00063-TMB Document 31-2 Filed 05/__/2006 Page 10 of 13

Executed December 14, 2002 by: South Coast, Inc.
South Coast, Inc., dba Klukwan Contracting, (for itself and as successor in interest to South Coast, Inc./Agate, Inc. (JV)

By ______________________
Thomas Crandall, President

Executed December 14, 2002 by: Klukwan, Inc.

By ______________________
Thomas Crandall, President

Executed December 14, 2002 by: Chilkats' Portage Cove Development Company

By ______________________
William W. Fletcher, President

List of Exhibits:

A Bonds and Bonded Contracts
B Note
C Sworn to Financial Statements
D Release re: Equipment & Material
E Litigation Schedule
F Opinion of counsel
G Security Agreement/Pledge Agreements executed by SCI covering Chinle claim, Equipment and Atlas Alaska, Inc. Stock
H 3rd deed of trust on Klukwan's Juneau office building and Jones Point property
I Deed of Trust on CPC's tank farm property
J 2d deed of trust on SCI Ketchikan property

Exhibit B
to Repayment Agreement

PROMISSORY NOTE

$5,388,306.48 December 6, 2002

FOR VALUE RECEIVED, the undersigned, SOUTH COAST, INC., SOUTH COAST, INC. dba KLUKWAN CONTRACTING (for itself and as successor in interest to South Coast, Inc./Agate, Inc. (JV)), ("Maker"), promises to pay to the order of TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA ("Payee"), at Auburn, WA or at such other place as the holder hereof may from time to time designate in writing, in lawful money of the United States of America, the principal sum of FIVE MILLION, THREE HUNDRED EIGHTY EIGHT THOUSAND, THREE HUNDRED SIX DOLLARS AND FORTY EIGHT CENTS ($5,388,306.48), plus interest accruing at the rate of six percent (6%) per annum beginning September, 1, 2002, payable on the following schedule:

| | |
|---|---|
| September 1, 2004 | $ 50,000 |
| October 1, 2004 | $ 50,000 |
| November 1, 2004 | $ 50,000 |
| May 1, 2005 | $ 50,000 |
| June 1, 2005 | $ 50,000 |
| July 1, 2005 | $ 50,000 |
| August 1, 2005 | $ 50,000 |
| September 1, 2005 | $ 100,000 |
| October 1, 2005 | $100,000 |
| November 1, 2005 | $100,000 |
| May 1, 2006 | $ 100,000 |
| June 1, 2006 | $ 100,000 |
| July 1, 2006 | $ 100,000 |
| August 1, 2006 | $ 100,000 |
| September 1, 2006 | $ 100,000 |
| October 1, 2006 | $ 100,000 |
| November 1, 2006 | $ 100,000 |
| May 1, 2007 | $ 100,000 |
| June 1, 2007 | $ 100,000 |
| July 1, 2007 | $ 100,000 |
| August 1, 2007 | $ 100,000 |
| September 1, 2007 | $ 100,000 |
| October 1, 2007 | $ 100,000 |
| November 1, 2007 | $ 100,000 |
| May 1, 2008 | $ 100,000 |

Exhibit B
to Repayment Agreement

| | |
|---|---|
| June 1, 2008 | $ 100,000 |
| July 1, 2008 | $ 100,000 |
| August 1, 2008 | $ 100,000 |
| September 1, 2008 | $ 100,000 |
| October 1, 2008 | $ 100,000 |
| November 1, 2008 | $ 100,000 |
| | |
| May 1, 2009 | $ 100,000 |
| June 1, 2009 | $ 100,000 |
| July 1, 2009 | $ 100,000 |
| August 1, 2009 | $ 100,000 |
| September 1, 2009 | $ 100,000 |
| October 1, 2009 | $ 100,000 |
| November 1, 2009 | $ 100,000 |
| | |
| May 1, 2010 | $ 100,000 |
| June 1, 2010 | $ 100,000 |
| July 1, 2010 | $ 100,000 |
| August 1, 2010 | $ 4,250,000 |
| Total | $ 8,000,000 |

This Note pay be prepaid in whole or in part, but any prepayments shall be a dollar for dollar credit to the last payments due under the Note as opposed to a credit to the principal amount of the Note. In order for this Note to be discharged, Payee must have received payments totaling $8,000,000.

