Message                                                                          Page 1 of 4

## Robert B. Coleman

From:       Jan D Sokol
Sent:       Thursday, June 10, 2004 4:44 PM
To:         Robert B. Coleman
Subject:    FW: South Coast 12/31/00 Financial Statement

Please copy and put in file(s).
-----Original Message-----
From: Jan D Sokol
Sent: Thursday, June 10, 2004 3:51 PM
To: 'Langfitt,Charles W'; 'Jordan S. Rosenfeld'
Subject: RE: South Coast 12/31/00 Financial Statement

Based on Jordan's conclusions below, and my review of the material and the law, I believe we have sufficient
factual evidence to support claims against the directors and officers and the accounting firm. I will prepare a draft
complaint for your review. We can certainly sue the accounting firm in Washington, but personal jurisdiction over
the officers and directors may not be possible.

If we are going to sue them in the same action, I would recommend the USDC for the District of Alaska. Chuck,
with respect to damages, I have the large loss analysis. I will need help from you and Jordan in assessing the
damages to be asserted with respect to the directors and officers and the accounting firm.

I assume we will need to contact Crandall and Cabot once we have finalized our plans.

-----Original Message-----
From: Langfitt,Charles W [mailto:CLANGFIT@stpaultravelers.com]
Sent: Tuesday, June 08, 2004 4:57 PM
To: Jordan S. Rosenfeld; Jan D Sokol
Subject: RE: South Coast 12/31/00 Financial Statement

Jan, you have the Peterson Report, and Jordan, a copy should be in your copy of the Underwriting file, or
was sent to you separately.

-----Original Message-----
From: Jordan S. Rosenfeld [mailto:jordon@sutorgroup.com]
Sent: Tuesday, June 08, 2004 4:52 PM
To: Jan D Sokol
Cc: Langfitt,Charles W
Subject: RE: South Coast 12/31/00 Financial Statement

In my opinion, the excessive underbillings and subsequent change in gross profit on the jobs
previously mentioned is sufficient for us to believe that Petterson Sullivan may have been negligent
in the performance of their audit. The same applies to the management of South Coast with the
added caveat that the officers of SCI may have intentionally misled the auditors, Klukwan and/or
the surety.

1)   The surety relied upon the statements in the issuance of bonds in 2001.

2)   The anticipated gross profit as of 12/31/00 were in error based upon SCI's 12/31/01 draft
statements. (Never mind how much the jobs ultimately cost Travelers.)

3)   In my opinion there were indications in the 12/31/00 statements that the gross profit was
overstated that should have been investigated.

6/10/2004

Date 10-3-07    Exhibit # 210
Case Travelers v S. Coast
Deponent R Coleman
Reporter JANETTE DUKIC
Naegeli Reporting Corporation
(800) 528-3335   FAX (503) 227-7123

TRAV81577

Also, my recollection is that Petterson Sullivan performed a seperate operations review of SCI's accounting controls and reported many deficiencies in the SCI systems. This should have been performed as part of the audits, their audit procedures modified accordingly and the client notified of the deficeincies with recomendations for improvement. It does not appear that this happened.

Jordan

---

From: Jan D Sokol [mailto:jdsokol@lawssg.com]
Sent: Tuesday, June 08, 2004 4:19 PM
To: Jordan S. Rosenfeld
Cc: Charles.W.Langfitt@travelers.com
Subject: RE: South Coast 12/31/00 Financial Statement

CONFIDENTIAL AND PRIVILEGED COMMUNICATIONS

We have 2 separate potential claims. One against the accounts for negligence, and the second is against the former officers and directors for misrepresentation. The first against Peterson Sullivan involves our posting of surety bonds on behalf of South Coast, Inc. In determining whether surety credit was to be provided to Klukwan and its affiliates, Travelers was provided and relied, on among other things, financial statements which were prepared by Peterson Sullivan. If they were not not performed in accordance with GAAS and we were damaged as a result, we could have a professional negligence claim against the accountants.

Second, South Coast had financial and management control issues. Klukwan, Inc. ("Klukwan") hired Falls Management to assist in resolving the problems by putting in proper management and financial controls. Travelers has asserted that Ronald Gelbrich, Jerald Renich, Brad Finney, Jan Paulson, Michael Houts and Edwin Johnson failed to ensure that the proper controls were followed. After failing to ensure the proper controls were followed, these individuals chose to ignore or misinformed Klukwan about South Coast*s true financial condition. As a result of these actions, the financial representations made to Travelers in connection with South Coast's and Klukwan' s requests for surety credit failed to reflect South Coast*s true financial condition, and these individuals knew or should have known that the representations being made to Travelers and relied upon by Travelers in providing new surety credit were false.

