SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

- On March 1, 2004, Crandall and Christianson met for several hours to discuss the Defendants' potential claims against Peterson Sullivan. Christianson Dep. p.134:14-135:6.

- On March 17 and March 24, 2004, Mr. Spraker performed further research regarding the applicable statute of limitations for any claim by the Defendants. Christianson Dep. p.136:18-137:14; Ex.179.

- On May 6, 2004, Crandall attended a board meeting of Klukwan.  Information reflected in the Sutor Consulting and Peterson Sullivan 2001 Operations Report and a claim against Peterson Sullivan were discussed. Crandall Dep. p.270:13-17; p.272:9-14; p.275:14-276:21; Ex. 72.

- On May 5, 2004, Crandall emailed Langfitt and noted that the petition to obtain the Peterson Sullivan working papers was unsuccessful. Crandall asked "can you let me know what Travelers plans to do next." Ex. 90. On May 26, 2004, Langfitt responded that Travelers was "reviewing filing suit." Crandall understood, at this point, it was entirely Travelers' decision whether or not to proceed with an action against Peterson Sullivan. Crandall Dep. p.320:2-13. Crandall had no further communications with Langfitt on the subject matter until after Travelers filed suit against Peterson Sullivan on August 4, 2004. Crandall Dep. p.320:18-321:1.

- Crandall acknowledges informing Chuck Langfitt on several occasions after the working paper petition was denied that Klukwan was considering its own action against Peterson Sullivan. Crandall Dep. p.483:6-15.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    15

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

- Crandall's June 29, 2004 letter to Christianson reflected the fact the Defendants were continuing to consider whether or not to bring an action against Peterson Sullivan. Crandall Dep. p.321:3-322:14.

- On August 4, 2004 Travelers filed its complaint against Peterson Sullivan.

- As of August 6, 2004 Klukwan was still considering its own action against Peterson Sullivan. Crandall Dep. p.503:24-504:13. No decision had been made by Klukwan in regard to its own assertion of claims against Peterson Sullivan as of that date. *Id.*

- At a September 16, 2004 Klukwan board meeting, Mr. Crandall discussed Defendants' claim against Peterson Sullivan at length. *See, Travelers' Motion*, §IV.M, p.26-28. A draft resolution authoring a suit by Defendants against Peterson Sullivan was prepared by Crandall for that meeting. Ex. 97. No decision was made by the Klukwan board at this meeting regarding their claim against Peterson Sullivan. Crandall Dep. p.490:21-25; p. 524:16-525:4.

- In a telephone conversation on September 29, 2004, Crandall and Christianson continued to advise Travelers that Klukwan was considering its own action against Peterson Sullivan. Crandall Dep. p.291:8-17.

- Neither Crandall nor Christianson ever informed Travelers that Klukwan was relying exclusively on Travelers' action. Crandall Dep. p.389:2-22; Christianson Dep. p.281:6-282:19.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                              16

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

C.  Defendants Made a De Facto Decision Sometime After September 29, 2004 to Forego Their Own Action Against Peterson Sullivan Based on Their Unilateral and Mistaken Assumptions as to Travelers' Claimed Damages, the Timeliness of Travelers' Action, and Other Considerations Relating to Their Financial Circumstances and the Merits of Their Claim.

The above facts demonstrate any decision by the Defendants to forego their own action against Peterson Sullivan was made on a de facto basis and not until sometime after September 29, 2004. Mr. Crandall admits as much. Crandall. Dep. p.408:19-409:4. Notably, neither Crandall nor Christianson ever discussed with Travelers or Jan Sokol the amount or method of calculation of any damages Travelers might assert against Peterson Sullivan. Crandall Dep. p. 378:8-10; p.350:1-4; Christianson Dep. p.157:23-158:7. A November 11, 2004 email exchange between Christianson, Crandall and the Defendants' insurance agent, Brandon Allen, discussed Travelers' claimed damages against Peterson Sullivan and the Defendants' own lack of understanding as to how those damages were calculated. Ex. 98; Crandall Dep. p.349:10-350:10; Christianson Dep. p.157:7-158:7.

