SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

Additionally, Defendants' argument that tort duties would be precluded among contracting parties only where there are contract terms specifically addressing the conduct at issue is analogous to the now modified and largely abandoned "gravamen" test. *St. Denis*, 900 F.Supp. at 1201. As explained by Judge Singleton:

> The early decisions of the Alaska Supreme Court distinguished between actions in tort and actions in contract by searching for the gravamen of plaintiff's claim. If the action was to enforce a specific promise in the contract, then the gravamen of the complaint was in contract. However, if the contract merely provided the context in which the relationship between plaintiff and defendant arose and the duty breached arose by operation of law, imposed on the parties without regard for their consent, then the gravamen of the action was in tort.

*Id.*

As Judge Singleton observed, Alaska decisions attempting to implement the gravamen test were in conflict and the Alaska Supreme Court in *Lee Houston & Associates, Ltd v. Racine*, 806 P.2d 848 (Alaska 1991) and *Pederson v. Flannery*, 863 P.2d 856 (Alaska 1993) abandoned the gravamen test.

> The conflict was apparently resolved in *Lee Houston* where the court declined to follow the gravamen test and seemed to hold that an action for professional malpractice is always an action on an implied contract and not in tort. *Lee Houston*, 806 P.2d at 853-54. *Lee Houston* was clarified in *Pederson* where the court sought to make it clear that when the damages sought are for purely economic loss, the action must be on the contract; and when the action is for personal injuries, or, by extension, for damage to property or, by further extension, where there is a risk of injury or damage to property, the action is in tort. *Pederson*, 863 p.2d at 857-58.

*St. Denis,* 900 F.Supp. at 1202 (citations in original, emphasis added).

Subsequent decisions by the Alaska Supreme Court have confirmed the accuracy of Judge Singleton's analysis. A 1996 decision, *Breck v. Moore*, 910 P.2d 599 (Alaska 1996),

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    33

noted that application of the gravamen test analysis had "proved difficult." Citing *Lee Houston* and *Pederson*, the court stated as follows:

> We have recently modified the *Van Horn* "gravamen" analysis. Rather than attempting to characterize the source of plaintiff's rights in terms of the common law distinctions between tort and contract, <u>we now look to the nature of the injury.</u>

*Breck,* 910 P.2d at 603 (emphasis added).

Neither does *Jarvis v. Ensminger*, 134 P.3d 353 (Alaska 2006) provide any contrary authority and Defendants' reliance on that decision is misplaced. In *Jarvis*, the plaintiff asserted contract claims arising under its employment contract, as well as claims for intentional misrepresentation and promissory estoppel. The defendant moved for summary judgment on the contract claims, a motion granted by the trial court, which also dismissed the misrepresentation and promissory estoppel claims, even though no motion had been made in regard to them. 134 P.3d at 361. On appeal, the trial court's dismissal of the misrepresentation claims and promissory estoppel claims was reversed because Alaska law "imposes an independent duty to refrain from the tort of intentional misrepresentation" and promissory estoppel is an equitable theory arising outside of the parties' contract. *Id.* at 363-364.

Defendants have never asserted, nor can they assert, misrepresentation or promissory estoppel claims. The evidence is clear Travelers never made a promise or representation it would pursue a substantive action against Peterson Sullivan, a fact the Defendants admit. *See, Travelers' Motion*, §K p.20-21. Absent a "very clear" and "precise" promise, an action of promissory estoppel does not lie under Alaska law. *See, North Star*, 445 F.Supp.2d at 1072 and cases cited therein.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                    34

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

D.    The Good Samaritan Cases Relied Upon by Defendants All Involve Physical Harm and Have No Application to This Matter.

The Defendants' primary legal theory in support of its Counterclaim is based upon the Good Samaritan doctrine and the proposition that in the absence of a duty to act, where one does so gratuitously, he may be subject to a duty to act carefully. *See*, *Defendants' Opposition*, p. 31. The Good Samaritan doctrine represents an exception to the "general rule...that a person is not required to act to protect another." *Trapp v. State, Office of Public Advocacy*, 112 P.3d 668, 672 (Alaska 2005). However, the Good Samaritan doctrine, only imposes "liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm or (b) the harm is suffered because of the other's reliance upon the undertaking." *Trapp,* 112 P.3d. at 672, quoting Restatement (Second) of Torts §323 (emphasis added).[9]

