

November 15, 2005

John W. Ferris
Peterson Sullivan PLLC
601 Union Street, Suite 2300
Seattle, WA 98101

Re:   Peterson Sullivan, PLLC letter dated October 6, 2005

Dear Mr. Ferris:

In your letter dated October 6, 2005, you state that Klukwan owes Peterson Sullivan $122,287.63. We strongly disagree.

History:

Peterson Sullivan was the auditor for Klukwan and subsidiaries from 1983 through 2002. In 1991, Klukwan purchased South Coast, Inc. and thereafter, Peterson Sullivan performed work necessary to include South Coast in the audited financial statements. We believe that the audit Peterson Sullivan performed on the financial statements for the year ended December 31, 2000 should have referenced, either in the audit report or the report to management, the breakdown of internal controls and policies at South Coast.

We believe that the following examples show why the breakdown of internal controls and policies at South Coast should have been known to Peterson Sullivan and then brought to Klukwan's attention.

In November 1997, Klukwan hired FMI to help develop policies, procedures and internal controls necessary for the operation of a construction company. In 1998 and 1999, FMI prepared "report cards" on the performance of South Coast. By 2000, the "report card" system was moved in-house to South Coast. By fall 2001, it was apparent that South Coast was in difficulty and Klukwan hired Peterson Sullivan and Sutor Consulting to review the company. As you stated in your report, had South Coast continued to follow the procedures developed by FMI, many of the inaccuracies could have been mitigated.

Klukwan, Inc.
425 Sawmill Road / PO Box 209
Haines, AK 99827
907-766-2211 phone / 907-766-2973 fax

DEPOSITION EXHIBIT #28

4178

000161

Sutor Consulting:

Page 5 of the executive summary contained in the Sutor Consulting report dated March 1, 2002 states:

> "In conclusion, we believe that as an owned and independently operated subsidiary, it is essential SCI's management processes are effective and provide a significant degree of management oversight capability. Inherent problems with existing procedures and outright system breakdown in some cases have severely hampered Klukwan's efforts to oversee SCI's operating results and financial condition. It will be necessary that inherent shortcomings in SCI systems and management procedures be changed in order to provide Klukwan adequate information to make well-reasoned decisions about its continued involvement with SCI."

Basically, this can be summarized as a problem with internal controls at South Coast.

Peterson Sullivan:

Page 1 of the summary contained in the Peterson Sullivan report dated January 2002 states:

> "SCI's management kept reporting more and more loss each month in the last quarter of the year [2001]. This finally resulted in Klukwan, Inc.'s Board and management losing faith in SCI's management."

> "How could all this have happened so quickly?"

> "Even though the reported numbers indicate a fast deterioration, many of the factors contributing to the losses were in existence prior to October [2001]."

Page 2 states in part:

> ". . . If the FMI procedures had been followed many of these inaccuracies could have been mitigated. . ."

Finally, page 3 states in part:

> "SCI was poorly managed out of Ketchikan in 2001. Actual performance in the three geographic regions [Arizona, Ketchikan and remainder of Alaska] was mixed. Performance in the Alaska [region] other than Ketchikan region was by far the worst. The Richardson Highway project

4179

000162

was a management disaster. Its management and reporting problems exemplify what generally went wrong outside of home base in Ketchikan."

Although not as concisely put as in the Sutor Consulting report, the conclusion is the same. The problems at South Coast can be summarized as a fatal problem with internal controls and procedures.

It is our understanding that part of the audit process includes the evaluation of internal controls and a determination by the auditor on how much reliance can be placed on the internal controls when performing an audit. Peterson Sullivan audited the 2000 financial statements and issued the audit report in the spring of 2001. The internal controls (the FMI procedures) were changed in 2000. Both the Sutor Consulting report and the Peterson Sullivan report indicate that there were problems with internal controls and that these problems contributed to the collapse of South Coast and the resulting financial impact on Klukwan. Therefore, we assert that Peterson Sullivan share in the responsibility for the collapse of South Coast, Inc.

In closing, Klukwan does not believe it has any responsible for paying the $122,287.63 due Peterson Sullivan and will vigorously defend against any and all attempts to collect this or any other amount due.

Respectfully,

Thomas L. Crandall
President


Enclosures:   Peterson Sullivan PLLC letter dated 10.6.2005
              Sutor Consulting executive summary dated 3.1.2002
              Peterson Sullivan PLLC summary dated 1.2002


CC:           Board of Directors
              Cabot Christianson



**PETERSON SULLIVAN PLLC**

CERTIFIED PUBLIC ACCOUNTANTS
601 UNION STREET, SUITE 2300
SEATTLE, WASHINGTON 98101

October 6, 2005

To the Board of Directors
Klukwan, Inc.
PO Box 209
425 Sawmill Rd
Haines AK 99827

Dear Board Members:

Klukwan, Inc. owes Peterson Sullivan PLLC $122,287.63. This amount is due for work performed plus expenses incurred primarily during 2002. I have discussed the payment of this with Tom Crandall, CEO, many times and monthly statements of this account have been mailed to Klukwan, Inc. No payments were made. Further, I tried calling Tom Crandall on October 3 and 4, 2005, to discuss the payment with him again. He has not returned my calls.

