**South Coast, Inc.**
Report on Project Review
March 1, 2002



4. **Arizona region job performance**

   We prepared an analysis of the profitability on past major jobs for the Arizona office. Refer to Tab 4 for a summary of our findings on a project-by-project basis. Our analysis indicated that after factoring out bid errors for the TERRO fees and State Taxes it appeared that the Arizona office appeared to be able to consistently perform construction work at or below bid levels with the exception of the Window Rock job (23112-Navajo FB) and Chinle (job #23005). As discussed in more detail later in our report, we believe the primary problem on Window Rock was the use of new and untested project management and key field personnel. The loss on the Chinle job is fully accounted for between the $306,000 of taxes omitted from the bid and the impact of the events now being claimed against the owner.

5. **Conclusion**

   In conclusion, we believe that as an owned and independently operated subsidiary, it is essential SCI's management processes are effective and provide a significant degree of management oversight capability. Inherent problems with existing procedures and outright system breakdown in some cases have severely hampered Klukwan's efforts to oversee SCI's operating results and financial condition. It will be necessary that inherent shortcomings in SCI systems and management procedures be changed in order to provide Klukwan adequate information to make well-reasoned decisions about its continued involvement with SCI.

6. **Copyright materials**

   We have included a number of spreadsheet formats and other materials that are the product of years of development and testing by our firm. A significant portion of these materials is protected under copyright laws. Materials covered by the copyright protection are so indicated in footnote disclosure on various documents. We hereby grant SCI and Klukwan, Inc. the right to use, copy and modify the copyrighted materials as required for use within their respective business operations. The copyright protection still applies to all other uses. Therefore, SCI and Klukwan, Inc. will be prohibited from distributing these materials to outside parties other than when the intent of distribution is for the purpose of reporting on aspects of the business of SCI or Klukwan, Inc. Additionally, SCI and Klukwan, Inc. will be prohibited from removing the copyright disclosures.

4187

000170

11- 8-05;10:48PM;Klukwan Inc.                                                      ;1 907 766 2973                # 1/ 5

# REPORT TO KLUKWAN, INC.

# BOARD OF DIRECTORS

# ON SOUTH COAST, INC.

# 2001 OPERATIONS

Prepared by:

PETERSON SULLIVAN P.L.L.C.

4188

000171

## SUMMARY

The monthly net income (loss) at South Coast, Inc. for the last six months of 2001 was reported as follows:

| | | |
|---|---|---:|
| July | $ | 259,657 |
| August | | 216,962 |
| September | | (20,998) |
| October | | (571,298) |
| November | | (1,265,865) |
| December | | (3,710,290) |

The total loss for the year was $(5,563,398) as reported by management. Further year-end adjustments increased the loss by $2,760,246 for a final audited loss of $8,323,644.

SCI's management kept reporting more and more loss each month in the last quarter of the year. This finally resulted in Klukwan, Inc.'s Board and management losing faith in SCI's management.

How could all this have happened so quickly?

Even though the reported numbers indicate a fast deterioration, many of the factors contributing to the losses were in existence prior to October. The best way to look at this is to divide SCI's operations into distinct geographic regions as follows:

- Ketchikan

- Alaska other than Ketchikan

- Arizona

We reviewed the financial performance for those contracts with revenue of approximately $2.0 million or more and at least 50% complete by December 31, 2001 (Exhibit A). The results of this review are summarized below by region:

Ketchikan

We found for both contracts reviewed that they were administered generally within the guidelines provided in the FMI manuals (Exhibit B) and any actual changes in contract gross profit from that originally estimated were not significant (Exhibit C). However, we did find that the original budgets on these contracts were generally not updated for change orders. This characteristic was common in all three regions.

1

<u>Alaska Other Than Ketchikan</u>

We were able to document significant problems in this region. We were originally asked to review the Richardson Highway project. We discussed the results of that with the Board in Juneau on January 26, 2002. The detail written report is in Exhibit B. We reviewed two other contracts in the region and found results similar to those discussed with respect to the Richardson Highway contract. In each case the actual gross profits turned out to be negative as of December 31, 2001.

The general reason for the gross profit deterioration on the Richardson Highway project was the lack of compliance with the FMI manuals. This resulted in a breakdown of accurate timely reporting from the field as to actual costs, construction problems and change order cost estimates. The failure of this contract was due to poor administration in the field and in Ketchikan.

