


**Travelers**

Mailing Address
3455 S. 344th Way, Suite 200
Auburn, WA 98001

Charles W. Langfitt
Vice President
Bond Claim, Federal Way
(253) 946-7374
(253) 946-7156 (fax)
Charles.W.Langfitt@Travelers.com

May 17, 2002

VIA FACSIMILE TRANSMISSION (907) 789-1372

Mr. Tom Crandall
Klukwan, Inc.
P.O. Box 32077
Juneau, Alaska 99803

VIA FACSIMILE TRANSMISSION (907) 247-6125

Mr. Ron Glebrich
South Coast, Inc.
4049 N. Tongass Avenue
Ketchikan, Alaska 99901

    Re: Travelers Casualty & Surety Co. of America
    Our File No.: 689687 (Master File) – B
    Principal: South Coast, Inc., dba Klukwan

Dear Mr. Crandall & Mr. Glebrich:

Please treat this letter as a follow up to my conversation of May 16, 2002, with Tom Crandall. At that time, I confirmed our meeting at South Coast's office on May 28, 2002. We will also need to meet with Klukwan's personnel at Klukwan's office at a later time. We will be arriving in Ketchikan at about 9:00 a.m. and will be at your office shortly thereafter. We also discussed, and you provided to me, the names of the two key South Coast/Klukwan personnel for our CPA to contact so they can commence the document and report preparation necessary for us to conduct our review.

During our call, you inquired about the purpose of the meeting. You advised that you had heard the meeting's purpose was everything from us taking over the jobs to a "meet & greet" meeting.

I advised that we requested the meeting to conduct a forensic review. You asked what I meant by a forensic review. By forensic review, I mean a book and records review with CPAs hired by Travelers, in conjunction with operational/business plan reviews with Travelers personnel. We will want to discuss all aspects and facets of your business including all of your projects, with your employees, as well as others, which may include, but not be limited to, Owners and Architects. Our request for this review is based on Section Thirteenth of your Indemnity Agreements with us. A requested list of items to prepare for our review is attached. As I advised, the CPAs we have retained include Jordan Rosenfeld, of the Sutor Group.



DEPOSITION EXHIBIT #33

Travelers
Mr. Tom Crandall
Klukwan, Inc.
Mr. Ron Giebrich
South Coast, Inc.
May 17, 2002
Page 2

I also asked if you were able to make payroll this week, having heard that you were encountering payroll funding difficulties. You advised that you were able to make arrangements to solve that problem.

During our call, I also expressed concern about the $2,847,698.81 in payment claims that we have received. A copy of our Excel spread sheet listing these claims is attached. As you know, Travelers' David Montstream, has been communicating with you and other personnel concerning these claims. You advised that you have potential counter-claims and defenses. You also advised that a forthcoming e-mail spread sheet detailing these issues would be forwarded to us. Unfortunately, we previously have not received adequate responses to our inquiries concerning these payment claims, including substantiating documentation. At one time, we were advised, in November 2001, that South Coast was working with a new Bank, Key Bank, to re-establish a line of credit and allow payments to be made to claimants. Please see Michael Houts letter dated November 8, 2001. Given Key Bank's recent activities, however, your credit line has been eliminated.

Our discussion then turned briefly to Key Bank's action. On May 10, 2002, Key Bank declared your loans in default. Key Bank accelerated the debt including term obligations, the face amount of which is $20.2 Million. After our call, I reviewed your financial statements. Your in-house March 31, 2002 financial statement reflects $16,374,860, as outstanding to Key Bank. Obviously, South Coast and Klukwan's ability to pay the $2,847,698.81 in claims we have received has been substantially impaired.

You advised that you would be in Seattle next week to meet with Wells Fargo and Bank of America to negotiate and work through credit facilities. We agreed to schedule a preliminary meeting in Seattle next week to start our discussions. Unfortunately, we were not able to advance our May 28th Ketchikan meeting. Nevertheless, please call me to firm up the date and time of our meeting next week in Seattle. We can meet at our branch office which is located at the Bank of America – Columbia Tower in downtown. Our discussions in Seattle, and subsequent, will focus on Klukwan/South Coast March 2002 Business Plan, Sutor Consulting LLC's March 1, 2002 report and Peterson Sullivan P.L.L.C.'s report, and your future business plans given Key Bank's action.

