**Unknown**

| | |
|---|---|
| From: | Tom Crandall [tomc@klukwan.com] |
| Sent: | Tuesday, July 09, 2002 10:28 AM |
| To: | MattoonR@aol.com |
| Subject: | FW: South Coast/Travelers Repayment Proposals |



cl2770.doc (3 MB)  cl2769.doc (22 KB)

Randy,

We look forward to having you on board.

Here is the counter proposal from Travelers.  I will send you what I sent them by separate email.

Tom C.

-----Original Message-----
From: Sandi.J.Roddick@travelers.com
[mailto:Sandi.J.Roddick@travelers.com]
Sent: Tuesday, July 02, 2002 2:47 PM
To: tomc@klukwan.com
Cc: Charles.W.Langfitt@travelers.com; Marc.A.Eckardt@travelers.com;
Marc.A.Eckardt@travelers.com
Subject: South Coast/Travelers Repayment Proposals

Attached please find a letter from Chuck Langfitt with an attachment regarding Travelers Counter Proposal.

(See attached file: cl2770.doc)(See attached file: cl2769.doc)



Crandall
DEPOSITION
EXHIBIT
#36
PENGAD 800-631-6989

1



**Travelers**

Mailing Address
3455 S. 344th Way, Suite 200
Auburn, WA 98001

**Charles W. Langfitt**
*Vice President*
*Bond Claim, Federal Way*
*(253) 946-7374*
*(253) 946-7156 (fax)*
*Charles.W.Langfitt@Travelers.com*

July 2, 2002

### VIA E-MAIL & REGULAR MAIL

Mr. Thomas L. Crandall, President
South Coast, Inc./Klukwan Construction
2075 Jordan Avenue, Suite 200
Juneau, AK 99801

| | |
|---|---|
| Re: | Travelers Casualty & Surety Co. of America |
| Our File No.: | 689687 (Master File) (Subfile B – Indemnity) |
| Principal: | South Coast, Inc., dba Klukwan |

Dear Tom:

Thank you for your proposal of June 22, 2002 concerning Klukwan, South Coast and our other Indemnitors repaying Travelers for our impending loss. I have attached our response following the format you used for your June 22, 2002 offer. Please note that I have added K-Ply back into the mix for the assets pledged. As we discussed very briefly on July 1, 2002, we have written at least one bond, possibly more, directly in the name of K-Ply. As such, we have a direct claim against K-Ply and its assets, thereby answering the issue raised by Cabot Christenson during our meeting in Juneau. As you know, his position was that we have a right to K-Ply's stock, but not to any of its assets. I have also added all real estate of any Klukwan entity as a category of assets pledged.

I also note that you proposed a structure with a South Coast Promissory Note, and a parental guarantee by Klukwan. This structure may need some adjustment. There is the possibility we will need Klukwan to sign as a joint maker of any Note depending on where we finally end up on the asset base used for the repayment program. I believe the attachment reflects how I propose to "cap" South Coast/Klukwan's obligation to Travelers with the proviso that if the loss equals or exceeds $14 Million, then that "cap" is lifted on a percentage basis. Further, if South Coast/Klukwan misses any payments, other than the two year grace period where the payments come from designated sources, then Klukwan is responsible for the full loss, with no "cap" or discount.

In addition, could you please remit the $75,000 from the Trident payment pursuant to our letter agreement? Also, as of the close of business on July 1, 2002, Travelers has expended just over $1.6 Million on behalf of South Coast and Klukwan.

001500
000215

Travelers
Mr. Thomas L. Crandall, President
South Coast, Inc./Klukwan Construction
October 4, 2006
Page 2

Turning just briefly to our efforts to address the remaining work, we have primarily been focusing on the seven main projects: Borrego Pass, Navajo FB/NML, San Carlos, Unalaska Airport, Toksook, the Dock job, and Big Salt. Obviously, South Coast has other work that we have bonded underway. Could you please have brief status reports prepared for each of the other projects regarding the percentage of completion, balance of contract funds, the anticipated completion date and contractual completion date? I would also propose that we schedule a meeting toward the end of the week of July 15 to review the following:

1.  Repayment program;
2.  The 7 main bonded projects;
3.  The other bonded South Coast work; and
4.  Wind up of the remaining South Coast operations.

