**Cabot Christianson**

From:      "Cabot Christianson" <cabot@cslawyers.net>
To:        <tomc@klukwan.com>
Sent:      Thursday, January 19, 2006 6:54 PM
Attach:    earnhart3.doc
Subject:   Re: Lane Powell letter re: Peterson Sullivan

This is the kind of letter that I draft, and then wait a few days or longer before sending out.
-Cabot

----- Original Message -----
From: Tom Crandall
To: 'Cabot Christianson'
Sent: Thursday, January 19, 2006 3:46 PM
Subject: Lane Powell letter re: Peterson Sullivan

Cabot,

Please review the letter from Peterson Sullivan and then let's chat. The letter was faxed to your office today.

The facts in Mr. William A. Earnhart's letter are in error. In the second paragraph he states "It is my understanding that as the CFO of Klukwan, you are one of the main proponents of South Coast's rapid growth,.................." Note that I joined Klukwan on August 8, 2001, significantly after the company had made the decisions regarding growth. Also, Klukwan was not in payment default on its obligations to Key Bank on May 13, 2001 – the day that the bank ceased Klukwan's cash and investme assets. Rather, they defaults were all surrounding the issues of covenants and had to do with South Coast failing to perform. Again, given when I joined the company and involvement with South Coast, the fault does not lie with me.

William A. Earnhart also mischaracterizes my relationship with Robert Sutor and Charles Langfitt. He characterizes them ...ds and I would not. Also, I would say that Mr. Langfitt made up his own mind to sue Peterson Sullivan and any input I ga was just my opinions.

I think this is interesting. I'm being threatened with being sued for defamation of character etc. Given the "black listing" going on by Peterson Sullivan (remember the information I told you about why Shee Atika decided not to investigate hiring me) ther are likely plenty of opportunities for suits to go around.

Please contact Mr. Earnhart and inform him that you are representing Klukwan and to direct further correspondence regardin this matter to your attention.

Lastly, do we need to contact our insurance carrier about the threatened suit? If so, what carrier?

Sincerely,

Thomas L. Crandall

Primary contact information
Klukwan, Inc.
Attn: Thomas L. Crandall, President
425 Sawmill Road
PO Box 209
Haines, Alaska 99827
(907) 766-2211 office
(907) 766-2973 fax
( ) 637-8641 eFax
( ) 223-1072 cell



PENGAD 800-631-6989
Christianson
DEPOSITION
EXHIBIT
#183

Alternative contact information
KPLY, Inc.
    Marine Drive (98363)
    Box 2318
Port Angeles, WA 98362-0297
(360) 457-4421 office
(360) 457-1634 fax

tomc@klukwan.com email
www.klukwan.com

This E-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. This information is confidential information and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

September 27, 2006

William A. Earnhart
Lane Powell
301 West Northern Lights Blvd, Suite 301
Anchorage, AK 99503-2648

Dear Bill,

Your letter of January 19, 2006 contains several misstatements which, when corrected, may affect your client's view of this situation.

Mr. Crandall's first day of work at Klukwan was August 8, 2001, well after the company made its ill-fated decision to grow.

KeyBank's seizure of Klukwan's liquid assets on May 13, 2002, was solely the result of Klukwan's breach of financial covenants (2001 year-end net worth, and financial ratios). No Klukwan entity was in payment default at the time. Klukwan's default was due to historical facts over which Mr. Crandall had no control, not to a lack of accounting controls within the company.

Your sarcastic reference to Mr. Crandall's "friends" at Travelers is uninformed. The relationship between Travelers and Klukwan has been, and continues to be, a difficult and adversarial one.

Travelers had Peterson & Sullivan in its sights in June, 2002, at the latest, many months before Travelers told anyone at Klukwan. Jerry Renich's joinder in Peterson Sullivan's motion for summary judgment motion in the Travelers suit reveals an in-house email dated June 19, 2002, from David Hombach, the Travelers Vice President in charge of the SCI account, to Chuck Langfitt, which stated in part:

What about their wonderous [sic] CPA firm who obviously must have missed a whole [sic] in the boat in their 12/3/100 audit ....

May be crying in spilled milk, Chuck, but those bastards must be tagged somehow.

This email is dated June 19, 2002.

Beginning in late July, 2002, Tom Crandall and I, and Kim Strong, a Klukwan board member, negotiated a tentative settlement with Chuck Langfitt concerning settlement of Klukwan's indemnity obligation on the Travelers performance bonds. It took more than four months for the last details to be negotiated and the final documents prepared and signed. As you know, the final documents were signed December 6, 2002.

