# Exhibit F

Deposition Exhibits

Declaration of Gary Spraker
Traelvers Casualty and Surety v. South Coast, Inc., et al.
Case No. Ao6-00063 (TMB)

Defendants' Reply

Index to Deposition Exhibits

| Exhibit # |
|---|
| |
| 131 |
| 268 |

Thomas A. Larkin, ASB #0009055
Jan D. Sokol, *Pro Hac Vice*
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone:   (503) 221-0699
Fax:         (503) 227-5028
Email:       tlarkin@lawssg.com
             jdsokol@lawssg.com
Of Attorneys for Plaintiff Travelers Casualty and
Surety Company of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA, AT ANCHORAGE

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,<br><br>                              Plaintiff,<br><br>           v.<br><br>RONALD GELBRICH; JERALD RENICH; BRAD FINNEY; JAN PAULSON; MICHAEL HOUTS; EDWIN JOHNSON; and PETERSON SULLIVAN, P.L.L.C., a Washington limited liability company,<br><br>                              Defendants.<br><br>JAN PAULSON,<br><br>                 Third-Party Plaintiff,<br><br>           v.<br><br>SOUTH COAST, INC.,<br><br>                 Third-Party Defendant. | Case No. A04-0165CV (RRB) |

AFFIDAVIT OF CHARLES W. LANGFITT - Page 1 of 10
A04-0165CV (RRB)

Exhibit 131  Date 9-10-07
Witness Langfitt
Patricia A. Blevins  (206)323-0919

## AFFIDAVIT OF CHARLES W. LANGFITT IN SUPPORT OF TRAVELERS' OPPOSITION TO PETERSON SULLIVAN'S MOTION FOR SANCTIONS

STATE OF Washington            )
                               ) ss.
County of King                 )

I, Charles W. Langfitt, being first duly sworn, do depose and say:

1. I am Vice President of Travelers Casualty and Surety Company ("Travelers") – Surety Claims. I make this Affidavit in support of Travelers' Opposition to Defendant Peterson Sullivan, PLLC's Motion for Sanctions under Federal Rule of Civil Procedure 11. I am over the age of 18 and competent to testify. I make this affidavit from personal knowledge, and if asked to testify, would testify consistently with this Affidavit.

2. The purpose of my Affidavit is to describe Travelers' reasonable pre-filing investigation into its claims against Peterson Sullivan in this matter. Because that description requires an understanding of how the Claims Department learned of and handled losses on bonds posted by Travelers, as surety, for South Coast, Inc., as principal, I begin there.

3. I was the person primarily responsible for all South Coast / Klukwan issues once those issues came to the attention of Travelers' Claims Department. Travelers' Surety Claims Department and I first became aware of South Coast, Inc. as a very serious claims issue in May of 2002, after Klukwan's bank (Key Bank) announced that Klukwan was in default and started liquidating assets. At that time, it was clear that South Coast had operating losses in the millions of dollars on projects for which Travelers had posted payment and performance bonds. Those losses were represented to have occurred in 2001. Travelers' main concern in May of 2002 was to determine the extent of its likely loss from

AFFIDAVIT OF CHARLES W. LANGFITT - Page 2 of 10
A04-0165CV (RRB)

payment and performance bond claims on South Coast projects, and the extent to which Klukwan, Inc., South Coast's parent company and an indemnitor on the indemnity agreement held by Travelers, would be able financially to support South Coast and to indemnify Travelers.

