Garth A. Schlemlein, *ASBA #8602011*
James T. Hopkins, *Pro Hac Vice*
Robert L. Olson, *Pro Hac Vice*
SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS
1601 Fifth Ave., Suite 2500, Seattle, WA 98101
Tel. (206) 448-8100; Fax (206) 448-8514
Email: jth@soslaw.com

Richard E. Spoonemore, *Pro Hac Vice*
SIRIANNI YOUTZ MEIER & SPOONEMORE
719 Second Ave., Suite 1100, Seattle, WA 98104
Tel. (206) 223-0303; Fax (206) 223-0246
Email: rspoonemore@sylaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>SOUTH COAST, INC., an Alaska corporation; KLUKWAN, INC., an Alaska Native Village corporation; and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation,<br><br>        Defendants. | Case No. A06-00063 (TMB)<br><br><br>TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: NEGLIGENCE OF SOKOL |
| SOUTH COAST, INC., an Alaska corporation; KLUKWAN, INC., an Alaska Native Village corporation; and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation,<br><br>        Counterclaim and<br>        Third-Party Plaintiffs,<br><br>    v. | |

| |
|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; STEWART SOKOL & GRAY L.L.C.; and JAN D. SOKOL,<br><br>        Counterclaim and<br>        Third-Party Defendants. |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,<br><br>        Plaintiff and Cross Claim<br>        Plaintiff;<br>  v.<br>STEWART SOKOL & GRAY L.L.C. and JAN D. SOKOL,<br><br>        Cross Claim Defendants. |

## I. INTRODUCTION

Jan Sokol and his Portland, Oregon-based firm, Stewart Sokol & Gray LLC (collectively "Sokol"), were hired by Travelers to pursue claims against Peterson Sullivan in Alaska. Before the statute of limitations ran, Sokol had concluded his investigation into a claim and advised Travelers that "based on [the expert's] conclusions below, and my review of the material and the law, I believe we have sufficient factual evidence to support claims against … the accounting firm [Peterson Sullivan]." Declaration of Richard E. Spoonemore, *Exh. A* (hereafter "*Exh. __*")

Sokol, however, botched the statute of limitations. It was not until months after telling Travelers that it had a claim (and representing that a complaint would be drafted) that Sokol filed the action. By that time, it was too late. The Honorable Ralph R. Beistline dismissed Travelers' action against Peterson Sullivan as time-barred. *Exh. B* ("The uncontested facts reveal Plaintiff was sufficiently placed under inquiry on or about June 20, 2002…. Thus the Court concludes Plaintiff's 'negligence cause of action accrued more than two years before the [C]omplaint was filed.'")

Sokol's emails to Travelers explain why Sokol bungled the statute. Prior to filing Travelers' action Sokol simply assumed — *without the benefit of any legal research whatsoever* — that a cause of action under Alaska law would not accrue until Travelers' actual discovery of wrongdoing. Sokol proceeded to misadvise Travelers of this discovery rule in two separate emails. *Exh. C* ("[I]t is unclear to me when *we would have 'discovered' the wrongful acts* because we are still trying to determine if there were wrongful acts."); *Exh. D* ("it is not clear to me when *we 'discovered'* the misrepresentations") (emphasis added).

In fact, as Sokol would later realize in resisting motions by Peterson Sullivan, a cause of action accrues under Alaska law when *a reasonable person is on inquiry notice*. *Exh. E* (Sokol memorandum: "[I]nquiry notice is the date the statute begins to run if a reasonable inquiry would disclose the essential elements of the cause of action within two years of *inquiry notice.*") (emphasis added). Sokol thus learned – too late – that a cause of action can accrue on

> the date when the plaintiff has information which is sufficient to *alert a reasonable person to begin an inquiry* to protect his rights.

