# Exhibit A

## Robert B. Coleman

**From:**    Jan D Sokol
**Sent:**    Thursday, June 10, 2004 4:44 PM
**To:**    Robert B. Coleman
**Subject:** FW: South Coast 12/31/00 Financial Statement

Please copy and put in file(s).
-----Original Message-----
**From:** Jan D Sokol
**Sent:** Thursday, June 10, 2004 3:51 PM
**To:** 'Langfitt,Charles W'; 'Jordan S. Rosenfeld'
**Subject:** RE: South Coast 12/31/00 Financial Statement

Based on Jordan's conclusions below, and my review of the material and the law, I believe we have sufficient factual evidence to support claims against the directors and officers and the accounting firm. I will prepare a draft complaint for your review. We can certainly sue the accounting firm in Washington, but personal jurisdiction over the officers and directors may not be possible.

If we are going to sue them in the same action, I would recommend the USDC for the District of Alaska. Chuck, with respect to damages, I have the large loss analysis. I will need help from you and Jordan in assessing the damages to be asserted with respect to the directors and officers and the accounting firm.

I assume we will need to contact Crandall and Cabot once we have finalized our plans.

-----Original Message-----
**From:** Langfitt,Charles W [mailto:CLANGFIT@stpaultravelers.com]
**Sent:** Tuesday, June 08, 2004 4:57 PM
**To:** Jordan S. Rosenfeld; Jan D Sokol
**Subject:** RE: South Coast 12/31/00 Financial Statement

Jan, you have the Peterson Report, and Jordan, a copy should be in your copy of the Underwriting file, or was sent to you separately.

-----Original Message-----
**From:** Jordan S. Rosenfeld [mailto:jordon@sutorgroup.com]
**Sent:** Tuesday, June 08, 2004 4:52 PM
**To:** Jan D Sokol
**Cc:** Langfitt,Charles W
**Subject:** RE: South Coast 12/31/00 Financial Statement

In my opinion, the excessive underbillings and subsequent change in gross profit on the jobs previously mentioned is sufficient for us to believe that Petterson Sullivan may have been negligent in the performance of their audit. The same applies to the management of South Coast with the added caveat that the officers of SCI may have intentionally misled the auditors, Klukwan and/or the surety.

1)    The surety relied upon the statements in the issuance of bonds in 2001.

2)    The anticipated gross profit as of 12/31/00 were in error based upon SCI's 12/31/01 draft statements. (Never mind how much the jobs ultimately cost Travelers.)

3)    In my opinion there were indications in the 12/31/00 statements that the gross profit was overstated that should have been investigated.

6/10/2004

Also, my recollection is that Petterson Sullivan performed a seperate operations review of SCI's accounting controls and reported many deficiencies in the SCI systems. This should have been performed as part of the audits, their audit procedures modified accordingly and the client notified of the deficeincies with recomendations for improvement. It does not appear that this happened.

Jordan

**From:** Jan D Sokol [mailto:jdsokol@lawssg.com]
**Sent:** Tuesday, June 08, 2004 4:19 PM
**To:** Jordan S. Rosenfeld
**Cc:** Charles.W.Langfitt@travelers.com
**Subject:** RE: South Coast 12/31/00 Financial Statement

**CONFIDENTIAL AND PRIVILEGED COMMUNICATIONS**

We have 2 separate potential claims. One against the accounts for negligence, and the second is against the former officers and directors for misrepresentation. The first against Peterson Sullivan involves our posting of surety bonds on behalf of South Coast, Inc. In determining whether surety credit was to be provided to Klukwan and its affiliates, Travelers was provided and relied, on among other things, financial statements which were prepared by Peterson Sullivan. If they were not not performed in accordance with GAAS and we were damaged as a result, we could have a professional negligence claim against the accountants.

