# Exhibit J



**Charles W Langfitt**
06/20/2002 07:38 AM

To:      David R Hombach/BD/Travelers@travelers
CC: and BCC: fields are in this section - must be expanded to print
Subject: Re: Klutwan 

I have Jordan looking at E&O claim against CPA's. Right now, I am focusing on the $7.5 Million allocated to inventory that was attributable to cutting rights, and have asked Jordan to expand the inquiry. For the D&O, we need to bring that type of claim in the name of the corporations, unless there is something non-standard in the D&O policy. Our Indemnity Agreement's assignment language is not broad enough to include an assignment of this type of claim. I will explore further and see what we might do on that end. The State has agreed to re-let Tok and Unalaska Airport, providing extentions for both. Still working through the details, but no TFCs. Best Regards.
David R Hombach

**David R Hombach**
06/19/2002 06:52 AM

To:      Charles W Langfitt/BD/Travelers@travelers
CC: and BCC: fields are in this section - must be expanded to print

Chuck, can general creditors such as a surety - access a D&O policy - a case can be made that the Directors sat on their hands or lined their pockets as they watched the company's fortunes go down the drain - I know they carried a policy - can we tag it? What about their wonderous CPA firm who obviously must have missed a whole in the boat in their 12/31/00 audit?

May be crying in spilled milk, Chuck, but those bastards must be tagged somehow......

DRH

**TRAV 011448**

# Exhibit K

## Robert B. Coleman

**From:**     Robert B. Coleman

**Sent:**     Monday, August 22, 2005 10:45 AM

**To:**       'Langfitt,Charles W'; 'jordon@sutorgroup.com'

**Cc:**       Jan D Sokol

**Subject:** Travelers/South Coast D&O; Our File No. 7777.006 – Peterson Sullivan's Motion for Summary Judgment Regarding Statute of Limitations

Chuck, Jordon: I'd like to discuss affidavits from both of you regarding Peterson Sullivan's motion for summary judgment regarding the statute of limitations, at your convenience. Travelers' response is due on August 30th.

For your information, Peterson Sullivan's motion raises the issues of when Travelers had sufficient information that a reasonable person would have inquired into (a) whether the audited 2000 financial statements contained material misrepresentations, and (b) whether Peterson Sullivan's audit was negligently performed. Obviously, (a) would occur first, and (b) would occur second.

Jordon: for your information, I spoke with Chuck about this issue when we were responding to Peterson Sullivan's motion for sanctions. He recalled that sometime in the summer or early fall of 2002, prior to the October Large Loss analysis he prepared, you sent him additional (i.e., after your May/June analysis) information regarding losses and likely losses on South Coast's ongoing projects. Chuck believes that was likely the last piece of information he needed to realize that an inquiry into the accuracy of the audited 2000 financial statements was appropriate, but the file he looked at does not indicate when you communicated the information to him. If you could look at your file from that time before we speak, I think it would be helpful.

Jordon, Chuck: I will want to discuss with both of you when you realized that an inquiry into the quality of Peterson Sullivan's audit was appropriate. Looking backwards, it seems to me an inquiry into the quality of Peterson Sullivan's audit would be appropriate once you had information indicating that the errors on the audited 2000 financial statements were significant enough that a properly performed audit should have caught them.

Please let me know when would be a convenient time to discuss these matters with you. I will be available most of the day today, in a mediation tomorrow, although I will be in the office and might have time to take phone calls, and available on Wednesday.

Thank you in advance for your assistance.

Best regards. Rob
Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, OR 97201-5047
503-221-0699
Fax: 503-223-5706
Email: rcoleman@lawssg.com

NOTICE: This e-mail transmission and any attachments may contain information which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, or taking of any action in reliance on the contents, is strictly prohibited. If you have received this transmission in error, please contact us immediately at 503-221-0699, destroy any copies, and delete it from your computer system.

8/22/2005

Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)

DECL. OF SPOONEMORE
Ex. K, p. 1

# Exhibit L

-----Original Message-----
**From:** Jan D Sokol [mailto:jdsokol@lawssg.com]
**Sent:** Thursday, March 03, 2005 6:22 PM
**To:** Langfitt,Charles W
**Subject:** Travelers/SCI

I just reviewed Jordan's deposition.  Wagner misrepresented Jordan's testimony regarding the 2000 financial Statements.  He simply testified that as Travelers expert, he is in the "very early stages" and referring to the Peterson Sullivan work paper stated that he had "not even looked through them yet..." Tr. at 7, lines 3-10.

With respect to his work for Travelers, he testified that he didn't "recall" performing "any analysis of the fiscal year 2000 financial statements" of SCI.  Tr. at 8, lines 7-10.  He also did not "remember at this point in time" about expressing any "opinions to anyone about the adequacy or inadequacy of those [2000] financial statements..." Tr. at 8, lines 13-15.