This Note is made pursuant to an Agreement between the parties of even date and is to be interpreted consistently with that Agreement.

From time to time the maturity date of this Note may be extended or this Note may be renewed, in whole or in part, a new note of different form may be substituted for this Note and/or the rate of interest may be changed, or changes may be made in consideration of loan extensions, and the holder, from time to time, may waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrences shall in any manner affect, limit, modify or otherwise impair any rights, guarantees or security of the holder not specifically waived, released or surrendered in writing, nor shall Maker or any guarantor, endorser or any person who is or might be liable hereon or herefor, either primarily or contingently, be released from such liability by reason of any such occurrence. The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon or herefor; and such releases shall not affect or discharge the liability of any other person who is or might be liable hereon or herefor.

This Note shall be assignable by Payee.

Exhibit B
to Repayment Agreement

If any payment required by this Note is not made when due, or if any default occurs under the provisions of any mortgage, security agreement, assignment, pledge or other document or agreement which provides security for the indebtedness evidenced by this Note, the holder hereof may, at its option, declare this Note in default and if such default remains uncured ten (10) business days following written notice of default to Maker, then all indebtedness due and owing hereunder shall, upon written demand, become immediately due and payable, together with interest from the date of default.

The Maker and all endorsers, guarantors and sureties hereby severally waive protest, presentment, demand, and notice of protest and nonpayment in case this Note or any payment due hereunder is not paid when due; and they agree to any renewal of this Note or to any extension, acceleration or postponement of the time of payment, or any other indulgence, to any substitution, exchange or release of collateral and to the release of any party or person primarily or contingently liable herefor, without prejudice to the holder and without notice to Maker, or to any endorser, guarantor or surety. Maker and any guarantor, endorser, surety or any other person who is or may become liable hereon will, on demand, pay all costs of collection, including reasonable attorney fees of the holder hereunder.

The Maker is personally obligated and fully liable for the amount due under this Note. The Payee has the right to sue on the Note and obtain a personal judgment against the Maker for satisfaction of the amount due under the Note either before or after a judicial foreclosure of the deed of trust under AS 09.45.170-09.45.220. Reference AS 34.20.160(b).

This Note is delivered and accepted in the State of Alaska and shall be governed by and construed in accordance with the laws of said State. Any suit or proceeding arising from or seeking to enforce this Note shall be litigated in courts sitting in Alaska.

Executed December ____, 2002, as of December 6, 2002.

**South Coast, Inc.**
**South Coast, Inc. dba Klukwan Contracting**
**(for itself and as successor in interest to**
**South Coast, Inc./Agate, Inc. (JV)**

By:______________________________
Thomas L. Crandall, President

Case 3:06-cv-0(--)3-TMB Document 31-3 Filed 0( )6/2006 Page 1 of 3

Exhibit B
to Repayment Agreement

PROMISSORY NOTE

$5,388,306.48 December 6, 2002

FOR VALUE RECEIVED, the undersigned, SOUTH COAST, INC., SOUTH COAST, INC. dba KLUKWAN CONTRACTING (for itself and as successor in interest to South Coast, Inc./Agate, Inc. (JV)), ("Maker"), promises to pay to the order of TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA ("Payee"), at Auburn, WA or at such other place as the holder hereof may from time to time designate in writing, in lawful money of the United States of America, the principal sum of FIVE MILLION, THREE HUNDRED EIGHTY EIGHT THOUSAND, THREE HUNDRED SIX DOLLARS AND FORTY EIGHT CENTS ($5,388,306.48), plus interest accruing at the rate of six percent (6%) per annum beginning September, 1, 2002, payable on the following schedule:

| | |
|---|---|
| September 1, 2004 | $ 50,000 |
| October 1, 2004 | $ 50,000 |
| November 1, 2004 | $ 50,000 |
| May 1, 2005 | $ 50,000 |
| June 1, 2005 | $ 50,000 |
| July 1, 2005 | $ 50,000 |
| August 1, 2005 | $ 50,000 |
| September 1, 2005 | $ 100,000 |
| October 1, 2005 | $100,000 |
| November 1, 2005 | $100,000 |
| May 1, 2006 | $ 100,000 |
| June 1, 2006 | $ 100,000 |
| July 1, 2006 | $ 100,000 |
| August 1, 2006 | $ 100,000 |
| September 1, 2006 | $ 100,000 |
| October 1, 2006 | $ 100,000 |
| November 1, 2006 | $ 100,000 |
| May 1, 2007 | $ 100,000 |
| June 1, 2007 | $ 100,000 |
| July 1, 2007 | $ 100,000 |
| August 1, 2007 | $ 100,000 |
| September 1, 2007 | $ 100,000 |
| October 1, 2007 | $ 100,000 |
| November 1, 2007 | $ 100,000 |
| May 1, 2008 | $ 100,000 |

Exhibit B
to Repayment Agreement

| | |
|---|---|
| June 1, 2008 | $ 100,000 |
| July 1, 2008 | $ 100,000 |
| August 1, 2008 | $ 100,000 |
| September 1, 2008 | $ 100,000 |
| October 1, 2008 | $ 100,000 |
| November 1, 2008 | $ 100,000 |
| | |
| May 1, 2009 | $ 100,000 |
| June 1, 2009 | $ 100,000 |
| July 1, 2009 | $ 100,000 |
| August 1, 2009 | $ 100,000 |
| September 1, 2009 | $ 100,000 |
| October 1, 2009 | $ 100,000 |
| November 1, 2009 | $ 100,000 |
| | |
| May 1, 2010 | $ 100,000 |
| June 1, 2010 | $ 100,000 |
| July 1, 2010 | $ 100,000 |
| August 1, 2010 | $ 4,250,000 |
| | |
| Total | $ 8,000,000 |

This Note pay be prepaid in whole or in part, but any prepayments shall be a dollar for dollar credit to the last payments due under the Note as opposed to a credit to the principal amount of the Note. In order for this Note to be discharged, Payee must have received payments totaling $8,000,000.

This Note is made pursuant to an Agreement between the parties of even date and is to be interpreted consistently with that Agreement.

From time to time the maturity date of this Note may be extended or this Note may be renewed, in whole or in part, a new note of different form may be substituted for this Note and/or the rate of interest may be changed, or changes may be made in consideration of loan extensions, and the holder, from time to time, may waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrences shall in any manner affect, limit, modify or otherwise impair any rights, guarantees or security of the holder not specifically waived, released or surrendered in writing, nor shall Maker or any guarantor, endorser or any person who is or might be liable hereon or herefor, either primarily or contingently, be released from such liability by reason of any such occurrence. The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon or herefor; and such releases shall not affect or discharge the liability of any other person who is or might be liable hereon or herefor.

This Note shall be assignable by Payee.

Exhibit B
to Repayment Agreement

If any payment required by this Note is not made when due, or if any default occurs under the provisions of any mortgage, security agreement, assignment, pledge or other document or agreement which provides security for the indebtedness evidenced by this Note, the holder hereof may, at its option, declare this Note in default and if such default remains uncured ten (10) business days following written notice of default to Maker, then all indebtedness due and owing hereunder shall, upon written demand, become immediately due and payable, together with interest from the date of default.

The Maker and all endorsers, guarantors and sureties hereby severally waive protest, presentment, demand, and notice of protest and nonpayment in case this Note or any payment due hereunder is not paid when due; and they agree to any renewal of this Note or to any extension, acceleration or postponement of the time of payment, or any other indulgence, to any substitution, exchange or release of collateral and to the release of any party or person primarily or contingently liable herefor, without prejudice to the holder and without notice to Maker, or to any endorser, guarantor or surety. Maker and any guarantor, endorser, surety or any other person who is or may become liable hereon will, on demand, pay all costs of collection, including reasonable attorney fees of the holder hereunder.