Under Rule 11, the standard is:

"The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

The question to you is do we have sufficient factual evidence to make these assertions and file an action asserting these claims.

***********************************

Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com

6/10/2004

TRAV81578

Message                                                                                              Page 3 of 4

Web Site: www.lawssg.com
*****************************************
NOTICE:

THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE
ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE
HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE
ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES
AND DELETE IT FROM YOUR COMPUTER SYSTEM.

-----Original Message-----
From: Jordan S. Rosenfeld [mailto:jordon@sutorgroup.com]
Sent: Tuesday, June 08, 2004 1:20 PM
To: Jan D Sokol
Cc: Charles.W.Langfitt@travelers.com
Subject: South Coast 12/31/00 Financial Statement

Jan:

I did receive a copy of the Travelers South Coast, Inc. underwriting file and have had a
chance to take a look at the 12/31/00 financial statement. A couple of items are noticable:

1)    The have inventory of $3,240,795. According to the notes this is for explosives
($2,448,275) and construction materials ($792,520.) I'd question the real value of the
inventory. For the audit there should have been an observation of the inventory count at the
end of the year and steps to verify the valuation of what was counted. The amount seams
awfully high to me.

2)    At 12/31/00 SCI has underbillings of $2,800,078. (The corresponding overbillings is
only $625,846.) This is a very large amount and should have prompted additional
procedures by the auditors in review the estimated contract completion costs. A large
underbilling amount can indicate an understatement of the cost to complete. There are four
jobs with very large underbillings at 12/31/00:

| Ketchican Viaduct | $306,167 |
|---|---|
| Sitka Airport | 369,181 |
| Big Salt Road | 1,260,345 |
| BIA, Chinle | 561,170 |

As of 12/31/00 SCI anticipated a gross profit on each of the above. However, as of
12/31/01 SCI anticpated total gross losses on Sitka Airport, Big Salt Road and Chinle
projects of $(293,145), $(1,686,335) and $(1,107,590), respectively. (As we know, the
actual losses were even higher.) The large underbillings were a precursor of the losses
ultimately recognized in 2001. Management and/or the auditors should have recognized
this. For the auditors, additional procedures should have been performed.

We need the Peterson Sullivan workpapers to determine if their audit procedures conformed
to GAAS (Generally Accepted Auditing Standards.)

The Klukwan statements are tougher to analyze because they are a consolidation of various
subsidiaries. During the surety investigation, Doug Payne did question the inventory
valuation of timber property on the Klukwan statements. My ecollection is Klukwan was
valuing the property at the value of timber even though it would be 40 years before the
timber could be harvested.

What do you need to proceed?

6/10/2004

TRAV81579

Jordan

This communication, together with any attachments hereto or links contained herein, is for the
sole use of the intended recipient(s) and may contain information that is confidential or legally
protected. If you are not the intended recipient, you are hereby notified that any review,
disclosure, copying, dissemination, distribution or use of this communication is STRICTLY
PROHIBITED. If you have received this communication in error, please notify the sender
immediately by return e-mail message and delete the original and all copies of the
communication, along with any attachments hereto or links herein, from your system.

The St. Paul Travelers e-mail system made this annotation on 06/08/2004, 07:57:00 PM.

6/10/2004

TRAV81580

Blank Document Template

## Langfitt,Charles W

| | |
|---|---|
| **From:** | Jan D Sokol [jdsokol@lawssg.com] |
| **Sent:** | Thursday, August 04, 2005 3:38 PM |
| **To:** | Langfitt,Charles W |
| **Cc:** | jordan@sutorgroup.com |
| **Subject:** | FW: Travelers/SCI/D&O |

FYI.

-----Original Message-----
**From:** Robert B. Coleman
**Sent:** Thursday, August 04, 2005 3:36 PM
**To:** Jan D Sokol
**Cc:** Thomas A Larkin
**Subject:** RE: Travelers/SCI/D&O

Jan, the big losers on our damages summary are (in ascending order of amount) ADOT Toksook Airport ($769,123.09); ADOT Unalsaka Airport ($1,277,264.23); UNAK USCG Dock ($2,230,249.23); and AZDOT Navajo FB/NML ($3,569,029.97). I think we should get the documents for these projects as well as those below. In looking at this, I thought of an additional possible theory on damages. Jordan (and Bob Suter, and to an extent Peterson Sullivan) have recognized that South Coast's losses were caused by poor management control. Internal control issues should have been discovered during the audit, as I understand Jordan's report. If the audit had properly represented that there were internal control issues, Travelers would have had the opportunity to tell South Coast "no bonds unless you change x,y, and z" to change your internal controls. That might have avoided the losses on 2001 projects, South Coast might have survived its mistakes from 2000, and Klukwan might have been able to continue its support of South Coast such that Travelers might not have lost a significant amount on bond claims.