Despite their uncertainty, the Defendants never inquired of Travelers to gain a better understanding of what damages it asserted against Peterson Sullivan or how those damages were calculated. Instead, the Defendants apparently assumed, as they now argue, that damages claimed by Travelers from Peterson Sullivan would equal its total losses on the South Coast bonds and would be "essentially the same claim for the same losses" as experienced by the Defendants. *Defendants' Opposition*, p. 20. However, as the evidence demonstrates, both the Defendants' assumption and their arguments are incorrect.

As explained by Mr. Langfitt, Travelers' claim against Peterson Sullivan, based upon a negligently prepared audit of South Coast's December 31, 2000 financial statement, was by necessity limited to losses by Travelers on bonds issued by it in 2001, after its review of, and

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    17

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

reliance upon, the Peterson Sullivan year end 2000 audit.  Langfitt Dep. p.262:17-263:16. Thus, Travelers could not, and did not, assert a claim for the full extent of its losses on the South Coast bonds, a fact Defendants failed to understand or appreciate until after this litigation commenced.[6]

By comparison, the Defendants' testimony demonstrates that their claim against Peterson Sullivan would be much different, "much broader than simply reliance on the 2000 financials" and would involve "potentially extremely large damages," reflecting the devastating financial impact of the SCI collapse on Klukwan and its over $30 million in losses, far in excess of Travelers' specific losses on the South Coast bonds. *See, Travelers' Motion*, p.23. Mr. Crandall is clear that had Klukwan proceeded with its own action against Peterson Sullivan it would have sought all damages arguably attributable to Peterson Sullivan's failure to perform a proper audit whether in the year 2000 or earlier.  Crandall Dep. p.521:13-522:2.

Equally mistaken was the Defendants' assumption that Travelers' action against Peterson Sullivan had been timely filed. Both Crandall and Christianson recognized the information provided by the Sutor Consulting and Peterson Sullivan 2001 Operations Report received in early 2002 raised a "red flag" and the Defendants' cause of action against Peterson

---

[6] Defendants mischaracterize Ex. 219, an email from Jan Sokol's associate, Rob Coleman, dated August 4, 2005, as reflecting a damage theory under which Peterson Sullivan was liable for all of Travelers' losses.  Mr. Coleman made clear his email speculated on an alternative liability theory; rather than one on damages. Coleman Dep. p. 79:16-81:1; p.121:3-124:19. To the extent viewed as a damage theory, Mr. Coleman believed his speculations would have reduced Travelers' claimed damages. Coleman Dep. p.123:18-124:19.  Mr. Langfitt was questioned on this identical document, as Ex. 153. Mr. Langfitt testified Coleman's ruminations were never considered a viable theory and there was no basis for Travelers or anyone to predict or know what would or would not have happened to Klukwan had its bonding been cutoff in 2001. Langfitt Dep. p. 267:5-271:11. Travelers never revised its claim against Peterson Sullivan from the original $8.8 million alleged in its initial complaint. Nor is Travelers' malpractice action against Jan Sokol in this case based upon any assertion that Travelers would have recovered a greater sum from Peterson Sullivan.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    18

Sullivan accrued at such time. *See*, *Travelers' Reply*, §II.A.1, *supra*. In the view of both Crandall and Christianson, these reports provided a sufficient basis to sue Peterson Sullivan and obtaining its working papers was unnecessary. Crandall Dep. 506:21-508:25; p.525:5-12; Christianson Dep. p.182:21-183:8. Mr. Crandall became concerned as to the delay incurred while Travelers attempted to obtain the Peterson Sullivan working papers. Crandall Dep. p.525:17-20. Yet, despite that concern, Klukwan took no action on its own. *Id*. p.525:21-526:1. Neither did Mr. Christianson ever analyze, consider, or discuss with Travelers when its cause of action against Peterson Sullivan might accrue. Christianson Dep. p.143:14-144:7.