Every decision cited by the Defendants involved actual physical harm or a substantial risk of such harm. *City of Seward v. Afognak Logging*, 31 P.3d 780 (Alaska 2001) (physical damage to bulldozer); *Hammond v. Bechtel, Inc.*, 606 P.2d 1269 (Alaska 1980) (personal injury to construction equipment operator); *Kay v. Danbar, Inc.*, 132 P.3d 262 (Alaska 2006) (personal injuries to tenant suffered from a fall in a duplex); *Adams v. State*, 555 P.2d 235 (Alaska 1976) (wrongful death action from hotel fire); *Moloso v. State*, 644 P.2d 205 (Alaska 1982) (wrongful death action arising from accidental death of construction worker). The

---

[9] Restatement (Second) of Torts §323 states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking. (emphasis added).

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    35

courts in virtually every one of these decisions cited or relied upon §323 or §324A of the Restatement (Second) of Torts for the applicable rule of law. *See e.g., Hammond v. Bechtel* 606 P.2d at 1277, n. 15; *Adams v. State*, 555 P.2d at 240; *Moloso v. State*, 644 P.2d at 212, n. 7; *Kay v. Danbar, Inc.*, 132 P.3d at 271-272.

Both §323 and §324A of the Restatement are clear that they only impose liability for physical harm and only in circumstances where the defendant's negligent conduct actually causes physical harm or creates a substantial risk of such harm.[10] As explained at length in *St. Denis*, Alaska law recognizes an exception to the economic loss rule for Good Samaritan causes of action, but only in circumstances where the defendant's negligent conduct causes physical harm or results in a substantial risk of such harm. Neither of those factors are present in this case and Defendants' may not rely upon the Good Samaritan doctrine here.

E.    The *D.S.W.* Factor Analysis Has No Application in These Circumstances and Does Not Impose a Duty on Travelers in Any Event.

In determining whether a tort duty exists, Alaska courts first examine "statute, regulation, contract, undertaking, the parties pre-existing relationship, or existing case law." *McGrew v. State Dept. of Health and Social Serv., Div. of Family and Youth Services*, 106 P.3d 319, 322 (Alaska 2005). Only where such sources "do not resolve the issue" will Alaska courts then employ the multi-factor approach outlined in *D.S.W. v. Fairbanks North Star Borough School District*, 628 P.2d 554, 555 (Alaska 1981). *McGrew*, 106 P.3d at 322.

---

[10] Restatement (Second) of Tort §324A states:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to <u>liability to the third person for physical harm</u> resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking. (emphasis added)

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                                         36

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

Here at least three of those sources are dispositive of the duty issue and make resort to the *D.S.W.* multi-factor analysis neither appropriate nor necessary. First, the contract between the parties clearly addressed third party claims by Travelers and specifically provided that "no failure or neglect on the part of Travelers" to exercise or pursue such claims or rights would limit or modify the Defendants' obligations under the *Repayment Agreement. See, Travelers' Reply,* §II.A, *supra; Travelers' Motion,* §II.H. p.13-17

Secondly, existing case law is dispositive. Defendants' Counterclaim seeks purely economic damages and the alleged negligence of Travelers did not cause physical harm or create a risk of physical harm. The Counterclaim is thereby barred by Alaska's application of the economic loss rule. *See St. Denis, supra; See also, Waskey v. the Municipality of Anchorage,* 909 P.2d 342, 343-44 (Alaska 1996) (finding it "unnecessary to resort to the *D.S.W.* approach" where the court had decided other cases "more closely related" to the subject duty dispute).

Third, the "*D.S.W.* factors are typically applied to determine if there is an actual duty of care when there is no existing or intended relationship between the actor and the person harmed." *McGrew,* 106 P.3d at 326. Here the parties had a longstanding relationship governed by the *Indemnity Agreements* and *Repayment Agreement.* Accordingly, neither the *D.S.W.* factor analysis nor imposition of a tort duty on Travelers is appropriate. *See Id.; See also North Star,* 445 F.Supp.2d at 1076.