I understand that Klukwan, Inc. has financial difficulties. But, this is not a reason to avoid making an arrangement to pay the amount due. Peterson Sullivan PLLC has been of real assistance to Klukwan, Inc. and expects to receive proper courtesy and payment of its outstanding bill. Therefore, Peterson Sullivan PLLC requests that either the Klukwan, Inc. Board or its authorized designee discuss the unpaid amount with John Ferris to resolve the issue within 30 days from the date of this letter.

Very truly yours,

John W. Ferris

irm

For the other two contracts we reviewed, Navaho Forest Boundary and Chinle, there were problems beyond not recognizing the gross receipts tax. Simply stated, the Navaho Forest Boundary project suffered from lack of attention from management. At Chinle, the primary construction problem was environmental which, even though known in early 2000, resulted in significant delays. This has resulted in a $2.2 million claim which is currently in litigation. Should the litigation result in a favorable outcome, the Chinle current loss in excess of $1.0 million (Exhibit C) could be greatly reduced.

Fraud

Finally, we performed certain procedures to help detect fraud. Based on those procedures, we found no evidence of significant fraud.

Conclusion

SCI was poorly managed out of Ketchikan in 2001. Actual performance in the three geographic regions was mixed. Performance in the Alaska other than Ketchikan region was by far the worst. The Richardson Highway project was a management disaster. Its management and reporting problems exemplify what generally went wrong outside of home base in Ketchikan.

Klukwan's Board determined that SCI's bad financial performance in 2001 was attributable, in the first instance, to senior management in Ketchikan. Action has already been taken to attempt to correct the management and financial problems at SCI

4182
000165

South Coast, Inc.
Report on Project Review
March 1, 2002



## I. EXECUTIVE SUMMARY

### A. Work Scope

Our January 8, 2002 engagement letter with Klukwan, Inc. provided for review of the following areas:

1. "Methods and means used to estimate the cost-to-complete construction contracts in progress, with specific emphasis on jobs where the remaining estimated cost-to-complete and/or revenues to be earned exceed $1,000,000."

2. "Current procedures used to track construction projects from both a cost and schedule standpoint. This would include reviewing job cost setup, budgeting, labor productivity tracking, scheduling techniques, etc. and determining if South Coast, Inc. (SCI) is following established procedures."

In accordance with our engagement letter we have completed our review of the foregoing areas. The projects included in our review were as follows:

- Job #22921-Big Salt (Alaska)
- Job #23117-Toksook Airport (Alaska)
- Job #23119-USCG Dock (Alaska)
- Job #23120-Unalaska Airport (Alaska)
- Job #23108-Borrego Pass (Arizona)
- Job #23112-Window Rock –Navajo FB (Arizona)
- Job #23205-San Carlos (Arizona)

Page 1

4183
000166

South Coast, Inc.
Report on Project Review
March 1, 2002



### B. Summary of findings and conclusions

The following table summarizes our findings based on our review of SCI's cost-to-complete estimates and resulting anticipated job profit or loss estimates:

| Job # | Job Name | SCI Profit (Loss) | Sutor Profit (Loss) | SCI vs Reviewed Profit |
|---|---|---|---|---|
| 22921 | Big Salt Road | $ (188,811) | $ (1,686,335) | $ (1,497,524) |
| 23117 | Toksook Airport | 560,353 | 323,018 | (237,334) |
| 23119 | USCG Dock | 776,300 | 726,300 | (50,000) |
| 23120 | Unalaska Airport | 351,245 | 351,245 | 0 |
|  | Alaska totals | 1,499,087 | (285,772) | (1,784,859) |
| 23108 | Borrego Pass | 350,431 | 269,030 | (81,401) |
| 23112 | Navajo Forest Boundry | (575,238) | (651,740) | (76,502) |
| 23205 | SCR 103(4) San Carlos | 104,089 | 104,089 | 0 |
|  | Arizona totals | (120,718) | (278,621) | (157,903) |
|  | All reviewed jobs | $ 1,378,369 | $ (564,393) | $ (1,942,762) |

1. **Management**

As illustrated in the foregoing chart SCI has had serious problems in estimating final completion costs and controlling costs on its larger projects. Although SCI admittedly has significant problems in these areas, there were a number of areas where we considered SCI to have strong controls and capabilities. These included the detailing of the SCI bid estimate in the BID ITEM sheets, scheduling, operational capability, marine logistics and dedicated personnel. Generally we found SCI to be stronger in areas relating to field operations.