Both of the other contracts were originally bid well below that of the next lowest bid, i.e., Sitka Airport at 15.8% and Big Salt at 21.8% below. The bids did not leave much room for contingencies. We understand that there may be an opportunity to increase revenue on the Big Salt project either through currently unapproved change orders or claims. However, this does not mean that these projects were not originally underbid. Difficulties were encountered on these projects but reporting of such difficulties to Ketchikan in order to compute the change in gross profit on a timely basis did not occur.

Part of the problem in Ketchikan was that the percent of completion on projects was based on actual costs reported as compared to original budgeted amounts. So, until budgeted line items were exceeded, Ketchikan accounting remained ignorant of what was going on in the field as to construction problems or change orders. If the FMI procedures had been followed many of these inaccuracies could have been mitigated. Further, a financial executive in Ketchikan should have been constantly in communication with the contracting executives to determine if any of the cost to complete components needed revision.

All of the above factors resulted in poor monthly financial reporting to Klukwan. Therefore, any hope of remedial corrective action during the job was lost and losses were incurred.

<u>Arizona</u>

Generally, the reporting and management in this region was better on the six contracts we reviewed than for the Alaska other than Ketchikan region. However, this did not result in either accurate or timely reporting in all cases.

The quoted bids did not include recognition of state gross receipts tax. On average, this could have amounted to an additional cost of approximately 3.75% of the total contract bid or an approximate gross profit decrease of about 4%. Four of the six Arizona contracts resulted in gross profit percentages in excess of that originally estimated after taking into account the gross profits tax. However, this does not change the fact that until November 2001, gross profits were reported which were too high.

4190

000173

For the other two contracts we reviewed, Navaho Forest Boundary and Chinle, there were problems beyond not recognizing the gross receipts tax. Simply stated, the Navaho Forest Boundary project suffered from lack of attention from management. At Chinle, the primary construction problem was environmental which, even though known in early 2000, resulted in significant delays. This has resulted in a $2.2 million claim which is currently in litigation. Should the litigation result in a favorable outcome, the Chinle current loss in excess of $1.0 million (Exhibit C) could be greatly reduced.

Fraud

Finally, we performed certain procedures to help detect fraud. Based on those procedures, we found no evidence of significant fraud.

Conclusion

SCI was poorly managed out of Ketchikan in 2001. Actual performance in the three geographic regions was mixed. Performance in the Alaska other than Ketchikan region was by far the worst. The Richardson Highway project was a management disaster. Its management and reporting problems exemplify what generally went wrong outside of home base in Ketchikan.

Klukwan's Board determined that SCI's bad financial performance in 2001 was attributable, in the first instance, to senior management in Ketchikan. Action has already been taken to attempt to correct the management and financial problems at SCI.

4191

000174

3-2-96



RELIANCE SURETY COMPANY
Philadelphia, Pennsylvania

RELIANCE INSURANCE COMPANY
Philadelphia, Pennsylvania

UNI PACIFIC INSURANCE COMPANY
Phil..hia, Pennsylvania

RELIANCE NATIONAL INDEMNITY COMPANY
Philadelphia, Pennsylvania

## CONTINUING AGREEMENT OF INDEMNITY—CONTRACTOR'S FORM

THIS AGREEMENT is made by the Undersigned for the continuing benefit of RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY (collectively the Surety) for the purpose of saving each and all of them harmless and indemnifying each and all of them from all loss and expense in connection with any Bonds executed on behalf of any one or more of the following persons, firms or corporations: SOUTH COAST, INC.; CHILKAT ELECTRICAL CONSTRUCTION, INC.; KLUKWAN CONSTRUCTION, INC.; KLUKWAN, INC.

OR ON BEHALF OF ANY OF ITS SUBSIDIARIES, AFFILIATES OR DIVISIONS OF THEIR SUBSIDIARIES, AFFILIATES OR DIVISIONS OR ON BEHALF OF ANY INDIVIDUALS, PARTNERSHIPS, WHETHER GENERAL OR LIMITED OR CORPORATIONS OR LIMITED LIABILITY COMPANIES, NOW IN EXISTENCE OR HEREAFTER (Contractor). FORMED OR ACQUIRED

### WITNESSETH,

WHEREAS, the Contractor, individually or jointly with others, may desire or be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds"), and

WHEREAS, upon the express condition that this instrument be executed, the Surety has executed or procured the execution of, and may hereafter execute or procure the execution of such Bonds.