Right now, however, our initial review of the above documents has caused us concern, particularly given Key Bank's action. A non-exclusive summary of our concerns follows.

Klukwan/South Coast's March 2002 Business Plan advises that a draft financial audit was pending. The Business Plan reflected that four financial institutions would be asked to waive any financial covenant violations after the issuance of the draft December 2001 financial statement. In the Business Plan, Klukwan advised that its failure to secure these waivers would result in reclassification changes to the liabilities and equity section of the balance sheet to show additional current liabilities. With Key Bank defaulting Klukwan/South Coast because of these very same financial covenant violations, Klukwan's working capital has been substantially impaired. Key Bank is also liquidating the marketable securities you pledged as Collateral. Further, your draft of December 31, 2001 audit reflected that Klukwan's liquidity depended upon the outcome of the then current discussions with your lenders. I presume that it

TRAV 025300

000201

Travelers
Mr. Tom Crandall
Klukwan, Inc.
Mr. Ron Giebrich
South Coast, Inc.
May 17, 2002
Page 3

was this note, amongst other issues, that prevented Klukwan from securing a "clean" financial statement in a non-draft form. As such, Klukwan's liquidity is substantially in question, as foreshadowed in your Business Plan.

There, in the Business Plan, as of December 31, 2001, Klukwan, on a consolidated basis, reflected accounts receivable of $3.8 Million, with $9.6 Million in corresponding accounts payable, a ($5.8 Million) deficit. Your internal March 31, 2002 financial for South Coast alone reveals a ($6,178,890) deficit of accounts payable over accounts receivables, and a deficit working capital position, on an unanalyzed basis of ($2,087,502).

Klukwan's draft December 31, 2001 consolidated financial statement reflects a loss from operations of ($9,904,024) with a total net loss of ($11,796,465). As revealed in your Business Plan, Klukwan, on a consolidated basis has accumulated losses from operations totaling ($18,284,000) over the last five years.

In conjunction with these substantial losses, Klukwan's total liabilities increased by $7,621,193, and equity was eroded by 35%, a ($11,838,463) reduction in equity from $33,377,566 in 2000 to $21,539,103 in 2001. Klukwan, therefore, is illiquid and has suffered a major equity erosion, accompanied by a 25% increase in liabilities over one year in the amount of $7,621,193, and for the period ending December 2001.

Given the condition of your balance sheet, and Key Bank's action, we have exercised our rights under our Indemnity Agreements, and the common law, to place a hold on the bonded contract funds. Please call me so we can finalize our meeting in Seattle for next week.

All rights and defenses are fully reserved.
Very truly yours,

Travelers Casualty & Surety Company
of America

Charles W. Langfitt
Vice President
Bond Claims Department

CWL/sjr

Cc: Travelers – Federal Way – David Hombach
    Travelers – Seattle – John Clays
    Travelers – Seattle – Whit Campbell
    Travelers – Seattle – Brent Heilesen
    Travelers – Federal Way – Marc Eckardt
    Travelers – Federal Way – David Montstream

TRAV 025301

000202

# KLUKWAN/SOUTH COAST
# ITEMS FOR REVIEW BY TRAVELERS

In order to prepare the reports necessary for Travelers to perform their investigation of the financial status of Klukwan, Inc./South Coast, Inc., and affiliated companies, the documents and accounting records our consultant or we will need to review include, but are not limited to, the following:

*Copy* 1. Accounts receivable aging by project;
*Copy* 2. Contract status report;
3. Accounts payable by job;
*Copy* 4. Job cost summary by job (run on the same date as the A/P by job);
5. Subcontractor status report (run on the same date as the A/P by job);
6. The latest internally prepared financial statements;
7. The latest project schedule;
*Copy* 8. Contract, change order, billing and project files for each Travelers bonded job in progress; —Spec's
*Copy* 9. Copies of the final payment request for completed bonded projects;
10. Payroll tax, union benefit (if applicable), and sales tax monthly or quarterly reports;
11. Outstanding invoices;
12. Unposted invoices;
13. Insurance files and invoices;
14. Subcontractor files;
15. A projection of monthly billings for jobs in progress;
*Copy* 16. Job schedules for the projects;
17. Credit Agreements/Loan Agreements/Loan Schedules reflecting the lending base for each loan with all financial institutions, including, but not limited to, Key Bank/Key Bank's Collateral Custody & Control Agreement(s);
18. Copy of the claim on Chinle with any opinions of counsel as to entitlement and quantum;
19. Equipment/vehicle lists with estimated value and any encumbrances on an equipment piece by equipment piece basis
20. All Trust Agreements or similar documents or agreements related to the Long Island Trust, Education Trust, General Income Trust or any other Permanent Trust Fund; and
21. Any and all appraisals of K-Ply's Assets, with a schedule listing all debt or encumbrances on an asset by asset basis.
*Copy* 22. PROJECT PLANS