As you know, I will be out of town the week of July 8th. Please feel free, however, to schedule a meeting through Marc Eckardt of my office for the 17th, 18th and/or 19th of July. We may need to take more than one day for review, with one day spent in Juneau and one or more days reviewing the status of the remaining Alaskan work.

Obviously, we are in the process of negotiating the resolution of an obligation owed by South Coast/Klukwan, and others. Given that circumstance, this letter and the attachment is just that, a proposal. As such, Travelers is fully reserving all of its rights and defenses under its Indemnity Agreements and under common law.

Thank you for your courtesies.

Very truly yours,

Travelers Casualty & Surety Company
of America

*No signature on e-mail copy*

Charles W. Langfitt
Vice President
Bond Claims Department

CWL/sjr(d2770.sjr)

Cc:    Travelers – Federal Way – Marc Eckardt
       Stewart, Sokol & Gray – Jan Sokol

# SOUTH COAST, INC./
# TRAVELERS REPAYMENT PROPOSALS
## 6/20/02
### (amounts are in thousands)

|  | **Travelers**<br>Counter Proposal<br>7/2/02 | **Klukwan**<br>Counter Offer<br>6/22/02 |
|---|---|---|
| * **Gross Amount with Partial Cap** | $12,000 | $12,500 (estimated loss) |
| **Initial Discount** | 15% | 30% |
| **Discount on each payment made timely** | 15% | 20% |
| **Interest** | Deferred & forgiven if payment made as agreed | Deferred & forgiven if payment made as agreed |
| **\*\*Note** | w/SCI | w/SCI |
| **Parent guarantee** | Klukwan | Klukwan |
| **Assets pledged** | KeyBank claim Chinle claim, Jones Point property, second on Klukwan office building, Atlas stock, K-Ply stock, timber rights, Tank farm property, CPC assets, K-Ply assets.<br>All real estate – of any Klukwan entity | KeyBank claim. Chinle claim, Atlas stock. |
| **\*Gross amount capped at this amount, but if TAP loss and expense equals or exceed $14 Million, then CAP is increased 75% or .75¢ for each dollar over $12 Million. For example, a $15 Million loss increases the $12 Million CAP by $2.25 Million to $14.25 Million . A $13 Million loss, however, results in no increase in the "cap", and the obligation is capped at $12 Million.** | | |
| **\*\* 6 year payment term. No cash required for first two years, with payment to come from sale of Atlas, settlement of Chinle claim, sale of equipment, sale of real estate. Commencing year 4, pay down remaining balance at 25% of remaining balance allocated to each year of the 4 year remaining term, e.g., 2.08% of the remaining principal balance is payable each month, with interest deferred.** | | |

C12769.ajr

001006
000217



**Charles W Langfitt**
08/02/2002 07:32 AM

To:      Sandi J Roddick/BD/Travelers@travelers
CC: and BCC: fields are in this section - must be expanded to print
Subject:  Workout documents

Please print two copies of the e mail cover and attachments. File one set in the master file South Coast, subfile B. Bring the other copy to me.

————————— Forwarded by Charles W Langfitt/BD/Travelers on 08/02/2002 07:30 AM —————————

From:    Cabot Christianson <Cabot@bundychristianson.com> on 08/02/2002 01:32 AM EDT

To:      Charles W Langfitt/BD/Travelers@Travelers
CC: and BCC: fields are in this section - must be expanded to print

Chuck -
Here is a proposed master agreement, note, and guaranty which reflects our agreement of last month.  If this structure looks OK to you, I will prepare the deeds of trust and security agreements which should, for the most part, be very generic.
Please give me your comments.
-Cabot Christianson

travelers
workout.wpd

travelers note.wpd

Midcoen
guaranty.wpd



Crandall
DEPOSITION
EXHIBIT
#40

PENGAD 800-631-6989

TRAV 025096

000218



# AGREEMENT

This Agreement is made as of July 17, 2002 between Travelers Casualty & Surety Company (Travelers) and South Coast, Inc. (SCI).