I can personally testify that there was not a hint, in those negotiations or document draftings, that Travelers intended to sue Peterson & Sullivan or the Klukwan directors. Frankly, if we had had wind that those were Travelers' intentions, I would have inserted language to protect Klukwan from being brought in through the back door, which as you know almost happened through Jan Paulson.

In short, if Peterson & Sullivan has its nose out of joint in the belief that Klukwan sicced Travelers on Peterson & Sullivan, that belief is in error. Klukwan happens to hold the view that Peterson & Sullivan's performance was substandard, and Klukwan is entitled to its own opinion.

Your own letter supports Klukwan's view. If it is so obvious to Peterson & Sullivan, now, that South Coast was doomed because of "South Coast's 10-year track record of failure every time it expanded its operations outside of Southeast Alaska," is that not the sort of observation that Peterson & Sullivan should share with its client of those same ten years?

Keep in mind that Peterson & Sullivan was dismissed on a statute of limitations basis, not on the merits. This is a file that Peterson & Sullivan should close, and be glad that is loss is limited to uncollected fees.

Very truly yours,
CHRISTIANSON & SPRAKER

By_____
Cabot Christianson

H:\2501\ltr\earnhart3.wpd

LAW OFFICE OF
# CHRISTIANSON, BOUTIN & SPRAKER
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS
911 WEST 8TH AVENUE, SUITE 302
ANCHORAGE, ALASKA 99501

OT CHRISTIANSON
ELLE L. BOUTIN
Y A SPRAKER

PHONE: (907) 258-
FAX: (907) 258-

November 29, 2004
VIA FAX to 503/223-5706

Jan Sokol, Esq.
Stewart Sokol & Grey, LLC
2300 SW 1st Avenue, #200
Portland, OR 97201-5047

Re:   *Travelers v. Gelbrich, et al.*

Dear Jan,

Your November 17, 2004 letter is correct that South Coast did not timely pay its November, 2004 installment payment. This was an oversight unrelated to the Travelers lawsuit against the South Coast former officers, and has been rectified. The next payment is due May, 2005.

Your letter is also correct in describing the basic concept of the December, 2002 Repayment Agreement as a global settlement. You were not involved in the negotiations that led to that agreement, but Chuck Langfitt will confirm to you that the agreement was the result of extensive negotiations that focused on payment amount, payment terms, security, and other such terms. The scope of the release was not the subject of dispute or extensive negotiation, because the whole purpose of the exercise was to reach a global resolution of all Travelers-related issues. During the negotiations, neither side raised the subject of a Travelers suit against South Coasts's or Klukwan's former officers.

Your letter is, however, incorrect in referring to the affiliate defense as a "new" position, or one that was developed after Travelers refused to apply the proceeds of this litigation to the South Coast note. The true order of events is the other way around.

In late September, 2004, Travelers wanted South Coast to assign, to Travelers, South Coast's rights against Marsh USA for Marsh's failing to properly notify South Coast's D&O insurer of Travelers' claim against the officers. On September 29, 2004, Tom Crandall, Chuck Langfitt and I had a telephone conference at which time



DEPOSITION
EXHIBIT
#197

001062

000324

Jan D. Sokol, Esq.
November 29, 2004
Page 2

South Coast indicated its lack of enthusiasm for the proposal. South Coast identified three problems: first, a desire to maintain a good business relationship between Klukwan and Marsh; second, Travelers' proposal had no upside whatever for South Coast or Klukwan without some revenue sharing. Third, and most fundamentally, South Coast viewed the Travelers litigation as having no underlying value because of the affiliates defense. Mr. Langfitt will corroborate that in that September 29, 2004 conversation, the affiliates defense was explained clearly and in detail to him. South Coast also stated that, regardless of whatever new agreements were, or were not, made between South Coast and Travelers, South Coast would be disclosing the affiliate defense to the former officers. In that conversation, Mr. Langfitt indicated that he had not previously considered the possibility that the Repayment Agreement precluded Travelers from suing the former officers. It was after that date that Travelers withdrew its request that South Coast assign its rights.

The affiliates defense is not a new position that arose after Travelers refused to apply the litigation proceeds to the South Coast note. Rather, Travelers' refusal appears to have been motivated in part by learning about the defense.

There is no textual support in the Repayment Agreement for Travelers' current position that the Repayment Agreement is not a complete bar to the litigation. The critical portions of Paragraph 11 of the Repayment Agreement provide:

"Except as provided otherwise in this paragraph of this Agreement, and paragraph 14 hereof, delivery of the Note and security agreements as set forth above shall constitute full and final satisfaction of all the claims against, or liabilities of, SCI, Klukwan and CPC, and all persons and entities named in the Indemnity Agreements, **and their affiliates** (collectively, Klukwan Entities) relating to or arising out of the Indemnity Agreements ...