4. Travelers participated in meetings with South Coast and Klukwan in May and June of 2002 to address issues regarding South Coast's and Klukwan's financial condition, payment and performance claims against bonds posted by Travelers for South Coast, Klukwan's business plan for South Coast, Klukwan's credit arrangement with its banks, the current state of South Coast's construction projects for which Travelers was responsible as payment and performance bond surety, whether Travelers would extend additional surety credit to South Coast in the form of bonds for future projects and/or financing to allow South Coast to complete future projects, whether Klukwan would "wrap up" South Coast as a going concern, and whether and to what extent Klukwan would indemnify Travelers. The substance of the discussions at these meetings and telephone discussions with Klukwan and South Coast is stated in a series internal memoranda (titled "Travelers Bond Contract Surety Large Loss Analysis"), letters to Klukwan/South Coast, and e-mails dated as follows: (A) May 16, 2002 e-mail from me to Jordan Rosenfeld (a CPA hired by Travelers regarding the South Coast issue); (B) a May 17, 2002 letter from me to Tom Crandall of Klukwan and Ron Gelbrich of South Coast; (C) a June 5, 2002 Large Loss Analysis I prepared; (D) a June 10, 2002 letter from me to Tom Crandall of Klukwan; and (E) an October 1, 2002 Large Loss Analysis I prepared. A true and correct copy of each of these documents is attached hereto as **Exhibits A-E**, in the order just indicated.

///

AFFIDAVIT OF CHARLES W. LANGFITT - Page 3 of 10
A04-0165CV (RRB)

5. As stated above in paragraph 3, Travelers' primary concerns during the May through October 2002 time frame were to determine South Coast and Klukwan's current financial position and the current status of South Coast's projects so that Travelers could minimize the loss on bonded projects consistent with its payment and performance bond obligations to owners, subcontractors, and suppliers, and maximize Travelers' recovery of contract funds from owners and indemnity from South Coast and Klukwan. As part of this effort, Travelers conducted a "forensic review" of South Coast and Klukwan. As stated in my May 17, 2002 letter to Tom Crandall and Ron Gelbrich regarding the purpose of a meeting scheduled for May 28, 2002:

> I advised that we requested the meeting to conduct a forensic review. You asked what I meant by a forensic review. By forensic review, I mean a book and records review with CPAs hired by Travelers, in conjunction with operational/business plan reviews with Travelers personnel. We will want to discuss all aspects and facets of your business including all of your projects, with your employees, as well as others, which may include, but not be limited to, Owners and Architects. A requested list of items to prepare for our review is attached. As I advised, the CPAs we have retained include Jordan Rosenfeld, of the Sutor Group.

**Exhibit B.** The list of items Travelers requested for review is marked "Klukwan/South Coast Items for Review by Travelers," and is attached to **Exhibit B**.

6. As part of the meeting referred to in my May 17, 2002 letter, Travelers conducted a forensic review starting May 28, 2002. That review focused on the current financial status of Klukwan and South Coast, and the current status of South Coast's bonded jobs. It did not focus on the issue of South Coast's financial condition as of December 31, 2000, which was not relevant to the issues at hand: namely, minimizing losses on ongoing bonded projects and maximizing recovery from Klukwan as Travelers' indemnitor, including keeping Klukwan out of bankruptcy. Travelers had no reason to

AFFIDAVIT OF CHARLES W. LANGFITT - Page 4 of 10
A04-0165CV (RRB)

attempt to discern the accuracy of South Coast's audited 2000 financial statements at that time, and did not, to my knowledge, review documents indicating that the audited 2000 financial statements contained misstatements. Nor was there anything regarding the forensic review at that time that indicated that the audited 2000 financial statements contained misstatements. By the end of Travelers forensic review, and after South Coast's projects had been re-let to other contractors, I was able to determine that Travelers was likely to incur a loss of approximately $19,000,000 on bonds posted for South Coast. **Exhibit E**, at 1. As indicated on page 4 of **Exhibit E**, as of October 1, I did not anticipate obtaining salvage from anyone other than Klukwan.

7. What first indicated to Travelers that South Coast's audited 2000 financial statements were inaccurate (and thus that salvage from Peterson Sullivan possibly could be appropriate to pursue) was a combination of information regarding South Coast's operations. That information included: a report prepared by Sutor Consulting, LLC, entitled "Report on Review of Projects and Project Management Procedures" (the "Sutor Report") (a true and correct copy of the Sutor Report is attached hereto as **Exhibit F**); the report prepared by Peterson Sullivan, entitled "Report to Klukwan, Inc. Board of Directors on South Coast, Inc. 2001 Operations" (the "Peterson Sullivan 2001 Operations Report") (a true and correct copy of Peterson Sullivan 2001 Operations Report is attached hereto as **Exhibit G**); a "draft" audited 2001 financial statement of South Coast, Inc., and the results of Travelers' investigation into South Coast's current financial status and project progress, including re-letting of South Coast's projects.