*John's Heating Service v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002) (citation omitted, emphasis added). Of course, as Alaska case law explicitly notes, inquiry notice typically occurs before (often long before) actual discovery of specific wrongdoing. *Id* at 1031-1032 (*quoting Cameron v. State*, 822 P.2d 1362, 1367 (Alaska 1991)). These are unambiguous and easily ascertainable principles of Alaska law.

In this motion Travelers seeks partial summary judgment only on the issue of Sokol's negligence. Missing a statute of limitations is a clear breach of duty, and in this case constitutes legal malpractice as a matter of law. Travelers reserves for trial or subsequent motion the issues of proximate cause (*e.g.*, whether Sokol's negligence caused Travelers' harm) and damages.

## II.  FACTS

The underlying facts in this case were briefed in detail in connection with Travelers' Motion for Summary Judgment Dismissing Defendants' Counterclaim. *See* Docket No. 75.  From that motion, the Court will recall that this action was triggered by the collapse of South Coast, Inc. ("SCI"), a construction company that was a wholly owned subsidiary of Klukwan.  When SCI collapsed, Travelers was left holding the bag on approximately 28 bonds for various construction projects, reflecting over $74 million in bonded contract work. Eleven of these bonds were issued in 2001 after Travelers' review of, and reliance upon, an audit and report on SCI's December 31, 2000 financial statements prepared by Peterson Sullivan.[1]

This case was originally pursued by Travelers when it retained Sokol in the spring of 2003 to investigate and pursue claims against the officers and directors of SCI, as well as against Peterson Sullivan.  Sokol was provided, at the commencement of his engagement, two key reports analyzing the failure of SCI: The "Sutor Report" and the "Peterson Sullivan Report."  *Exh. F* (Sutor Report); *Exh. G* (Peterson Sullivan Report); *Exh. H* (Sokol's receipt of both reports).  Both reports sharply condemned SCI's management, and noted systemic failures within SCI.

It was the receipt of these two reports by Travelers in 2002 that prompted Peterson Sullivan to file its motion to dismiss on statute of limitations grounds. *Exh. I*.  Its argument was very straightforward.  It first argued that the reports were provided to Travelers in the spring of 2002:

> The Sutor Report and Peterson Sullivan Report were respectively prepared in March and April, 2002. Mr. Langfitt's deposition and his affidavit both show conclusively that Travelers was aware—in May of 2002,

---

[1] As Travelers will show at trial, Peterson Sullivan's audit of SCI year 2000 financials was negligent.  If Peterson Sullivan had properly audited SCI, Travelers would not have continued to issue bonds to SCI.

> much more than two years prior to the complaint—from both the Sutor Report and Peterson Sullivan Report that South Coast was in serious financial trouble with losses in the millions of dollars.

*Exh. I*, p. 11.

Given that the reports highlighted significant issues with underbillings and management procedures, Peterson Sullivan then argued that Travelers knew about these issues upon receipt of the reports:

> The facts set out above show that Travelers also suspected in May of 2002, based on the Sutor Report, that South Coast had problems with underbillings and management procedures. As has been discussed in previous motions by Peterson Sullivan, underbillings are a central issue in this case because Travelers has identified underbillings as one of the items it believes was misrepresented in the audited financial statements. Travelers' June 5, 2002, Large Loss Analysis also amply demonstrates Travelers' knowledge of the fact that South Coast had lost millions of dollars.

*Exh. I*, pp. 11-12. As a result, Peterson Sullivan argued that Travelers was on inquiry notice of potential flaws in the audit upon receipt of the reports:

> Travelers thus had, more than two years before the complaint, concrete information which Travelers alleges was contrary to the information contained in South Coast's 2000 financial statements. From this information, Travelers knew or should have known that the numbers in the audit were inaccurate. All of the facts above are uncontroverted. Therefore, by May 2002 Travelers had at least inquiry notice, if not actual knowledge, that the numbers in the audit may have supplied false information.

*Exh. I*, pp. 11-12.