Second, South Coast had financial and management control issues. Klukwan, Inc. ("Klukwan") hired Fails Management to assist in resolving the problems by putting in proper management and financial controls. Travelers has asserted that Ronald Gelbrich, Jerald Renich, Brad Finney, Jan Paulson, Michael Houts and Edwin Johnson failed to ensure that the proper controls were followed. After failing to ensure the proper controls were followed, these individuals chose to ignore or misinformed Klukwan about South Coast*s true financial condition. As a result of these actions, the financial representations made to Travelers in connection with South Coast's and Klukwan' s requests for surety credit failed to reflect South Coast*s true financial condition, and these individuals knew or should have known that the representations being made to Travelers and relied upon by Travelers in providing new surety credit were false.

Under Rule 11, the standard is:

"The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. "

The question to you is do we have sufficient factual evidence to make these assertions and file an action asserting these claims.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com

6/10/2004

Web Site: www.lawssg.com
*************************************
**NOTICE:**

THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE
ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE
HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE
ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES
AND DELETE IT FROM YOUR COMPUTER SYSTEM.

-----Original Message-----
**From:** Jordan S. Rosenfeld [mailto:jordon@sutorgroup.com]
**Sent:** Tuesday, June 08, 2004 1:20 PM
**To:** Jan D Sokol
**Cc:** Charles.W.Langfitt@travelers.com
**Subject:** South Coast 12/31/00 Financial Statement

Jan:

I did receive a copy of the Travelers South Coast, Inc. underwriting file and have had a
chance to take a look at the 12/31/00 financial statement. A couple of items are noticable:

1)    The have inventory of $3,240,795. According to the notes this is for explosives
($2,448,275) and construction materials ($792,520.) I'd question the real value of the
inventory. For the audit there should have been an observation of the inventory count at the
end of the year and steps to verify the valuation of what was counted. The amount seams
awfully high to me.

2)    At 12/31/00 SCI has underbillings of $2,800,078. (The corresponding overbillings is
only $625,846.) This is a very large amount and should have prompted additional
procedures by the auditors in review the estimated contract completion costs. A large
underbilling amount can indicate an understatement of the cost to complete. There are four
jobs with very large underbillings at 12/31/00:

| | |
|---|---|
| Ketchican Viaduct | $306,167 |
| Sitka Airport | 369,181 |
| Big Salt Road | 1,260,345 |
| BIA, Chinle | 561,170 |

As of 12/31/00 SCI anticipated a gross profit on each of the above. However, as of
12/31/01 SCI anticpated total gross losses on Sitka Airport, Big Salt Road and Chinle
projects of $(293,145), $(1,686,335) and $(1,107,590), respectively. (As we know, the
actual losses were even higher.) The large underbillings were a precursor of the losses
ultimately recognized in 2001. Management and/or the auditors should have recognized
this. For the auditors, additional procedures should have been performed.

We need the Peterson Sullivan workpapers to determine if their audit procedures conformed
to GAAS (Generally Accepted Auditing Standards.)

The Klukwan statements are tougher to analyze because they are a consolidation of various
subsidiaries. During the surety investigation, Doug Payne did question the inventory
valuation of timber property on the Klukwan statements. My ecollection is Klukwan was
valuing the property at the value of timber even though it would be 40 years before the
timber could be harvested.

What do you need to proceed?

6/10/2004

Jordan

This communication, together with any attachments hereto or links contained herein, is for the
sole use of the intended recipient(s) and may contain information that is confidential or legally
protected. If you are not the intended recipient, you are hereby notified that any review,
disclosure, copying, dissemination, distribution or use of this communication is STRICTLY
PROHIBITED. If you have received this communication in error, please notify the sender
immediately by return e-mail message and delete the original and all copies of the
communication, along with any attachments hereto or links herein, from your system.

The St. Paul Travelers e-mail system made this annotation on 06/08/2004, 07:57:00 PM.

6/10/2004

# Exhibit B

SEP 2 7 2005

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, a
Connecticut corporation,

          Plaintiff,

vs.