I think his statements are accurate.  He began expressing opinions with respect to the 2000 financial statements, when I became involved in May or June 2003.  The only thing that I found that was not totally accurate was that he believed he was engaged as an expert in late 2003.  Rather, it was May or June of 2003.  Tr. at 7, lines 11-17.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jan D. Sokol
Stewart Sokol & Gray, LLC
2300 SW First Avenue
Suite 200
Portland, OR 97201-5047
503-221-0699
503-227-5028 (fax)
E-mail: mailto:jdsokol@lawssg.com
Web Site: www.lawssg.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**NOTICE:**

**THIS EMAIL TRANSMISSION MAY CONTAIN INFORMATION WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE CONTACT US IMMEDIATELY, DESTROY ANY COPIES AND DELETE IT FROM YOUR COMPUTER SYSTEM.**


========================================================================
This communication, together with any attachments hereto or links contained herein, is for the sole use of the intended recipient(s) and may contain information that is confidential or legally


5/5/2006

**Exhibit M**

Robert B. Coleman                                    October 3, 2007

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


TRAVELERS CASUALTY AND SURETY

COMPANY of AMERICA, a Connecticut

corporation,

        Plaintiff,

V.      No. A05-00063 (TMB)

SOUTH COAST, INC., an Alaska

Corporation, KLUKWAN, INC.,

an Alaska Native Village

Corporation, and CHILKATS'

PORTAGE COVE DEVELOPMENT

COMPANY, an Alaska corporation,

        Defendants.

_____

SOUTH COAST, INC., an Alaska

Corporation, KLUKWAN, INC.,

an Alaska Native Village

Corporation, and CHILKATS'

PORTAGE COVE DEVELOPMENT

COMPANY, an Alaska corporation,

        Counterclaim and

        Third Party Plaintiff,


Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                            Ex. M, p. 1

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                     October 3, 2007

Page 2

1    V.

2    TRAVELERS CASUALTY AND SURETY

3    COMPANY of AMERICA, a Connecticut

4    corporation, STEWART SOKOL & GRAY,

5    L.L.C., and JAN D. SOKOL,

6              Counterclaim and

7              Third Party Defendants.

8    ─────────────────────────────────────

9

10       DEPOSITION OF ROBERT B. COLEMAN

11     TAKEN ON BEHALF OF THE PLAINTIFF

12        WEDNESDAY, OCTOBER 3, 2007

13              ---

14

15   BE IT REMEMBERED THAT, pursuant to the Oregon Rules

16   of Civil Procedure, the deposition of ROBERT B. COLEMAN

17   was taken before Janette Dukic, Court Reporter and

18   Notary Public, on Wednesday, October 3, 2007,

19   commencing at the hour of 10:00 a.m., the

20   proceedings being reported at 2300 Southwest First

21   Avenue, Suite 200, Portland, Oregon.

22

23

24

25

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                            Ex. M, p. 2

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                      October 3, 2007

Page 3

1    APPEARANCES

2

3    RICHARD E. SPOONEMORE

4    Sirianni Youtz Meier & Spoonemore

5    1100 Millenium Tower, 719 Second Avenue

6    Seattle, Washington  98104

7    Phone:  206.223.0303

8    Fax:  206.223.0246

9    E-mail:  rspoonemore@sylaw.com

10   Appearing on behalf of the Plaintiff

11

12   JAMES GILMORE

13   Clapp Peterson VanFlein Tiemessen Thorsness

14   711 H Street, Suite 620

15   Anchorage, Alaska  99501

16   Phone:  907.272.9272

17   Fax:  907.272.9586

18   E-mail:  anch@cplawak.com

19   Appearing on behalf of the Counterclaim and Third-Party

20   Defendants Stewart Sokol & Gray, and Jan Sokol

21

22

23

24

25

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                          October 3, 2007

Page 4

1    APPEARANCES (Continued)

2

3    GARY A. SPRAKER

4    Law Office of Christianson & Spraker

5    911 West 8th Avenue, Suite 201

6    Anchorage, Alaska  99501

7    Phone:  907.258.6016

8    Fax:  907.258.2026

9    E-mail:  gary@cslawyers.net

10   Appearing on behalf of the Defendants South Coast, Inc.,

11   Klukwan, Inc., and Chilkats' Portage Cove Development

12   Company

13

14   ALSO PRESENT:  Jan Sokol

15

16

17

18

19

20

21

22

23

24

25

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                          Ex. M, p. 4