The Maker is personally obligated and fully liable for the amount due under this Note. The Payee has the right to sue on the Note and obtain a personal judgment against the Maker for satisfaction of the amount due under the Note either before or after a judicial foreclosure of the deed of trust under AS 09.45.170-09.45.220. Reference AS 34.20.160(b).

This Note is delivered and accepted in the State of Alaska and shall be governed by and construed in accordance with the laws of said State. Any suit or proceeding arising from or seeking to enforce this Note shall be litigated in courts sitting in Alaska.

Executed December 14, 2002, as of December 6, 2002.

**South Coast, Inc.**
**South Coast, Inc. dba Klukwan Contracting**
**(for itself and as successor in interest to**
**South Coast, Inc./Agate, Inc. (JV)**

By: ______________________
Thomas L. Crandall, President

**;abot Christianson**

**From:** "Tom Crandall" <tomc@klukwan.com>
**To:** "'Eckardt,Marc A.'" <MECKARDT@stpaultravelers.com>
**Cc:** <cabot@cbslawyers.com>; <karent@klukwan.com>
**Sent:** Thursday, March 17, 2005 2:37 PM
**Subject:** RE: Items needed

Marc,

On the net paid to date, I need the detail that your accountant has given us in the past. That way I can determine which vendors have been paid and which one haven't and adjust SCI's a/p accordingly.

I show the Chinle proceeds at $1,421,828.99. How did you get from there to $1,330,388.60? If this is the attorney fees to Machatanz and Blasco, are the fees also included in the net paid to date?

Did you send the confirmation to KPMG?

Did you send me the details on the West Construction? Is the repayment included in the net paid to date? Also, I seem to recall that the West Construction agreement to complete the job on the Dutch Harbor dock was a time and materials and not to exceed amount. Could you send me a copy of the contract? Also, how did the payments to West compare to the other bids to complete the job. Did we get the best outcome?

Tom

---

**From:** Eckardt,Marc A. [mailto:MECKARDT@stpaultravelers.com]
**¯¯nt:** Thursday, March 17, 2005 12:47 PM
tomc@klukwan.com
**..oject:** RE: Items needed

Tom,

Sorry for the delay. I was planning to get this to you yesterday, but 50 new trees arrived at my house and I had to get them in the ground.

Here it is:

1. Net Paid to Date: $11,339,518.10

| | |
|---|---|
| Gross Paid to Date: | $ 26,133,275.52 |
| Misc. Credit: | ($12,482,280.05) |
| Salvage: | ($ 2,311,477.37) |

2. Amount Due Travelers: $6,519,611.40

| | |
|---|---|
| Promissory Note: | $8,000,000.00 |
| Monthly Payments: | $ 150,000.00 |
| Chinle Proceeds: | $1,330,388.60 |

3. West Construction's Overcharge to Travelers: $103,400.94

West's accountant billed for equipment on days when equipment wasn't used.

If you have any questions, give me a call.

rds,

EXHIBIT 3 Page 1 of 2

arc Eckardt

-----Original Message-----
**From:** Tom Crandall [mailto:tomc@klukwan.com]
**Sent:** Thursday, March 17, 2005 10:44 AM
**To:** Eckardt,Marc A.
**Subject:** Items needed

Marc,

I'm still waiting for:

A payment and receipt recap on what St. Paul Travelers paid on behalf of South Coast.
A confirmation on the amount still owed St. Paul Travelers.
Information on the overpayment by West Construction.

The lack of the above is holding up our audit.

Tom

--
No virus found in this outgoing message.
Checked by AVG Anti-Virus.
Version: 7.0.308 / Virus Database: 266.7.2 - Release Date: 3/11/2005

---

is communication, together with any attachments hereto or links contained herein, is for the sole use of the intended ecipient(s) and may contain information that is confidential or legally protected. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by return e-mail message and delete the original and all copies of the communication, along with any attachments hereto or links herein, from your system.

---

The St. Paul Travelers e-mail system made this annotation on 03/17/05, 16:46:52.