I wonder if we can get testimony from Klukwan to support this theory – i.e. if it had known of South Coast's internal control issues earlier, it would have acted to avoid losses and been able to support South Coast. We would also need to find support in the documents that the losses on projects that started in 2001 were caused by the same internal control issues that caused the 2000 project losses.

Rob

**From:** Jan D Sokol
**Sent:** Wednesday, August 03, 2005 2:02 PM
**To:** Robert B. Coleman
**Cc:** Thomas A Larkin
**Subject:** RE: Travelers/SCI/D&O

Yes, that is the same project. The other part sounds good.

-----Original Message-----
**From:** Robert B. Coleman
**Sent:** Wednesday, August 03, 2005 11:48 AM
**To:** Jan D Sokol
**Subject:** RE: Travelers/SCI/D&O

Is Ketchican the same as the KTN Viaduct? If so, the SCI files and those with underbillings match up. We might also want to determine which ongoing projects ended up being big losers, whether there were

Date *10-30-7*   Exhibit # *219*
Case *Travelers v. S.Coast*
Deponent *R.Coleman*
Reporter *JANETTE DUKIC*
Naegeli Reporting Corporation
(800) 528-3335  FAX (503) 227-7123

TRAV80771

Blank Document Template

underbillings on the financial statements or not, and get those files too. The reason is that based on Earnhart's letters, Peterson Sullivan plans to allege that the losses occurred because of things that happened in 2001. If we can establish that the big losers were losers because of things that happened in 2000 (i.e., poor estimates, poor estimates of cost to complete that were not classified as underbillings, or other) we can defeat that defense. I'll look into that this afternoon or tomorrow morning, it that is ok. Rob

---

**From:** Jan D Sokol
**Sent:** Wednesday, August 03, 2005 11:19 AM
**To:** 'Jordan Rosenfeld'
**Cc:** 'Charles.W.Langfitt@travelers.com'; Thomas A Larkin; Robert B. Coleman
**Subject:** Travelers/SCI/D&O

Earnhart had an assistant review the stored SCI and Klukwan documents. There are apparently 500 boxes of SCI documents and 300 boxes of Klukwan documents. The SCI documents apparently are in project order. As I recall, Jordan, I should make copies of the files for the Big Salt Lake, Chinle, Ketchikan and Sitka Airport projects. That should have all the records you need on the projects.

I'm not sure how we will find the 12/31/00 accounting reports. Are the RP reports (other than the Contract Status Calculation Worksheet) computer generated? I assume Klukwan still has either the SCI computers or can otherwise access these reports. Chuck, perhaps Marc can request Crandall to provide us copies. The reports are as follows:

RP10578 JC Cost/Est by Month          Job Cost Report - Costs/Estimates

RP 00163 JC Contract Status           Contract Status Report

RP 00210 JC Cost/Est Compare          Cost to Estimates Comparison

RP 10697 SCI Jobs WS Rev 4            Work In Progress Report

Contact Status Calculation Worksheet (This is not computer generated)

12/31/00 Progress Payment Applications

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
NOTICE:

THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOUR COMPUTER SYSTEM:

02/07/2007

Blank Document Template

02/07/2007

TRAV80773



## Valerie L. Senske

**From:** Jordan S. Rosenfeld [jordon@sutorgroup.com]
**Sent:** Tuesday, June 08, 2004 1:20 PM
**To:** Jan D Sokol
**Cc:** Langfitt,Charles W
**Subject:** South Coast 12/31/00 Financial Statement

Jan:

I did receive a copy of the Travelers South Coast, Inc. underwriting file and have had a chance to take a look at the 12/31/00 financial statement. A couple of items are noticable:

1) The have inventory of $3,240,795. According to the notes this is for explosives ($2,448,275) and construction materials ($792,520.) I'd question the real value of the inventory. For the audit there should have been an observation of the inventory count at the end of the year and steps to verify the valuation of what was counted. The amount seams awfully high to me.