By the end of May 2002, Travelers had received the very same information, the Sutor Consulting and Peterson Sullivan 2001 Operations Report, which both Crandall and Christianson believed sufficient to file suit against Peterson Sullivan and triggered the statute of limitations for any claim by Defendants. In June 2002, Crandall specifically pointed out to Mr. Langfitt the information contained in those two reports, his suspicions regarding Peterson Sullivan's negligence, and his belief that claims against them should be investigated. The Defendants could have readily determined whether Travelers' action had been timely filed. Since the Defendants enjoyed the benefit of a three year statute of limitations for their claims against Peterson Sullivan, they could have filed their own timely action at any point up to the at least January 2005.[7]

Finally, as perhaps unwittingly emphasized in their *Opposition*, the Defendants' de facto decision to forego their own claim against Peterson Sullivan was first and foremost due to the fact they were preoccupied with other matters and lacked the financial resources to

---

[7] Because Defendants had a contractual relationship with Peterson Sullivan their claim would be subject to a three year statute of limitation, AS 09.10.053; rather than the two year limitation for tort claims applicable to Travelers, AS 09.10.070(a)(2).

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                     19

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

pursue a lawsuit. *Defendants' Opposition*, p.36-37. In the words of Mr. Crandall, "we had other things going on and we did not have the financial dollars to do so." Crandall Dep. p.481:12-13.

Coupled with the above factors was the Defendants' understanding that nothing in the *Repayment Agreement* required Travelers to apply any recovery it might obtain from Peterson Sullivan to the Defendants' obligations and that Travelers had repeatedly rejected the Defendants' request to modify the *Repayment Agreement* in that regard. *See, Travelers' Motion*, p. 16-17, 19. Thus, the Defendants' ultimate decision to forego their claim against Peterson Sullivan was based upon the mere hope that Travelers' lawsuit might somehow indirectly benefit them. That hope, the faulty assumptions behind it, and other unilateral considerations of the Defendants provide neither an equitable nor legal basis to impose a "duty" on Travelers.

> D.     Travelers Was Independently Pursuing Its Own Claim Against Peterson Sullivan. The Parties Were Not Working Together to Obtain a Recovery for Their "Joint Benefit."

Defendants incorrectly argue that they and Travelers "jointly pursued a negligence action" against Peterson Sullivan and that Travelers' substantive action against Peterson Sullivan was pursued for their "joint benefit." *Defendants' Opposition*, p.1, 34. Again, the factual record does not support these broad assertions. The only "joint" endeavor engaged in by the parties was the attempt to obtain Peterson Sullivan's working papers. That effort was unsuccessful and the facts demonstrate Travelers was pursuing its independent, substantive action against Peterson Sullivan solely for its own benefit. The undisputed evidence in this regard includes the following:

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                                    20

SCHIFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

- Travelers repeatedly rejected Defendants' request to revise the *Repayment Agreement* or their "expectation" as to how any recovery Travelers might obtain would be applied. *See*, *Travelers' Motion*, p.16-17, 19-20 and testimony cited therein.

- In discussions with Tom Crandall, Chuck Langfitt categorically rejected any expectation on the Defendants' part that they would benefit from any recovery Travelers might obtain from Peterson Sullivan. Langfitt Dep. p. 251:21-252:22.

- Defendants conducted their own, independent legal analysis of their potential claims against Peterson Sullivan and continued to consider asserting such claims through September 29, 2004. *Travelers' Reply*, §II.B., *supra*; *see also*, *Travelers' Motion*, §IV.L. p.21-25.

- Chuck Langfitt consistently rejected any attempt or desire on the part of Defendants to "ride the surety's coattails." Langfitt Dep. p.208:18-211:2.