Further, in *St. Denis* Judge Singleton examined the history of the *D.S.W.* test, noting Alaska courts had adopted it from early California decisions and the *D.S.W.* factor analysis is the same test utilized in *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 157 Cal.Rtpr. 407, 598 P.2d 60 (1979). *St. Denis,* 900 F.Supp at 1205-1206. *St. Denis* further noted the inconsistent results

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                37

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

reached with the application of the test and Alaska courts' divergence with California

decisions applying the test on identical issues:

> It is clear that the Alaska Supreme Court uses it [*D.S.W.* test] to explain results and not reach them. *Tyonek*, 680 P.2d at 1152-54. The fact that the respective Supreme Courts of Alaska and California are applying the same test and regularly reach diametrically opposite decisions as to whether to impose a duty confirms the limited value of the test as a predictor. Its value is purely as an apology for a decision reached on other grounds.
>
> \*       \*       \*
>
> In summary, in the area of economic loss where courts have been squarely faced with the issue, they have consistently refused to find an extra contractual duty beyond the duty to refrain from deceit. Its reluctance to follow other California cases utilizing the test foreshadows rejection of *J'Aire*, 598 P.2d 60.

*Id.* at 1206 (citations in original, explanatory parenthetical added).

Even if the *D.S.W.* factor analysis is applied here in the abstract, it does not lead to the

imposition of a duty on Travelers. First, Travelers' claim against Peterson Sullivan was

brought in its own name, in its own right and was not derivative of the Defendants in any

fashion. The amount of Travelers' ultimate recovery from Peterson Sullivan was also

uncertain, a fact Mr. Crandall recognized and explained to the Klukwan board at its meeting

on September 16, 2004. Crandall Dep. p.488:11-490:20.    Therefore, even if ¶9 of the

*Repayment Agreement* is ignored, there was only a "remote chance" that Travelers' net

recovery from Peterson Sullivan would exceed the approximately $4 million or more of its

losses that would not be repaid by the Defendants under the *Repayment Agreement*.

In contrast, South Coast's collapse had caused over $30 million in losses to the

Defendants. *See Travelers' Motion*, §4.C., p.9-10. As admitted by Crandall and Christianson,

the Defendants' claim against Peterson Sullivan was "much broader" than Travelers and

would involve "potentially extremely large damages." Additionally, the Defendants had

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                38

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

consistently and repeatedly informed Travelers they were continuing to consider their own action against Peterson Sullivan. *See, Travelers' Reply*, §II.B, *supra*; *see also*, *Travelers' Motion* §4.M, p.25-28.  Given these circumstances, it was far from foreseeable that the Defendants would forego their own claim against Peterson Sullivan, nor is there any degree of certainty that Defendants suffered at all from dismissal of Travelers' claim.

Secondly, Travelers' failure to file a timely action against Peterson Sullivan did not cause the Defendants any damages. Only Travelers' claims against Peterson Sullivan were dismissed. The Defendants continued to enjoy the over $4 million in relief from their indemnity obligations which they had negotiated under the *Repayment Agreement* and the Defendants' claims against Peterson Sullivan were unaffected by the dismissal of Travelers' action. For these reasons, neither the first nor second *D.S.W.* factors are met.

Third, the fact Travelers had commenced an action against Peterson Sullivan was, at most, only one of multiple reasons the Defendants made their decision to forego their own claim. Those additional reasons included the Defendants' unilateral assumption as to the nature of Travelers' claimed damages and the timeliness of its action, Defendants' perception of the merits of their own claim, and the Defendants' lack of financial resources. Thus, the third *D.S.W.* factor is not met in these circumstances.

The fifth and sixth *D.S.W.* factors – policy considerations and the burden to the defendant and the community as a whole of imposing a duty - also require rejection of any duty on Travelers in these circumstances. The duty Defendants seek to impose here would have profound and far reaching consequences and require every injured party to pursue, in a timely fashion, any and all available claims against third parties, solely for the benefit of the wrongdoer. An injured plaintiff would be subjected to an ever expanding circle of second

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    39

guessing by a defendant as to third parties the plaintiff could have, should have, might possibly have sued, all for the ultimate benefit of the wrongdoer. Such a rule would dramatically alter current law, both contract and tort, and effectively stand the normal presumptions and burdens on their head. In the appropriate case, these considerations will outweigh other *D.S.W* factors, including forseeability. *Kooly v. State*, 958 P.2d 1106, 1109, n.6 (Alaska 1998) (burden and consequences of imposing liability were the most important considerations and outweighed forseeability factor).