With few exceptions SCI has demonstrated significant expertise in the area of operations planning and tactical considerations. From our observations, this is a real strength of SCI. They have several people with strong skill sets in key operational areas. We hope this operational strength is not overlooked when assessing the future plan for SCI. We believe this provides a good base for a successful company once upper management is in place and some of the control issues outlined in this report has been resolved.

Although field-operations orientation is essential, a viable company cannot afford to underestimate the importance of other management processes. We believe that overall, SCI has strong project managers who are capable of controlling all aspects of the projects with appropriate direction and

4184
000167

1 1 - 8 - 0 5 ; 10 : 44 PM ; K l u k w a n   I n c .   ; 1  907  766  2973   # 3/ 5



South Coast, Inc.
Report on Project Review
March 1, 2002

guidance from upper management. The primary responsibility for the development of these systems in a construction organization resides with upper management and not the project managers. If there was a failing in this area it was upper management and not SCI's existing project managers. We found SCI's project managers to be dedicated, well-versed in field operations, intelligent and thorough. However, the project managers were not effective in many areas that fall within their responsibilities. These areas included file management, document control, cost control, budget management, productivity monitoring, and reporting on job profitability. It does not appear that SCI has people on staff that have had formal training in these areas of project management. Nor does it appear that they have picked up these skill sets in prior employment. SCI's project managers understand many aspects relating to these areas but have not pulled it together into a meaningful management routine.

In Section V we make some observations and recommendations with respect to the new management personnel who may be brought into the company.

2. Systems and procedures

Overall we found a lack of standardization and consistency in many areas. There appeared to be very little direction in terms of standardization of procedure. When standard forms were used, their form, content and usage varied widely between individuals. As a result there were a variety of fragmented standalone systems and procedures in place for accomplishing routine tasks. This has created significant control gaps and disorganization in SCI's business practices. This lack of standardization and consistency has significantly reduced the ability of both internal and external managers to accurately assess the status of SCI's business operations and financial status.

In Section III of this report we discuss several aspects of SCI's existing procedures and our recommendations for improvement. During our review we noted several areas from estimating & bidding through project management that require improvement. Some of these areas are as follows:

a. Estimating and bidding. Improved control over bidding & estimating procedures to provide better visibility over estimating decisions and less risk of oversight and error. This will require changes to some existing procedures. We were particularly concerned about the lack of control over bidding decisions and the disconnect between the bid amounts and the underlying cost estimates supporting the bids. Refer to Section III.C.

4185

000168

South Coast, Inc.
Report on Project Review
March 1, 2002



b.  **Internal and external estimate reviews.** We think it is essential that SCI implement a standard internal and sometimes external estimate review. SCI's existing process does not foster accountability in bidding and estimating. There is no assurance that SCI's past experience with bid errors will not be repeated unless there is a meaningful estimate review. Refer to Section III.C.3.

c.  **Project management.** We have recommended changes in the way SCI manages its projects. Some of these deal with assignment of key field personnel to the projects and others deal with submittal and job buyout controls. Refer to Section III.D.

d.  **Budgeting, costing and tracking.** We have recommended some sweeping changes to SCI's existing procedures. These recommendations call for changes in methodology, affecting the manner in which SCI budgets jobs, sets up the job cost and tracks cost. This will effect accounting as well as project management functions. SCI's existing system is time-consuming and ineffective. The current methodology for cost management is a primary source of many of the profitability reporting. Refer to Section III.E.

e.  **Estimating completion costs and job profitability.** We made recommendations to overhaul the procedures and methodology that project managers follow in estimating and monitoring job profitability. Since we found that present procedures were neither efficient nor reliable, we recommended a complete discarding of SCI's present processes. We believe these improvements are essential to reduce the potential for late or inaccurate reporting of job losses. Based on our observations, we believe that some of the reporting problems resulted from intentional efforts by upper management to delay reporting of poor operating results. The lack of procedures and resulting accountability was a significant contributing factor. Refer to Section III.F.

f.  **Scope and transition.** Although most of our recommendations apply to all jobs, we recommend focusing on the larger jobs where most of the negative fall-out has occurred. We recommended applying many of these recommendations to the major jobs we reviewed and to new larger projects. We would start with the larger jobs and then implement more broadly after going through the learning curve.

3. **Chinle (Job #23005) Claim Review**

   We reviewed the Chinle claim. Based on our review it appeared that SCI will ultimately be successful in collecting a significant portion of its claim amount. We performed a cursory analysis of SCI's claim quantification and found SCI's claim amount to be reasonable. Refer to Section IV.

4186

000169