NOW, THEREFORE, in consideration of the execution of any such Bond or Bonds and as an inducement to such execution, we, the Undersigned, agree and bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

FIRST: To pay all premiums on said Bonds computed in accordance with the Surety's regular manual of rates in effect on the date said Bonds are executed.

SECOND: To indemnify, and keep indemnified, and hold and save harmless the Surety against all demands, claims, loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond or Bonds, or any other Bonds, which may be already or hereafter executed on behalf of the Contractor, or renewal or continuation thereof; or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of amounts due Surety hereunder together with legal interest shall be payable upon demand.

THIRD: To furnish money to the Contractor or to the Surety as needed for the prompt payment of labor, materials, and any other costs or expenses in connection with the performance of contracts when and as requested to do so by the Surety.

FOURTH: To assign, transfer and convey, and each of the Undersigned does by these presents assign, transfer and convey to the Surety, as of the date of execution of said Bond or Bonds, as collateral security for the full performance of the covenants and agreements herein contained and the payment of any other indebtedness or liability of the Undersigned to the Surety, whether heretofore or hereafter incurred, the following:

(a) All right, title and interest of the Undersigned in and to all machinery, equipment, plant, tools and materials which are, on the date of execution of any such Bond or Bonds, or may thereafter be, about or upon the site of the work to be performed under the contract referred to in and guaranteed by such Bond, or elsewhere for the purpose thereof, including as well materials purchased for or chargeable to said contract which may be in process of construction or in storage elsewhere or in transportation to said site;

(b) All rights, actions, causes of action, claims and demands of the undersigned in, or arising from or out of, said contract or any extensions, modifications, changes or alterations thereof or additions thereto;

(c) All rights, actions, causes of action, claims and demands whatsoever which the Undersigned or any of them may have or acquire in any subcontract in connection with said contract, and against any subcontractor or any person, firm or corporation furnishing or agreeing to furnish or supply labor, materials, supplies, machinery, tools or other equipment in connection with or on account of said contract, and against any surety or sureties of any such materialmen, subcontractor, laborer or other person, firm or corporation;

(d) All right, title and interest to all monies due or to become due to the undersigned arising out of or in any way relating to said contract including, but not limited to progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof that, at the time of abandonment, forfeiture or breach of said contract or such Bond or Bonds or of the terms of this Agreement or at the time of any advance, payment or guaranty by the Surety for the purpose of avoiding such abandonment, forfeiture or breach, may be due or may thereafter become due under said contract to or on behalf of the Undersigned, together with any and all sums due or which may thereafter become due under or on all other contracts, bonded or unbonded, in which any or all of the Undersigned have an interest.

FIFTH: Each of the Undersigned does hereby irrevocably nominate and appoint any officer of the Surety the true and lawful attorney-in-fact of the Undersigned, with full right and authority, in the event the Contractor fails or is unable to complete the work called for by the contract guaranteed by any Bond or in the event of the breach of any provision of this Agreement to execute on behalf of, and sign the names of each of the Undersigned to, any voucher, release, satisfaction, check, bill of sale of all or any property by this Agreement assigned to the Surety or any other paper or contract necessary or desired to carry into effect the purposes of this Agreement; with full right and authority also, in such event, to dispose of the performance of said contract by subletting the same in the name of the Contractor or otherwise; and each of the Undersigned does hereby ratify and confirm all that such attorney-in-fact or the Surety may lawfully do in the premises and further authorizes and empowers the Surety and such attorney-in-fact and each of them to enter upon and take possession of the tools, plant, equipment, materials and subcontracts and all other collateral security mentioned in this Agreement and enforce, use, employ and dispose

BD-2009 4/94



TRAV 56968

000175

thereof for the purposes set forth in this Agreement. Each of the Undersigned specifically agrees to protect, indemnify and hold harmless the Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise or grow out of the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which any Undersigned has or might hereafter have against the Surety or such attorney-in-fact on account of anything done in enforcing the terms of this agreement, assignments and power-of-attorney.

SIXTH: That the entire contract price of any contract referred to in a Bond or Bonds, whether in the possession of the Undersigned or another, shall be and hereby is impressed with a trust in favor of Surety for the payment of obligations incurred for labor, materials and services in the performance of the contract work for which Surety would be liable under such Bond or Bonds and for the purpose of satisfying the conditions of the Bond executed in connection with the contract.