Other items may arise as we perform our field work. The cut-off date for the payable and receivable information should be as current as possible. We would like to have a printed and electronic version (if possible) of the accounts payable by job.


Tar on K Ply
Blosky

CR709.sjr

South Coast Payment Claim Summary May 17, 2002

| ct Num | Claim Num | Clmnt | Claimant Name | Project | Status | Notice Rcd | Ackn. Date | Lawsuit | Amt. Claimed |
|---|---|---|---|---|---|---|---|---|---|
| 6912458 | 0908C689623NR | 2 | Bellingham Marine | YAKUTAT SEAPLANE FACILITY | Open | 2/8/2002 | | N | 103,334.05 |
| 6912458 | 0918C687711NR | 2 | International Surfacing | tohono O'Odham Indian Reservation | Open | 10/22/2001 | | N | 561,525.02 |
| 6912458 | 0918C687711NR | 3 | Empire Southwest, LLC | tohono O'Odham Indian Reservation | Closed | 3/27/2002 | | N | 6,370.75 |
| 6912458 | 0918C687711NR | 4 | AMEC Earth & Environmental | tohono O'Odham Indian Reservation | Open | 6/6/2002 | | N | 22,001.00 |
| 6912458 | 0918C687712NR | 2 | International Surfacing | Cdnstr 1.085 KM of Roadway single span | Open | 10/22/2001 | | N | 21,870.23 |
| 6912458 | 0918C687712NR | 3 | Red Mountain Machinery Co. | Constr 1.085 KM of Roadway single span | Open | 1/22/2002 | | N | 5,677.58 |
| 6912458 | 0918C687712NR | 4 | AMEC Earth & Environmental | Constr 1.085 KM of Roadway single span | Open | 3/4/2002 | | N | 21,462.00 |
| 6912458 | 0918C689687RG | 2 | Quality Ready Mix | Tuba City- Window Rock Highway | Open | 2/14/2002 | | N | 229,464.00 |
| 6912458 | 0918C689687RG | 3 | Vernon Hamilton Construction Co. | Tuba City- Window Rock Highway | Open | 2/14/2002 | | N | 121,376.10 |
| 6912458 | 0918C689687RG | 4 | Contractors West Inc | Tuba City- Window Rock Highway | Open | 5/16/2002 | | N | 284,909.09 |
| 6912458 | 0918C689720NR | 2 | Cactur Transport.Inc | TUBA CITY WINDOW ROCK HWY (SR 264) BURNSIDE JCT-GRANADO | Open | 2/14/2002 | | N | 17,582.86 |
| 6912458 | 0918C689720NR | 3 | Empire Southwest, LLC | TUBA CITY WINDOW ROCK HWY (SR 264) BURNSIDE JCT-GRANADO | Closed | 4/3/2002 | | N | 2,601.52 |
| 6912458 | 0918C689720NR | 4 | Arizona Highway Safety | TUBA CITY WINDOW ROCK HWY (SR 264) BURNSIDE JCT-GRANADO | Open | 4/5/2002 | | N | 2,069.58 |