## WHEREAS:

Travelers has issued payment and performance bonds to SCI and its affiliates. Those bonds are now in default. Travelers is incurring expenses performing under those bonds and is looking to SCI and its affiliates for repayment. The parties hereto have entered into this Agreement in order to settle that repayment obligation.

## NOW THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1.      **Subject matter of this Agreement.** This Agreement covers the Continuing Agreements of Indemnity Contractor's Forms dated March 1, 1999, December 18, 1995 and February 23, 1996 (collectively "Indemnity Agreements") issued by SCI and its affiliates, in favor of Travelers or its predecessors in interest, and the Payment and Performance Bonds (Bonds) issued by Travelers listed on Exhibit A, concerning the construction contracts (Bonded Projects) listed thereon.

2.      **Mutual cooperation.** Travelers and SCI agree to cooperate, and provide each other with information and documentation, in order to minimizes Travelers's exposure under the Bonds and which enables SCI to be informed, on a regular basis, of Travelers's actual exposure under the Bonds. Upon reasonable request, each party agrees to provide the other with information and documentation concerning the status of payments under the Bonds and Bonded Contracts, and to provide each other with information as to payroll, material and supplies, labor, freight arrangements, overhead, and the like, together with appropriate backup documentation. These obligations of mutual cooperation shall be ongoing until the Bonded Contracts are complete and SCI's obligations under the Note have been performed.

3.      **Travelers's right to Bonded Contract Funds.** Nothing in this Agreement shall be construed to diminish Travelers' right to revenues and receipts otherwise due South Coast, or its affiliates, under the Bonded Contracts.

4.      **Note.** In reliance upon Travelers' representation that its total liability under the Bonds, net of all receipts from the Bonded Contracts, will exceed $8 million, SCI shall execute a Note, in the form attached as Exhibit B, in the amount $5,388.306.48, which calls for payments to Travelers totaling $8 million, payable on the terms set forth therein. In the event that Travelers' total loss, net of all receipts from the Bonded Contracts, is less than $8 million, Travelers shall credit the Note with the amount of the difference.

TRAV 025097

000219



5.    Security.

(a)  As security for payment of the Note, SCI shall execute, or arrange for the execution, of the following security instruments which shall encumber the following assets owned by SCI, Klukwan, and Chilkats' Portage Cove Development Company (CPC):

| Collateral | Owner | Exhibit |
|---|---|---|
| All of net proceeds of Chinle claim | SCI | C |
| 1/2 of net proceeds of Key Bank claim | SCI/Klukwan | G |
| Stock in Atlas Alaska, Inc. | Klukwan | C |
| 1/2 of net equipment proceeds | SCI | C |
| 3rd deed of trust on Juneau office building | Klukwan | D |
| Deed of Trust on Jones Point property | Klukwan | D |
| 2d deed of trust on SCI Ketchikan property | SCI | F |
| Deed of trust on tank farm property | CPC | E |

(b)  In the event that Travelers receives payment on account of the sale or refinance of the foregoing collateral, such payments shall be a credit to the principal amount owed on the Note but shall not reduce the amount of the monthly payments due on the Note.

(c)  Except as provided in paragraph 8 concerning the Chinle claim and paragraph 9 concerning the Key Bank cliam, the parties agree that the owner of the collateral identified in each security agreements and deeds of trust given to secure payment of the Note shall retain full control over the collateral, and shall have full rights to refinance the collateral and accept or reject any offers of purchase.  Travelers agrees to subordinate its security interest to any new financing, provided that Travelers receive all the proceeds of such financing net of payment to senior secured liens on the collateral.  Travelers also agrees to release its security interests in the event of a sale of the collateral, and agrees to execute appropriate UCC-3's or requests for reconveyance or other such documents, provided that the sale is to a bona fide third party and that Travelers receives all sale proceeds net of closing costs, real estate commissions, and payments to senior secured liens on the collateral.