This Agreement and the preceding sentences do not impair or release Travelers' claims or causes of action against **any person** or entity other than the Klukwan Entities." (emphasis added)

Travelers' view, that Paragraph 11 does not bar the officers lawsuit, is problematical for the following reasons:

001063

Jan D. Sokol
November 29, 2004
Page 3

(1)  If the release is limited to the parties who signed the Indemnity agreements, then the phrase "and their affiliates" is surplusage.

(2) K-Ply, Inc., a Klukwan subsidiary referred to in paragraph 14, did not sign the Indemnity Agreements at issue in the Repayment Agreement. Carving K-Ply out of the first sentence of Paragraph 11 would have been pointless if the term Klukwan Entities were limited to the parties who signed the Indemnity Agreements.

(3) The phrase "against any person or entity other than the Klukwan Entities" clearly implies that a person can be Klukwan Entity.

South Coast's position is a straightforward syllogism: (a) An officer of South Coast is a "person" "affiliated" with South Coast; (b) a person affiliated with South Coast is a "Klukwan Entity" for purposes of Paragraph 11; (c) the Repayment Agreement releases all Klukwan Entities; and therefore (d) the Repayment Agreement releases the officers.

(4) It is commonplace for a release clause to cover non-parties to the agreement that are closely associated with the parties to the agreement who are being released.  It is especially commonplace for the release signed by a corporation extend to the officers and directors of the corporation.

(5)  My opinion letter specifically defines the term "Klukwan Entities" as Kluwan, Inc., South Coast, Inc., and Chilkats' Portgage Development Company.  In contrast to Section 11 of the Repayment Agreement, my letter does not use the term Klukwan Entities as encompassing other "persons"; and in context, its opinions are limited to the legal authority of the corporations that signing the documents.

(6) Travelers has not identified any correspondence, notes, documents, or other evidence leading up to the signing of the December, 2002 Repayment Agreement which supports Travelers' position.

South Coast intended to be entering into a global settlement, but Travelers now seems to be saying that the deal was really a "global settlement except for causes of action against former officers."  Travelers has not advanced a common sense explanation as to why South Coast would enter into such an agreement. Or, how Travelers' view of the world could be possible in the absence of either party raising the issue prior to December, 2002.

001064

000326

Jan D. Sokol
November 29, 2004
Page 4

Even if it were *not* the case that the officers were affiliates, the suit would *still* be barred by the Repayment Agreement:

(1) If Travelers recovers on its claim against the D&O insurer, and the insurer charges Klukwan the deductible on the policy, then Travelers has pursued a claim against Klukwan as prohibited by the Repayment Agreement.

(2) If any officer could show that Klukwan or South Coast had indemnified them on the Travelers claim, then Travelers has also pursued a claim against Klukwan as prohibited by the Repayment Agreement.

Klukwan and South Coast are experiencing ongoing damages as a result of Travelers' pursuit of the officers litigation. Klukwan's existing D&O coverage has been reduced from $10 million to $1 million as a result of the suit, and the corporations have had to incur ongoing legal and other expense, and devote administrative attention, to the suit.

Your letter of November 17 states that South Coast's November 10, 2004 notice of Travelers' default is an anticipatory breach of the Repayment Agreement, a direct interference with Travelers' attempt to mitigate its losses, and a violation of the implied covenant of good faith. South Coast regards the shoe as being on the other foot. But regardless, so long as South Coast is current on its payment obligations, South Coast is not in default under the Repayment Agreement. When South Coast does exercise its right of offset, the default issue can be reexamined in light of the facts that exist at that time - for example: (i) if there has been a judicial ruling on the affiliates defense in the officers litigation; (ii) what has transpired between Klukwan/South Coast and its insurers at the time; (iii) the extent to which claims have been asserted directly against South Coast.

It was clear from Chuck's comments on September 29, 2004, and appears from your letter to still be the case, that Travelers has not fully considered all the consequences of its suing the officers in light of the Repayment Agreement. South Coast therefore renews its demand that Travelers dismiss the officers from the litigation.

Jan D. Sokol
November 29, 2004
Page 5

       Please advise if you have any questions about South Coast's position in this matter.

Very truly yours,
CHRISTIANSON, BOUTIN & SPRAKER

By_____
      Cabot Christianson

cc:   Thomas L. Crandall
      H. Clay Keene
      William A. Earnhart
      William M. Wuestenfeld
      Michael A. Barcott
      James P. Wagner
      Ray R. Brown
      David Jurca
      Paul Dillon

H:\2501\ltr\sokol2.wpd

## Langfitt,Charles W

**From:**   Jan D Sokol [jdsokol@lawssg.com]
**Sent:**   Thursday, August 04, 2005 3:38 PM
**To:**     Langfitt,Charles W
**Cc:**      jordan@sutorgroup.com
**Subject:** FW: Travelers/SCI/D&O

FYI.