8. As I explained in my deposition, upon review of all the information referred to in paragraph 7, I began to suspect that the audited 2000 financial statements were

AFFIDAVIT OF CHARLES W. LANGFITT - Page 5 of 10
A04-0165CV (RRB)

inaccurate. A true and correct copy of portions of my deposition explaining my thinking regarding this issue is attached hereto as **Exhibit H**. The basis of my suspicion was that the ultimate results of South Coast's projects, based on Travelers' investigation and re-letting of projects during the summer of 2002, was very different than the results reported as anticipated in the audited 2000 financial statements. In fact, the difference appeared to be in the tens of millions of dollars. Also, as indicated on page 1 of the Peterson Sullivan 2001 Operations Report, the causes of the difference between the results anticipated in the 2000 audited financial statements and those reported later predated October of 2001. As well, the Sutor Report identifies significant problems at South Coast in the areas of "Budgeting, costing and tracking" at pages 21-32, and significant problems with "Estimating completion costs and job profitability" at pages 32-36. Given the fact that the causes of the difference between anticipated results and ultimate results were "systematic" in nature, as opposed to the result of some catastrophe, given the exceedingly large difference between anticipated and end results, and given that Klukwan had not indicated that management systems had changed in 2001 from 2000, I formed the belief that the systematic problems identified in the Sutor and Peterson Sullivan Reports as the causes of unreported losses predated the audited 2000 financial statements.

9. One of the specific problems identified in the Sutor Report related to what are known as "underbillings." Regarding underbillings, the Sutor Report recommended the following "fix" of South Coast's prior practices:

///

///

///

AFFIDAVIT OF CHARLES W. LANGFITT - Page 6 of 10
A04-0165CV (RRB)

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

> 10) Provide explanation of any significant project under-billing [sic]. A large project under-billing should always be a concern. Any significant project under-billing needs to be investigated and explained by the project manager. The "earned labor" analysis will generally indicate what is behind under-billing.

Exhibit F at 34.

10. During my deposition, I explained the significance to Travelers of "underbillings" reported on financial statement. A true and correct copy of pages 189-209 of my deposition transcript is attached hereto as **Exhibit H**, and contains my explanation. To summarize, however, on a construction contractor's financial statement, an underbilling is listed as an asset on the presumption that the underbilling eventually will be paid. However, if the underbilling likely will not be paid, because, for example it indicates that work cost more to perform than the contract's budget, the underbilling should be listed on a financial statement as a liability, not as an asset.

11. As part of my investigation into whether or not the audited 2000 financial statements contained misrepresentations for which someone would be liable, I enquired of Jordan Rosenfeld, the CPA who had assisted with Travelers' investigation of South Coast's and Klukwan's financial situation during the spring and summer of 2002. Mr. Rosenfeld explained that financial statements of a construction contractor should properly characterize underbillings as losses instead of assets if that is what they actually are. As stated in, for example, the Sutor Report, proper accounting procedures are required for underbillings to be properly characterized. By this time, Travelers did not have ready access to South Coast's project records from the 2000 period, and so could not perform a "re-audit" of the South Coast's year 2000 financial statements.

///

AFFIDAVIT OF CHARLES W. LANGFITT - Page 7 of 10
A04-0165CV (RRB)

12. After concluding that the audited 2000 financial statements likely contained misstatements regarding underbillings, I investigated whether or not a properly performed audit should have disclosed the mis-classification of underbillings as assets instead of liabilities. As a part of this investigation, I consulted with Mr. Rosenfeld. Mr. Rosenfeld responded to my inquiry with an e-mail dated June 18, 2003. A true and correct copy of that e-mail is attached hereto as **Exhibit I**. Mr. Rosenfeld's response indicated in part that "[a]s is always the case in reviewing the CPA financial statements for potential errors, what is really needed to determine the [sic] if the CPa [sic] did not meet the industry standard in the performance of the audit is the CPA's work papers." As I responded to Mr. Rosenfeld, I believed that Peterson Sullivan would provide its work papers if requested by Tom Crandall of Klukwan. Peterson Sullivan, however, refused to provide its work papers, despite Klukwan's written request. Accordingly, I authorized Travelers' counsel to attempt to obtain the work papers under Federal Rule of Civil Procedure 27.