The Court, specifically citing the Sutor and Peterson Sullivan Reports, granted Peterson Sullivan's motion for summary judgment and dismissed Travelers' action. *Exh. B*, pp. 6-7.

TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: NEGLIGENCE OF SOKOL - 5
*Travelers Casualty and Surety v. South Coast, Inc., et al.,* Case No. A06-00063 (TMB)

### III.  TIMELINE RELEVANT TO STATUTE OF LIMITATIONS ANALYSIS

The timeline here evidences the following facts:

| | |
|---|---|
| January 2002: | SCI's management is fired.  *Exh. H*. |
| April/May 2002: | Travelers receives the Sutor and Peterson Sullivan reports.  These reports analyze the reasons behind SCI's failure and are later cited by the court in dismissing Travelers' action as documents that provided Travelers with inquiry notice into a potential action against Peterson Sullivan.  *Exhs. F, G, H*. |
| May 2002: | Travelers commences an investigation into the cause of SCI's collapse.  *Exh. H*. |
| June 19-20, 2002: | Travelers internally raises questions about SCI's auditors, Peterson Sullivan, and its December 2000 audit.  *Exh. J*. |
| June 20, 2002: | Court concludes that Alaska's two-year statute began to run on this date.  *Exh. B*. |
| April 2, 2003: | Sokol is hired by Travelers to pursue Peterson Sullivan; Travelers informs Sokol that in May of 2002 it commenced its investigation into SCI's collapse.  *Exh. H* ("Our first meeting about South Coast as claims was May 17, 2002 in Seattle with the agent and our underwriters.  We, as claims, had our first meeting with South Coast on May 24th 2002, in Seattle."). |
| April 3, 2003: | Sokol receives the Sutor and Peterson Sullivan reports.  *Exh. H* (reports overnighted to Sokol). |
| April 14, 2004: | Sokol advises Travelers that "it is unclear to me when we would have 'discovered' the wrongful acts because we are still trying to determine if there were wrongful acts."  *Exh. C*. |
| June 8, 2004: | Sokol asks Travelers' expert whether Travelers "has sufficient factual evidence" to file an action against Peterson Sullivan.  The expert responds, less than an hour later, that such facts do exist.  *Exh. A*. |
| June 9, 2004: | Sokol reiterates an erroneous interpretation of Alaska law: "it is not clear to me when we 'discovered' the misrepresentations."  *Exh. D*. |

| | |
|---|---|
| June 10, 2004: | Sokol advises Travelers that "we have sufficient factual evidence to support claims against … the accounting firm." He states that he will draft a complaint. *Exh. A.* |
| **June 19, 2004:** | ***Statute of Limitations Deadline.*** *Exh. A.* |
| August 4, 2004: | Sokol files suit against Peterson Sullivan. *Exh. B.* |
| July 2005: | Sokol asks Travelers when it began its inquiry into Peterson Sullivan. Travelers informs Sokol that an inquiry into Peterson Sullivan's audit commenced in "summer or early fall of 2002." *Exh. K.* |
| August 22, 2005: | Sokol again asks when Travelers commenced its inquiry into the audit: "I will want to discuss with both of you when you realized that an inquiry into the quality of Peterson Sullivan's audit was appropriate." *Exh. K.* |
| August 25, 2005: | Sokol provides Travelers with a legal memorandum analyzing Alaska's accrual rule. It concludes that the cause of action accrued when Travelers began to inquire into the Peterson Sullivan audit and that, as a result, "the battle will be uphill…." *Exh. E.* |
| September 27, 2005: | Travelers' case is dismissed as time-barred. *Exh. B.* |

## IV. LAW AND ARGUMENT

Under Alaska law, a plaintiff must establish four elements in a legal malpractice action:

> (1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.

*Sengupta v. Wickwire*, 124 P.3d 748, 752 (Alaska 2005). By this motion, Travelers seeks partial summary judgment on the first two elements of a malpractice claim, specifically (1) that Sokol owed Travelers a duty to file the Peterson Sullivan action

within the applicable limitations period, and (2) that Sokol breached that duty. The third and fourth elements are not addressed by this motion.