RONALD GELBRICH; JERALD
RENICH; BRAD FINNEY; JAN
PAULSON; MICHAEL HOUTS; EDWIN
JOHNSON; and PETERSON
SULLIVAN, P.L.L.C., a
Washington limited liability
company,

          Defendants.

Case No. A04-0165 CV (RRB)

__ORDER GRANTING MOTION FOR__
__SUMMARY JUDGMENT (DOCKET 118)__

## I.     INTRODUCTION

          Before the Court is Defendant Peterson Sullivan, P.L.L.C.
("Defendant") with a Motion for Summary Judgment (Docket No. 118).
Defendant argues the Court should dismiss the Complaint of
Plaintiff Travelers Casualty and Surety Company of America
("Plaintiff") on the grounds that the Complaint is barred by the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1
A04-0165 CV (RRB)



stature of limitations.[1] Plaintiff opposes and argues Defendant's "motion ignores significant aspects of Alaska's discovery rule."[2] More specifically, Plaintiff contends, "[w]hether all elements of a cause of action reasonably can be discovered before the statute of limitations runs generally presents a genuine issue of fact, and <u>does</u> present a genuine issue of fact in this case."[3] After a thorough review of the pleadings, the Court has determined that oral argument is not necessary.

## II. FACTS

Plaintiff is "licensed to provide bonds for public works contractors in the State of Alaska."[4] In 2001, Plaintiff provided surety credit, in the form of bonds, to South Coast, Inc., a non-party Alaska construction corporation wholly owned by non-party Klukwan, Inc., an Alaska Native Village corporation.[5] In deciding to provide surety credit, Plaintiff alleges it relied upon negligent misrepresentations regarding South Coast Inc.'s financial status made by South Coast, Inc.'s officers and directors and

---

[1]  Clerk's Docket No. 118 at 1.

[2]  Clerk's Docket No. 128 at 24.

[3]  <u>Id.</u> (emphasis added).

[4]  Clerk's Docket No. 95 at 3.

[5]  <u>Id.</u> and Clerk's Docket No. 1 at 2.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2
A04-0165 CV (RRB)

Defendant.[6] Sometime thereafter, South Coast, Inc. collapsed. As a result, Plaintiff further alleges it incurred a loss of at least $8,876,788.68, which losses continue.[7]

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[8] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[9] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[10] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable

---

[6]   Clerk's Docket No. 95 at 3 (citations omitted). Inasmuch as any and all additional pertinent facts are well known to the parties and are more than substantially briefed within the applicable pleadings, they are not repeated herein except as necessary. Moreover, for reasons of simplicity and continuity, the Court notes the facts listed herein are the same as those cited in its Order Denying Motion for Summary Judgment (Docket No. 116).

[7]   Clerk's Docket No. 1 at 6.

[8]   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[9]   Id. at 323-325.

[10]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-9 (1986).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3
A04-0165 CV (RRB)

inferences must be drawn in favor of the non-movant.[11] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[12]

## IV.  DISCUSSION

The parties agree that Alaska Stat. § 09.10.070(a)(2)[13] requires Plaintiff's claims be brought within two years of the accrual of this action.  The parties differ, however, as to when the action accrued.

In accordance with Alaska's "Discovery Rule,"

(1) a cause of action accrues when a person discovers, _or reasonably should have discovered_, the existence of all elements essential to the cause of action;

(2) a person reasonably should know of his cause of action when he has _sufficient information_ to prompt an inquiry into the cause of action, if all of the essential elements of the cause of action may reasonably be discovered within the statutory period at a

---

[11]    _Id._ at 255.

[12]    _Id._ at 248-9.