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 5

1                        EXHIBIT INDEX

2

3      EXHIBIT:          DESCRIPTION:                PAGE MARKED:

4

5      No. 208           PC Law Billing Report,

6                        TRAV81427 - 81498                    11

7

8      No. 209           Billing Documentation,

9                        TRAV 75571 - 75691                   11

10

11     No. 210           E-mails, TRAV81577 - 81580           19

12

13     No. 211           E-mail, Memorandum,

14                       TRAV80383 - 80385                    54

15

16     No. 212           E-mail, 6-29-05, TRAV80622           56

17

18     No. 213           E-mail, 6-30-05, with

19                       Attachment, TRAV80624 - 80641        58

20

21     No. 214           Affidavit of Brent Heilesen,

22                       4 pages                              60

23

24     No. 215           E-mail Chain, TRAV80645 - 646        62

25

Travelers Casualty and Surety v. South Coast, Inc., et al.        DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                          Ex. M, p. 5

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 6

1                        EXHIBIT INDEX (Continued)

2

3      EXHIBIT:        DESCRIPTION:                    PAGE MARKED:

4

5      No. 216         E-mail, 7-15-05, TRAV80668 - 659      66

6

7      No. 217         E-mail, with Attachment,

8                      TRAV80663 - 694                       68

9

10     No. 218         E-mail, with Attachment,

11                     TRAV80695 - 726                       75

12

13     No. 219         E-mail Chain, TRAV80771 - 773         78

14

15     No. 220         Motion for Summary Judgment, with

16                     Attachments                           82

17

18     No. 221         E-mail, 8-22-05, TRAV80809            86

19

20     No. 222         E-mail, with Attachment,

21                     TRAV80814 - 819                       90

22

23     No. 223         E-mail, with Attachment,

24                     TRAV80833 - 840                       97

25

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 7

1                        EXHIBIT INDEX (Continued)

2

3      EXHIBIT:          DESCRIPTION:                    PAGE MARKED:

4

5      No. 224           E-mail, with Attachment,

6                        TRAV80851 - 856                        100

7

8      No. 225           E-mail, with Attachment,

9                        TRAV80858 - 884                        101

10

11     No. 226           E-mail, with Attachment,

12                       TRAV80933 - 936                        103

13

14     No. 227           E-mail, 10-4-05, TRAV80938 - 939       109

15

16

17

18

19

20

21

22

23

24

25

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                      October 3, 2007

Page 8

1    PORTLAND, OREGON

2    WEDNESDAY, OCTOBER 3, 2007

3    10:00 A.M.

4    ROBERT B. COLEMAN

5    Having first been duly sworn, was

6    examined and testified as follows:

7    EXAMINATION

8    BY MR. SPOONEMORE:

9        Q.    Good morning, Mr. Coleman.  My name is Rick

10   Spoonemore.  I previously introduced myself.  I

11   represent Travelers in this action involving a variety

12   of parties I am sure you are familiar with.

13          Before beginning, can you give your full name

14   and address for the record, please.

15       A.    Robert Berger, B-E-R-G-E-R, Coleman,

16   C-O-L-E-M-A-N.

17          Do you want my home address?

18       Q.    Either home or business.

19       A.    My business address is 2300 Southwest First

20   Avenue, Suite 200, Portland, Oregon, 97201.

21       Q.    Do you have a preference with respect to how I

22   refer to you today -- Rob or Mr. Coleman or Robert?

23       A.    No.

24       Q.    Okay.

25       A.    Rob is better than Robert.

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                           Ex. M, p. 8

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 9

1      Q.      Very well.  Can you give me a brief background

2  of your educational history, starting from college,

3  please.

4      A.      Including college or from college?

5      Q.      Including college, please.

6      A.      I graduated in 1992 with a Bachelor's in

7  Anthropology from Reid College in Portland, Oregon.

8  Then I graduated in 1999 from George Mason University

9  School of Law with a JD.

10      Q.      Can you give me a background sketch of your

11  work history, starting with your graduation from George

12  Mason?

13      A.      A week after I graduated from George Mason, I

14  started clerking as a judicial law clerk in the United

15  States Court of Federal Claims for Judge Weinstein, who

16  then changed her name to her current married name, which

17  is Sypolt, S-Y-P-O-L-T, I think, and I clerked for two

18  years, then started working at Stewart Sokol and Gray on

19  September 23 or 24, 2001.

20      Q.      And you have been continuously employed by

21  Stewart Sokol & Gray since September 23 or 24, 2001?

22      A.      Yes.

23      Q.      What is your current job title or position at

24  Stewart Sokol & Gray?

25      A.      I am an associate attorney.

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                           Ex. M, p. 9

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 10

1        Q.    Is that what you began on September 23rd and

2    24th, 2001?

3        A.    Yes.

4        Q.    Do you have an area of emphasis in your

5    practice?

6        A.    Litigation.

7        Q.    Within litigation, do you specialize in

8    certain areas or industries?

9        A.    Well, generally speaking, the firm does a

10   significant proportion of its litigation in the

11   construction industry, which has, of course, various

12   subtypes of litigation.

13            I have done, I suppose, relative to the

14   general firm practice, more general commercial

15   litigation than average.