--
No virus found in this incoming message.
Checked by AVG Anti-Virus.
Version: 7.0.308 / Virus Database: 266.7.2 - Release Date: 3/11/2005

--
No virus found in this outgoing message.
Checked by AVG Anti-Virus.
Version: 7.0.308 / Virus Database: 266.7.2 - Release Date: 3/11/2005

# CALCULATION OF AMOUNTS OWED UNDER SOUTH COAST, INC. PROMISSORY NOTE EXHIBIT NO. 4

| Date | | Interest @ 6% | Payments | Balance |
|---|---|---|---|---|
| 12/6/2002 | Note amount | | | $ 5,388,306.48 |
| 1/1/2003 | Chinle credit | $ 23,029.47 | $ 1,421,828.99 | $ 3,989,506.96 |
| 1/31/2003 | Equipment Proceeds | $ 19,674.28 | $ 2,700.00 | $ 4,006,481.25 |
| 2/10/2003 | Equipment Proceeds | $ 6,586.00 | $ 7,600.00 | $ 4,005,467.24 |
| 2/10/2003 | Equipment Proceeds | $ - | $ 5,500.00 | $ 3,999,967.24 |
| 3/7/2003 | Equipment Proceeds | $ 16,438.22 | $ 2,235.00 | $ 4,014,170.46 |
| 9/1/2004 | Payment | $ 358,965.82 | $ 50,000.00 | $ 4,323,136.28 |
| 10/1/2004 | Payment | $ 21,319.58 | $ 50,000.00 | $ 4,294,455.86 |
| 11/1/2004 | Payment | $ 21,884.08 | $ 50,000.00 | $ 4,266,339.93 |
| 5/1/2005 | Payment | $ 126,938.22 | $ 50,000.00 | $ 4,343,278.16 |
| 6/1/2005 | Payment | $ 22,132.87 | $ 50,000.00 | $ 4,315,411.03 |
| 7/1/2005 | Payment | $ 21,281.48 | $ 50,000.00 | $ 4,286,692.51 |
| 8/1/2005 | Payment | $ 21,844.52 | $ 50,000.00 | $ 4,258,537.02 |
| 9/1/2005 | Payment | $ 21,701.04 | $ 100,000.00 | $ 4,180,238.06 |
| 5/26/2006 | | $ 183,472.37 | | $ 4,363,710.43 |
| | Total Payments | | $ 1,889,863.99 | |

Amount Owed Under Promissory Note per Travelers $ 6,084,719.05

**;abot Christianson**

**From:** "Thomas L. Crandall" <tomc@klukwan.com>
**To:** "'Cabot Christianson'" <cabot@cbslawyers.com>
**Sent:** Wednesday, June 18, 2003 8:39 AM
**Attach:** Audit WP Request.doc
**Subject:** FW: CPA Workpaper Request Letter

More stuff coming out of the woodwork. They are going to go after P&S.

Tom C.

-----Original Message-----
From: Jordan S. Rosenfeld [mailto:jordan@sutorgroup.com]
Sent: Tuesday, June 17, 2003 1:51 PM
To: tomc@klukwan.com
Cc: charles.w.langfitt@travelers.com
Subject: CPA Workpaper Request Letter

Tom:

Attached is my draft of a letter to Peterson Sullivan requesting a copy
of
the audit workpapers. I avoided being too specific or technical so it
›uldn't look like an attorney was involved. We can expand on this if

ur Chuck think it would be advisable.

Jordan

<<Audit WP Request.doc>>

May 26, 2006

Deleted: June 19, 2003

Peterson Sullivan P.L.L.C.
601 Union Street, Suite 2300
Seattle, Washington 98101

**Re: Audit Workpapers**

Dear Sir or Madam:

Due to recent financial setbacks suffered by Klukwan, Inc., the Board of Directors is considering a change in the accounting firm that audits our yearend financial statements. In order to facilitate this process we would like to receive a copy of the all Peterson Sullivan workpapers pertaining to the audit of Klukwan, Inc. and its subsidiaries for the years ended December 31, 1999, 2000 and 2001.

Please forward a copy of the Klukwan, Inc. and South Coast, Inc financial statement audit workpapers, including; substantive workpapers, permanent files and internal control analysis and testing workpapers for the years stated above. In addition, please provide a statement showing total hours and fees billed for each the preparation

Klukwan has had a long and beneficial relationship with Peterson Sullivan. The services your firm has provided are much appreciated. However, the Board feels a change is appropriate at this time.