2) At 12/31/00 SCI has underbillings of $2,800,078. (The corresponding overbillings is only $625,846.) This is a very large amount and should have prompted additional procedures by the auditors in review the estimated contract completion costs. A large underbilling amount can indicate an understatement of the cost to complete. There are four jobs with very large underbillings at 12/31/00:

| | |
|---|---|
| Ketchican Viaduct | $306,167 |
| Sitka Airport | 369,181 |
| Big Salt Road | 1,260,345 |
| BIA, Chinle | 561,170 |

As of 12/31/00 SCI anticipated a gross profit on each of the above. However, as of 12/31/01 SCI anticpated total gross losses on Sitka Airport, Big Salt Road and Chinle projects of $(293,145), $(1,686,335) and $(1,107,590), respectively. (As we know, the actual losses were even higher.) The large underbillings were a precursor of the losses ultimately recognized in 2001. Management and/or the auditors should have recognized this. For the auditors, additional procedures should have been performed.

We need the Peterson Sullivan workpapers to determine if their audit procedures conformed to GAAS (Generally Accepted Auditing Standards.)

The Klukwan statements are tougher to analyze because they are a consolidation of various subsidiaries. During the surety investigation, Doug Payne did question the inventory valuation of timber property on the Klukwan statements. My ecollection is Klukwan was valuing the property at the value of timber even though it would be 40 years before the timber could be harvested.

What do you need to proceed?

Jordan

Date _10-4-07_ Exhibit # _235_
Case _Travelers v. S. Coast_
Deponent _J. Sokol_
Reporter JANETTE DUKIC
Naegeli Reporting Corporation
(800) 528-3335 FAX (503) 227-7123

TRAV80082

Blank Document Template



## Langfitt,Charles W

**From:**    Jan D Sokol [jdsokol@lawssg.com]
**Sent:**    Thursday, March 10, 2005 9:17 AM
**To:**    Langfitt,Charles W
**Subject:**    SCI/Peterson Sullivan

I spoke to Earnhart. He apparently filed an offer of judgment also. He contends Hombach testified he didn't rely on the financial statements but did his own investigation. While he did testify he made an independent investigation, he never said Travelers didn't rely on the Peterson Sullivan audited financial statements.

He also said the PS policy is written by Fireman's Fund with $10mil limits! Jan


*************************************
Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
*************************************
NOTICE:

THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOUR COMPUTER SYSTEM.

Date 10-9-07 Exhibit # 244
Case Travelers S Coast
Deponent J Sokol
Reporter JANETTE DUKIC
Naegeli Reporting Corporation
(800) 528-3335   FAX (503) 227-7123

02/06/2007

Thomas A. Larkin, ASB #0009055
Jan D. Sokol, *Pro Hac Vice*
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone:    (503) 221-0699
Fax:           (503) 227-5028
Email:         tlarkin@lawssg.com
               jdsokol@lawssg.com
    Of Attorneys for Plaintiff Travelers Casualty and
Surety Company of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA, AT ANCHORAGE

TRAVELERS CASUALTY AND SURETY )
COMPANY OF AMERICA, a Connecticut )
corporation, )
)
                              Plaintiff, )    Case No. A04-0165CV (RRB)
)
            v. )
)
RONALD GELBRICH; JERALD RENICH; )
BRAD FINNEY; JAN PAULSON; )
MICHAEL HOUTS; EDWIN JOHNSON; )
and PETERSON SULLIVAN, P.L.L.C., a )
Washington limited liability company, )
)
                            Defendants. )
_____ )
)
JAN PAULSON, )
)
                 Third-Party Plaintiff, )
)
            v. )
)
SOUTH COAST, INC., )
)
                 Third-Party Defendant. )

AFFIDAVIT OF CHARLES W. LANGFITT - Page 1 of 10
A04-0165CV (RRB)

Date 10-4-07  Exhibit # 253
Case Travelers v S Coast
Deponent J. Sokol
Reporter JANETTE DUKIC
Naegeli Reporting Corporation
(800) 528-3335   FAX (503) 227-7123

Exhibit 131  Date 9-10-07
Witness Langfitt
Patricia A. Blevins  (206)323-0919

### AFFIDAVIT OF CHARLES W. LANGFITT
### IN SUPPORT OF TRAVELERS' OPPOSITION TO
### PETERSON SULLIVAN'S MOTION FOR SANCTIONS

STATE OF Washington      )
                              ) ss.