- Travelers' claim was asserted in its own right and sought only its damages. Travelers made no claim based on rights derived through the Defendants nor did it assert the much larger damages Defendants had incurred. *See*, Ex. 74 (Travelers' Complaint in Peterson Sullivan action).

- Defendants never discussed with Travelers how it calculated its damage claim from Peterson Sullivan. Defendants further understood Travelers was free to settle its claim against Peterson Sullivan on any terms it wished. Crandall Dep. p.378:8-20.

- Travelers did not consult with, or keep the Defendants informed, when it ultimately decided to file suit against Peterson Sullivan. Crandall Dep. p.320:2-

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                21

SCHIFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

SCHIFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

13; p.320:18-321:1; Langfitt Dep. p.209:8-210:3.   Travelers did not provide Defendants with a copy of its complaint when filed and Christianson only learned of the action on August 11, 2004 through communications he received by the former South Coast officers named as defendants. Langfitt Dep. p.209:16-17; Christianson Dep. p.204:7-25; Ex. 74.

- At its meeting on September 16, 2004, Crandall and the Klukwan board discussed an length whether the Defendants should join Travelers' lawsuit against Peterson Sullivan and assert their own claims. *See*, *Travelers' Motion*, p.26-28 and testimony cited therein. There would have been no need for consideration or discussion of this issue if the Defendants truly believed that Traveler's lawsuit against Peterson Sullivan, filed six weeks earlier, was pursuing a claim for their "joint benefit."

- Christianson's January 19, 2006 email to Crandall transmitted a draft letter to Peterson Sullivan's attorneys prepared by Christianson which stated: "Your sarcastic reference to Mr. Crandall's "friends" at Travelers is uninformed. The relationship with Travelers and Klukwan, has been and continues to be, a difficult and adversarial one." Ex. 183. Christianson's unvarnished and contemporaneous description of the parties' relationship is far more telling than the Defendants' present, self-serving arguments or their attempts to now explain away the obvious meaning of Christianson's statement.

E.    The Defendants' Prior Conduct Is Inconsistent with Its Present Assertion of a Duty on Travelers.

Both Crandall and Christianson admit that the decision to sue Peterson Sullivan was at

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    22

SCHIFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

Travelers' sole discretion.  Crandall Dep. p.320:10-13 ("their claim against Peterson Sullivan was their decision"); Christianson Dep. p.177:12-13 ("-the decision to make – to sue Peterson Sullivan was Travelers' decision").  Therefore, Defendants predicate their Counterclaim on the Good Samaritan doctrine and the argument that, while having no duty to sue Peterson Sullivan, Travelers was somehow obligated to the Defendants to file a timely action, if it in fact elected to do so.

However, no such claim was made by the Defendants after they promptly learned of Judge Beistline's September 27, 2005 ruling dismissing Travelers' action on statute of limitation grounds. Nor did the Defendants assert such a claim during their several attempts in the later part of 2005 to renegotiate the *Repayment Agreement.  See*, *Travelers' Motion*, §IV.O, p.29-30.

Only with the initiation of Travelers' lawsuit against the Defendants in March 2006, did they concoct their current "duty" argument. Even then, the Defendants' initial theory was based upon the allegedly "express condition," purportedly imposed by Cabot Christianson's February 10, 2004 email. *See*, Defendants' Counterclaim, ¶11.  With the facts and evidence demonstrating the utter hopelessness of that argument (*see*, *Travelers' Motion* IV.J., p.18-21), the Defendants have now effectively abandoned it. The chameleon like nature of the Defendants' arguments further reveals their "duty" theory to be nothing more than the product of the misguided imagination of their attorneys, made in a desperate attempt to avoid the Defendants' obligations to Travelers under their agreement.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                                                 23

## III.   ARGUMENT

A.   <u>The Court Should Give Effect to the Plain Meaning of the *Repayment Agreement*. Defendants' Alleged Subjective Intent Is Not Probative.</u>

Contract interpretation is a question of law. *S&B Mining Co. v. Northern Commercial Co.*, 813 P.2d 264, 268, n.7 (Alaska 1991); *Zuelsdorf v. University of Alaska*, 794 P.2d 932, 933, (Alaska 1990) ("the interpretation of the words of a contract presents a question of law for the court").