Finally, Travelers has no insurance for breach of a duty alleged by the Defendants, nor is any such insurance likely available for purely economic losses arising from the alleged failure to bring a timely action against a third party for the benefit of a wrongdoer. The Defendants' facile suggestion that Jan Sokol has insurance misses the point as to the proper application of this factor.

F.    The Doctrine of Mitigation Does Not Provide the Defendants a Cause of Action.

Defendants assert they are entitled to an offset that reduces the amount they owe Travelers under the *Repayment Agreement* based on their claim for negligence and affirmative defense of failure to mitigate damages. *Defendants' Opposition,* p. 28-29. Under either theory what Defendants seek is an affirmative recovery based on the allegation that Travelers acted unreasonably by not filing a timely lawsuit against Peterson Sullivan and that as a result "the amount it owes is increased." *Id.* at p. 29.

Defendants' use of the doctrine of mitigation of damages as an affirmative theory of recovery is misplaced. *In re Korn,* 352 B.R. 228, 245 (D.Idaho, 2006). Travelers has no "duty" to mitigate any damages and no damages result from any violation of such a duty. *Gideon v. Johns-Manville Sales Corp.,* 761 F.2d 1129, 1139 (5th Cir. 1985)("While it is

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                                    40

commonly said that an injured party has a 'duty' to minimize damages, this is misnomer, for the victim owes no duty to the person who hurts him."); *Tennessee Valley Sand & Gravel v. M/V Delta*, 598 F.2d 930, 932 (5th Cir. 1979) ("Courts have often referred to a so-called duty to mitigate damage, but there is no such duty, for there is no correlative right upon its violation."); *Walker v. Transamerica Title Insurance Co., Inc.*, 65 Wn.App. 399, 405 n.7, 828 P.2d 621 (Wash.App. 1992) ("Technically, it is inaccurate to say that an injured party has a "duty" to take reasonable steps to avoid further damages. "[T]he plaintiff cannot be sued for breach of this supposed 'duty'..."); *Restatement (Second) of Torts § 918 "Avoidable Consequences," comment a* (". . . the rule stated in this Section applies only to the diminution of damages and not to the existence of a cause of action"); *Restatement (Second) of Contracts § 350 "Availability as a Limitation on Damages," comment b* ("It is sometimes said that it is the "duty" of the aggrieved party to mitigate damages, but this is misleading because he incurs no liability for his failure to act.")

To the extent that Defendants' Counterclaim relies on a "duty" based on the doctrine of mitigation, it must be dismissed for the above reasons alone. Neither do Defendants have a viable affirmative defense of failure to mitigate that is applicable here. Any such affirmative defense must also be dismissed for the reasons that follow.

G.    Defendants Have No Mitigation Defense as a Matter of Law.

The rule requiring mitigation of damages is subject to substantial limitations in its application that Defendants have either ignored entirely or have glossed over with facile arguments. Each one of the limitations, considered separately, would be enough to dismiss Defendants' affirmative defense of mitigation; taken together they provide overwhelming

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    41

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

justification to dismiss the defense for the reason that the rule is simply not applicable as a matter of law to the facts of this case.

### 1. There Is No Duty to Mitigate Where the Written Agreement Between the Parties Negates Any Such Duty.

Travelers has explained that sureties have no duty to mitigate when they seek indemnity for losses incurred on their bonds. *Travelers' Motion*, p.37-40. Defendants respond by attempting to limit Travelers' argument and decisions to the narrow facts of those cases. *Defendants' Opposition*, at p. 48. Defendants also argue that courts have not absolved sureties from their duties of mitigation, citing *Fidelity and Deposit Co. of Maryland v. A-Mac Sales and Builders Co.*, 2006 WL 1555985 (E.D. Mich. 2006). However, the surety cases cited by Travelers are not limited to their specific facts and the *A-Mac* case does not help Defendants.

The underlying principle of the surety cases relied upon by Travelers is that the broad language of the indemnity agreements gives sureties unrestricted freedom to obtain reimbursement for the expenses they have incurred and does not impose any duty to mitigate. Similarly, the *Indemnity Agreements* and *Repayment Agreement* signed by Defendants here, especially ¶¶11 and 18, give Travelers complete freedom to act, or not act, in regard to its third party claims and do not impose any duty to mitigate. In general terms, an expansively worded agreement between parties that negates any duty to mitigate – such as the *Repayment Agreement*-- will trump any common law rule.