SEVENTH: That if Surety shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, suit, order, judgment or adjudication under or on any Bond or Bonds or for any other reason whatsoever, to immediately upon demand deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, such funds to be held by Surety as collateral, in addition to the indemnity afforded by this instrument, with the right to use such funds or any part thereof, at any time, in payment or compromise of any liability, claims, demands, judgment, damages, fees and disbursements or other expenses; and the Undersigned, in the event of their failure to comply with such demand, hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and to confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds, with costs, interest and reasonable attorneys' fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Undersigned to Surety under the terms of this Agreement. Demand shall be sufficient if sent by registered or certified mail to the Undersigned at the address or addresses given herein or last known to Surety, whether or not actually received. The authority to confess judgment as set forth herein shall not be exhausted by any one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Undersigned to Surety shall have been paid in full.

EIGHTH: All collateral security held by or assigned to the Surety may be used by the Surety at any time in payment of any claim, loss or expense which the Undersigned have agreed to pay hereby, whether or not such claim, loss or expense arises out of or in connection with such Bond or contract under which such collateral is held. The Surety may sell or realize upon any or all such collateral security, at public or private sale, with or without notice to the Undersigned or any of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Undersigned only for such surplus or remainder of such collateral security or the proceeds thereof as may be in the Surety's possession after it has been fully indemnified as in this Agreement provided. The Surety shall not be liable for decrease in value or loss or destruction of or damage to such security, however caused.

NINTH: The Surety shall have the right, at its option and in its sole discretion:

(a) To deem this Agreement breached should the Contractor become involved in any agreement or proceeding of liquidation, receivership, or bankruptcy, voluntarily or involuntarily, or should the Contractor if an individual die, be convicted of a felony, become a fugitive from justice, or for any reason disappears and cannot immediately be found by the Surety by use of usual methods.

(b) To take possession of the work under any contract and at the expense of the Undersigned to complete or to contract for the completion of the same, or to consent to the re-letting of the completion thereof by the obligee in said contract Bond or Bonds, or to take such other steps as in the discretion of the Surety may be advisable or necessary to obtain its release or to secure itself from loss thereunder.

(c) To adjust, settle or compromise any claim, demand, suit or judgment upon said Bond or Bonds, or any of them.



TRAV 56969

(d) To increase or decrease the penalty or penalties of any such Bond or Bonds, to change the obligee or obligees therein, to execute any continuations, enlargements, modifications and renewals thereof or substitute therefore with the same or different conditions, provisions and obligees, and with the same or larger or smaller penalties, it being agreed that this instrument shall apply to and cover such new or changed bonds or renewals even though the consent of the Surety may or does substantially increase the liability of the Contractor and the Undersigned and to take such steps as it may deem necessary or proper to obtain release from liability under any such Bond or Bonds.

All damage, loss or expense of any nature which the Surety may incur under Section Ninth shall be borne by the Undersigned.

TENTH: The Surety shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit or judgment upon said Bond or Bonds shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and its determination shall be final, conclusive and binding upon the Undersigned; and any loss, costs, charges, expense or liability thereby sustained or incurred, as well as any and all disbursements on account of costs, expenses and attorneys' fees, deemed necessary or advisable by the Surety, shall be borne and paid immediately by the Undersigned, together with legal interest. In the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by any officer of the Surety or the voucher or vouchers or other evidence of such payment, settlement or compromise, shall be prima facie evidence of the fact and extent of the liability of the Undersigned to the Surety in any claim or suit hereunder and in any and all matters arising between the Undersigned and the Surety.

ELEVENTH: The Surety is further authorized and empowered to advance money or to guarantee loans to the Contractor which the Surety may see fit to advance to said Contractor for the purpose of any contract referred to in or guaranteed by said Bond or Bonds; and all money so loaned or advanced and all costs, attorneys' fees and expenses incurred by the Surety in relation thereto, unless repaid with legal interest when due, shall be conclusively presumed to be a loss by the Surety for which each and all of the Undersigned shall be responsible, notwithstanding said money or any part thereof so loaned or advanced to the Contractor for the purpose of any such contract should not be so used by the Contractor. The Undersigned hereby waive all notice of such advance or loan, or of any default or any other act or acts giving rise to any claim under any said Bond or Bonds, and waive notice of any and all liability of the Surety under any said Bond or Bonds or any and all liability on the part of the Undersigned to the effect and end that each of the Undersigned shall be and continue liable to the Surety hereunder notwithstanding any notice of any kind to which the Undersigned might have been or be entitled and notwithstanding any defenses which the Undersigned might have been or be entitled to make.