| 6912458 | 0918C689720NR | 5 | Roadway Electric.Inc | TUBA CITY WINDOW ROCK HWY (SR 264) BURNSIDE JCT-GRANADO | Open | 5/14/2002 | | N | 61,992.81 |
| 6912458 | 0918C689776NR | 2 | Acme Fence Company | For Richardson Hyw. Rehabilitation - Project No. 1M-0A1-3 (1 | Open | 2/19/2002 | | N | 147,217.00 |
| 6912458 | 0918C689776NR | 3 | Ahtna Construction | For Richardson Hyw. Rehabilitation - Project No. 1M-0A1-3 (1 | Open | 3/14/2002 | | N | 41,795.00 |
| 6912458 | 0918C690017NR | 2 | AMEC Earth & Environmental | BORREGO PASS IMPROVEMENTS | Open | 3/4/2002 | | N | 89,669.25 |
| 6912458 | 0918C690436NR | 2 | Ever Electric | KETCHIKAN TRANSFER FACILITY PHASE 1 | Open | 3/27/2002 | | N | 7,700.00 |
| 6912458 | 0918C691266NR | 2 | International Surfacing | WIDE RUINS CONTRACT #CBN00001000 | Open | 5/10/2002 | | N | 21,909.00 |
| 6912458 | 0918CR0101797NR | 3 | United Rentals (Tempe, AZ) | Coal Mine Road Fort Defiance Arizona | Open | 10/22/2001 | | N | 34,296.58 |
| 6912458 | 0918CR0101797NR | 4 | AMEC Earth & Environmental | Coal Mine Road Fort Defiance Arizona | Open | 2/28/2002 | | N | 37,161.65 |
| 6912458 | 0918CR0101797NR | 2 | International Surfacing | Coal Mine Road Fort Defiance Arizona | Open | 3/18/2002 | | N | 47,301.60 |
| 6912458 | 0918CR0101798RG | 2 | MCM Engineering Inc | Road Constr Chinle Tsaile Navajo Indian | Open | 10/22/2001 | | N | 348,765.08 |
| 6912458 | 0918CR0101798RG | 4 | Crown Asphalt Products Co | Road Constr Chinle Tsaile Navajo Indian | Closed | 11/13/2001 | | N | 27,032.19 |
| 6912458 | 0918CR0101798RG | 5 | AMEC Earth & Environmental | Road Constr Chinle Tsaile Navajo Indian | Open | 2/25/2002 | | N | 114,978.40 |
| 6912458 | 0918CR0101798RG | 6 | Arizona Highway Safety | Road Constr Chinle Tsaile Navajo Indian | Open | 3/15/2002 | | N | 21,905.00 |
| 6912458 | 0916CR0200113NR | 2 | McAnis, Inc, J.E. | SMALL BOAT HARBOR LARSEN BAY | Open | 4/5/2002 | | N | 11,606.97 |
| 6912458 | 0918CR0200167NR | 2 | Acme Fence Company | Big Salt Lake Road | Open | 1/28/2002 | | N | 133,800.00 |
| 6912458 | 0918CW0100566NR | 2 | Southeast Earthmovers, Inc. | | Open | 2/19/2002 | | N | 272,171.00 |
| 6912458 | 0918CW0100558NR | 3 | Familian Northwest, Inc. | | Closed | 3/9/2001 | | N | 36,034.11 |
| | | | | | Closed | 3/21/2001 | | N | 0.00 |
| | | | | | | | | | $2,647,698.61 |