(d)  The deed of trust on the tank farm property shall contain a provision prohibiting Travelers from foreclosing on the property in the event of default.  Traveler's deed of trust on the property shall entitle it to proceeds from sale or refinance of the property as provided above.

6.  Satisfaction of liability.  Delivery of the Note and security instruments to Travelers as set forth above shall constitute full and final satisfaction of the all the claims against, or liabilities of, South Coast, Inc., Klukwan, Inc., all persons and entities named in the Indemnity Agreements, and their affiliates (collectively, Klukwan Entities) relating to or arising out of the Indemnity Agreements, Bonds or the Bonded Contracts.  However, if either SCI or Klukwan file a voluntary petition in bankruptcy, or have an order for relief entered against them following an involuntary petition, and if any of the security interests described in this Agreement are thereafter

Page 2: AGREEMENT                    July 26, 2002

H:\2501\Travelers workout documents\travelers workout.wpd

TRAV 025098

000220

avoided under 11 U.S.C. §550 or are otherwise set aside then, at the election of Travelers, (a) the satisfaction of liability in this paragraph shall be null and void as to all the Klukwan Entities, (b) the Klukwan Entities' obligations under the Note or any guarantees of the Note shall terminate, (c) Travelers shall release all its remaining security interests, (d) all payments received by Travelers on account of the Note shall be applied instead to the Indemnity Agreements, and (e) the parties to the Indemnity Agreements shall be liable to Travelers according to the terms of the Indemnity Agreement. It is the intent of the parties that either all of items (a) through (e) shall occur, or none of them, but that the choice shall be at Travelers' sole election.

7.    **Corporate approval.** This Agreement is subject to formal approval by the Boards of Directors of SCI, Klukwan, and CPC.

8.    **Chinle claim.** Travelers agrees to pay all ongoing attorneys fees and litigation costs of the Chinle claim (Case No. _____ pending in _____), and shall be entitled to receive, as a credit to the Note, all proceeds from judgment on that claim, or settlement of that claim, net of attorneys fees and accrued litigation expenses. Until September 20, 2002, SCI and Klukwan shall have sole authority to settle this claim. After that date, Travelers shall consult with SCI and Klukwan prior to any settlement, but will have sole authority to settle the claim.

9.    **Key Bank claim.** Some of the Klukwan Entities hold a claim against Key Bank arising from Key Bank's seizure of $13 million of securities in May, 2002. As of the date of this Agreement, no lawsuit has been filed concerning that claim. The Klukwan Entities shall provide such information to Travelers concerning the claim as Travelers reasonably requests; and shall give Travelers a reasonable opportunity to make the election described in the next sentence . At Travelers's sole election, but prior to such lawsuit being filed, either (a) Travelers shall agree to pay the attorney fees and litigation costs associated with prosecuting the claim, and the Klukwan Entities shall execute a security agreement in the form set forth in Exhibit G which gives Travelers a security interest in the litigation proceeds and which provides for repayment of Travelers fees and costs, and that the net litigation proceeds shall be divided one-half to Travelers to be applied to the Note and the other half to the Klukwan plaintiffs, free and clear of Travelers' security interest; or (b) Travelers shall have no obligation to pay attorneys fees and costs associated with prosecuting the claim and shall have no security interest in the litigation proceeds.

Exhibit G hereto shall be executed, and a UCC-1 financing statement shall be filed with respect to the Key Bank claim, only if Travelers elects under subsection (a) hereof.

10.    **Financial information.** Travelers acknowledges that it has received all the financial information and other documentation it has requested of the Klukwan Entities, and the parties agree that Travelers has entered into this Agreement in reliance upon such information.