-----Original Message-----
**From:** Robert B. Coleman
**Sent:** Thursday, August 04, 2005 3:36 PM
**To:** Jan D Sokol
**Cc:** Thomas A Larkin
**Subject:** RE: Travelers/SCI/D&O

Jan, the big losers on our damages summary are (in ascending order of amount) ADOT Toksook Airport
($769,123.09); ADOT Unalsaka Airport ($1,277,264.23); UNAK USCG Dock ($2,230,249.23); and AZDOT Navajo
FB/NML ($3,569,029.97). I think we should get the documents for these projects as well as those below. In
looking at this, I thought of an additional possible theory on damages. Jordan (and Bob Suter, and to an extent
Peterson Sullivan) have recognized that South Coast's losses were caused by poor management control.
Internal control issues should have been discovered during the audit, as I understand Jordan's report. If the audit
had properly represented that there were internal control issues, Travelers would have had the opportunity to tell
South Coast "no bonds unless you change x,y, and z" to change your internal controls. That might have avoided
the losses on 2001 projects, South Coast might have survived its mistakes from 2000, and Klukwan might have
been able to continue its support of South Coast such that Travelers might not have lost a significant amount on
bond claims.

I wonder if we can get testimony from Klukwan to support this theory – i.e. if it had known of South Coast's
internal control issues earlier, it would have acted to avoid losses and been able to support South Coast. We
would also need to find support in the documents that the losses on projects that started in 2001 were caused by
the same internal control issues that caused the 2000 project losses.

Rob

---

**From:** Jan D Sokol
**Sent:** Wednesday, August 03, 2005 2:02 PM
**To:** Robert B. Coleman
**Cc:** Thomas A Larkin
**Subject:** RE: Travelers/SCI/D&O

Yes, that is the same project. The other part sounds good.

      -----Original Message-----
      **From:** Robert B. Coleman
      **Sent:** Wednesday, August 03, 2005 11:48 AM
      **To:** Jan D Sokol
      **Subject:** RE: Travelers/SCI/D&O

      Is Ketchikan the same as the KTN Viaduct? If so, the SCI files and those with underbillings match up.
      We might also want to determine which ongoing projects ended up being big losers, whether there were

02/07/2007

Date _10:30 7_   Exhibit # _2/9_
Case _Travelers v S Coast_
Deponent _R. Coleman_
Reporter  JANETTE DUKIC
      Naegeli Reporting Corporation
      (800) 528-3335  FAX (503) 227-7123

TRAV80771
000329

underbillings on the financial statements or not, and get those files too. The reason is that based on Earnhart's letters, Peterson Sullivan plans to allege that the losses occurred because of things that happened in 2001. If we can establish that the big losers were losers because of things that happened in 2000 (i.e., poor estimates, poor estimates of cost to complete that were not classified as underbillings, or other) we can defeat that defense. I'll look into that this afternoon or tomorrow morning, it that is ok. Rob

---

**From:** Jan D Sokol
**Sent:** Wednesday, August 03, 2005 11:19 AM
**To:** 'Jordan Rosenfeld'
**Cc:** 'Charles.W.Langfitt@travelers.com'; Thomas A Larkin; Robert B. Coleman
**Subject:** Travelers/SCI/D&O

Earnhart had an assistant review the stored SCI and Klukwan documents. There are apparently 500 boxes of SCI documents and 300 boxes of Klukwan documents. The SCI documents apparently are in project order. As I recall, Jordan, I should make copies of the files for the Big Salt Lake, Chinle, Ketchikan and Sitka Airport projects. That should have all the records you need on the projects.

I'm not sure how we will find the 12/31/00 accounting reports. Are the RP reports (other than the Contract Status Calculation Worksheet) computer generated? I assume Klukwan still has either the SCI computers or can otherwise access these reports. Chuck, perhaps Marc can request Crandall to provide us copies. The reports are as follows:

| | |
|---|---|
| RP10578 JC Cost/Est by Month | Job Cost Report - Costs/Estimates |
| RP 00163 JC Contract Status | Contract Status Report |
| RP 00210 JC Cost/Est Compare | Cost to Estimates Comparison |
| RP 10697 SCI Jobs WS Rev 4 | Work In Progress Report |

Contact Status Calculation Worksheet (This is not computer generated)

12/31/00 Progress Payment Applications

*************************************
Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
*************************************
NOTICE:

THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOUR COMPUTER SYSTEM.

02/07/2007

Blank Document Template

02/07/2007

TRAV80773
000331