13. After the attempt to obtain Peterson Sullivan's work papers failed, Travelers commenced this lawsuit, but only after again asking Mr. Rosenfeld if the information we had was sufficient to form a reasonable belief that Peterson Sullivan had been negligent. Because Peterson Sullivan refused to provide its work papers, Travelers' allegation that Peterson Sullivan's 2000 audit of South Coast's financial statements negligently was performed was based on Mr. Rosenfeld's analysis as indicated **Exhibit I**. Travelers has obtained Peterson Sullivan's work papers in discovery in this case, and Mr. Rosenfeld's analysis thus far indicates that, in his opinion, Peterson Sullivan's audit negligently was performed in many of the respects indicated on **Exhibit I**.

///

AFFIDAVIT OF CHARLES W. LANGFITT - Page 8 of 10
A04-0165CV (RRB)

14. To summarize, Travelers' complaint was based on an extensive investigation. Travelers determined that the audited 2000 financial statements contained misstatements regarding underbillings likely caused by systematic management problems that existed in 2000. Travelers determined that a properly performed audit should have disclosed both the systematic management problems and that the underbillings properly should have been reported as losses rather than assets.

_____
Charles W. Langfitt

SUBSCRIBED AND SWORN TO before me this 25" day of July, 2005.

_____
Sandi J. Roddick
NOTARY PUBLIC FOR WASHINGTON
My Commission Expires: 5-1-09

W:\WORK\Clients\V\Travelers-South Coast\D & O Claims\RBC\Pleadings\Langfitt Affidavit Sanctions.wpd

STEWART SOKOL & GRAY LLC
ATTORNEYS AT LAW
2300 SW FIRST AVENUE, SUITE 200
PORTLAND, OREGON 97201-5047
(503) 221-0699 FAX (503) 223-5706
www.lawssg.com

AFFIDAVIT OF CHARLES W. LANGFITT - Page 9 of 10
A04-0165CV (RRB)

June 30, 2003

Invoice submitted to:
Customer #  1165



THE SUTOR GROUP
**SUTOR & ROSENFELD, INC.**
Surety Financial Services

**Travelers Bond**
Attn: Charles W. Langfitt
3455 South 344th Way, Suite 200
Auburn WA 98001



EXHIBIT
268
11-19-07 Rosenfeld

*In Reference To:*   South Coast Construction

## Professional services:

|  |  |  | Hours | Amount |
|---|---|---|---:|---:|
| **Surety Services** | | | | |
| 6/4/03 | JSR | Potential CPA litigation; Review underwriting documents received from CWL; Discuss scope with DWP. | 1.25 | 200.00 |
| 6/12/03 | DWP | Review underwriting files and financial statements; work on 2001 lookback analysis. | 5.00 | 550.00 |
| 6/13/03 | DWP | Lookback analysis; review and organize files. | 5.00 | 550.00 |
| 6/16/03 | JSR | Review underwriting file documents; Review financial statements; Email to CWL concerning findings about CPA audit of SCI. | 5.00 | 800.00 |
| 6/17/03 | JSR | Telecon with Tom Crandall; Draft letter to CPA requesting workpapers. | 1.00 | 160.00 |
| | | SUBTOTAL: | [ 17.25 | 2,260.00] |
| | | For professional services rendered | 17.25 | $2,260.00 |
| | | Balance due | | $2,260.00 |

SUTOR & ROSENFELD, INC.  FEIN: 91-1665812

*THE BALANCE DUE DOES NOT REFLECT PAYMENTS OR CHARGES SUBSEQUENT TO THE DATE OF INVOICE.*

*To ensure your payment is correctly applied, please indicate your customer #.*

*Out-of-pocket costs will be billed to you upon our receipt of invoice.*