### A. The Duties Owed A Client By An Attorney.

In any action premised on negligence, the threshold questions of (1) whether a duty exists, and (2) the contours of that duty, are questions of law to be decided by the court:

> The "precise nature and extent" of a duty "is a question of law which can be decided at the summary judgment stage." *Mulvihill v. Union Oil Co.*, 859 P.2d 1310, 1314 n. 4 (Alaska 1993). As a question of law, it is a question for the court and not the jury to answer.

*Smith v. State*, 921 P.2d 632, 634 (Alaska 1996).

As a matter of law, an attorney owes a duty to a client to (1) investigate relevant statutes of limitations, (2) accurately inform (or at least not misinform) the client of the relevant time limitations, and (3) to file any action directed by the client within those time limits (so long as the filing does not violate Rule 11). As the leading treatise on legal malpractice states:

> The most frequent situation, not requiring expert testimony, is a statute of limitations or other time limitation missed because of the attorney's inadvertent failure to ascertain or properly calendar the date when suit or action must be pursued…. Ignorance of a statute usually is not excusable.

Mallen, Ronald E. and Smith, Jeffrey M., LEGAL MALPRACTICE § 34:20, pp. 1178-79 (2008 Ed.) (hereafter "Mallen").[2]

---

[2] Negligence is manifest and expert testimony is not required where, as here, "the attorney's lack of care and skill is so obvious…." *James V. Mazuca and Associates v. Schumann*, 82 S.W.3d 90, 97 (Tex.App. 2002). "The most common example of a case requiring no expert testimony is one in which an attorney allows the statute of limitations to run on a client's claim." *Id*.

The duty to file an action within the statute of limitations includes the subsidiary duties to actually ascertain when the statute accrues and runs, and to properly advise the client of the deadline. *See, e.g.,* Mallen § 34:20, p. 1178 (breach includes "failure to ascertain" date); *Doe v. Hughes, Thorsness, Gantz, Powell & Brundin*, 838 P.2d 804, 807 (Alaska 1992) ("An important part of an attorney's duty to a client is the duty to *advise* the client of action the client should take in a given set of circumstances"); *Singleton v. Stegall*, 580 So.2d 1242, 1245 (Miss. 1991) ("One of the clearer cases where a lawyer may breach his duty of diligence occurs when, through neglect, he allows the statute of limitations to expire so that the client's claim is barred").

 B.   As A Matter Of Law, Sokol Breached His Duties To Travelers.

Although the question of whether a tortfeasor breached a duty is often a question of fact of the jury, it can be decided as a matter of law by the court in certain instances. "Where reasonable people could not differ over the nature and extent of the act undertaken, summary judgment is appropriate, insofar as there is no question as to whether the duty the undertaking gave rise to was fully discharged." *Smith v. State*, 921 P.2d 632, 634 (Alaska 1996). As a result, attorneys are often found negligent as a matter of law when statutes of limitations are missed:

> There are instances in which an attorney in a legal malpractice action can be held liable as a matter of law … [including] the failure to file suit timely.
>
> * * *
>
> These omissions are so clearly below the applicable standard of care and diligence that there can be no reasonable doubt as to their negligent nature.

*Nature of Legal Malpractice,* 43 BAYLOR L. REV. 43, 56-57 (1991) (footnotes omitted). *See also Thompson v. Erving's Hatcheries, Inc.*, 186 So.2d 756, 759 (Miss. 1966) ("If, as a

result of … negligent delay on the part of the attorney in filing suit, a claim … becomes barred by the statute of limitation, [the attorney] may be held liable. The lower court was justified in peremptorily directing the jury that appellant was negligent…") (citations omitted).