[13]    Alaska Stat. § 09.10.070(a)(2) provides in relevant part:

Except as otherwise provided by law, a person may not bring an action . . . for personal injury or death, or injury to the rights of another not arising on contract and not specifically provided otherwise . . . unless the action is commenced within two years of the accrual of the cause of action.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4
A04-0165 CV (RRB)

point when a reasonable time remains within which to file suit.[14]

[(3)] where a person makes a reasonable inquiry which does not reveal the elements of the cause of action within the statutory period at a point where there remains a reasonable time within which to file suit, the limitations period is tolled until a reasonable person discovers actual knowledge of, or would again be prompted to inquire into, the cause of action.[15]

Plaintiff concedes that it had inquiry notice[16] of its cause of action against Defendant as of June 19-20, 2002.[17] Notwithstanding, Plaintiff argues that there are genuine issues of material fact that preclude using the date of inquiry notice as the date upon which its cause of action accrued.[18] The Court disagrees.

The uncontested facts reveal Plaintiff was __sufficiently__ placed under inquiry on or about June 20, 2002. Indeed, Plaintiff's Complaint (Docket No. 1), which was filed __before__

---

[14]   __Cameron v. State__, 822 P.2d 1362, 1366 (Alaska 1991)(emphasis added).

[15]   __Id.__ (__citing__ __Pedersen v. Zielski__, 822 P.2d 903, 908 (Alaska 1991)).

[16]   "Inquiry notice" is defined as: "Information which is charged to a person where a duty is imposed upon him by law to make a reasonable investigation; the information which such information would have revealed is imputed to such person." __Black's Law Dictionary__ 792 (6th ed. 1990).

[17]   Clerk's Docket No. 128 at 4.

[18]   __Id.__ at 15.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5
A04-0165 CV (RRB)

Plaintiff received the "work papers" it now claims were required in order for its cause of action to accrue, avers:

> [Defendant] negligently performed its audit and negligently provided information regarding South Coast's financial status, accounting practices, and significant estimates by, at a minimum, failing to investigate information indicating South Coast's gross profit was overstated.[19]

For this reason alone, the Court concludes Plaintiff's argument lacks merit.[20] Even so, the evidence and affidavits thus proffered, see, e.g., "the Sutor Report and Peterson Sullivan Report, Mr. Langfit's deposition and affidavit, and [Plaintiff's] Large Loss Analysis,"[21] as well as the "June 19 and 20, 2002, e-mails submitted in the joinder to the motion filed by [D]efendant Jerald Renich,"[22] further convince the Court that Plaintiff had "sufficient

---

[19]  Clerk's Docket No. 1 at 5 (emphasis added).

[20]  See Fed. R. Civ. P. 11(b)(3), which provides in relevant part:

> By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

[21]  Clerk's Docket No. 131 at 2.

[22]  Id.; see also, Clerk's Docket No. 120, Ex. 1.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6
A04-0165 CV (RRB)

information to prompt an inquiry into the cause of action."[23] Thus, the Court concludes Plaintiff's "negligence cause of action accrued more than two years before the [C]omplaint" was filed.[24]

Moreover, the Court further concludes:

> [Plaintiff's argument that certain] work papers were essential to establish its negligent misrepresentation cause of action against [Defendant] is directly contrary to the argument [Plaintiff] made regarding the work papers in its response to [Defendant's] earlier motion for Rule 11 sanctions.[25]

Consequently, Plaintiff's "work papers" argument is also barred by the Doctrine of Judicial Estoppel.[26]

---

[23] Supra note 14. "[Plaintiff] did not have to discover that [Defendant] was negligent, it only had to discover that [Defendant] was 'potentially' negligent." Clerk's Docket No. 131 at 13 (citing Bauman v. Day, 892 P.2d 817, 825 (Alaska 1995)(emphasis added)).

[24] Clerk's Docket No. 131 at 16. Plaintiff's Complaint (Clerk's Docket No. 1) was filed on August 4, 2004, more than two months past the June 20, 2004, statute of limitations deadline.

[25] Id. at 10.

[26] See Poweragent Inc. v. Electronic Data Systems Corp., 358 F.3d 1187, 1192-93 (9th Cir. 2004)(citing Hamilton v. State Farm Fire & Casualty Co., 270 F.3d 778, 782-83 (9th Cir. 2001)).