16       Q.    And in what jurisdictions are you licensed to

17   practice law?

18       A.    Oregon.  I have satisfied the requirement for

19   reciprocity in Washington and waiting for the Supreme

20   Court's signature.

21       Q.    You were involved in some capacity in the

22   litigation that occurred up in Oregon, the Travelers

23   versus various directors and officers of South Coast and

24   Peterson and Sullivan, correct?

25       A.    I think you misspoke.

Travelers Casualty and Surety v. South Coast, Inc., et al.        DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                          Ex. M, p. 10

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

1     Q.    Can you correct me?

2           MR. GILMORE:  You said "in Oregon."

3           MR. SPOONEMORE:  Excuse me.  In Alaska.

4           MR. GILMORE:  Up in Oregon.

5           MR. SPOONEMORE:  Up in Alaska is what I meant.

6     It is colder up there.

7           THE WITNESS:  I was involved in some capacity

8     in the litigation that we referred to in the office as

9     the Travelers D&O and Peterson and Sullivan litigation.

10    That litigation was centered in Alaska.

11          (Whereupon, PC Law Billing Report, TRAV81427 -

12    498, was marked Exhibit 208 for identification.)

13          (Whereupon, Billing Documentation, TRAV75571 -

14    691, was marked Exhibit 209 for identification.)

15          MR. SPOONEMORE:  You have in front of you

16    Exhibits marked 208 and 209.

17    BY MR. SPOONEMORE:

18    Q.    Let me give you a moment to take a look at

19    those, and then my first question with respect to both

20    exhibits is going to be whether you recognize those two

21    documents or the data contained in those two documents.

22    A.    Sorry.  In the process of looking at 'em, I

23    lost track of the question.

24    Q.    The question is whether you either recognize

25    what these exhibits or whether you recognize and can

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                          October 3, 2007

Page 27

1    or having him return your call or contact?

2        A.    No.

3        Q.    Did Mr. Hombach confirm to your satisfaction

4    that Travelers had relied upon the financial statements

5    of Peterson Sullivan?

6        A.    After some discussion, yes.

7        Q.    Looking back again at what was previously

8    marked as Exhibit 210, e-mail dated June 10th, 2004.  If

9    you had been informed that there was a statute of

10   limitations deadline against Peterson and Sullivan on

11   June 19th, 2004, do you believe that you could have

12   drafted and filed a complaint between June 10th and June

13   19th, 2004?

14            MR. GILMORE:  I am going to object.  It calls

15   for speculation.

16            THE WITNESS:  I believe I could have.

17   BY MR. SPOONEMORE:

18       Q.    In the course of your work on the Travelers

19   D&O P&S litigation, was there ever a time that you had

20   difficulty obtaining information from Travelers in

21   response to any of the questions that you put to them?

22       A.    Yes.

23       Q.    And if you can identify for me what difficulty

24   or difficulties you had obtaining information from

25   Travelers.

Travelers Casualty and Surety v. South Coast, Inc., et al.            DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                             Ex. M, p. 12

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 30

1    Hombach and Brent Heilesen regarding that issue, but my

2    most specific recollection is Chuck Langfitt being less

3    than forthcoming with the information that I thought I

4    needed.

5         Q.    In what way was he less than forthcoming with

6    information that you felt you needed?

7         A.    My impression was that Chuck did not want to

8    go back and look at his file in any detail and wanted to

9    resolve the issue with me by just sort of telling me

10   what he thought off the top of his head.

11        Q.    And can you identify with respect to what

12   issue or issues you had that impression?

13        A.    Well, at the time of -- at the time we were

14   responding to the Rule 11 motion and the motion for

15   summary judgment, other than the one with respect to the

16   statute of limitations issue, I recognized that there

17   was a potential statute of limitations issue related to

18   the testimony that we needed to oppose the other

19   motions, and that was the issue that I discussed with

20   Mr. Langfitt and that he was not particularly

21   forthcoming regarding.

22        Q.    And this issue with respect to the statute of

23   limitations that you identified, this is in connection

24   with the Rule 11 motion that you identified that as an

25   issue?

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                October 3, 2007

Page 31

1    A.    Well, my recollection is that there was a Rule

2    11 motion and a motion for summary judgment other than

3    the statute of limitations motion for summary judgment.

4    Q.    The reliance motion?

5    A.    Correct, the reliance motion.  Thank you.

6          And -- but both of which raised a potential

7    statute of limitations issue.

8    Q.    Did you inform Mr. Langfitt at that time that

9    you believed that there were potential statute of

10   limitations implications in responses to those motions?