Sincerely,

KLUKWAN, INC.

Thomas L. Crandall, President

Case 3:06-cv-0( 3-TMB Document 31-7 Filed 0 6/2006 Page 1 of 6

____FILED ____ENTERED
____LODGED____RECEIVED

FEB 19 2004 DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

04-MC-00014-PET

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In the Matter of the Petition of KLUKWAN, INC., an Alaska corporation and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,

Petitioners.

Case MS04 014

PETITION TO REQUIRE THE PRODUCTION OF DOCUMENTS BEFORE ACTION (Fed.R.Civ.P. 27(a))
Notice on Motion Calendar - 3/19/04
Oral Argument Requested

6/4/29

Petitioners allege as follows:

1. Petitioner Klukwan, Inc. ("Klukwan), is an Alaska corporation, with its principal place of business in the State of Alaska. Petitioner Travelers Casualty and Surety Company of America ("Travelers") is a Connecticut corporation with its principal place of business in the State of Connecticut.

2. Peterson Sullivan P.L.L.C., is a Washington limited liability professional company with its principal place of business in the State of Washington ("Peterson Sullivan").

3. It is expected that Peterson Sullivan may be an adverse party in a court proceeding involving the documents sought by this Petition. Peterson Sullivan may be served by serving its registered agent:

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
[illegible]
PORTLAND, OREGON [illegible]
[illegible]
FAX [illegible]

Case 3:06-cv-0[illegible]3-TMB Document 31-7 Filed 0[illegible]6/2006 Page 2 of 6

DWTR&J Corp.
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1688

4. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. Petitioners expect Peterson Sullivan to be a party to an action in a Court of the United States, but they are unable to presently bring the action because they are still conducting an investigation into the liability of potentially responsible parties and counsel and petitioners have serious obligations under Fed.R.Civ.P. 11 to satisfy themselves regarding the underlying facts.

6. Peterson Sullivan is a potential defendant in an action that may be brought by petitioners for professional negligence, negligent misrepresentation and breach of contract, among other claims. Sullivan Peterson provided accounting services to Klukwan and its affiliates during 1999, 2000 and 2001.

7. This Court would have jurisdiction of this potential action because of complete diversity of citizenship under 28 USC § 1332.

8. Petitioners seek the following documents:

a. All Peterson Sullivan work papers relating to audits of Klukwan and its subsidiaries for the years ending December 31, 1999, 2000 and 2001. These documents include copies of financial statement audit work papers, substantive work papers, permanent files and internal control analysis and testing work papers for these years.

These documents are relevant to the subject matter involved in the potential action, relate to the potential claims to be asserted against Peterson Sullivan and the requests are reasonably calculated to lead to discovery of admissible evidence.

///

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW

Case 3:06-cv-0(- 3-TMB Document 31-7 Filed 0: .6/2006 Page 3 of 6

It is anticipated that these documents will reflect whether or not the financial representations made to Travelers and Klukwan with respect to Klukwan's and its subsidiaries' requests for surety credit accurately reflected the financial condition of Klukwan and its subsidiaries.

9. Petitioners request that these documents be produced at Travelers' offices at 3455 S. 344th Way, Suite 200, Auburn, WA 98001.

10. Prior to filing this Petition, Travelers informally requested that Peterson Sullivan provide it with the documents sought in this Petition. That request was supported by Klukwan. Peterson Sullivan refused to produce the requested documents.

11. The documents requested under Fed.R.Civ.P. 34 prior to action may prevent a failure or delay of justice.

WHEREFORE, petitioners pray for relief as follows:

1. The issuance of an order authorizing petitioners to issue a request for production of documents on Peterson Sullivan requiring Peterson Sullivan to produce all Peterson Sullivan work papers relating to audits of Klukwan and its subsidiaries for the years ending December 31, 1999, 2000 and 2001. This includes copies of financial statement audit work papers, substantive work papers, permanent files and internal control analysis and testing work papers for these years. These documents are to be produced for inspection and copying by petitioners; and

///

///

///

///

///

///

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
[illegible]

Case 3:06-cv-00063-TMB Document 31-7 Filed 05/__/2006 Page 4 of 6

2. For such other and further relief as this Court deems equitable and just.

DATED this 18th day of February, 2004.