County of King           )

     I, Charles W. Langfitt, being first duly sworn, do depose and say:

     1. I am Vice President of Travelers Casualty and Surety Company ("Travelers") –

Surety Claims. I make this Affidavit in support of Travelers' Opposition to Defendant

Peterson Sullivan, PLLC's Motion for Sanctions under Federal Rule of Civil Procedure 11.

I am over the age of 18 and competent to testify. I make this affidavit from personal

knowledge, and if asked to testify, would testify consistently with this Affidavit.

     2. The purpose of my Affidavit is to describe Travelers' reasonable pre-filing

investigation into its claims against Peterson Sullivan in this matter. Because that

description requires an understanding of how the Claims Department learned of and

handled losses on bonds posted by Travelers, as surety, for South Coast, Inc., as principal, I

begin there.

     3. I was the person primarily responsible for all South Coast / Klukwan issues once

those issues came to the attention of Travelers' Claims Department. Travelers' Surety

Claims Department and I first became aware of South Coast, Inc. as a very serious claims

issue in May of 2002, after Klukwan's bank (Key Bank) announced that Klukwan was in

default and started liquidating assets. At that time, it was clear that South Coast had

operating losses in the millions of dollars on projects for which Travelers had posted

payment and performance bonds. Those losses were represented to have occurred in 2001.

Travelers' main concern in May of 2002 was to determine the extent of its likely loss from

AFFIDAVIT OF CHARLES W. LANGFITT - Page 2 of 10
A04-0165CV (RRB)

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

payment and performance bond claims on South Coast projects, and the extent to which Klukwan, Inc., South Coast's parent company and an indemnitor on the indemnity agreement held by Travelers, would be able financially to support South Coast and to indemnify Travelers.

4. Travelers participated in meetings with South Coast and Klukwan in May and June of 2002 to address issues regarding South Coast's and Klukwan's financial condition, payment and performance claims against bonds posted by Travelers for South Coast, Klukwan's business plan for South Coast, Klukwan's credit arrangement with its banks, the current state of South Coast's construction projects for which Travelers was responsible as payment and performance bond surety, whether Travelers would extend additional surety credit to South Coast in the form of bonds for future projects and/or financing to allow South Coast to complete future projects, whether Klukwan would "wrap up" South Coast as a going concern, and whether and to what extent Klukwan would indemnify Travelers. The substance of the discussions at these meetings and telephone discussions with Klukwan and South Coast is stated in a series internal memoranda (titled "Travelers Bond Contract Surety Large Loss Analysis"), letters to Klukwan/South Coast, and e-mails dated as follows: (A) May 16, 2002 e-mail from me to Jordan Rosenfeld (a CPA hired by Travelers regarding the South Coast issue); (B) a May 17, 2002 letter from me to Tom Crandall of Klukwan and Ron Gelbrich of South Coast; (C) a June 5, 2002 Large Loss Analysis I prepared; (D) a June 10, 2002 letter from me to Tom Crandall of Klukwan; and (E) an October 1, 2002 Large Loss Analysis I prepared. A true and correct copy of each of these documents is attached hereto as Exhibits A-E, in the order just indicated.

///

AFFIDAVIT OF CHARLES W. LANGFITT - Page 3 of 10
A04-0165CV (RRB)

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

5. As stated above in paragraph 3, Travelers' primary concerns during the May through October 2002 time frame were to determine South Coast and Klukwan's current financial position and the current status of South Coast's projects so that Travelers could minimize the loss on bonded projects consistent with its payment and performance bond obligations to owners, subcontractors, and suppliers, and maximize Travelers' recovery of contract funds from owners and indemnity from South Coast and Klukwan. As part of this effort, Travelers conducted a "forensic review" of South Coast and Klukwan. As stated in my May 17, 2002 letter to Tom Crandall and Ron Gelbrich regarding the purpose of a meeting scheduled for May 28, 2002:

> I advised that we requested the meeting to conduct a forensic review. You asked what I meant by a forensic review. By forensic review, I mean a book and records review with CPAs hired by Travelers, in conjunction with operational/business plan reviews with Travelers personnel. We will want to discuss all aspects and facets of your business including all of your projects, with your employees, as well as others, which may include, but not be limited to, Owners and Architects. A requested list of items to prepare for our review is attached. As I advised, the CPAs we have retained include Jordan Rosenfeld, of the Sutor Group.