In interpreting a contract, "the court's duty is to ascertain and give effect to the reasonable intentions of the contracting parties." *Western Pioneer, Inc. v. Harbor Enterprises, Inc.*, 818 P.2d 654, 656 (Alaska 1991). While the court can consider extrinsic evidence to determine those reasonable intentions, it may not allow extrinsic evidence to alter or contradict the terms of an integrated agreement. *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim School Dist.*, 778 P.2d 581, 583 (Alaska 1989), *cert.denied*, 493 U.S. 1022 (1990).

A written contract is considered integrated if the parties intended it to be the full and final expression of the parties' agreement. *Kupka v. Morey*, 541 P.2d 740, 747 n.8 (Alaska 1975). An integration clause gives rise to the presumption that the agreement is integrated. *Id.* at 748-749.

Even where extrinsic evidence is considered on the question of contractual intent, the words of the contract "remain the most important evidence of intention." *Western Pioneer*, 818 P.2d at 657. Moreover, not all extrinsic evidence is considered probative or relevant. Most particularly:

> Differences of opinion among the parties as to their subjective intent, expressed during the litigation, do not establish an issue of fact regarding the parties' reasonable expectations at the time they entered

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                24

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

into the contract, since such self-serving statements are not considered to be probative.

*Peterson v. Wirum*, 625 P.2d 866, 870 (Alaska 1981)(footnote omitted).

Here the definition of the term "Bonded Contract" and the provisions of ¶¶9, 11, and 18 of the *Repayment Agreement* are susceptible to only one reasonable meaning. Mr. Crandall understood that meaning in the same manner as did Travelers. *See, Travelers' Reply*, §II.A., *supra*.

Defendants in fact offer no meaningful extrinsic evidence supporting any other interpretation; rather they simply argue potential claims against Peterson Sullivan were not the parties' "primary concern" and now try to assert a subjective intent different from the plain meaning of the contract. That subjective intent is neither probative nor admissible and provides no basis for the Defendants to avoid the unambiguous meaning of the *Repayment Agreement*.

Even if Defendants had other extrinsic evidence to offer, it would not be admissible to alter or contradict the terms of the *Repayment Agreement*. That agreement was fully integrated, as reflected by the integration clause found in ¶23 of the agreement. *See*, Ex. 42, ¶23. Mr. Christianson also understood the *Repayment Agreement* was fully integrated. In his letter of November 29, 2004 to Jan Sokol, Christianson emphasized that the *Repayment Agreement* was a "global settlement" and that "the whole purpose of the exercise was to reach a global resolution of all Travelers – related issues." Ex. 197. Mr. Christianson's letter reiterated that his clients "intended to be entering into a global settlement." *Id*.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                                                    25

SCHIFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

**B.**    *St. Denis* Thoroughly Analyzed Alaska's Jurisprudence on the Economic Loss Rule, Including *Mattingly*. *St. Denis* Requires Defendants' Counterclaim Be Dismissed Because Travelers' Alleged Negligence Did Not Involve Physical Harm or a Risk of Physical Harm.

Defendants acknowledge Judge Singleton's decision in *St. Denis v. Dept. of Housing and Urban Dev.*, 900 F.Supp. 1194 (D.Alaska 1995) but fail to meaningfully address its thorough analysis of Alaska's jurisprudence on the economic loss rule. Instead, Defendants attempt to ignore *St. Denis* through an incorrect and myopic focus on a single 1987, Alaska decision, *Mattingly v. Sheldon Jackson College*, 743 P.2d.356 (Alaska 1987). Defendants then compound their error by incorrectly asserting that *St. Denis* "did not engage in a substantive analysis of *Mattingly*." *Defendants' Opposition*, p.44.    Defendants' desire to divert the Court's attention from Judge Singleton's scholarly analysis of the economic loss rule as applied by Alaska courts is understandable because *St. Denis* is dispositive of the Defendants' Counterclaim in this case.