That principle is illustrated by the *A-Mac* case cited by Defendants. Although the court did recite the mitigation rule and its effect, the court ignored the rule in the face of the broadly worded indemnity agreement giving the surety full rights to adjust, settle, or compromise any claim, demand, suit, or judgment upon the bonds. Those rights superseded the mitigation rule.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                    42

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

The court concluded as a matter of law that that the surety was entitled to summary judgment. A similar result should follow here where Defendants have given Travelers similar broad rights in both the *Indemnity Agreements* and *Repayment Agreement.* Any common law duty of mitigation is thus trumped by the contractual rights agreed to by the parties and summary judgment to that effect is appropriate.

The other surety cases cited by Travelers support that result. In each case the broadly worded indemnity agreement is similar to the broadly worded *Indemnity Agreements* here. *See*, Ex. 32, §s 2, 9, and 10. The *Repayment Agreement* further gives Travelers additional broad rights in regard to third party claims under ¶¶ 11 and 18. In each case below, the court found that the sureties' rights under the agreements imposed no duty of mitigation and entitled the sureties to recover fully by summary judgment without limitation or mitigation.

In *Fireman's Fund Insurance Company v. Joseph J. Biafore, Inc.,* 526 F.2d 170 (3d Cir. Pa. 1975), the court ruled that the indemnity agreement "evinces a pledge by defendants to perform absolutely and without limitation" and that the failure of the surety to perfect a security interest in the accounts receivable did not affect defendants' obligations under the indemnity agreement. *Id.* at 174. Summary judgment for the surety was affirmed.

*Guterman v. First Winthrop Corp.,* 708 F. Supp. 953 (N.D. Ill. 1989) reached a similar result. The dispute between Guterman and CNA stemmed from a suretyship relationship. CNA paid off Guterman's debts and asserted a claim for indemnity. Guterman argued that CNA failed to mitigate damages by selling the collateral he had provided. The court rejected that challenge: "The indemnity agreement, however, calls for full indemnification by Guterman whether or not CNA has sold the collateral. Having failed to show that CNA had a duty or an opportunity to mitigate damages, Guterman cannot assert an affirmative defense

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                43

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

based on the failure to mitigate." *Id.* at 954.  The court affirmed its summary judgment granted to the surety.

In *Moya v. Fidelity and Casualty Company of New York*, 406 P.2d 173, 176 (N.M. 1965), the court said:  "The contract of indemnity promised to reimburse for expenditures made under the bond unless made fraudulently. …. We do not think [the surety] had any duty to mitigate – and the proof here does not support any conclusion that they should have."

Although Defendants attempt to limit the holding and effect of *Four Seasons Environmental, Inc. v. Westfield Companies,* 638 N.E.2d 91 (Ohio Ct.App. 1994) because that case does the most damage to them, their efforts are not persuasive.  The court did not, as Defendants assert (*Defendants' Opposition,* p.49), merely hold that the surety had not breached its duty of mitigation under the facts presented.  Rather, the court affirmed a summary judgment for the surety against the indemnitors by rejecting a challenge that there existed a question of material fact as to whether Westfield had mitigated its damages.

The indemnitors argued that the surety had failed to collect $5000 the contractor was holding that would have reduced their indemnity obligation.  While acknowledging Ohio law required an injured party to a contract to mitigate its damages, the court ruled that any such duty did not require the surety to pursue the $5000 since the indemnitors had agreed "unconditionally" to indemnify Westfield; Westfield had the right, but not the duty, to adjust, settle or compromise any claim; and the agreement was to be "liberally construed" to protect and indemnify Westfield fully.  *Four Seasons*, 638 N.E. at 93.  In other words, the agreement between defendants and the surety, because of its broad language and rights given to the surety, trumped any duty of mitigation that might otherwise have been imposed on the surety.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                    44

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

Similarly, the same broad language in the *Indemnity Agreements* and *Repayment Agreement* here supersedes any duty to mitigate that might otherwise fall on Travelers.

**2.    The Rule Applies Only to Damages That Can Be Prevented, Not to Damages Already Incurred.**

Defendants do not address at all Travelers' argument that the mitigation rule applies only to damages that can be prevented, not to damages already incurred. *See, Travelers' Motion,* p.37-38. The Alaska cases cited there by Travelers express the underlying premise for this limitation – to protect both societal and individual resources by limiting damages to those that could be prevented or avoided. That premise does not fit the facts of this case.