TWELFTH: No assent, assignment, change in time or manner of payment or other change or extension in the terms of any Bond or of any contract referred to in such Bond or in the general conditions, plans or specifications incorporated in such contract, granted or authorized by the Surety or the refusal to so grant or authorize, shall release, discharge or in any manner whatsoever affect the obligations assumed by the Undersigned in executing this Continuing Agreement of Indemnity. This Agreement shall apply to any and all renewal, continuation or substitution bonds executed by the Surety. The Surety shall not be required to notify or obtain the approval or consent of the Undersigned prior to granting, authorizing or executing any assent, assignment, change or extension. The Surety shall have the absolute right to cancel any bond in accordance with any cancellation provision contained therein and the Surety is hereby released from any liability for expenses, costs, or damage alleged to be sustained by the Undersigned by reason of such cancellation.

THIRTEENTH: Until the Surety shall have been furnished with competent legal evidence of its discharge without loss from any and all Bonds, the Surety shall have the right at all times to free access to the books, records and accounts of each of the Undersigned for the purpose of examining the same. Each of the Undersigned hereby authorizes and requests any and all depositories in which funds of any of the Undersigned may be deposited to furnish to the Surety the amount of such deposits as of any date requested and any person, firm or corporation doing business with the Undersigned is hereby authorized to furnish any information requested by the Surety concerning any transaction. The Surety may furnish copies of any and all statements, agreements and financial statements and any information which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

FOURTEENTH: Each of the Undersigned does hereby waive all right to claim any property, including homestead as exempt from levy, execution, sale or other legal process under the law of any state, province or other government as against the rights of the Surety to proceed against the same for indemnity hereunder.

FIFTEENTH: The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Surety might have if this instrument were not executed. The Undersigned will, on request of the Surety procure the discharge of the Surety from any Bonds, and all liability by reason thereof. Separate suits may be brought hereunder as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action. The Surety shall be notified immediately by the Undersigned of any claim or action which may result in a claim against the Surety, such notice to be given by registered mail to the Surety

000176

SIXTEENTH: The Surety reserves the right to decline to execute any such Bond; and if it shall execute any proposal ●●●, and if the Contractor is awarded the contract, the Contractor shall not be obligated to obtain any Bond ●● ●●nds required by the contract from the Surety nor shall the S●●●● be obligated to execute such Bond or Bonds.

SEVENTEENTH: This Agreement shall, in all its term● ● agreements, be for the benefit of and protect any person or ●●●●pany joining with the Surety in executing said Bond or Bonds, or any of them, or executing at the request of the surety said Bond or Bonds, or any of them as well as any company or companies assuming co-suretyship or reinsurance thereon.

EIGHTEENTH: The Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond. Failure to execute, or defective execution, by any party, shall not affect the validity of this obligation as to any other party executing the same and each such other party shall remain fully bound and liable hereunder. Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portions hereof invalid. Execution of any application for any Bond by the Contractor, or of any other indemnity agreement by any Undersigned for the Contractor shall in no way abrogate, waive or diminish any rights of Surety under this Agreement. The Undersigned acknowledge that the execution of this Agreement and the undertaking of indemnity was not made in reliance upon any representation concerning the financial responsibility of any Undersigned, or concerning the competence of the Contractor to perform.

NINETEENTH: Each of the Undersigned expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Surety and that the rights of indemnification of each Surety signatory to this Agreement shall be individual and not joint with those of the other signatory Sureties as to any and all Bonds (whether or not covered by any application signed by Contractor—such application to be considered between the parties hereto as merely supplemental to this Continuing Agreement of Indemnity) heretofore or hereafter executed by Surety on behalf of Contractor (whether contracting alone or as a Co-venture) until this Agreement shall be canceled in the manner hereinafter provided. Any of the Undersigned may notify the Surety(ies) at its Head Office, of such Undersigned's withdrawal from this Agreement; such notice shall be sent by certified or registered mail and shall state when, not less than thirty days after receipt of such notice by the Surety, such withdrawal shall be effective. Such Undersigned will not be liable under this Agreement as to any Bonds executed by the Surety after the effective date of such notice; provided, that as to any and all such Bonds executed or authorized by the Surety prior to effective date of such notice and as to any and all renewals, continuations and extensions thereof or substitutions therefore (and, if a proposal or Bid Bond has been executed or authorized prior to such effective date, as to any contract Bond executed pursuant thereto) regardless of when the same are executed, such Undersigned shall be and remain fully liable hereunder, as if said notice had not been served. Such withdrawal by any Undersigned shall in no way affect the obligation of any other Undersigned who has given no such notice of termination.