FILE



3455 South 344th Way, Suite 200
Auburn, WA 98001

Charles W. Langfitt
Vice President
Travelers Bond
Phone: 253-946-7374
Fax: 253-946-7156
Charles.W.Langfitt@Travelers.com

VIA FACSIMILE 907-789-1372

June 10, 2002

Mr. Tom Crandall
Klukwan, Inc.
P.O. Box 32077
Juneau, AK 99803

        Re:        Travelers Cas. & Surety Co. of America
        Our File No.:  689687 (B.j)
        Principal:   South Coast, Inc. dba: Klukwan, Inc.

Dear Tom:

On June 5, 2002 I advised you and South Coast's new CFO, Sharon Baker, that Travelers could not: (1) furnish surety bonds to South Coast in the future; or (2) provide financial assistance for South Coast to complete all the bonded work. Instead, I proposed a wind up of the bonded contracts with:

    (1)    Reletting a number of the projects;
    (2)    Having South Coast perform as an interim Contractor for a set time period;
    (3)    Assuring payment of valid payment bond claims/accounts payable; and
    (4)    Assuring the retention of key South Coast personnel through the wind up.

With this approach Travelers is looking to Klukwan, South Coast and all our indemnitors to make us whole.

In response, you expressed concern for Klukwan's non-South Coast operations, as South Coast is clearly in a "close out" mode. You mentioned bankruptcy, filing Chapter 11, and advanced discussion points to further your efforts to "cap" and minimize Klukwan's liabilities or performance obligations to Travelers. To review these issues, we will be meeting in your Juneau office on Tuesday, June 11, 2002, at 10:00 a.m.

At this point, I think it is important for us to review what has led to Klukwan/South Coast's default under its Indemnity Agreement and our current circumstances. A summary of a number of events which have brought us to this point is set forth in the following sections of this letter.



DEPOSITION EXHIBIT #34

TRAV 025293

000205

Mr. Tom Crandall
Klukwan, Inc.
June 10, 2002
Page 2

May 24, 2002 Seattle Meeting/Request for Financial Assistance.

On May 24, 2002 we met with you and Sharon Baker, your new CFO, at our branch office in Seattle. My May 17, 2002 letter to you summarizes some of the events leading up to that meeting. Suffice to say, Klukwan's previous external and internal financial statements reflected that Klukwan/South Coast were in perilous financial condition. By the end of last year, Klukwan had suffered an ($11,796,465) net loss, with a comparable dollar decrease in equity. By the end of March, for South Coast alone, there was a deficiency of accounts payable/accounts receivable of ($6,170,690), with an unanalyzed deficit net working capital position of ($2,087,502). By the time of our May 24, 2002 meeting, we had also received $2,847,698.81 in payment claims, primarily from your Arizona operations. Because of these financial results, Klukwan had terminated the services of South Coast's president, vice president and vice president/chief financial officer. Subsequently, in May, Ron Glebrich, of South Coast, resigned. Key Bank added to this "mix" by calling Klukwan's outstanding debt which your March 31, 2002 financial statement reflected as $16,374,860. Your other major creditors, with the except of Wells Fargo, followed suit.

With these events in the background, we proceeded with our May 24, 2002 meeting. As you acknowledged, then, and later in our subsequent discussions, we have been reviewing potential solutions in a conceptual manner and those discussions are obviously not binding. Briefly summarized, you advised you were authorized to file bankruptcy on behalf of South Coast and Klukwan in January, but declined to do so, in part, because you wanted to honor obligations to Klukwan's creditors, including Travelers. We reviewed Klukwan/South Coast's financial situation, and your plans to manage Klukwan's assets and liabilities. To summarize your approach, you intend to dismantle Klukwan's central treasury approach, and, for example, make K-Ply your plywood subsidiary, a more stand alone operation. As part of the process, you stated you would secure a line of credit from Bank of America for K-Ply only, using the K-Ply assets. You mentioned that you would negotiate for a term loan, which might provide some relief for South Coast and, therefore, Travelers; but you were not optimistic you would be able to do so. You subsequently advised you were unable to secure such a term loan. Nevertheless, in reviewing your assets and your approach, it became apparent that there were not enough assets to both "launch life boats", saving Klukwan's assets such as K-Ply, and liquidating assets to pay Klukwan's various creditors, and funding South Coast operations. In short, there clearly was a cash/asset deficiency which needed to be filled, and you were seeking our assistance.

You were asked how much money you might need from us to help "fill" this deficiency. You advised about $3 million. We discussed this issue, and the hard asset nature of some of Klukwan's assets, some of which would be sold.

Given the timing and the asset values which would be realized, and South Coast's deficiency between accounts payable and accounts receivable of ($6,170,890), I suggested that you might need $6 million or even $7 million infused just to retire this deficiency. I also mentioned that based on your March 31, 2002 Detailed Income Statement (Work in Progress Schedule) I doubted that the projected $18,295,139 in revenue would generate sufficient funds to retire the accounts payable deficiency, but would be needed for the completion effort. You acknowledged that I was probably correct.

Mr. Tom Crandall
Klukwan, Inc.
June 10, 2002
Page 3

Next, we turned to the impending revenue shortfall that South Coast is facing. South Coast's Detail Income Statement dated March 31, 2002 reflects revenue to bill of $18,295,139. Over the last two years, South Coast has earned in revenue between $46 to $47 million. Obviously, given the dollar amount of the revenue to bill, South Coast's revenue will be substantially less than South Coast has traditionally earned. We discussed the concept to reduce South Coast down to a $20 million a year company, as opposed to a $46 to $47 million a year company. Obviously, as we discussed, it would take an number of years at a $20 million a year in revenue for South Coast to fill any deficiency and pay back Travelers. We touched on a $20 million a year program for five years as a "volumning" out situation that South Coast would need to solve its current financial problems.