TRAV 025099

000221


11.    **Further assurances.** Both parties agree to execute such additional documents as may be necessary or appropriate to carry out the intent of this Agreement.

12.    **Entire agreement; amendment.** This is the entire agreement between the parties with respect to the subject matter of this Agreement. There are no expectations, agreements, or side deals between the parties except as set forth herein. This agreement may not be amended except in writing.

13.    **Rule of construction.** Both parties are represented by counsel or have the benefit of counsel, and have contributed toward the drafting of this Agreement. Accordingly, the rule of construction that a document is construed against its drafter shall not apply.

Executed July _____, 2002 by:        Travelers Casualty & Surety Company
                                       of America

                                       By_____
                                       Charles W. Langfitt, Vice President


Executed July _____, 2002 by:          Klukwan, Inc.


                                       By_____
                                       Tom Crandall, President


Executed July _____, 2002 by:          South Coast, Inc.

                                       By_____
                                       Tom Crandall, President


List of Exhibits:
A      Bonds and Bonded Contracts
B      Note
C      Security Agreement executed by SCI covering Chinle claim and equipment
D      3rd deed of trust on Klukwan's Juneau office building and Jones Point property
E      Deed of Trust on CPC's tank farm property
F      2d deed of trust on SCI Ketchikan property
G      Security agreement covering Key Bank claim


                          Page 4: AGREEMENT                     July 26, 2002
      H:\2501\Travelers workout documents\travelers workout.wpd

TRAV 025100

000222

## PROMISSORY NOTE

$5,388,306.48

August _____, 2002

FOR VALUE RECEIVED, the undersigned, SOUTH COAST, INC. ("Maker"), promises to pay to the order of TRAVELERS CASUALTY & SURETY COMPANY ("Payee"), at_____ or at such other place as the holder hereof may from time to time designate in writing, in lawful money of the United States of America, the principal sum of FIVE MILLION, THREE HUNDRED EIGHTY EIGHT THOUSAND, THREE HUNDRED SIX DOLLARS AND FORTY EIGHT CENTS ($5,388,306.48), plus interest accruing at the rate of six percent (6%) per annum beginning August 1, 2002, payable on the following schedule:

| | |
|---|---|
| September 1, 2004 | $ 50,000 |
| October 1, 2004 | $ 50,000 |
| November 1, 2004 | $ 50,000 |
| | |
| May 1, 2005 | $ 50,000 |
| June 1, 2005 | $ 50,000 |
| July 1, 2005 | $ 50,000 |
| August 1, 2005 | $ 50,000 |
| September 1, 2005 | $ 100,000 |
| October 1, 2005 | $100,000 |
| November 1, 2005 | $100,000 |
| | |
| May 1, 2006 | $ 100,000 |
| June 1, 2006 | $ 100,000 |
| July 1, 2006 | $ 100,000 |
| August 1, 2006 | $ 100,000 |
| September 1, 2006 | $ 100,000 |
| October 1, 2006 | $ 100,000 |
| November 1, 2006 | $ 100,000 |
| | |
| May 1, 2007 | $ 100,000 |
| June 1, 2007 | $ 100,000 |
| July 1, 2007 | $ 100,000 |
| August 1, 2007 | $ 100,000 |
| September 1, 2007 | $ 100,000 |
| October 1, 2007 | $ 100,000 |
| November 1, 2007 | $ 100,000 |
| | |
| May 1, 2008 | $ 100,000 |
| June 1, 2008 | $ 100,000 |
| July 1, 2008 | $ 100,000 |
| August 1, 2008 | $ 100,000 |
| September 1, 2008 | $ 100,000 |
| October 1, 2008 | $ 100,000 |
| November 1, 2008 | $ 100,000 |