Here, as in many other legal malpractices cases involving missed statutes of limitations, the undisputed facts indicate that Sokol was negligent as a matter of law. It is undisputed that Travelers hired Sokol in April of 2003 to pursue Peterson Sullivan, SCI's auditors. *Exh. L* (Sokol: "I became involved in May or June 2003"). Sokol was hired over a year before Alaska's two-year statute of limitations was due to run on June 19, 2004. *Exh. B*. It is undisputed, moreover, that Sokol did not file Travelers' lawsuit against Peterson Sullivan until August 4, 2004. Spoonemore Decl., *Exh. B*, fn. 21. Sokol missed the statute of limitations. The only liability question is whether that failure was negligent as a matter of law. It was.

*At no time during the year that spanned Sokol's retention and the filing of the complaint did anyone do research to determine when a cause of action accrues under Alaska law.* As Rob Coleman, the lead associate on the case, conceded:

> Q. Prior to the complaint being filed, did you do any research on Alaska's accrual rule, separate and apart from the time span, but on Alaska's accrual rule with respect to the statute of limitations?
>
> A. I assume you mean accrual rule with respect to a cause of action.
>
> Q. Correct.
>
> A. I don't recall having done any research with respect to that at the time.
>
> Q. Do you recall if anybody, to your knowledge, within the office, referring to your law firm's office, had done any research with respect to Alaska's accrual rule for

>           statute of limitations purposes prior to the filing of the
>           complaint against Peterson Sullivan in early August of
>           2002?
>
>      A.   I am not aware of any.

*Exh. M*, p. 18.  Sokol confirmed this testimony.  *Exh. N*, pp. 11-12 (Sokol: "I can't remember any specific research either for this case prior to June of '04 or these other cases").  Instead, the issue was first researched in connection with motions filed by Peterson Sullivan *after* the action had been filed.

>      Q.   What was the triggering event that led you to begin to
>           do research in this July 2005 time frame into the
>           statute of limitations?
>
>      A.   I don't specifically recall, but I think it was -- my best
>           recollection is that it was my review of the then
>           pending motions.

*Exh. M*, pp. 19, pp. 13-14, 16.

Rather than conducting basic legal research, Sokol simply assumed that the statute did not begin to run until actual discovery of wrongdoing.  In an email dated April 14, 2004, Sokol misadvised Travelers that the key issue with respect to the accrual of Alaska's two-year statute of limitations was its "discovery" of wrongful acts:

>      We should be mindful of the statute of limitations;
>      however, it is unclear to me when we would have
>      "discovered" the wrongful acts because we are still trying
>      to determine if there were wrongful acts.

*Exh. C*.  Sokol made the same error on June 9, 2004 when discussing a cause of action against the former officers and directors of SCI.  *Exh. D* ("By the way, in Alaska, the statute of limitations for tort claims is 2 years.  While our notice to the insurer was given in June 2003, it is not clear to me when we 'discovered' the misrepresentations").

Sokol's advice, and his understanding of Alaska's statute of limitations, were flawed in two fundamental respects. *First*, he simply missed a key component of Alaska's discovery rule: a cause of action accrues when a reasonable person should commence an inquiry, not when that inquiry leads to the actual discovery of a claim. *Second*, Sokol erroneously assumed that the standard was subjective, *e.g.*, when Travelers discovered the wrongdoing. In fact, the standard is objective, *e.g.*, when a reasonable person would have sufficient information to commence an inquiry. Either of these errors could have been corrected by basic legal research – research that Sokol did not undertake until after statute had run.

### 1. The First Fundamental Error: Sokol Erroneously Assumed That Alaska's Statute of Limitations Accrued Upon Actual Discovery of Wrongdoing.