> Judicial estoppel precludes a party from gaining an advantage by asserting one position and then later – after a tribunal relied on or accepted that position – taking a clearly inconsistent position in either the same litigation or a different case concerning the same dispute.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT – 7
A04-0165 CV (RRB)

V.   CONCLUSION

For the aforesaid reasons, Defendant's Motion for Summary Judgment to Dismiss Plaintiff's Complaint on Statute of Limitations Theory (Docket No. 118) is hereby **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE** as to Defendant Peterson Sullivan, P.L.L.C.

ENTERED at Anchorage, Alaska, this 27 day of September, 2005.

RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

PO 9/27/05

A04-0165--CV (RRB)                        R. BROWE (DILLON)
-----------------------------------       W. EARNHART (LANE)
T. KECHE                                  J. WAGNER
J. MCKEEVER (HOLMES)                       T. LARKIN
W. WUESTENFELD (SANDBERG)

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 8
A04-0165 CV (RRB)

**Exhibit C**

## Jan D Sokol

**From:** Jan D Sokol

**Sent:** Wednesday, April 14, 2004 9:50 AM

**To:** 'Chuck Langfitt (Charles.W.Langfitt@travelers.com)'

**Subject:** Travelers/South Coast/Peterson Sullivan

Attached please find order denying petition to obtain documents. We will need to caucus with Jordan to determine if we have sufficient information to proceed with an action against the former officers and directors. Certainly in an action against them, we would be able to subpoena the records from the accountants. We should be mindful of the statute of limitations; however, it is unclear to me when we would have "discovered" the wrongful acts because we are still trying to determine if there were wrongful acts. We have put the insurer on notice and as you know, except for correspondence from the agent, we have had no acknowledgment from the carrier or any investigation of the carrier.

Let's talk about this on your return so we can determine where we are headed. Jan

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**NOTICE:**

**THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOUR COMPUTER SYSTEM.**

4/14/2004

**Exhibit D**

**Jan D Sokol**

| | |
|---|---|
| **From:** | Langfitt,Charles W [CLANGFIT@stpaultravelers.com] |
| **Sent:** | Thursday, June 03, 2004 7:54 AM |
| **To:** | Jan D Sokol |
| **Subject:** | RE: Travelers/Klukwan |

Continue to pursue the claim.

——Original Message——
From: Jan D Sokol [mailto:jdsokol@lawssg.com]
Sent: Tuesday, May 25, 2004 9:47 AM
To: Langfitt,Charles W
Subject: Travelers/Klukwan

This matter came up on my docket. In reviewing the file, I came across the below message. Does this present any problems? They have never even acknowledged our claim, or as far as we know conducted any investigation.

By the way, in Alaska, the statute of limitations for tort claims is 2 years. While our notice to the insurer was given in June 2003, it is not clear to me when we "discovered" the misrepresentations. Jan

> ——Original Message——
> From:        Brandon Allen
> Sent: Tuesday, December 23, 2003 11:02 AM
> To:   'jdsokol@lwssg.com'
> Cc:   'denise.rasmussen@stpaul.com'
> Subject:        Travelers/Klukwan   your file 7777.006
>
> Following up your letter of 12/9/03, on 6/9/03 we received your letter

> of 6/3 and forwarded it that day to Royal Insurance the D&O carrier.
> This satisfies the policy reporting provisions for the insured and
> applicable insurance laws.
>
> On 11/10/03 we received a letter from St.Paul advsing that they had
> acquired the renewal rights for the Royal policy and would be taking
> over this claim. Denise Rasmussen is handling this issue for St. Paul.