11   A.    Yes.

12   Q.    What did you tell him?

13   A.    Well, I don't recall with any specificity what

14   I told him.

15   Q.    How about generally?

16   A.    Well, generally, the problem was that the

17   statute of limitations was two years.  We had filed the

18   complaint in August of 2004, I believe, early August of

19   2004, so the statute of limitations -- I should say the

20   cause of action could not have accrued prior to whatever

21   date in August of 2002, coincided with that complaint,

22   and at the same time, we had to establish that we had a

23   basis to allege reliance and to bring the claim, and

24   Mr. Langfitt was sort of telling me -- my recollection

25   was that he had that basis in October of or early

663df57e-9165-4fed-8891-fedf8fe9992

Robert B. Coleman                                    October 3, 2007

Page 32

1    October of 2004, and I wanted to be sure that, given

2    what he was telling me, he didn't have that basis in --

3    you know, before August of -- I am sorry.

4         He had that basis in October of 2002, and I

5    wanted to be sure, based on what he was telling me, that

6    he didn't have that basis in -- earlier than August of

7    2002, because if that was gonna be his testimony, then

8    the response to the motion regarding sanctions or

9    reliance would trap Travelers with respect to the

10   statute of limitations.

11        Q.    And how did Mr. Langfitt respond when you

12   raised the potential statute of limitation with him in

13   connection with the response to the Rule 11 motion?

14        A.    Well, ultimately, he responded by telling me

15   that he had first had a basis to think that Peterson

16   Sullivan had done something wrong in early October of

17   2002, when he prepared a document he referred to as the

18   large loss analysis.

19        Q.    Did you have any discussion with Mr. Langfitt

20   concerning the statute of limitations or the specific

21   issue was whether the standard for the statute was

22   objective or subjective; i.e., that a reasonable person

23   had reason to know as opposed to that Mr. Langfitt

24   personally had reason to know?

25        A.    At any time?

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                            Ex. M, p. 15

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 33

1    Q.    I am dealing now just with in conjunction with

2    the response to the Rule 11 motion.

3    A.    I don't recall.  I don't recall it with

4    respect to that, but I don't -- I am not sure that I

5    recall a distinction being discussed at all, but it may

6    well have been.

7    Q.    Do you recall what your understanding was of

8    Alaska's statute of limitations accrual rule at the time

9    that you were talking to Mr. Langfitt concerning the

10   response to the Rule 11 and the reliance summary

11   judgment motion?

12   A.    I had identified and reviewed the primary

13   cases regarding when a statute of -- when a statute of

14   limitations begins to run at the time that I was

15   discussing it with Mr. Langfitt.

16   Q.    Let me have you turn to what I previously

17   marked as Exhibits 209 and 208.

18   A.    Which one?

19   Q.    Let me direct you, first of all, to Exhibit

20   208, the page Bates stamped 81447.

21   A.    Yep.

22   Q.    I see a reference there under February 11th,

23   2005, with your moniker that says:

24        (Reading)   Review policies for statute of

25   limitations on claim against insurer.  Prepare

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                            Ex. M, p. 16

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 36

1    Q.    Do you believe that there was any time prior

2  to July 17th, 2005 when you did research into the

3  statute of limitations issue under Alaska law?

4    A.    I believe so.

5    Q.    Can you identify for me, looking at your time

6  references or from your memory, when you first began to

7  do research on Alaska's statute of limitations in

8  connection with Travelers' action against Peterson

9  Sullivan?

10    A.    Well, I have looked back to June 17, 2005,

11  which appears to be when I first reviewed and analyzed

12  the motions for summary judgment, sanctions and to

13  compel, without finding specific reference to having

14  done research prior to whatever the date was that we

15  started.

16    Q.    July 17th, 2005.

17    A.    Okay.  July 17, regarding statute of

18  limitations, but it would have been sometime between

19  those two time periods.

20    Q.    Are you aware of any research being done on

21  Alaska's statute of limitations prior to the Rule 11 and

22  reliance motions being filed?

23    A.    I think we knew that the statute of

24  limitations was two years at the time that we were

25  filing the complaint, but I am not aware of -- I don't

Travelers Casualty and Surety v. South Coast, Inc., et al.        DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                          Ex. M, p. 17

663df57e-9165-4fed-8991-fed5f8fe9992

Robert B. Coleman                          October 3, 2007

Page 37

1    recall how -- how I knew that.

2        Q.    Prior to the complaint being filed, did you do

3    any research on Alaska's accrual rule, separate and

4    apart from the time span, but on Alaska's accrual rule

5    with respect to the statute of limitations?

6        A.    I assume you mean accrual rule with respect to

7    a cause of action.

8        Q.    Correct.

9        A.    I don't recall having done any research with

10   respect to that at the time.

11       Q.    Do you recall if anybody, to your knowledge,

12   within the office, referring to your law firm's office,

13   had done any research with respect to Alaska's accrual

14   rule for statute of limitations purposes prior to the

15   filing of the complaint against Peterson Sullivan in

16   early August of 2002?