STEWART SOKOL & GRAY LLC

By: ______________________
Jan D. Sokol, WSBA #30962

2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Phone: (503) 221-0699
Fax: (503) 223-5706
E-mail: jdsokol@lawssg.com
Of Attorneys for Petitioners

PETITION TO REQUIRE THE PRODUCTION OF DOCUMENTS BEFORE ACTION (Fed.R.Civ.P. 27(a))- 4
(Case No. ________)

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW

EXHIBIT 6 Page 4 of 6

**VERIFICATION**

Charles W. Langfitt, being first duly sworn upon oath deposes and says:

I, Charles W. Langfitt, am one of the petitioners in the above-entitled proceeding; that I was, at all times relevant hereto, the Vice President, Bond Claims of Travelers Casualty and Surety Company of America, and in such capacity have read the within and foregoing Petition, and that every statement therein contained are true and correct within my personal knowledge.

Charles W. Langfitt

STATE OF WASHINGTON )
County of King )

I, Sandi Roddick, a notary public, do hereby certify that on this 12 day of February 2004, personally appeared before me Charles W. Langfitt who, being by me first duly sworn, declared that the statements therein contained are true.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

SANDI J. RODDICK COMMISSION EXPIRES NOTARY PUBLIC 5-1-2005 STATE OF WASHINGTON

Sandi J. Roddick
Notary Public for Washington
My Commission expires: 5-1-05

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW

Case 3:06-cv-0[illegible]3-TMB Document 31-7 Filed 0[illegible]/2006 Page 6 of 6

**VERIFICATION**

Thomas L. Crandall, being first duly sworn upon oath deposes and says:

I, Thomas L. Crandall, am one of the petitioners in the above-entitled proceeding; that I was, at all times relevant hereto, the President of Klukwan, Inc., and in such capacity have read the within and foregoing Petition, and that every statement therein contained are true and correct within my personal knowledge.

[signature]
Thomas L. Crandall

STATE OF ALASKA )
____ Judicial District )

I, Delia Commander a notary public, do hereby certify that on this 17th day of February 2004, personally appeared before me Thomas L. Crandall who, being by me first duly sworn, declared that the statements therein contained are true.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

DELIA COMMANDER NOTARY PUBLIC STATE OF ALASKA

Delia Commander
Notary Public for Alaska
My Commission expires: 10-25-2007

W:\WORK\JAN\Travelers\South Coast\Peterson Sullivan\Pleadings\Petition.wpd

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW

**Cabot Christianson**

**From:** "Cabot Christianson" <cabot@cbslawyers.com>
**To:** "Jan Sokol" <jdsokol@lawssg.com>
**Cc:** "Tom Crandall" <tomc@klukwan.com>
**Sent:** Tuesday, February 10, 2004 10:50 AM
**Attach:** Order Granting Petition.pdf; Notice of Application for Petition.pdf; Petition.pdf
**Subject:** Fw: Travelers/South Coast

Jan -
These documents look good. I am forwarding them to Tom Crandall, and he will fax you the signature page.

This email will confirm our previous discussions that Travelers will bear all the costs associated with bringing this suit and will indemnify Klukwan from any claims associated with the bringing or prosecution of this suit.

If Travelers wishes to bring a substantive cause of action against P&S, Klukwan's expectation is that the net litigation proceeds from that suit will be applied first to the Klukwan/SCI note to Travelers. Also, as you are aware, Klukwan is considering its own action against P&S, and has developed some ideas about how to proceed. You and I should discuss.

As I mentioned in my email, Klukwan is an Alaska Native corporation organized under Alaska state law pursuant to 43 USC 1601 et seq. All of its shareholders are individuals.

Let me know if you need anything else.