**Exhibit B.** The list of items Travelers requested for review is marked "Klukwan/South Coast Items for Review by Travelers," and is attached to **Exhibit B.**

6. As part of the meeting referred to in my May 17, 2002 letter, Travelers conducted a forensic review starting May 28, 2002. That review focused on the current financial status of Klukwan and South Coast, and the current status of South Coast's bonded jobs. It did not focus on the issue of South Coast's financial condition as of December 31, 2000, which was not relevant to the issues at hand: namely, minimizing losses on ongoing bonded projects and maximizing recovery from Klukwan as Travelers' indemnitor, including keeping Klukwan out of bankruptcy. Travelers had no reason to

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 221-5705
www.lawssg.com

AFFIDAVIT OF CHARLES W. LANGFITT - Page 4 of 10
A04-0165CV (RRB)

attempt to discern the accuracy of South Coast's audited 2000 financial statements at that time, and did not, to my knowledge, review documents indicating that the audited 2000 financial statements contained misstatements. Nor was there anything regarding the forensic review at that time that indicated that the audited 2000 financial statements contained misstatements. By the end of Travelers forensic review, and after South Coast's projects had been re-let to other contractors, I was able to determine that Travelers was likely to incur a loss of approximately $19,000,000 on bonds posted for South Coast. Exhibit E, at 1. As indicated on page 4 of Exhibit E, as of October 1, I did not anticipate obtaining salvage from anyone other than Klukwan.

7. What first indicated to Travelers that South Coast's audited 2000 financial statements were inaccurate (and thus that salvage from Peterson Sullivan possibly could be appropriate to pursue) was a combination of information regarding South Coast's operations. That information included: a report prepared by Sutor Consulting, LLC, entitled "Report on Review of Projects and Project Management Procedures" (the "Sutor Report") (a true and correct copy of the Sutor Report is attached hereto as Exhibit F); the report prepared by Peterson Sullivan, entitled "Report to Klukwan, Inc. Board of Directors on South Coast, Inc. 2001 Operations" (the "Peterson Sullivan 2001 Operations Report") (a true and correct copy of Peterson Sullivan 2001 Operations Report is attached hereto as Exhibit G); a "draft" audited 2001 financial statement of South Coast, Inc., and the results of Travelers' investigation into South Coast's current financial status and project progress, including re-letting of South Coast's projects.

8. As I explained in my deposition, upon review of all the information referred to in paragraph 7, I began to suspect that the audited 2000 financial statements were

AFFIDAVIT OF CHARLES W. LANGFITT - Page 5 of 10
A04-0165CV (RRB)

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

inaccurate. A true and correct copy of portions of my deposition explaining my thinking regarding this issue is attached hereto as Exhibit H. The basis of my suspicion was that the ultimate results of South Coast's projects, based on Travelers' investigation and re-letting of projects during the summer of 2002, was very different than the results reported as anticipated in the audited 2000 financial statements. In fact, the difference appeared to be in the tens of millions of dollars. Also, as indicated on page 1 of the Peterson Sullivan 2001 Operations Report, the causes of the difference between the results anticipated in the 2000 audited financial statements and those reported later predated October of 2001. As well, the Sutor Report identifies significant problems at South Coast in the areas of "Budgeting, costing and tracking" at pages 21-32, and significant problems with "Estimating completion costs and job profitability" at pages 32-36. Given the fact that the causes of the difference between anticipated results and ultimate results were "systematic" in nature, as opposed to the result of some catastrophe, given the exceedingly large difference between anticipated and end results, and given that Klukwan had not indicated that management systems had changed in 2001 from 2000, I formed the belief that the systematic problems identified in the Sutor and Peterson Sullivan Reports as the causes of unreported losses predated the audited 2000 financial statements.

9. One of the specific problems identified in the Sutor Report related to what are known as "underbillings." Regarding underbillings, the Sutor Report recommended the following "fix" of South Coast's prior practices:

///

///

///

AFFIDAVIT OF CHARLES W. LANGFITT - Page 6 of 10
A04-0165CV (RRB)

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5705
www.lawssg.com

10)     Provide explanation of any significant project under-billing [sic]. A
large project under-billing should always be a concern. Any
significant project under-billing needs to be investigated and
explained by the project manager. The "earned labor" analysis will
generally indicate what is behind under-billing.

Exhibit F at 34.

10. During my deposition, I explained the significance to Travelers of

"underbillings" reported on financial statement. A true and correct copy of pages 189-209

of my deposition transcript is attached hereto as Exhibit H, and contains my explanation.