*St. Denis* specifically considered *Mattingly* and found that decision consistent with the court's holding.  900 F.Supp. at 1201, n. 9 and 10. Moreover, unlike the Defendants who attempt to rely on a single 1987 case, *St. Denis* considered and analyzed <u>all</u> Alaska decisions addressing the economic loss rule, including four more recent decisions issued between 1993 and 1995, which in Judge Singleton's view "resolved most of these recurring conflicts in prior case law" and "points to a proper resolution of this case." *Id*. at 1199. To accept Defendants' argument, this Court must reject Judge Singleton's extensive analysis and conclude the holding in *St. Denis* is inaccurate. No correct or complete analysis of Alaska law allows such a conclusion.

In *St. Denis*, the plaintiff entered a contract with the federal government for purchase of a home. The plaintiff sought damages from the government for repairs to the roof of the

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    26

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

home, discovered and made after the purchase, and contended "that the government having gratuitously elected to inspect the property owed her a duty to properly conduct its inspections and inform her of the results under the Good Samaritan doctrine..." *Id.* at 1195. Judge Singleton noted the issue before him was as follows:

> Specifically, the query is whether Alaska has adopted the general rule which limits claims for economic loss to the law of contracts and, if so, whether there exists exceptions to the general rule that are applicable to this case.

*Id.* at 1198.

Defendants assert the same Good Samaritan claim against Travelers in this case and similarly seek purely economic losses. The identical question is therefore before this Court.

To answer that question, Judge Singleton conducted a comprehensive analysis of Alaska's case law on the economic loss rule, observing as noted above, that more recent decisions by the Alaska Supreme Court provided resolution of conflicts in prior case law. Based on that analysis, *St. Denis* held as follows:

> Now it clear that the Alaska Supreme Court would recognize a Good Samaritan cause of action pursuant to Restatement (Second) Tort §323 (1965) <u>but only if the breach of duty created a risk of personal injury or property damage</u>. This result is consistent with the plain language of the provision which is limited to actions to recover for physical harm to plaintiff's person or property.

*Id.* at 1203 (emphasis added).

Accordingly, *St. Denis* held that plaintiff's "sole remedies can only be an action on the contract, or an action for negligent misrepresentation." *Id.*[8] Given the extremely thorough analysis which lead to the above holding (*Id.* at 1198–1203), the court could well have ended its decision there. However, Judge Singleton then proceeded to test the holding against seven

---

[8] Defendants do not, and cannot, assert a claim for negligent misrepresentation. *See, Travelers' Motion*, §IV.K. p.20-21

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                    27

SCHIFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

or eight "possible objections to this analysis." *Id.* at 1203-1207. *St. Denis* found none of those possible objections to be valid and further noted significant policy considerations supporting its ruling. *Id.*

Just as the Defendants fail to appreciate the depth and import of Judge Singleton's analysis in *St. Denis*, they similarly fail to recognize that Judge Singleton carefully considered *Mattingly* and found it consistent with his decision. The *St. Denis* analysis in fact began with *Mattingly*, a portion of the decision which Defendants only selectively and misleadingly quote:

> The Alaska Supreme Court was, at one time, critical of any distinction between claims for personal injury and property damage on the one hand and economic loss on the other. It seemed willing to allow one in privity with the defendant to nevertheless sue in tort for economic loss traceable to the "negligent" breach of contractual duties. *See Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 359-61 (Alaska 1987) and compare *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 861-63 (Alaska 1991) (seeming to permit a separate tort claim based on detrimental reliance on a contractual promise that is breached). <u>These two cases appeared to be inconsistent with cases holding that the sole remedy for a negligent breach of a duty assumed in the contract, where only economic loss is suffered, is an action on the contract.</u> *Transamerica Premier,* 856 P.2d at 772-75; *Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936, 947 (Alaska) (declining to recognize action for "negligent" breach of contract). <u>Nevertheless, if we review all of the applicable cases the proper rule becomes clear.</u> While the Alaska law departs in some respects from the rule of *East River Steamship*, <u>the Alaska rule has solidified enough to the point that a plaintiff who claims that a product was defective and seeks only damages for economic loss must sue on the contract and has no independent action in tort unless she can show that the defect created a significant risk of personal injury or property damage.</u>

*Id.* at 1200 (emphasis added).

Defendants' discussion of a "per se" economic loss rule is designed more to confuse than to illuminate. As *St. Denis* holds, Alaska courts will allow tort claims among contracting

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    28

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

parties for purely economic loss under certain limited circumstances – where the breach of the duty creates a significant risk of personal injury or property damage. There is absolutely no such risk on the facts of this case. Defendants assert purely economic damages against Travelers and Travelers' failure to bring a timely action against Peterson Sullivan neither caused nor raised any risk of personal injury or property damage.

As recognized by *St. Denis*, it is this crucial distinction, as well as the apparent absence of any written contract, which distinguishes *Mattingly* and renders *Mattingly* entirely consistent with the court's analysis.

> *Mattingly* is consistent with this analysis since the specific negligence complained about, construction of a defective ditch, actually caused personal injury to Mattingly's employees.

*Id*. at 1201, n. 9.

As do the Defendants here, the plaintiffs in *St. Denis* relied on *Mattingly* in support of their claim, a reliance which Judge Singleton found misplaced:

> St. Denis' reliance on *Mattingly* appears misplaced. In *Land Title,* the court indicated that *Mattingly* did not resolve the issue of the availability of a tort remedy in cases where only economic loss was alleged. *Land Title*, 783 P.2d at 769 n.1. This observation is unclear unless we read into it the holdings in Northern Power and Morrow. See *Northern Power*, 623 P.2d 324 and *Morrow*, 548 P.2d 279. *Mattingly*, like *Northern Power* and *Morrow*, involved claims for economic loss, but involved it in a context where the alleged negligence had caused personal injuries albeit to the plaintiff's employees not the plaintiff. The result in *Mattingly* is, therefore, consistent with the holding in *Pratt & Whitney*. *Mattingly*, 743 P.2d at 360-61; *Pratt & Whitney*, 852 P.2d at 1181.

*Id*. at 1201, n. 10. (citations in original)

In summary, Defendants' attempt to distinguish *St. Denis* is wholly unpersuasive. That decision has carefully and thoroughly analyzed Alaska law. Its analysis leads to only one

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                29

SCHIFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

conclusion – Defendants may not assert a tort claim against Travelers under the circumstances of this case and Travelers' motion must be granted.

*Mattingly* is also entirely distinguishable and does not support the Defendants' position, even if viewed in isolation and without consideration of *St. Denis* and the evolution of Alaska law in subsequent decisions. The plaintiff in *Mattingly* was hired to clean drain pipe on the defendant College's campus. The College's employees excavated and braced a trench to expose the drain pipe so that the plaintiff's employees could do their work.  The trench collapsed causing injury to the plaintiff's employees. The plaintiff sued the College seeking damages for lost income and profits as a result of loss of his employees' services, expenses incurred for their medical care and hospitalization, damages for his own emotional distress and punitive damages. *Mattingly,* 743 P.2d at 357-358.