Travelers' damages of over $12 million were incurred in paying claims and meeting its obligations under bonds issued on behalf of South Coast. Defendants do not challenge the reasonableness of those losses or argue that Travelers could have done anything to prevent them. What Defendants attempt to argue, under the guise of mitigation, is that having incurred such damages, Travelers should have recouped a portion of them through a subsequent lawsuit against a third party. These facts simply do not fall within the ambit of the mitigation rule, since that rule "applies to damages which one can prevent and not to damages already incurred." 25 C.J.S. §47 *Duty to Prevent or Reduce Damages*, n. 10.

Other authority supports this conclusion. *See, Reed v. Aaacon Auto Transport, Inc.,* 637 F.2d 1302, 1305 (Ct.App. N.M. 1981) (The rule of mitigation "applies to the time during which damages are accruing, not to the election of remedies after damages have occurred.")(internal citation omitted); *National Steel Corp. v. Great Lakes Towing Co.,* 574 F.2d 339, 343 (6th Cir. 1978) ("The plaintiff has a duty to take reasonable steps to mitigate damages, but this is a concept of avoidance, not repair. Thus the plaintiff must take all reasonable steps to prevent the accumulation of damages, and to minimize the effect of

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                                    45

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

defendant's negligence; but the duty to mitigate applies only to damages which one can prevent, not to damages already accrued."); *Robisnson v. Carney*, 632 A.2d 106, 108 (D.C.Ct. App. 1993) ("The rule of avoidable consequences comes into play after a legal wrong occurred, but while some damages may still be averted, and bars recovery only for such damages.")(internal citation omitted).

### 3.    The Rule Does Not Require the Filing of a Lawsuit to Mitigate Damages.

Another judicially imposed limitation on the mitigation rule is that a party is not required to institute and prosecute a lawsuit in order to minimize loss. *See, Travelers' Motion* at p.38-39. This limitation has been adopted without exception by courts that have addressed the issue. Defendants do not dispute this limitation and do not take any exception to the cases cited by Travelers. Instead they focus on only one case, *Danzas, Ltd. v. National Bank of Alaska,* 222 F.Supp. 671 (D.Alaska, 1963), not cited for the lawsuit limitation proposition, and attempt to sweep all of Travelers' authority aside by arguing that in filing the lawsuit against Peterson Sullivan, Travelers acknowledged such action was reasonable and not too costly. *See, Defendants' Opposition at* p. 48. But merely filing a lawsuit is no indication of what the ultimate cost will be. And choosing to file a lawsuit does not mean that Travelers had a <u>duty</u> to file and successfully prosecute a lawsuit to a favorable conclusion as Defendants contend. Indeed, the Defendants' self-serving argument is entirely circular and based on the proposition that, because Travelers actually filed a suit, it owed a duty to the Defendants to do so. Rather, as *Stone v. Satriana*, 41 P.3d 705, 712 (Colo. 2002) recognized, "litigation is too uncertain and costly to impose such a duty on a party." *See, Travelers' Motion*, p.38-39.

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                                    46

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

4.    **The Rule Is Not Applicable Where Both Parties Have an Equal Opportunity to Mitigate**.

The undisputed facts establish that Defendants continued to consider their own action against Peterson Sullivan even after Travelers filed its lawsuit. *See*, *Travelers' Reply*, §II.B, *supra*. They had an equal opportunity to file their own suit and chose not to, instead preferring to "let Travelers do the heavy lifting here." *Travelers' Motion*, p. 27.