TWENTIETH: That this Agreement or a carbon, photographic, xerographic or other reproduction or copy of this Agreement shall constitute a Security Agreement to Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, but that the filing or recording of this Agreement shall be solely at the option of Surety and that the failure to do so shall not release or impair any of the obligations of the Undersigned under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of Surety under this Agreement or otherwise.

TWENTY-FIRST:   See exhibit I.

Signed, sealed, and dated this _____Eighteenth_____ day of _____December_____, 19__95__.

ATTEST
By: _____ (Seal)
Robert G. Loiselle, Secretary

_____ (Seal)
SOUTH COAST, INC.
By: _____Alan J. Coffin_____ (Seal)
Alan Coffin, President

ATTEST
By: _____Jan Clayton Hill_____ (Seal)
Jan Clayton-Hill, Secretary

CHILKAT ELECTRICAL CONSTRUCTION, INC. (Seal)
By: _____Ronald D. Moon_____ (Seal)
Ronald D. Moon, President

ATTEST
By: _____Edward L. Hotch_____ (Seal)
Edward Hotch, Secretary

KLUKWAN CONSTRUCTION, INC. (Seal)
By: _____ (Seal)
Don Argetsinger, President

ATTEST
By: _____Ronald Sparks_____ (Seal)
Ronald Sparks, Secretary

KLUKWAN, INC. (Seal)
By: _____ (Seal)
Don Argetsinger, President

_____ (Seal)

_____ (Seal)

Name of Surety(ies) _____

By: _____

IMPORTANT: Print or type the name and address of each signatory to this agreement. Each signature must be acknowledged—See REVERSE HEREOF.

STATE OF __ALASKA__
COUNTY OF __FIRST JUDICIAL DISTRICT__ ss.
On this __Eighteenth__ day of __December__, 19__95__ before me personally came __Don Argetsinger/Ronald Sparks__
to me known, who being by me duly sworn, did repose and say: that he resides in __Juneau AK / Haines AK__
that he is the __President/Secretary__ of the __Klukwan, Inc.__,

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

__Monica Lee Stevenson__
Notary Public, residing at __Juneau AK__
(Commission expires __7-14-98__ )

**CORPORATE ACKNOWLEDGEMENT**

---

STATE OF __ALASKA__
COUNTY OF __FIRST JUDICIAL DISTRICT__ ss.
On this __Eighteenth__ day of __December__, 19__95__ before me personally came __Alan Coffin/Robert G. Loiselle__
to me known, who being by me duly sworn, did repose and say: that he resides in __Ketchikan AK / Juneau AK__
that he is the __President/Secretary__ of the __South Coast, Inc.__,

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

__Monica Lee Stevenson__
Notary Public, residing at __Juneau AK__
(Commission expires __7-14-98__ )

**CORPORATE ACKNOWLEDGEMENT**

---

STATE OF __ALASKA__
COUNTY OF __FIRST JUDICIAL DISTRICT__ ss.
On this __Eighteenth__ day of __December__, 19__95__ before me personally came __Ronald D. Moon/Jan Clayton-Hill__
to me known, who being by me duly sworn, did repose and say: that he resides in __Anchorage AK / Haines AK__
that he is the __President/Secretary__ of the __Chilkat Electrical Construction, Inc.__,