Additional concern is Klukwan's overhead. Klukwan's overhead runs at about $10 million a year or about $833,000 a month. Of that amount, approximately 50%, or about $450,000, is allocated to South Coast. In short, South Coast has a major deficiency between accounts payable and accounts receivable; has diminishing operating revenues with which to meet its obligations; high overhead; and is in the process of having one of its key lenders liquidate some of its assets, and terminate Klukwan/South Coast's credit facility.

May 28, 2002 Meetings/Review.

Commencing on the week of May 28, 2002, we started our review of Klukwan/South Coast's financial condition and operations. As I mentioned during our telephone call of June 5th, we have not yet completed our review. However, we have gathered sufficient information to reach the conclusion that there is not a sustainable legal/business case for either furnishing additional surety bonds or financing South Coast/Klukwan's operations to complete the projects. In addition to the foregoing, our preliminary review indicates South Coast is facing a number of challenges. Because of South Coast's financial difficulties, South Coast now has to prosecute concurrently work that was originally scheduled for processing in a more manageable fashion. Further, the Arizona jobs have been shut down for some period of time, because of the substantial non-payment of subcontractors. From our previous discussions, and our review with South Coast's personnel and otherwise, it is apparent that Klukwan's central treasury function swept north to Klukwan's Alaskan operations revenues generated by the Arizona projects. Those projects are now without funds to pay the substantial accounts payable which have accrued on those projects.

We have also been advised that South Coast was unable to pay Concrete Technologies of Tacoma, Washington for Corpslocks for the Unalaska project. You had advised us of that non-payment during our Seattle meeting. Nevertheless, the impact of that non-payment was brought further home with subsequent discussions with South Coast personnel. By missing the payment, and not being able to pick up the Corpslocks, the Unalaska project is now at risk. It appears that South Coast needs to completely re-evaluate its barging schedule and add additional barges to solve this and other logistical problems related to the Unalaska and the Toksook projects. As you know, I heard from Mr. Tony Barter of the Alaska Dept. of Transportation on June 4, 2002. Mr. Barter is in charge of the Unalaska and the Toksook projects. He called to express concern about South Coast's progress on both projects. He also advised that the pay requisition recently paid on the Unalaska project by the Department of Transportation was "grabbed" by Key Bank on or around May 1, 2002.

TRAV 025295

000207

 

Mr. Tom Crandall
Klukwan, Inc.
June 10, 2002
Page 4

Mr. Barter requested a meeting with us to review your company's progress on both projects. Mr. Barter also advised that Concrete Technologies had presented a payment claim to the State for approximately $560,000. Mr. Barter asked that we contact Concrete Technology to address Concrete Technology's claim. During our phone call, I requested South Coast's cooperation for us to meet with the State and carry out the reletting of both the Toksook and Unalaska projects. Obviously this is one of our additional agenda items for our Tuesday meeting.

At this point in our review, we have also determined there were variances, sometimes substantial, between the amounts claimed by subcontractors, and amounts reflected on your accounts payable. We are still reviewing these variances. In short, as daunting as your circumstances appeared from our initial Seattle meeting, they now appear even more dire.

Defaults Under the Indemnity Agreements.

The above facts reflect that Klukwan/South Coast have been, and are, in default of their Indemnity Agreements with Travelers. Funds from the Arizona projects have been diverted to other Klukwan/South Coast operations, leaving Travelers exposed to major payment bond claims. South Coast is financially unable to fulfill its obligations and has had substantial portions of its debt called by Key Bank and the other lenders. You also advised that there is a $500,000 payroll coming due on Friday, June 14, 2002, which South Coast/Klukwan cannot make. Revenues have also been seized by Klukwan/South Coast's lenders, if Tony Barter's statement is correct, concerning the payment on the Unalaska project. We also received a performance complaint from Tony Barter of the Department of Transportation, State of Alaska. We also recently received a performance complaint on the Shonto project from the Bureau of Indian Affairs. With the current project challenges facing South Coast, in addition to these financial challenges, a reasonable legal/business case for Travelers extending additional surety bonds, or providing funds to finance South Coast to complete all of the bonded projects is not possible. Unconditional funding, instead of capping our risk, would only increase our ultimate loss.