TRAV 025101

000223

| | |
|---|---|
| May 1, 2009 | $ 100,000 |
| June 1, 2009 | $ 100,000 |
| July 1, 2009 | $ 100,000 |
| August 1, 2009 | $ 100,000 |
| September 1, 2009 | $ 100,000 |
| October 1, 2009 | $ 100,000 |
| November 1, 2009 | $ 100,000 |
| | |
| May 1, 2010 | $ 100,000 |
| June 1, 2010 | $ 100,000 |
| July 1, 2010 | $ 100,000 |
| August 1, 2010 | $ 4,250,000 |
| | |
| Total | $ 8,000,000 |

This Note pay be prepaid in whole or in part, but any prepayments shall be a dollar for dollar credit to the last payments due under the Note as opposed to a credit to the principal amount of the Note. In order for this Note to be discharged, Payee must have received payments totaling $8,000,000.

This Note is made pursuant to an Agreement between the parties of even date and is to be interpreted consistently with that Agreement.

From time to time the maturity date of this Note may be extended or this Note may be renewed, in whole or in part, a new note of different form may be substituted for this Note and/or the rate of interest may be changed, or changes may be made in consideration of loan extensions, and the holder, from time to time, may waive or surrender, either in whole or in part, any rights, guarantees, security interests or liens given for the benefit of the holder in connection with the payment and the securing the payment of this Note; but no such occurrences shall in any manner affect, limit, modify or otherwise impair any rights, guarantees or security of the holder not specifically waived, released or surrendered in writing, nor shall Maker or any guarantor, endorser or any person who is or might be liable hereon or herefor, either primarily or contingently, be released from such liability by reason of any such occurrence. The holder hereof, from time to time, shall have the unlimited right to release any person who might be liable hereon or herefor, and such releases shall not affect or discharge the liability of any other person who is or might be liable hereon or herefor.

This Note shall be assignable by Payee.

If any payment required by this Note is not made when due, or if any default occurs under the provisions of any mortgage, security agreement, assignment, pledge or other document or agreement which provides security for the indebtedness evidenced by this Note, the holder hereof may, at its option, declare this Note in default and if such default remains uncured thirty (30) days following written notice of default to Maker, then all indebtedness due and owing hereunder immediately due and payable, together with interest from the date of default.

The Maker and all endorsers, guarantors and sureties hereby severally waive protest,

2

TRAV 025102

000224

presentment, demand, and notice of protest and nonpayment in case this Note or any payment due hereunder is not paid when due; and they agree to any renewal of this Note or to any extension, acceleration or postponement of the time of payment, or any other indulgence, to any substitution, exchange or release of collateral and to the release of any party or person primarily or contingently liable herefor, without prejudice to the holder and without notice to Maker, or to any endorser, guarantor or surety. Maker and any guarantor, endorser, surety or any other person who is or may become liable hereon will, on demand, pay all costs of collection, including reasonable attorney fees of the holder hereunder.

The Maker is personally obligated and fully liable for the amount due under this Note. The Payee has the right to sue on the Note and obtain a personal judgment against the Maker for satisfaction of the amount due under the Note either before or after a judicial foreclosure of the deed of trust under AS 09.45.170-09.45.220. Reference AS 34.20.160(b).

This Note is delivered and accepted in the State of Alaska and shall be governed by and construed in accordance with the laws of said State. Any suit or proceeding arising from or seeking to enforce this Note shall be litigated in courts sitting in Alaska.

SOUTH COAST, INC.

Dated August _____, 2002          By: _____
                                      Thomas Crandall, President

3

TRAV 025103

000225

### GUARANTY AGREEMENT

Payee:          Travelers Casualty & Surety Company

Maker:       South Coast, Inc.

Guarantor:       Klukwan, Inc.

Obligation:       Note in the principal amount $5,388,306.48

In consideration of Maker and Payee entering into an Agreement of even date, and Payee accepting the above referenced Note pursuant to that Agreement, Guarantor irrevocably guarantees to Payee the payment of Maker's obligations under the Note. This is a guaranty of collection. Venue over any dispute concerning this Guaranty shall be in Alaska.

Dated August ___, 2002

KLUKWAN, INC.

By_____
Thomas Crandall, President

TRAV 025104

000226