Sokol fundamentally misunderstood Alaska law with respect to when a cause of action accrues. A cursory review of Alaska law would have revealed that the statute starts to run when a reasonable person "would have enough information to alert that person that he or she has a *potential* cause of action or *should begin an inquiry*." *Bauman v. Day*, 892 P.2d 817, 826 (Alaska 1995) (emphasis added). Sokol, by focusing exclusively on when Travelers *actually* discovered all elements of its claim, simply missed half of Alaska law. There are two events – actual discovery or inquiry notice – that can trigger the running of the statute:

> The first potential date is "the date when [the] plaintiff reasonably should have discovered the existence of all essential elements of the cause of action." *The second potential accrual date is "the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights." As we explained in Cameron v. State, "[t]he dates are different, since the point when the elements of a cause of action are discovered may come after and as a result of a reasonable inquiry."*

*John's Heating Service v. Lamb*, 46 P.3d 1024, 1031-1032 (Alaska 2002) (emphasis added, citations omitted).³ Unambiguous Alaska law – some cited by Judge Beistline in his order dismissing Travelers' action – makes it clear that accrual takes place on the *earlier* of these two potential dates. *Exh. B*, pp. 4-5. *See also Cameron*, 822 P.2d at 1366 ("In *Mine Safety* and in other cases, we held that the inquiry notice date, rather than the date when the inquiry should have produced knowledge of the elements of the cause of action, was the date from which the statutory period began to run.").

Sokol's misunderstanding was not an error in judgment; it was a fundamental failure to analyze the statute of limitations at the commencement of representation. Sokol did not rely upon a statute that changed, or a case that was later explained or overruled. Sokol simply did not do the basic research.

We know what Sokol would have discovered had the issue been properly researched at the outset because Sokol, in fact, researched the issue after Peterson Sullivan had filed for summary judgment. At that point Sokol concluded that "the battle will be uphill" because that statute runs upon "inquiry notice" rather than actual discovery of wrongdoing. Exh. E. By then, of course, it was too late.

As a result of Sokol's negligence, Travelers' action against Peterson Sullivan was dismissed. As the court concluded:

> The uncontested facts reveal Plaintiff was *sufficiently* placed under inquiry on or about June 20, 2002. Indeed, Plaintiff's Complaint (Docket No. 1), which was filed <u>before</u> Plaintiff received the "work papers" it now claims

---

³ *John's Heating Service* was not some obscure Alaska case. There were multiple decisions that set forth this rule. *See, e.g., Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991); *Bauman v. Day*, 892 P.2d 817, 825 (Alaska 1995); *Yurioff v. American Honda Motor Co., Inc.*, 803 P.2d 386, 388 (Alaska 1990); *Sopko v. Dowell Schlumberger, Inc.*, 21 P.2d 1265, 1271 (Alaska 2001); *Wage v. Cutter Biological Div. of Miles Laboratories, Inc.*, 926 P.2d 1145, 1148 (Alaska 1996); *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 (Alaska 1988); *Preblicy v. Zorea*, 996 P.2d 730, 734 (Alaska 2000); *Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 643 (Alaska 1990).

> were required in order for its cause of action to accrue, avers:
>
>> [Defendant] *negligently* performed its audit and *negligently* provided information regarding South Coast's financial status, accounting practices, and significant estimates by, at a minimum, failing to investigate information indicating South Coast's gross profit was overstated.
>
>> For this reason alone, the Court concludes Plaintiff's argument lacks merit. Even so, the evidence and affidavits thus proffered, *see, e.g.,* "the Sutor Report and Peterson Sullivan Report, Mr. Langfit's [sic] deposition and affidavit, and [Plaintiff's] Large Loss Analysis" as well as the "June 19 and 20, 2002, emails submitted in the joinder to the motion filed by [D]efendant Jerald Renich," further convince the Court that Plaintiff had "*sufficient* information to prompt an inquiry into the cause of action."

*Exh. B,* pp. 6-7 (emphasis in original).