> You may contact her at St. Paul Fire and Marine Insurance Company
> 14622 Ventura Blvd. #538 Sherman Oaks, CA 91403
> 818 784 2527
> denise.rasmussen@stpaul.com
>
> Please let me know if you need any additonal information.
>
> Brandon Allen
> Brady & Company


===========================================================================
This communication, together with any attachments hereto or links contained herein, is for the sole use of the intended recipient(s) and may contain information that is confidential or legally protected. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by return e-mail message and delete the original and all copies of the communication, along with any attachments hereto or links herein, from your system.

1

# Exhibit E

## Langfitt,Charles W

| | |
|---|---|
| **From:** | Jan D Sokol [jdsokol@lawssg.com] |
| **Sent:** | Friday, August 26, 2005 4:05 PM |
| **To:** | Langfitt,Charles W |
| **Cc:** | Thomas A Larkin; Robert B. Coleman |
| **Subject:** | Travelers/SCI/Gelbrich et al. |
| **Attachments:** | Memo Re Renich MSJ Facts.pdf |

Attached please find memorandum regarding statute of limitations, tolling and estoppel.  The cases appear to be result oriented.  However, I believe we can make a legitimate argument (with respect to Peterson Sullivan) to at least raise a genuine issue of material fact.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**NOTICE:**

**THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOUR COMPUTER SYSTEM.**

Date _10-30-7_ Exhibit # _222_
Case _Travelers v SCoast_
Deponent _R. Coleman_
Reporter _JANETTE DUKIC_
Naegeli Reporting Corporation
(800) 528-3335  FAX (503) 227-7123

02/07/2007

**Memorandum**

To:         JDS/TAL/File

From:       RBC

Re:         Travelers' Opposition to Motions for Summary Judgment In Light of June 20,
            2002 E-mails between Mr. Langfitt and Mr. Hombach

Date:       August 25, 2002

---

The June 20, 2002 e-mail from Mr. Langfitt to Mr. Hombach effectively precludes any argument regarding when Travelers had inquiry notice of its causes of action. Specifically, Mr. Langfitt's e-mail states that Jordan is looking into an E&O claim against Peterson Sullivan as of that date. Thus, the question is whether Travelers can toll the statute of limitations during the period of its investigation, or whether Travelers can estop Peterson Sullivan from relying on the statute of limitations because Peterson Sullivan refused to provide its work papers. We may succeed on either or both grounds, although the battle will be uphill given the e-mails.

### 1.    Tolling the Statute of Limitations During an Investigation

The relevant language regarding tolling the statute of limitations for purposes of an investigation is in Pedersen v Zielski, 822 P.2d 903, 908 (Alaska 1991). The Court states:

> Under the discovery rule, the cause of action accrues when the plaintiff has information sufficient to alert a reasonable person to the fact that he has a potential cause of action. At that point, he should begin an inquiry to protect his or her rights and he is "deemed to have notice of all facts which reasonable inquiry would disclose." If, however, a reasonable inquiry would not be immediately productive, the cause of action nonetheless accrues if, within the statutory period, the essential elements may reasonably be discovered.

Id. (internal citations omitted). This language is not good for Travelers because it, like some subsequent cases, indicates that inquiry notice is the date the statute begins to run if a reasonable inquiry would disclose the essential elements of the cause of action within two years of inquiry notice.

Later in Pedersen, however, there is language that is better for Travelers. The Court states:

> [Pederson's] inquiry was, however, unavailing until more than two years after the [date of inquiry notice]. The main question in this case is whether Pedersen's inquiry was reasonable. If it was, the statute of limitations should not accrue until he received actual knowledge of the cause of his paralysis or he received new

> information which would prompt a reasonable person to inquire further. If his
> inquiry was not reasonable, the cause of action should accrue at the inquiry notice
> point unless a reasonable inquiry [in the abstract] would not have been productive
> within the statutory period. These are genuine issues of material fact which must
> be resolved at an evidentiary hearing.