17       A.    I am not aware of any.

18       Q.    I am looking back again to the entry on July

19   17th, 2005 on Exhibit 208, and look down to the July

20   18th, 2005 entry.

21       A.    Uh-huh.

22       Q.    It states there:

23           (Reading)  We reviewed relevant portions of

24   the deposition of Chuck Langfitt regarding statute of

25   limitations issue.

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                            Ex. M, p. 18

663df57e-9165-4fed-8891-fed5f8fe9992

Robert B. Coleman                                    October 3, 2007

Page 38

1           Do you see that?

2    A.     Yes.

3    Q.     Do you believe that Mr. Langfitt's deposition

4    had been taken prior to July 17th, 2005?

5    A.     Well, it seems likely to me that it had been.

6    Q.     Okay.

7           Do you recall issues being raised by

8    Mr. Langfitt in his deposition that gave you reason to

9    be concerned over whether there was a statute of

10   limitations problem with the action filed on behalf of

11   Travelers against Peterson and Sullivan?

12   A.     I am sorry.  Can you ask the question again?

13   Q.     Sure.  Let me rephrase it slightly.

14          Was it your review of Mr. Langfitt's

15   deposition that caused you to do further research into

16   Alaska's statute of limitation accrual rule?

17   A.     No.

18   Q.     What was the triggering event that led you to

19   begin to do research in this July 2005 time frame into

20   the statute of limitations?

21   A.     I don't specifically recall, but I think it

22   was -- my best recollection is that it was my review of

23   the then pending motions.

24   Q.     In your review of Mr. Langfitt's deposition,

25   was there anything in his deposition that caused you any

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                           Ex. M, p. 19

663df57e-9165-4fed-8991-fed5f8fe9992

# Exhibit N

Jan D. Sokol                                    October 4, 2007

                    IN THE UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF ALASKA


TRAVELERS CASUALTY AND SURETY

COMPANY of AMERICA, a Connecticut

corporation,

            Plaintiff,

V.          No. A05-00063 (TMB)

SOUTH COAST, INC., an Alaska

Corporation, KLUKWAN, INC.,

an Alaska Native Village

Corporation, and CHILKATS'

PORTAGE COVE DEVELOPMENT

COMPANY, an Alaska corporation,

            Defendants.

    ————————————————————


SOUTH COAST, INC., an Alaska

Corporation, KLUKWAN, INC.,

an Alaska Native Village

Corporation, and CHILKATS'

PORTAGE COVE DEVELOPMENT

COMPANY, an Alaska corporation,

Counterclaim and

Third Party Plaintiff,

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                    October 4, 2007

Page 2

1    V.

2    TRAVELERS CASUALTY AND SURETY . . .

3    COMPANY of AMERICA, a Connecticut

4    corporation, STEWART SOKOL & GRAY,

5    L.L.C., and JAN D. SOKOL,

6    Counterclaim and

7    Third Party Defendants.

8    _____

9

10                DEPOSITION OF JAN D. SOKOL

11          TAKEN ON BEHALF OF THE PLAINTIFF

12             THURSDAY, OCTOBER 4, 2007

13                    - - -

14   BE IT REMEMBERED THAT, pursuant to the Oregon Rules

15   of Civil Procedure, the deposition of JAN D. SOKOL

16   was taken before Janette Dukic, Court Reporter and

17   Notary Public, on Thursday, October 4, 2007,

18   commencing at the hour of 8:35 a.m., the

19   proceedings being reported at 2300 Southwest First

20   Avenue, Suite 200, Portland, Oregon.

21

22

23

24

25

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                            Ex. N, p. 2

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                    October 4, 2007

Page 3

1    APPEARANCES

2    RICHARD E. SPOONEMORE

3    Sirianni Youtz Meier & Spoonemore

4    1100 Millenium Tower, 719 Second Avenue

5    Seattle, Washington  98104

6    Phone:  206.223.0303

7    Fax:  206.223.0246

8    E-mail:  rspoonemore@sylaw.com

9    Appearing on behalf of the Plaintiff

10

11   JAMES GILMORE

12   Clapp Peterson VanFlein Tiemessen Thorsness

13   711 H Street, Suite 620

14   Anchorage, Alaska  99501

15   Phone:  907.272.9272

16   Fax:  907.272.9586

17   E-mail:  anch@cplawak.com

18   Appearing on behalf of the Counterclaim and Third Party

19   Defendants Stewart Sokol & Gray, and Jan Sokol

20

21

22

23

24

25

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                October 4, 2007