-Cabot

----- Original Message -----
**From:** Jan D Sokol
**To:** Cabot Christianson
**Cc:** Chuck Langfitt
**Sent:** Friday, January 23, 2004 11:59 AM
**Subject:** Travelers/South Coast

Attached are proposed pleadings for your review and comment. I will need to file a corporate disclosure (Fed.R. Civ. P. 7.1) on behalf of Klukwan. Is it owned partially or in whole by a publicly traded company? if so, what is the company, the percentage ownership and the exchange it is traded on?

****************************************

Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com

****************************************

NOTICE:

THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US

EXHIBIT 7 Page 1 of 1

**Cabot Christianson**

**From:** "Jan D Sokol" <jdsokol@lawssg.com>
**To:** "Cabot Christianson" <cabot@cbslawyers.com>
**Cc:** "Tom Crandall" <tomc@klukwan.com>; <Charles.W.Langfitt@travelers.com>
**Sent:** Friday, February 13, 2004 10:24 AM
**Subject:** RE: Travelers/South Coast

I revised the petition per Tom's email to me and forwarded to him on Wednesday the revised petition. I have no yet received his signature page. Yes Travelers will bear the costs in connection with bringing the discovery litigation in Federal Court. While we did not previously discuss indemnity (I'm not sure what claims your former accountants could bring; I'm assuming you are referring to costs, etc.), Travelers will indemnify Klukwan from claims by Peterson Sullivan directly related to this litigation.

With respect to the third paragraph, I know Chuck and Tom have discussed this. While Travelers understands Klukwan's expectation, it is not consistent with the prior arrangement between Klukwan and Travelers. Rather than continuing to disagree at this point, let's get the petition filed and review the documents received. We may be disagreeing about nothing if the documents do not yield viable claims.

-----Original Message-----
**From:** Cabot Christianson [mailto:cabot@cbslawyers.com]
**Sent:** Tuesday, February 10, 2004 11:50 AM
**To:** Jan D Sokol
**Cc:** Tom Crandall
**Subject:** Fw: Travelers/South Coast

Jan -
These documents look good. I am forwarding them to Tom Crandall, and he will fax you the signature page.

This email will confirm our previous discussions that Travelers will bear all the costs associated with bringing this suit and will indemnify Klukwan from any claims associated with the bringing or prosecution of this suit.

If Travelers wishes to bring a substantive cause of action against P&S, Klukwan's expectation is that the net litigation proceeds from that suit will be applied first to the Klukwan/SCI note to Travelers. Also, as you are aware, Klukwan is considering its own action against P&S, and has developed some ideas about how to proceed. You and I should discuss.

As I mentioned in my email, Klukwan is an Alaska Native corporation organized under Alaska state law pursuant to 43 USC 1601 et seq. All of its shareholders are individuals.

Let me know if you need anything else.

-Cabot

----- Original Message -----
**From:** Jan D Sokol
**To:** Cabot Christianson
**Cc:** Chuck Langfitt
**Sent:** Friday, January 23, 2004 11:59 AM
**Subject:** Travelers/South Coast

Attached are proposed pleadings for your review and comment. I will need to file a corporate disclosure (Fed.R. Civ. P. 7.1) on behalf of Klukwan. Is it owned partially or in whole by a publicly traded company? if so, what is the company, the percentage ownership and the exchange it is traded on?

**************************************

Jan D. Sokol

EXHIBIT 8 Page 1 of 2

Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
******************************************

**NOTICE**:

THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOUR COMPUTER SYSTEM.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In the Matter of the Petition of KLUKWAN, INC., an Alaska corporation and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,

Petitioners.

No. C04-615Z

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Having reviewed the briefs in support of, and opposition to, petitioner Travelers and Klukwan's petition to require the production of documents before action pursuant to FED. R. CIV. P. 27(a)(1), docket no. 1, the motion is hereby DENIED. The Court finds that petitioners seek to employ Rule 27 to engage in discovery prior to filing a complaint, contrary to Nevada v. O'Leary, 63 F.3d 932 (9th Cir. 1995).

(2) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Filed and entered this 13th day of April, 2004.

BRUCE RIFKIN, Clerk

By /s/ Casey Condon
Casey Condon
Deputy Clerk