To summarize, however, on a construction contractor's financial statement, an underbilling

is listed as an asset on the presumption that the underbilling eventually will be paid.

However, if the underbilling likely will not be paid, because, for example it indicates that

work cost more to perform than the contract's budget, the underbilling should be listed on a

financial statement as a liability, not as an asset.

11. As part of my investigation into whether or not the audited 2000 financial

statements contained misrepresentations for which someone would be liable, I enquired of

Jordan Rosenfeld, the CPA who had assisted with Travelers' investigation of South

Coast's and Klukwan's financial situation during the spring and summer of 2002. Mr.

Rosenfeld explained that financial statements of a construction contractor should properly

characterize underbillings as losses instead of assets if that is what they actually are. As

stated in, for example, the Sutor Report, proper accounting procedures are required for

underbillings to be properly characterized. By this time, Travelers did not have ready

access to South Coast's project records from the 2000 period, and so could not perform a

"re-audit" of the South Coast's year 2000 financial statements.

///

AFFIDAVIT OF CHARLES W. LANGFITT - Page 7 of 10
A04-0165CV (RRB)

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-4706
www.lawssg.com

12. After concluding that the audited 2000 financial statements likely contained misstatements regarding underbillings, I investigated whether or not a properly performed audit should have disclosed the mis-classification of underbillings as assets instead of liabilities. As a part of this investigation, I consulted with Mr. Rosenfeld. Mr. Rosenfeld responded to my inquiry with an e-mail dated June 18, 2003. A true and correct copy of that e-mail is attached hereto as **Exhibit I**. Mr. Rosenfeld's response indicated in part that "[a]s is always the case in reviewing the CPA financial statements for potential errors, what is really needed to determine the [sic] if the CPa [sic] did not meet the industry standard in the performance of the audit is the CPA's work papers." As I responded to Mr. Rosenfeld, I believed that Peterson Sullivan would provide its work papers if requested by Tom Crandall of Klukwan. Peterson Sullivan, however, refused to provide its work papers, despite Klukwan's written request. Accordingly, I authorized Travelers' counsel to attempt to obtain the work papers under Federal Rule of Civil Procedure 27.

13. After the attempt to obtain Peterson Sullivan's work papers failed, Travelers commenced this lawsuit, but only after again asking Mr. Rosenfeld if the information we had was sufficient to form a reasonable belief that Peterson Sullivan had been negligent. Because Peterson Sullivan refused to provide its work papers, Travelers' allegation that Peterson Sullivan's 2000 audit of South Coast's financial statements negligently was performed was based on Mr. Rosenfeld's analysis as indicated **Exhibit I**. Travelers has obtained Peterson Sullivan's work papers in discovery in this case, and Mr. Rosenfeld's analysis thus far indicates that, in his opinion, Peterson Sullivan's audit negligently was performed in many of the respects indicated on **Exhibit I**.

///

AFFIDAVIT OF CHARLES W. LANGFITT - Page 8 of 10
A04-0165CV (RRB)

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

14.  To summarize, Travelers' complaint was based on an extensive investigation. Travelers determined that the audited 2000 financial statements contained misstatements regarding underbillings likely caused by systematic management problems that existed in 2000.  Travelers determined that a properly performed audit should have disclosed both the systematic management problems and that the underbillings properly should have been reported as losses rather than assets.

_____
Charles W. Langfitt

SUBSCRIBED AND SWORN TO before me this 25ᵗ day of July, 2005.

_____
NOTARY PUBLIC FOR WASHINGTON
My Commission Expires:  5-1-09

W:\WORK\Stewart Sokol & Gray\Coast\D & O Claims\RBC\Pleadings\Langfitt Affidavit Sanctions.wpd

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

AFFIDAVIT OF CHARLES W. LANGFITT - Page 9 of 10
A04-0165CV (RRB)

Valerie L. Senske

From:       Jan D Sokol [jdsokol@lawssg.com]
Sent:       Wednesday, December 24, 2003 10:38 AM
To:         Langfitt,Charles W
Subject:    FW: Travelers/Klukwan    your file 7777.006

This raises an interesting issue.  By the way, I have had no response from the lawyer on
the working papers.  On my return to the office, I draft a petition to file in the Western
District of Washington.  Hopefully, Cabot and Kluckwan will be on board with us.  Have a
happy season, and a healthy and prosperous new year.