As recognized in *St. Denis*, *Mattingly* is clearly distinguished from this action due to the actual, and substantial risk of, physical harm. Secondly, there is no indication in *Mattingly* that the parties negotiated a contract or attempted to contractually allocate between them risks and duties relating to the work to be performed by the plaintiff. Accordingly, *Mattingly*'s focus on the foreseeable risk of harm should a cave-in occur due to the College's negligence constitutes classic tort theory analysis; rather than a wellspring from which to impose a duty based merely on foreseeability where one would not otherwise exist. This Court recognized this much in *North Star Terminal and Stevedore Co. v. Nugget Construction*, 445 F.Supp.2d 1063 (D. Alaska 2006) where it rejected a similar argument based on *Mattingly*.  *North Star* correctly held that "*Mattingly* defines the parameters of an existing duty and does not, as Plaintiffs imply, impose a new duty where there would otherwise be none." *Id.* at 1076, n.42.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    30

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

*Mattingly* also relied heavily, if not exclusively, on the New Jersey court's decision in *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 NJ 246, 495 A.2d 107 (1985). That case involved a negligent release by the defendant railroad of dangerous chemicals from a railway tank car, causing the evacuation of the plaintiff airline's offices and resulting in business interruption losses. *People Express,* 100 NJ at 248-249. These events also involved a risk of physical harm. Significantly, there was no contractual relationship between the parties.

The *People Express* court framed the issue before it as whether the defendant's negligent conduct resulting in purely economic losses was "compensable in tort." *Id.* The issue and focus in *People Express* was not whether some new duty arose between the plaintiff and defendant based upon the particular aspects of their relationship. Indeed, the parties had no relationship, other than physical proximity. Rather, the defendant's duty to operate its railway in a fashion to avoid the negligent release of dangerous chemicals was pre-existing and readily established by traditional tort law. Like *Mattingly*, *People Express* defines the scope of recovery for breach of a recognized and established tort duty. It does not create a duty where one would otherwise not exist based merely upon the foreseeability of harm.

C.     <u>Defendants Cannot Distinguish *North Star*</u>.

Defendants attempt to avoid the obvious application of this Court's holding in *North Star* by arguing neither the *Indemnity Agreements* nor the *Repayment Agreement* addressed third party claims and the contracts between the parties do not "govern the conduct at issue." *Defendants' Opposition*, p.40-42. As discussed in *Travelers' Reply*, §II.A., *supra*, this assertion is not supported by the factual record. The parties discussed and contemplated possible claims against Peterson Sullivan during negotiation of the *Repayment Agreement*. Paragraphs 11 and 18 of that agreement specifically address such claims by Travelers and

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                    31

provide "no failure or neglect" by Travelers in regard to such claims would limit or reduce Defendants' obligation under the *Repayment Agreement. See also, Travelers' Motion*, §IV.H., p.13-17. Under the *Indemnity Agreements*, Defendants also agreed to unconditionally indemnify Travelers from any or all losses on its bonds, including any loss or expenses incurred "recovering or attempting to recover any salvage in connection therewith." Ex. 32, §2.

Defendants' legal analysis is also incorrect. Even absent specific provisions addressing third party claims, the parties' relationship here is governed by detailed written contracts which reflect a careful and bargained for allocation of risk, rights and duties. The fundamental purpose of the economic loss rule is to preserve the contractually bargained for relationship between the parties and their allocation of risk by avoiding the imposition of new duties or obligations which the parties declined to impose upon themselves in negotiating their agreement. *See, St. Denis*, 900 F.Supp. at 1206. As this Court emphasized in *North Star*, it is the fact the parties' "relationships" are governed by contracts which precludes the imposition of a tort duty. 445 F.Supp.2d at 1076.

In *North Star*, those contractual relationships were found in the hierarchal chain common to construction contracts between prime contractor, first tier subcontractor and second tier subcontractor. However, there was no direct contract between the plaintiff North Star (second tier subcontractor) and defendant Nugget (prime contractor). In contrast, here there is a direct contractual relationship between the parties, including the detailed *Indemnity Agreements* and carefully bargained for provisions of the *Repayment Agreement*. Accordingly, the Court's holding and rationale in *North Star* is even more appropriate in this case.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                                    32

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514