In light of those facts, Defendants cannot impose on Travelers the sole obligation to sue Peterson Sullivan, even if doing so otherwise fell within a duty to mitigate on Travelers' part. A plaintiff has no "duty" to mitigate when the defendant has an equal opportunity to do so. *Walker v. Transamerica Title Ins. Co., Inc.*, *supra.*, 65 Wn.App. at 405-406. The following decisions are among the extensive authority cited by *Walker* for its holding: *Wartzman v. Hightower Productions, Ltd.,* 53 Md.App. 656, 667, 456 A.2d 82, 88 (1983) ("The doctrine of avoidable consequences, moreover, does not apply where both parties have an equal opportunity to mitigate damages."); *Shea-S & M Ball v. Massman-Kiewit-Early,* 606 F.2d 1245, 1249 (D.C.Cir.1979), quoting *S.J. Groves & Sons Co. v. Warner Co.,* 576 F.2d 524, 530 (3d Cir.1978) ("Where both the plaintiff and the defendant have had equal opportunity to reduce the damages by the same act and it is equally reasonable to expect the defendant to minimize damages, the defendant is in no position to contend that the plaintiff failed to mitigate. Nor will the award be reduced on account of damages the defendant could have avoided as easily as the plaintiff. *See Dobbs, Handbook on the Law of Remedies* §3.7 p.186 (1973); *Unverzagt v. Young Builders, Inc.,* 252 La. 1091, 215 So.2d 823, 828 (1968) ("In the instant case there is no doubt that the defendant had the same opportunity to perform, and equal knowledge of the consequences of nonperformance, as did the plaintiff."); *Alexander v. Brown,* 646 P.2d 692, 695 (Utah 1982) ("However, plaintiffs had no obligation

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)                                47

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

to mitigate damages by taking action which defendants themselves refused to take."); *see also*, 22 Am.Jur.2d *Damages* § 346 (1965) ("When both parties have the same opportunity to reduce damages, a defendant cannot later contend that the plaintiff failed to mitigate.")

This judicial limitation on the common law mitigation rule is yet another reason why Defendants' affirmative defense must be rejected as not applicable to the facts of this case.

## IV. CONCLUSION

By entering the *Repayment Agreement*, the Defendants specifically agreed Travelers had no duty or obligation to pursue third party claims, including any claim against Peterson Sullivan. Alaska law also imposes no duty on Travelers even absent such contract terms. Because the parties' relationship is governed by their contractual agreements and Travelers' alleged negligence did not cause physical harm or create a risk of such harm, Alaska law further prohibits any tort based claim against Travelers for purely economic losses. The doctrine of mitigation provides Defendants no cause of action against Travelers nor is any affirmative mitigation defense applicable as a matter of law on the facts of this case. Defendants' Cross Motion should be denied and Travelers' Motion granted, dismissing Defendants' Counterclaim and any affirmative mitigation defense.

Respectfully submitted this 21st day of January, 2008.

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
Attorneys for Plaintiff

*/s/James T. Hopkins*
Garth A. Schlemlein, ASBA # 8602011
James T. Hopkins, *Pro Hac Vice*
Schiffrin Olson Schlemlein & Hopkins, PLLC
1601 Fifth Ave., Suite 2500
Seattle, WA 98101
Telephone: (206) 448-8100/Fax (206) 448-8514
Email: jth@soslaw.com

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                    48

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C. • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
WESTLAKE CENTER OFFICE TOWER • PHONE: (206) 448-8100 • FAX: (206) 448-8514

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, P.L.L.C.
WESTLAKE CENTER OFFICE TOWER • 1601 FIFTH AVENUE, SUITE 2500 • SEATTLE, WASHINGTON 98101
PHONE: (206) 448-8100 • FAX: (206) 448-8514

1

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that on January 21, 2008 a true and correct copy of the above document was electronically filed with the Clerk of Court using the CM/ECF system,

3

which will send notification of such filing to the following:

4

Gary Spraker, Esq.

5

Chirstianson & Spraker
911 West 8th Avenue, Suite 201

6

Anchorage, AK 99501

7

James D. Gilmore, Esq.

8

11255 Rhody Drive
Port Hadlock, WA 98339

9

Richard E. Spoonemore

10

Sirianni Youtz Meier & Spoonemore
719 2nd Ave., Suite 1100

11

Seattle, WA 98154

12

13

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, PLLC

14

_S/ James T. Hopkins_

15

James T. Hopkins, *Pro Hac Vice*
Garth A. Schlemlein, ASBA # 8602011

16

Schiffrin Olson Schlemlein & Hopkins, PLLC
1601 Fifth Ave., Suite 2500

17

Seattle, WA 98101
Telephone: (206) 448-8100/Fax (206) 448-8514

18

Email: jth@soslaw.com

19

20

21

22

23

24

25

26

27

28

Travelers' Reply and Opposition to Cross Motion
Travelers Casualty and Surety v. South Coast, Inc., et al.
**Case No. A06-00063 (TMB)**                49