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

__Monica Lee Stevenson__
Notary Public, residing at __Juneau AK__
(Commission expires __7-14-98__ )

**CORPORATE ACKNOWLEDGEMENT**

---

STATE OF __ALASKA__
COUNTY OF __FIRST JUDICIAL DISTRICT__ ss.
On this __Eighteenth__ day of __December__, 19__95__ before me personally came __Don Argetsinger/Edward Hotch__
to me known, who being by me duly sworn, did repose and say: that he resides in __Juneau AK__
that he is the __President/Secretary__ of the __Klukwan Construction, Inc.__,

the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

__Monica Lee Stevenson__
Notary Public, residing at __Juneau AK__
(Commission expires __7-14-98__ )

**CORPORATE ACKNOWLEDGEMENT**

---

**IMPORTANT:** Attach certified copy of Resolution authorizing execution of this instrument by Corporation.

TRAV 56971

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of   Klukwan, Inc.
duly called and held on the  24th  day of  May                                19 95, a quorum being present, the following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that         Don Argetsinger                                              President
                        (Name of person authorized)                                  (Official Title)

                        (Name of person authorized)                                  (Official Title)

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for

South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I, Ronald Sparks         Secretary of    Klukwan, Inc.
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this  23rd  day of  February                                  , 19 96

                                                                By: /s/ Ronald Sparks
                                                                    Ronald Sparks, Secretary

BD-1412 4/94

TRAV 56972

000179

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of **South Coast, Inc.** duly called and held on the **24th** day of **May** 19**95**, a quorum being present, the following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which **Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.** has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that **Alan Coffin**  **President**
(Name of person authorized)   (Official Title)

(Name of person authorized)   (Official Title)

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for

**Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.**

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I, **Robert G. Loiselle** Secretary of **South Coast, Inc.** have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this **18th** day of **December**, 19**95**

By: *[signature]*
Robert G. Loiselle, Secretary

BD-1412 4/94

TRAV 56973

000180

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of    Chilkat Electrical Construction, Inc.
duly called and held on the  24th  day of  May                                        19 95 , a quorum being present, the
following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

South Coast, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that                    Ronald D. Moon                                                            President
                                   (Name of person authorized)                                              (Official Title)

                                   (Name of person authorized)                                              (Official Title)
of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for

South Coast, Inc.; Klukwan Construction, Inc.; Klukwan, Inc.

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I, Jan Clayton-Hill          Secretary of   Chilkat Electrical Construction, Inc.
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this  26th  day of  February                            , 19 96

                                                              By: _____Jan Clayton-Hill_____
                                                                   Jan Clayton-Hill, Secretary

BD-1412 4/94

TRAV 56974

000181

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of     Klukwan Construction, Inc.
duly called and held on the 24th day of May 19 95, a quorum being present, the following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which

South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan, Inc.

has applied, or may hereafter apply to the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY for various bonds or undertakings, and

"WHEREAS, the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY is willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that          Don Argetsinger                                  President
                        (Name of person authorized)                      (Official Title)

                        (Name of person authorized)                      (Official Title)

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY as a prerequisite to the execution by it of the bonds or undertakings for

South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan, Inc.

in connection with the matters or transactions described in the agreement of indemnity required by said RELIANCE INSURANCE COMPANY, UNITED PACIFIC INSURANCE COMPANY, RELIANCE NATIONAL INDEMNITY COMPANY and/or RELIANCE SURETY COMPANY, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I, Edward Hotch          Secretary of  Klukwan Construction, Inc.
have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the Company this 18th day of December , 19 95

                                                            By: *Edward L. Hotch*
                                                            Edward Hotch, Secretary

BD-1412 4/94

TRAV 56975

000182



RELIANCE SURETY COMPANY
Philadelphia, Pennsylvania

UN PACIFIC INSURANCE COMPANY
Ph phia, Pennsylvania

RELIANCE INSURANCE COMPANY
Philadelphia, Pennsylvania

RELIANCE NATIONAL INDEMNITY COMPANY
Philadelphia, Pennsylvania

---

This fifth page is attached to and forms a part of the Continuing Agreement of Indemnity Contractor's Form dated ___12·18·95___ naming South Coast, Inc.; Chilkat Electrical Construction, Inc.; Klukwan Construction, Inc.; Klukwan, Inc. as Contractor.

Exhibit I

Twenty-First:

It is hereby understood and agreed that Klukwan, Inc.'s Permanent Fund Investment is Exempt from this agreement and that the Surety shall in no way claim under this Agreement or otherwise any interest in said investments. Other than as expressly modified by this Twenty-First paragraph, all other terms, conditions and obligations of this Agreement remain the same and are hereby ratified in total.

BD-1420 (4/94)

TRAV 56976

000183