Agenda for June 11, 2002 Meeting.

Tom, you had advised you may direct South Coast/Klukwan to file Chapter 11. In rejoinder, however, what I have suggested, and am offering for discussion, is the controlled wind-up and closure of South Coast operations through a combination of reletting projects, payment of bills, and limited funding sufficient to have South Coast act as an interim contractor to keep certain selected projects moving, until relet. Given Klukwan/South Coast's substantial overhead, and other unbonded obligations, such as non-rental equipment payments, Travelers needs to be selective in regard to what we will fund and what we will not fund. We also request that you forward a copy of your payroll so we can evaluate where we might be able to help, if at all, with the coming $500,000 payroll. We also discussed Klukwan/South Coast's financial exposure to Travelers. I offered my preliminary opinion that there is a $12 million exposure. As we discussed, there is a $6 million account payable/account receivable deficiency. Using your Detailed Income Statement, and applying a 33% risk factor to the $18 million (+) in potential revenue as additional cost to complete, results in an additional $6 million of exposure. Taken together, the $6 million accounts payable/accounts receivable deficit, and the $6 million risk factor, equal Travelers $12 million exposure, without considering expense reserves.



Mr. Tom Crandall
Klukwan, Inc.
June 10, 2002
Page 5

As I mentioned to you and Sharon, I am open to discussing a cap on Klukwan/South Coast's liability, with appropriate collateral, and repayment terms acceptable to Travelers. I realize my approach runs counter to the "life boat" approach you were taking during our initial Seattle meeting. Nevertheless, as Klukwan acknowledged in its March 2002 business plan, there is an obligation to Travelers which we are requesting Klukwan and its subsidiaries to honor. Given the circumstances, Travelers is fully reserving all rights and defenses and our proposals are strictly conceptual and should not be taken as a commitment to make or help you with your coming payroll or pay any other obligations. I should mention if we do not receive information very quickly in regard to payroll, we will be unable to help you, if that is the decision we make, in any event, because of the logistical problems we would confront.

I will see you at 10:00 on Tuesday, June 11, 2002, in your offices. I hope we will be able to engage in fruitful negotiations.

Very truly yours,

Charles W. Langfitt
Vice President
Bond Claims Department

CWL/jb

TRAV 025297

000209

Mr. Tom Crandall
Klukwan, Inc.
June 10, 2002
Page 6

bcc:   John Beckerleg
       Mark Eckardt
       David Montstream
       Larry Mitchell/Federal Way
       John Claeys – Willis via fax

TRAV 025298

000210



June 22, 2002

Fax 253-946-7156

Charles W. Langfitt
Vice President
Travelers Bond
3455 S. 344th Way
Auburn, WA 98001

Re:  Repayment proposal term sheet

Dear Chuck,

Attached is a proposed term sheet showing how SCI proposes to repay funds advanced by Travelers to complete the outstanding bonded jobs. The proposal shows what Travelers proposed along for comparison. Once we have agreed to the basic terms of the repayment schedule, we will have Cabot Christianson draft a contract document for execution.

Sincerely,

Thomas L. Crandall
President


Encl.  Spreadsheet on repayment proposal

Cc:  Cabot Christianson
     Bundy Christianson
     Fax 907-225-2026



**South Coast, Inc.**
1049 Tongass Ave. • Ketchikan, AK 99901
907-225-6125 Phone • 907-247 6125 Fax

Page 1 of 1

000478

000211

South Coast, Inc.
Travelers repayment proposals
6/20/02
(amounts are in thousands)

| | Travelers Proposal | Our Counter |
|---|---|---|
| Gross amount | 12,500 | 12,500 |
| Initial Discount | 15% | 30% |
| Discount on each payment made timely | 10% | 20% |
| Interest | deferred & forgiven if payment made as agreed | deferred & forgiven if payment made as agreed |
| Note | w/ SCI | w/ SCI |
| Parent guarantee | Klukwan | Klukwan |
| Assets pledged | KeyBank claim, Chinle claim, Jones Point property, second on Klukwan office building, Atlas stock, Kply stock, timber rights, Tank farm property, CPC assets | KeyBank claim, Chinle claim, Atlas stock |