Sokol, erroneously focused on actual discovery of wrongdoing, ***did not even ask Travelers*** when it first realized that an inquiry should be undertaken until *after* the action was filed. *Exh. K* (August 22, 2005 email from Sokol's office to Travelers' personnel: "I will want to discuss with both of you when you realized that an inquiry into the quality of Peterson Sullivan's audit was appropriate"). When finally asked, Travelers told Sokol that such knowledge existed in the "***summer or early fall of 2002***." *Exh. K*. A reasonably prudent attorney would have asked this question at the commencement of the engagement, and would have ensured that the action would have been filed prior to the summer of 2004.

Furthermore, (1) Travelers had, in fact, actually informed Sokol of when it began investigating SCI's collapse and (2) many of the documents cited by Judge Beistline in dismissing Travelers' action were sent to Sokol at the outset of the engagement. For example, on April 2, 2003 – more than a year before the statute ran

– Travelers specifically informed Sokol that it began meeting about the collapse in May of 2002:

> Our first meeting about South Coast as claims was May 17, 2002 in Seattle with the agent and our underwriters. We, as claims, had our first meeting with South Coast on May 24th 2002, in Seattle.

*Exh. H.* The email went on inform Sokol that he would be immediately provided with two reports surrounding the collapse. *Id*. ("South Coast had sacked the prior management in January 2002 based on the reports that I am overnighting to you.").

The reports that were "overnighted" to Sokol over a year before the statute was to run included the Peterson Sullivan and Sutor Reports—the very same reports relied upon by Peterson Sullivan in its motion, *see Exh. I,* pp. 3-8, and cited by the Court as documents that put Travelers' on inquiry notice. *Exh. N*, p. 13 (Sokol received the Sutor and Peterson Sullivan operations report in April 2003); *Exh. B*, p. 6 (Judge Beistline cites Sutor and Peterson Sullivan reports among material that should have commenced an inquiry for statute of limitations purposes). A reasonably prudent attorney (*e.g.,* one who had conducted basic research into Alaska law on accrual) would not have filed an action more than two years after Travelers had received reports about the collapse of SCI and, in fact, had internal meetings about the collapse. *Exh. H*.

    **2.**    **Sokol's Second Fundamental Error:  Accrual Of The Statute of Limitations Is A Subjective, Rather Than Objective, Test.**

Sokol's next big error was assuming that the statute of limitations test was subjective. *Exh. C* ("it is unclear to me when *we would have 'discovered'* the wrongful acts because we are still trying to determine if there were wrongful acts.") (emphasis added). Sokol, again, simply missed a critical part of Alaska law on

accrual. While the first part of the accrual test focuses on the plaintiff's actual or subjective knowledge of a cause of action (or as Sokol wrote, when "*we* would have 'discovered' the wrongful acts"), the second part of the test is purely objective. Under the objective test, the question is not when Travelers knew it had a cause of action, but when a reasonable person should have commenced an inquiry. As Alaska law provides:

> [T]he cause of action accrues when the plaintiff has information sufficient to alert *a reasonable person* to the fact that he has a potential cause of action. At that point, *he should begin an inquiry to protect his ... rights and he is 'deemed to have notice of all facts which reasonable inquiry would disclose.*'

*Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 643 (Alaska 1990) (emphasis added). *See also State, Dept. of Corrections v. Welch*, 805 P.2d 979, 982 (Alaska 1991) ("critical to the inquiry is whether the person has notice of facts 'sufficient to prompt a *person of average prudence to inquire*'") (emphasis added).

Sokol, however, assumed that the cause of action did not accrue until Travelers subjectively knew that it had a cause of action, and then misadvised Travelers of this erroneous test. *Exh. C; Exh. D.*

As a result of these errors, Sokol's accrual analysis was fundamentally flawed. Sokol was asking when *Travelers actually discovered* the elements of its cause of action against Peterson Sullivan. Sokol should have been asking when *a reasonable person would have commenced an inquiry* into the situation. This error flows directly from the failure to conduct basic research into Alaska law, and is negligent as a matter of law. *See* Mallen § 34:20, p. 1178 (an attorney is negligent for the "failure to ascertain" filing date for statute of limitations purposes); *Doe*, 838 P.2d at 807 (attorney has duty to properly advise client); *Smith v. Lewis*, 13 Cal.3d 349, 358, 530 P.2d 589, 595-595, 118 Cal.Rptr. 621, 627 (Cal. 1975) ("[An attorney] is expected,

however, to possess knowledge of those plain and elementary principles of law which are commonly known by well informed attorneys, and to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques").