Id. (emphasis added). We can argue that what the court really means is that the cause of action,
not the statute of limitations, should accrue when Travelers received actual knowledge of
Peterson Sullivan's negligence or new information that would cause a person to inquire further,
and that Travelers had two years from that date to file an action. If we can make this legal
argument, then we can make the further argument that trying to obtain Peterson Sullivan's work
papers was a reasonable inquiry, and that the statute did not start running until, at a minimum,
Travelers learned it would not be able to obtain the work papers.

I think we can bolster this argument with the language from another case, relied upon by
Pedersen and other "investigation" cases. In Palmer v. Borg-Warner Corp., 818 P.2d 632
(Alaska 1990), the Court considered an "investigation" argument. The case concerned a plane
crash. The Court held that inquiry notice for the passenger's estate suing the manufacturer of the
engine for products liability started the date the passenger's estate learned of the crash, because
plane accidents normally do not occur without negligence of the pilot, carrier, or manufacturer.
The passenger's estate argued that it did not have access to the plane to conduct an investigation
for about 8 months while the NTSB conducted an investigation. The Court rejected the
argument, because (1) the plane was accessible for 14 months between inquiry notice and
running of the statute of limitations, and because the pilot's estate had timely filed a suit against
the manufacturer, of which the passenger's estate was aware. The Court stated, however, that
"inaccessibility would persuade us to toll the limitations period where the claimant does not have
a reasonable time in which to investigate and file his cause of action. Thus, Palmer stands for the
proposition that a statute of limitations is tolled during the period of a reasonable investigation;
i.e. that inquiry notice and accrual of the cause of action actually occurs when the reasonable
investigation is over, not the date of the inquiry notice that inspired the investigation. If we can
make this stick, all we need to demonstrate is that the reasonable inquiry was not productive prior
to August 4, 2002. Perhaps this can be done.

2.    **Estoppel Based on Peterson Sullivan's Refusal to Give Access to the Work
       Papers**

The best case I have found thus far on preventing a defendant from relying on the statute
of limitations on the basis of estoppel is Waage v. Cutter Biological Div. of Miles Labs., Inc.,
926 P.2d 1145, 1149 (Alaska 1996). The simple "statement of the rule" in Waage is that "[i]n
order to establish equitable estoppel, "a plaintiff must produce evidence of fraudulent conduct
upon which it reasonably relied when forebearing from the suit. The fraudulent conduct may be
either an affirmative misrepresentation, failure to disclose facts where there is a duty to do so."
Id. In addition:

In the context of alleged fraudulent concealment, whether in the form of an action for deceit or in the context of a claim for equitable estoppel, the due diligence requirement involves a determination of when the plaintiff discovered or reasonably should have discovered the fact that the evidence of a potential cause of action had been fraudulently concealed. Once a plaintiff discovers or reasonably should discover that evidence has been fraudulently concealed, she risks losing the protection of equitable estoppel unless she takes timely action.

Id. (citing Palmer v. Borg-Warner Corp., 838 P.2d 1243, 1251 (Alaska 1992)).

To prove equitable estoppel, Travelers will have to show a false statement or concealment when under a duty to disclose by Peterson Sullivan on which Travelers relied in delaying to file its claim against Peterson Sullivan. I think there is a very small chance that Travelers will be able to make this showing, as follows.

First, audit itself states that:

We conducted our audits in accordance with auditing standards generally accepted in the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

Now that Travelers has the work papers, per Jordan we can say that the statement that Peterson Sullivan planned and conducted its audits in accordance with GAAS is false, and conceals the crucial fact that creates a cause of action against Peterson Sullivan – i.e. that their audit did not in fact comply with GAAS and thus was negligently performed. We can also say that the statement that Peterson Sullivan's "audits provide a reasonable basis for our opinion" is false now that Jordan has reviewed the work papers.

Second, Peterson Sullivan's Report to Klukwan fails to report to Klukwan that its audits were negligently performed and thus did not catch the problems that existed in 2000 at the time of its audit, when it might have saved an $8MM loss. Instead, Peterson Sullivan Report to Klukwan says:

SCI's management kept reporting more and more loss each month in the last quarter of the year. This finally resulted in Klukwan, Inc.'s Board and management losing faith in SCI's management.