Page 4

1    APPEARANCES (Continued)

2

3    GARY A. SPRAKER

4    Law Office of Christianson & Spraker

5    911 West 8th Avenue, Suite 201

6    Anchorage, Alaska   99501

7    Phone:  907.258.6016

8    Fax:   907.258.2026

9    E-mail:  gary@cslawyers.net

10   Appearing on behalf of the Defendants South Coast, Inc.,

11   Klukwan, Inc., and Chilkats' Portage Cove Development

12   Company

13

14

15

16

17

18

19

20

21

22

23

24

25

Jan D. Sokol                                    October 4, 2007

Page 5

1                          EXHIBIT INDEX

2

3       EXHIBIT:        DESCRIPTION:                    PAGE MARKED:

4

5       No. 228        E-mail, 04-02-03, TRAV80060            62

6

7       No. 229        E-mail, 06-03-03, TRAV80062            67

8

9       No. 230        E-mail, with Attachment,

10                      TRAV80071 - 076                        82

11

12      No. 231        Petition to Require the Production

13                      of Documents Before Action             85

14

15      No. 232        Minute Order, TRAV81573                87

16

17      No. 233        E-mail Chain, TRAV80089 - 090          88

18

19      No. 234        E-mail, 06-03-04, TRAV80080            98

20

21      No. 235        E-mail, 06-08-04, TRAV80082           102

22

23      No. 236        E-mail, 06-21-04, TRAV80086 - 087     104

24

25      No. 237        E-mail Chain, TRAV80032               117

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                    October 4, 2007

Page 6

1                       EXHIBIT INDEX (Continued)

2

3      EXHIBIT:         DESCRIPTION:                    PAGE MARKED:

4

5      No. 238          E-mail Chain, TRAV80037 - 038         122

6

7      No. 239          E-mail Chain, TRAV80303 - 304         127

8

9      No. 240          E-mail Chain, TRAV80359 -062          130

10

11     No. 241          E-mail, with Attachment,

12                      TRAV80420 - 422                       136

13

14     No. 242          E-mail, 03-03-05, TRAV80459           137

15

16     No. 243          E-mail, with Attachment,

17                      TRAV80494 - 501                       139

18

19     No. 244          E-mail, 03-10-05, TRAV80503           143

20

21     No. 245          E-mail, 03-11-05, TRAV80511           144

22

23     No. 246          E-mail, 04-04-05, TRAV80520           146

24

25     No. 247          E-mail, 05-06-05, TRAV80547           149

Travelers Casualty and Surety v. South Coast, Inc., et al.        DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                          Ex. N, p. 6

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                          October 4, 2007

Page 7

1                    EXHIBIT INDEX (Continued)

2

3       EXHIBIT:        DESCRIPTION:                 PAGE MARKED:

4

5       No. 248         E-mail, with Attachment,

6                       TRAV80572 - 584                        151

7

8       No. 249         E-mail, with Attachment,

9                       TRAV80588 - 596                        151

10

11      No. 250         Letter, 6-15-05, TRAV81817            153

12

13      No. 251         Travelers' Opposition to Peterson

14                      Sullivan's Motion For Summary

15                      Judgment, with Attachment             157

16

17      No. 252         Letter, 07-15-05, TRAV81179 - 181     159

18

19      No. 253         Affidavit of Charles W. Langfitt      160

20

21      No. 254         Letter, 08-10-05, TRAV81148           164

22

23      No. 255         E-mail Chain, TRAV80805               165

24

25      No. 256         E-mail Chain, TRAV80807               166

Travelers Casualty and Surety v. South Coast, Inc., et al.      DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                        Ex. N, p. 7

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                    October 4, 2007

Page 8

1                    EXHIBIT INDEX (Continued)

2

3      EXHIBIT:        DESCRIPTION:                      PAGE MARKED:

4

5      No. 257         E-mail Chain, TRAV80811 - 812           167

6

7      No. 258         E-mail, 08-30-05, TRAV80830 - 831        172

8

9      No. 259         E-mail, 10-03-05, TRAV80927             179

10

11     No. 260         E-mail Chain, TRAV80941 - 942           180

12

13     No. 261         E-mail, 12-12-05, TRAV80944             188

14

15     No. 262         Letter, Re:  Repayment Agreement,

16                     04-06-06, 001218 - 220                  190

17

18     No. 263         E-mail Chain, TRAV80078                 199

19

20     No. 264         Billing, Christianson,

21                     Boutin & Spraker                        202

22

23     No. 265         Fax, 10-17-03, 000772 - 773             204

24

25     No. 266         E-mail, 01-21-04, 001247                206

Travelers Casualty and Surety v. South Coast, Inc., et al.          DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                            Ex. N, p. 8

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                      October 4, 2007

Page 9

1                    EXHIBIT INDEX (Continued)

2

3    EXHIBIT:          DESCRIPTION:                    PAGE MARKED:

4

5     267             Letter, 12-16-04, 001129 - 132        224

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                October 4, 2007

1    PORTLAND, OREGON

2    THURSDAY, OCTOBER 4, 2007

3    8:35 A.M.