        -----Original Message-----
        From: Brandon Allen [mailto:brandon_allen@bradycompany.com]
        Sent: Tue 12/23/2003 12:17 PM
        To: Jan D Sokol
        Cc:
        Subject: FW: Travelers/Klukwan your file 7777.006


        >  -----Original Message-----
        > From:       Brandon Allen
        > Sent: Tuesday, December 23, 2003 11:02 AM
        > To:   'jdsokol@lwssg.com'
        > Cc:   'denise.rasmussen@stpaul.com'
        > Subject:     Travelers/Klukwan    your file 7777.006
        >
        > Following up your letter of 12/9/03, on 6/9/03 we received your letter of
        > 6/3 and forwarded it that day to Royal Insurance the D&O carrier. This
        > satisfies the policy reporting provisions for the insured and applicable
        > insurance laws.
        >
        > On 11/10/03 we received a letter from St.Paul advsing that they had
        > acquired the renewal rights for the Royal policy and would be taking over
        > this claim. Denise Rasmussen is handling this issue for St. Paul. You may
        > contact her at
        > St. Paul Fire and Marine Insurance Company
        > 14622 Ventura Blvd. #538
        > Sherman Oaks, CA 91403
        > 818 784 2527
        > denise.rasmussen@stpaul.com
        >
        > Please let me know if you need any additonal information.
        >
        > Brandon Allen
        > Brady & Company

Date 10-4-07 Exhibit # 263
Case Travelers v S Coast
Deponent J. Sokol
Reporter JANETTE DUKIC
        Naegeli Reporting Corporation
        (800) 528-3335  FAX (503) 227-7123

1

TRAV80078



# FAX TRANSMISSION

## STEWART SOKOL & GRAY, LLC
2300 SW FIRST AVENUE, SUITE 200
PORTLAND OR 97201
(503) 221-0699
Direct Fax: (503) 227-5028 or General Fax: (503) 223-5706
Email: jdsokol@lawssg.com

**To:** Cabot Christianson
Christianson, Boutin &
Spraker

**Date:** October 17, 2003

**Fax #:** (907) 258-2026

**Pages:** 2 , (including this cover sheet)

**From:** Jan D. Sokol

**Subject:** Re: Travelers/South Coast, Inc./D & O Claims (Klukwan)
Our File No.: 7777.006

COMMENTS:

PLEASE CALL (503) 221-0699 IF YOU HAVE A PROBLEM WITH THIS TRANSMITTAL

### NOTICE

**THIS FACSIMILE TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY SO THAT WE MAY ARRANGE FOR RETURN OF THE DOCUMENTS.**
W:\WORK\JAN\Travelers\South Coast\D & O Claims\Christianson.Fax.wpd

Date 10-4-07  Exhibit # 265
Case Travelers v S Coast
Deponent J. SOKOL
Reporter JANETTE DUKIC
Naegeli Reporting Corporation
(800) 528-3335  FAX (503) 227-7123

# PETERSON SULLIVAN P.L.L.C.

UNION STREET SUITE 2300 SEATTLE WA 98101 (206) 382-7777 FAX 382-7700

CERTIFIED PUBLIC ACCOUNTANTS

RECEIVED

OCT 1 7 2003

STEWART, SOKOL & GRAY

October 8, 2003

Mr. Jan D. Sokol
Stewart Sokol & Gray LLC
·2300 SW First Avenue, Suite 200
Portland OR 97201-5047

Dear Mr. Sokol:

RE: TRAVELERS CASUALTY & SURETY CO. OF AMERICA/KLUKWAN, INC./
SOUTH COAST, INC.

Your letter to our firm dated September 29, 2003, was directed to me for a response.

Our firm has not "prepared" financial statements for Klukwan or its affiliates and generally does not prepare the financial statements for any client, although we do report or express an opinion on the client's financial statements if engaged to do so. Also, our firm has no present knowledge of your client's bonding business with South Coast, Inc. and whatever documents, if any, our firm does have that might relate to Klukwan and its affiliates are confidential records under both state and federal law. Our firm is not therefore free to release any such documents without the written consent of the appropriate client representative(s), and we have received no such written consents and/or request for release of confidential information. Also, under state law, the working papers are the property of our firm, not the client, and our firm policy is to not release our files except in very limited circumstances that are not present here.

I am sorry we cannot assist you in your investigation because of the strict prohibitions imposed on our firm by state and federal law as well as our firm's quality control policies. If you have any further questions, please direct them to our firm's counsel, Mary Eklund, at (206) 223-1688.

Best regards,

Ray Holmdahl

dmf

cc:    Mary C. Eklund

000773

K:\sokol100803.doc