Results under:

| | Travelers Proposal | | | Our Counter | | |
|---|---|---|---|---|---|---|
| | Payment | Discount | Balance | Payment | Discount | Balance |
| Beginning Balance | | | 12,500 | | | 12,500 |
| Initial discount | | 1,875 | 10,625 | | 3,750 | 8,750 |
| Payments year 1 | | | | | | |
| Sale of Atlas (see note below) | 3,100 | 310 | 7,215 | 3,100 | 310 | 5,340 |
| Settlement of Chinle claim | 1,500 | 150 | 5,565 | - | - | 5,340 |
| Payments year 2 | | | | | | |
| Sale of equipment | 1,308 | 131 | 4,127 | 1,308 | 262 | 3,771 |
| Settlement of Chinle claim | | | 4,127 | 1,500 | 300 | 1,971 |
| Balance | | | 4,127 | | | 1,971 |
| Payment year 3 | 1,876 | 188 | 2,063 | 205 | 41 | 1,725 |
| Payment year 4 | 1,876 | 188 | - | 205 | 41 | 1,479 |
| Payment year 5 | | | | 205 | 41 | 1,233 |
| Payment year 6 | | | | 205 | 41 | 987 |
| Payment year 7 | | | | 205 | 41 | 741 |
| Payment year 8 | | | | 205 | 41 | 495 |
| Payment year 9 | | | | 205 | 41 | 249 |
| Payment year 10 | | | | 208 | 42 | - |
| Totals $$ | 9,660 | 2,841 | 12,500 | 7,550 | 4,950 | 12,500 |
| %% | 77% | 23% | 100% | 60% | 40% | 100% |

Notes:

The payments to Travelers in years 1 and 2 are conditional upon certain events occuring. The amounts actually received would be paid as outlined but may differ from projections. The payments in subsequent years would be adjusted so that any unpaid balance at the end of year 2 would be paid over the remaining term of this agreement. A shortfall in payments due to this uncertainty would not be considered a default and therefore interest would not be payable but would continue to be deferred and forgiven if the remaining balance is paid according to the adjusted repayment schedule.

Sale of Atlas

| | | |
|---|---|---|
| Gross amount | | 5,000 |
| Paid on seller / financing (assume 3 payments remaining | | (450) |
| Paid to KeyBank | | (1,200) |
| Purchase CD to collateralize Letter of credit | | (250) |
| Net | | 3,100 |

If Atlas fails to sell, then approximately $400 per year is available to 1) repay KeyBank and 2) accelerate payments to Travelers starting year 4.

Sale of Equipment

| | | |
|---|---|---|
| Value of rolling stock | | 9,515 |
| Less: Leased equipment | | (6,400) |
| Value of marine equipment | | 3,900 |
| Value of equipment | | 7,015 |
| Discount for fast sale | 50% | (3,508) |
| Net equipment value | | 3,508 |
| Value of land in Ketchikan | | 4,000 |
| Payment to KeyBank on equipment | | (2,500) |
| Payment to KeyBank on Land | | (3,200) |
| Used to collateralize Arizona startup | | (500) |
| Net available to pay Travelers | | 1,308 |

Chinle Claim

Claim amount less pass through

| | |
|---|---|
| Gross Amount | 2,900 |
| Pass through claims | (600) |
| Net amount | 2,300 |

Value in x years (in millions)

| Year Settled | Discount Factor | | | |
|---|---|---|---|---|
| | 2.5% | 5.0% | 7.5% | 10.0% |
| 1 | 2,244 | 2,190 | 2,140 | 2,091 |
| 2 | 2,189 | 2,086 | 1,990 | 1,901 |
| 3 | 2,136 | 1,987 | 1,851 | 1,728 |
| 4 | 2,084 | 1,892 | 1,722 | 1,571 |
| 5 | 2,033 | 1,802 | 1,602 | 1,428 |

Therefore, 2,300 today is worth 1,901 in 2 years at 7.5% return.
Used 1,500 for this amount.

000213