> 3. **But For The Failure To Understand Alaska's Statute of Limitations Law, Sokol Could Have Timely Filed Travelers' Action Against Peterson Sullivan.**

There was nothing—other than the failure to understand Alaska law—that prevented Sokol from timely filing the action. In an email dated June 8, 2004—eleven days before the statute was due to run—an expert consulted by Sokol concluded that there was sufficient factual evidence to file a lawsuit against Peterson Sullivan. *Exh. A*. Over a week before the statute was to run Sokol informed Travelers that "[b]ased on [the expert's] conclusions below, and my review of the material and the law, I believe we have sufficient factual evidence to support claims against the directors and officers and the accounting firm." *Exh. A*. Sokol further committed to preparing "a draft complaint for your review." *Id*. Sokol was fully authorized to take any and all steps necessary to pursue Peterson Sullivan before the statute ran. *Exh. M*, p. 12 (action could have been filed before statute ran).

In short, it is undisputed that the complaint could have been timely filed if Sokol had conducted even rudimentary research into Alaska law on the statute of limitations. Sokol failed to do so and, as a result, Travelers lost its claim against Peterson Sullivan.

### V. CONCLUSION

Missing a statute of limitations due to a misunderstanding of law, when that law could have been easily ascertained by basic legal research, is negligent. The undisputed facts demonstrate that Sokol (1) conducted no research into Alaska's

accrual test prior to filing Travelers' action; (2) simply assumed that the statute did not accrue until Travelers actually discovered the elements of its cause of action; and (3) misadvised Travelers – twice – as to the appropriate standard.  As a result, it is undisputed that (1) Sokol did not ask Travelers the relevant question – when should an inquiry have commenced – until after the action was filed; (2) failed to recognize the import of the Sutor and Peterson Sullivan Reports; and (3) filed the action too late.  Sokol breached its duty to Travelers as a matter of law.

Respectfully submitted this 16th day of May, 2008.

       SIRIANNI YOUTZ MEIER & SPOONEMORE

       /s/ Richard E. Spoonemore
       Richard E. Spoonemore, *pro hac vice*
         719 Second Avenue, Suite 1100
         Seattle, WA  98104
         Tel. (206) 223-0303; Fax (206) 223-0246
         Email:  rspoonemore@sylaw.com

and

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, PLLC
Garth A. Schlemlein, ASBA #8602011
James T. Hopkins, *Pro Hac Vice*
   1601 Fifth Avenue, Suite 2500
   Seattle, WA  98101
   Tel. (206) 448-8100; Fax (206) 448-8514
   Email:  jth@soslaw.com

Attorneys for Travelers

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **James D. Gilmore**
  USDC-ANCH-Ntc@cplawak.com

- **James T. Hopkins**
  jth@soslaw.com,lsb@soslaw.com

- **Robert L. Olson**
  rlo@soslaw.com,cc@soslaw.com

- **Garth A. Schlemlein**
  gas@soslaw.com,jth@soslaw.com,rlo@soslaw.com,lsb@soslaw.com,cc@soslaw.com

- **Richard E. Spoonemore**
  rspoonemore@sylaw.com,rspoonemore@hotmail.com,Theresa@sylaw.com

- **Gary A. Spraker**
  gary@cslawyers.net,susan@cslawyers.net,ecf@cslawyers.net

I further certify that I have mailed the document by United States Postal Service to the following non CM/ECF participants:

- (No manual recipients)

DATED: May 16, 2008, at Seattle, Washington.

_____
Theresa A. Redfern