How could all this have happened so quickly?

Even though the reported numbers indicate a fast deterioration, many of the

factors contributing to the losses were in existence prior to October . . . .

Finally, we performed certain procedures to help detect fraud. Based on those procedures, we found no evidence of significant fraud.

SCI was poorly managed out of Ketchikan in 2001. . . .
Klukwan's Board determined that SCI's bad financial performance in 2001 was attributable, in the first instance, to senior management in Ketchikan. Action has already been taken to attempt to correct the management and financial problems at SCI.

If nothing else, the report fails to indicate that, in retrospect, the 2000 financials likely were not accurate or that Peterson Sullivan's audit had not been adequate to catch financial problems that existed in 2000. Obviously, Peterson Sullivan was under a duty to disclose to its client, Klukwan, whether South Coast's failure might have been avoided by a thorough, as opposed to negligent, audit in 2001. Thus, Peterson Sullivan's report can be viewed as a concealment of the fact that it had been negligent in performing the audit of the 2000 financials. Put another way the Report to Klukwan directs attention towards management as the cause of the losses reported in 2001, and thus directs Travelers attention away from Peterson Sullivan.

Regarding due diligence, Travelers can argue that it did not discover that evidence was fraudulently concealed – i.e. that the workpapers demonstrate that the statement of compliance with GAAS is false – until it received the workpapers in discovery. That Travelers filed suit before then should not effect the inquiry – that was the case in <u>Palmer</u>, and did not effect the court's conclusion that estoppel of the defendant's right to rely on the statute of limitations was a possibility.

There are problems with the estoppel theory, however. First, the question of reliance: did Travelers delay in filing suit against Peterson Sullivan because it was unaware that evidence in the workpapers was concealed. In one sense, no, in that Travelers certainly was aware relatively early on that the workpapers relevant to its inquiry and were being concealed. That is, Peterson Sullivan refused to provide them because it thought Travelers was fishing for a cause of action. Similarly, Peterson Sullivan might argue that Travelers discovered that the workpapers were being concealed the moment Peterson Sullivan refused to provide them, and thus should have filed suit soon thereafter. Peterson Sullivan might put it as follows: Travelers should have known Peterson Sullivan had something to hide as soon as Peterson Sullivan refused to provide the workpapers. In opposition to this position, Travelers would argue that precluding estoppel because of Peterson Sullivan's refusal to provide its workpapers allows Peterson Sullivan to benefit from continued concealment of the workpapers.

### Conclusion

The June 20, 2002 e-mails are not good for Travelers case on the issue of statute of limitation. We might be able to show that there are genuine disputes of material fact regarding both Travelers' investigation and estoppel that preclude summary judgment. However, the prime

difficulties are that (1) Travelers was on inquiry notice of its causes of action against both the directors and Peterson Sullivan on June 20, 2002, because it states that it was conducting an inquiry at that time, and (2) it is not clear that Peterson Sullivan misdirected Travelers away from its cause of action.   On the other hand, if Travelers investigation was reasonable and the statute was tolled during the reasonable investigation, Travelers can extend the accrual of its cause of action beyond August 4, 2002.  Also, if Peterson Sullivan's statements that its audits were properly planned and performed, and direction away from Peterson Sullivan's audits in the Report to Klukwan count as fraud or concealment that delayed Travelers from filing its claims, Peterson Sullivan may be estopped from relying on the statute of limitations.

It is also important to note there is some really good language in a number of the cases regarding how it is inappropriate to decide a motion on statute of limitations on summary judgment, except in extraordinary circumstances.

W:\WORK\Clients T-V\Travelers-South Coast\D & O Claims\RBC\Memo Re Renich MSJ Facts.wpd

5

Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)

DECL. OF SPOONEMORE
Ex. E, p. 6