4    JAN D. SOKOL

5    Having first been duly sworn, was

6    examined and testified as follows:

7    EXAMINATION

8    BY MR. SPOONEMORE:

9        Q.    Good morning, Mr. Sokol.  My name is Rick

10   Spoonemore.  We have previously been introduced.

11           Let me ask you to give your name and address

12   for the record, please.

13       A.    Jan D. Sokol, 2300 Southwest First Avenue,

14   Portland, Oregon.

15       Q.    And can you give me a brief sketch of your

16   educational background, starting at college.

17       A.    Graduated from Rutgers University, College of

18   Agricultural Environmental Science, with a Bachelor of

19   Science Degree in Environmental Science, 1974.

20   Graduated from Lewis and Clark College, Northwestern

21   School of Law, J.D. Degree, 1977.

22       Q.    How about a sketchy -- or a sketch of your

23   work background since your graduation from Lewis and

24   Clark School of Law?

25       A.    Sketchy, huh.  I initially started working as

Jan D. Sokol                                    October 4, 2007

Page 43

1  backlog of files up there, and I was trying to help 'em

2  get through the backlog.

3      Q.    Do you recall prior to June of 2004, doing any

4  research, whether in connection with the Peterson and

5  Sullivan action, the D&O action or any previous case

6  that you had worked on up in Alaska doing research into

7  the question of when Alaska's statute of limitations

8  begins to accrue?

9      A.    Again, I don't remember anything specific,

10 either on this case or any other case.

11        I had -- sitting here today, I have the

12 general recollection that Alaska had a discovery rule,

13 meaning that a claim accrued when a person discovered or

14 originally should have discovered, but I can't tell you

15 that I did any specific -- I can't remember any specific

16 research either for this case prior to June of '04 or

17 these other cases.

18     Q.    Did you have an understanding of whether

19 Alaska's accrual rule was the same as or different than

20 Oregon's rule, in terms of when the statute would an

21 accrue?

22     A.    As a general statement, it appeared to be

23 similar, but the cases were all over the board on what

24 reasonable issue of discovery meant, so I can't say

25 ultimately that they were identical, but they had

Travelers Casualty and Surety v. South Coast, Inc., et al.        DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                          Ex. N, p. 11

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                    October 4, 2007

Page 44

1    similar sounding language.

2         Q.    And do you recall doing any research into

3    Alaska case law on the term for statute of limitations

4    specific to the Peterson and Sullivan or D&O case prior

5    to June 20th of 2004?

6         A.    Again, I don't remember specifically whether I

7    did research.  I generally knew that it was discovered

8    or reasonably should have discovered, but I can't tell

9    you any specific research that I would have done.

10        Again, it is possible that I looked at the

11   statute, and I think the statute said two years from the

12   date it accrues, and I might have looked at what that

13   meant, but I don't remember anything specific.

14        Q.    Okay.  With respect to your practice of

15   keeping time sheets, can you describe to me, at least

16   during this time period, the 2003 through 2005 or 2006,

17   what your practice was in terms of keeping and recording

18   time?

19        A.    Well, I generally try to put down a summary of

20   what actions I take and the time allocated to that

21   action.  There are a number of occasions that I wouldn't

22   bill for a phone call, e-mail, perhaps if I looked at a

23   statute.

24        Travelers had been a long-time client and I

25   didn't bill every time I picked up the phone.  Sometimes

Travelers Casualty and Surety v. South Coast, Inc., et al.        DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                          Ex. N, p. 12

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84

Jan D. Sokol                                    October 4, 2007

Page 64

1   2nd, 2003?

2        A.    It is not referenced here, and I don't have

3   any specific recollection of it.

4             I think the reference to D&O claim is all I

5   recall.  I don't recall anything about the Peterson

6   Sullivan claim at this time, and like I said, it is just

7   not reflected here.

8        Q.    In the e-mail from Mr. Langfitt to you, dated

9   April 2nd, 2003, he references reports that I am

10  overnighting to you.

11       A.    Right.

12       Q.    Do you know what reports he is referring to?

13       A.    I have a general recollection that it was the

14  Klukwan or South Coast business plan.  I think perhaps

15  the Peterson Sullivan operations report and perhaps the

16  Sutor report.  It might even have been the fails

17  management report, but I don't have a specific

18  recollection.  I just have a general recollection.

19       Q.    In 2003, how many years had you worked with

20  Mr. Langfitt at Travelers in a professional capacity?

21       A.    I have known Chuck since I believe he started

22  as a surety claims person with United Pacific Reliance,

23  so I am thinking -- I don't know exactly when he came

24  on, but I started doing work for Reliance United Pacific

25  in 1982, '83 or '84 or somewhere in there.  I am not

Travelers Casualty and Surety v. South Coast, Inc., et al.        DECL. OF SPOONEMORE
Case No. A06-00063 (TMB)                                          Ex. N, p. 13

d80660d5-6749-4a17-b4a4-b7f5bc9b9b84