Gary Spraker, Esq.
CHRISTIANSON & SPRAKER
911 W. 8th Avenue, Suite 201
Anchorage, AK 99501
Telephone: (907) 258-6016
Telefax: (907) 258-2026
Attorneys for Defendants

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SOUTH COAST, INC., an Alaska corporation, KLUKWAN, INC., and Alaska Native Village corporation, and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation, | ) ) ) ) ) ) | **Case No. A06-00063 (TMB)** |
| Defendants. | ) ) ) | |

### DEFENDANTS' OPPOSITION TO SOKOL'S MOTION FOR SUMMARY JUDGMENT DISMISSING COUNTERCLAIM AND CROSS MOTION

Defendants Klukwan, Inc., South Coast, Inc., and Chilkat's Portage Cove

Development Company (collectively, "Klukwan" or "Defendants") oppose Jan Sokol's and

Stewart Sokol & Gray's (collectively, "Sokol") *Motion for Summary Judgment (Motion),*

and cross move on the issue that Sokol owed Klukwan a legal duty to timely file the accounting negligence against Peterson Sullivan, P.L.L.C. (Peterson Sullivan).[1]

Klukwan has previously detailed the facts relating to Sokol's representation and pursuit of the Peterson Sullivan claims within its *Opposition to Plaintiff's Motion for Summary Judgment Dismissing Counterclaim and Cross-Motion* (Travelers Cross Motion) (Docket No. 82). Klukwan specifically incorporates its factual discussion at pages 12 - 27 of the Cross Motion and the exhibits cited within those pages.

## INTRODUCTION

At the behest of Travelers Casualty and Surety Company of America (Travelers), Jan Sokol sought out Klukwan to assist in his efforts to obtain the work papers of Klukwan's accountants, Peterson Sullivan. The sole purpose of this endeavor was to establish a viable negligence claim against the accountants that would reduce the total loss on South Coast's bonded projects for which both Travelers and Klukwan were liable. Towards this end, Sokol commenced a lawsuit in the name of Travelers and Klukwan to compel the production of Peterson Sullivan's work papers.

Sokol does not deny that he represented Klukwan in the work paper litigation as a prelude to the substantive action. Nor does he deny the absence of any engagement or

---

[1]     Travelers Casualty & Surety Company of America's ("Travelers") has filed its motion for summary judgment against Sokol that the failure to timely file the Peterson Sullivan action constitutes a breach of the applicable duty of care as a matter of law. Klukwan joins in that motion. If Sokol owed Klukwan a duty of care, which is the subject of the instant cross-motions, Klukwan agrees with Travelers that Sokol's failure to timely file the action was a breach of such duty as a matter of law for the reasons set forth in Travelers' *Memorandum in Support of Motion for Partial Summary Judgment re: Negligence of Jan Sokol* filed at Docket No. 126.

disengagement letter.[2]  The only writings discussing his representation are a series of emails

in January and February 2004.  These emails, and the related conversations, establish that

Travelers, Kluwkan, and Sokol understood that the action to compel the work papers was

part of a bigger picture to recover damages from Peterson Sullivan for their mutual benefit.[3]

Klukwan has previously discussed at length the ambiguous results of that email exchange.[4]

But what clearly emerged was an understanding that both parties were moving forward

together in an effort to mitigate the total loss for their mutual benefit as confirmed by Cabot

Christianson within his deposition:

> Q:    Now, the joint representation was on the petition to obtain the work
>        papers, correct?
>
> A:    That was part of it.
>
> Q :   Well, what was the other part of it?
>
> A:    Well, I think it's pretty clear from the e-mail chain that the end game
>        here was a suit against Travelers (sic) and although there was
>        disagreement as to whether the funds would be applied to the note or
>        to the claim, at the very least it would be applied to the claim and so,
>        I mean, that was really the -- the scope of the work was not just to get
>        the work papers, because that was really a preliminary step.  The real
>        important element of what Jan was doing was pursuing the claims for

---

[2]    Deposition of Jan Sokol (Sokol Dep.), p. 224, 6-11, copies of the pertinent pages of the Sokol Deposition are attached as Exhibit B to the *Declaration of Gary Spraker in Support of Klukwan's Opposition and Cross Motion to Sokol's Motion for Summary Judgment* (Spraker Declaration).

[3]    These emails have previously been produced as Depositions Exhibits 83, 84, 85, 86, 87, 88, and 149, submitted in support of the Travelers Cross Motion.  For the Court's convenience, they are also attached to the Spraker Declaration. *See also* Sokol Dep., pp. 17, 7 - 30, 25.

[4]    See pages 18-23 of the Travelers Cross Motion, which is specifically incorporated herein. *See also* the Deposition of Thomas Crandall (Crandall Dep.) 316, 5 - 317, 13.  Copies of the pertinent pages of the Crandall deposition are attached as Exhibit C to the Spraker Declaration.

the benefit of both Travelers and Klukwan regardless of how the proceeds are applied.[5]

Subsumed within the course of dealings was Klukwan's reliance on Travelers, and by necessary extension, Sokol, to reasonably prosecute that action or advise Klukwan that they would not bring the claims. Klukwan was certainly aware of Traveler's reluctance to bring the action absent the working papers.[6] As a result, it remained prepared and willing to bring its own action if Travelers faltered.[7] A separate suit, however, was never Klukwan's preferred course.[8] Klukwan believed that Travelers had a "cleaner" claim, that the parties were "chasing the same dollars," and it would save litigation costs by having Travelers go forward. Travelers gave every indication that it would bring the accountant claims. This included continual requests for assistance in getting the working papers.[9]

---

[5]     Deposition of Cabot Christianson (Christianson Dep.), 285, 4-18; see also p. 294, 24 - 295, 7. Copies of the pertinent pages of the Christianson deposition are attached as Exhibit D to the Spraker Declaration. *See also* Crandall Dep., 479, 5-12.

[6]     Christianson Dep., 199, 5- 200, 1.

[7]     Christianson Deposition, pp 309, 4 - 310, 12.

[8]     Christianson has testified that his advice to Klukwan:

> was that -- is that Travelers is much better situated to bring its claim. It didn't -- it had a --didn't suffer from the unclean hands defense that we would have, it did not have the damages problem that we would have, and they would be financing the litigation. And we're chasing the same dollars. I mean, the Travelers damages are the same as our damages, the same -- or, at least the first let's say 12 million or whatever, it's the same claim. So if Travelers is going to go forward there was no point in us going forward. And that was my advice pretty much consistently from day one.

Christianson Deposition, 309, 9-20; *see also* 196, 15 - 197, 1,; 309, 4 - 310, 12; 328, 13 - 329, 18; Crandall Deposition, 376, 21 - 377, 16; 389, 2 - 14; 470, 13 - 472,9; 474, 8 - 475, 2; 477, 5 - 13; 482, 12 - 22; 492, 14 - 493, 19;

[9]     Crandall Deposition at pp, 492, 21 - 493, 19; Christianson, 267, 11-21; Sokol Dep., p. 15, 12 -16, 20.

Before Klukwan agreed to Sokol's joint representation of both Travelers and Klukwan, it stated what had become obvious: it would not pursue separate claims against Peterson Sullivan if Travelers brought suit because either action would reduce the total losses for which they were jointly liable:

> [It] was Tom's desire, pretty strong desire, to, you might say, drop the bread crumbs in front of Travelers to lead Travelers to the correct set of facts it would need to develop a case against Peterson Sullivan. There was also the possibility of us bringing a suit, but I had told Jan that, you know, if he brings a suit there's no real point in us bringing a suit because it's the same dollars that are being chased and he's got a stronger case.[10]

Travelers and Sokol were well aware that Klukwan was "riding Travelers' coat tails" on the Peterson Sullivan claims.[11]   It was for this very reason that Crandall contacted Langfitt after Sokol's petition was denied to see if Travelers was going to sue Peterson Sullivan.[12]   Langfitt told Crandall that Travelers was reviewing its options, and he would keep him posted.[13]   When Travelers finally decided to sue Peterson Sullivan, Sokol's response was, "I assume we will need to contact Crandall and Cabot once we have our plans finalized."[14]

## ANALYSIS

To establish its negligence claims against Sokol, Klukwan must first establish he owed it a duty of care.  In attorney malpractice actions the existence of duty is usually

---

[10]     Christianson Dep., p. 196, 18 - 197, 1.

[11]     Deposition Exhibits 121 and 149.  See also Deposition of Charles Langfitt (Langfitt Dep.), pp. 220, 3 - 221, 21;  248, 2-18. Copies of the pertinent pages of the Langfitt deposition are attached as Exhibit E to the Spraker Declaration.

[12]     Dep. Ex. 144

[13]     *Id.*

[14]     Deposition Exhibit 210.

subsumed within the attorney-client relationship.  That is, the factual establishment of such relationship carries with it well recognized legal duties of care. The mere fact that negligence claims are brought against an attorney does not change the overall analysis.  The well established trend in modern law now provides that while an attorney certainly owes duties of care to its client, it may also owe legally enforceable duties to prevent foreseeable harm to known third parties in special circumstances.  Sokol owed Klukwan a duty to timely bring the Peterson Sullivan action, arising either from his express representation of Klukwan, or as a known third party subject to foreseeable harm.

## I.    SOKOL WAS COUNSEL FOR KLUKWAN

Sokol is simply wrong when he states that there was never an attorney-client relationship with Klukwan. Sokol commenced a lawsuit in federal court in the name of both Travelers and Klukwan.[15]   The entry of an appearance on behalf of another creates a presumption that an attorney client relationship exists.  *Brandon v. West Bend Mutual Insurance Co.*, 681 N.W.2d 633, 640 (Iowa 2004).  Moreover, courts assume that the attorney acted ethically when he or she enters an appearance on behalf of a party, "and therefore the presumption of an attorney-client relationship is warranted." *Id.*  Having established that there was an express attorney-client relationship, the question then becomes what exactly was the scope of the attorney-client relationship?[16]

---

[15]      A copy of the Petition to Require the Production of Documents Before Action filed by Sokol on behalf of Travelers and Klukwan against Peterson Sullivan is attached as Dep. Ex. 231.  As in prior briefing, Klukwan continues the practice of using the sequentially numbered deposition exhibits.

[16]      The exact parameters of Sokol's duty to Klukwan is a question for the jury to decide. *Stender v. Vincent,* 992 P.3d 50, 58 (Haw. 2000)("Whether and to what extent an attorney-client relationship is present is a question of fact.") (collecting cases).  While Klukwan believes that the undisputed facts establish that Sokol owed Klukwan a duty of care as a matter of law, at the very minimum, the facts when taken in the light most favorable to Klukwan establish a genuine dispute of material facts that preclude Sokol's summary judgment on Sokol's motion.

By now it is well established that "[a]lthough the relationship usually arises from an express contract between the attorney and the client, it may also arise by implication." *Streit v. Covington & Crowe,* 98 Cal. Rptr. 2nd 193, 196 (Cal. App. 2000) (citing Mallen & Smith, Legal Malpractice (4th ed. 1996) § 8.3, p. 586); *Bohn v. Cody*, 832 P.2d 71, 75 (Wash. 1992). "Neither contractual formality, nor compensation nor expectation of compensation is required." *Streit*, 98 Cal. Rptr. 2d at 196. In fact, courts acknowledge that "[t]he relationship may arise without any direct dealings between the client and attorney." *Id*; see also *Pellegrino v. Oppenheimer & Co., Inc.,* 851 N.Y.S. 2d 19, 23 (N.Y.A.D. 2008)("To determine whether an attorney-client relationship exists, a court must consider the parties' actions.")

The test for determining whether an attorney-client relationship exists examines what is the client's subjective belief and is that subjective belief reasonable under the circumstances, or (2) was there some clear assent either express or implied to the representation by both the client and the lawyer? *Warner v. Stewart,* 930 P.2d 1030 (Idaho 1997); *See also Paradigm Ins. Co.* 24 P.3d at 596*; Bohn v. Cody*, 832 P.2d 71 (Wash 1992); *People v. Bennett*, 810 P.2d 661, 664 (Colo. 1991); *In re Weidner*, 801 P.2d 828, 835-36 (Or. 1990) *Breuer-Harrison, Inc. v. Combe*, 799 P.2d 716, 727 (Utah App. 1990). The Arizona Supreme Court explained in *Paradigm Ins. Co. v. Langerman Law Offices, P.A.,* 24 P.3d 593, 595-96 (Ariz. 2001):

> The law has never required that the attorney-client relationship must be initiated by some sort of express agreement, oral or written. Quite to the contrary, the current rule is described as follows:
>
> > A relationship of client and lawyer arises when: (1) a person manifests to a lawyer the person's intent that the lawyer

provide legal services for the person; and ... (a) the lawyer
manifests to the person consent to do so.

Restatement (Third) of the Law Governing Lawyers § 14. Indeed, comment
c to section 14 indicates that either intent or acquiescence may establish the
relationship. Even before adoption of section 14, our cases expressed a
similar view. As a practical matter, "an attorney is deemed to be dealing
with a client when 'it may fairly be said that because of other transactions an
ordinary person would look to the lawyer as a protector rather than as an
adversary.' [citations omitted]. Thus, a purported client's "belief that [the
lawyer] was their attorney" is crucial to the existence of an attorney-client
relationship, so long as that belief is "objectively reasonable."

At least one court has recognized that an attorney-client relationship exists with a

third party where there is a common interest in a recovery for the client's and third party's

mutual benefit. In *Brandon v. West Bend Mutual Insurance Co.,* 681 N.W. 2d 633, 641-42

(Iowa 2004) the plaintiff, Beverly Brandon, was injured in an automobile accident, and made

a claim against her insurer, West Bend Mutual Insurance Company. The defendant driver

was insured by another insurer. Brandon told West Bend that she would not be suing the

driver, but urged it to bring such an action through its subrogation rights. West Bend's did

exactly that. The insurer's attorney brought the complaint not only in the name of West

Bend, but Brandon as well. Brandon, however, was unable to settle with West Bend and

commenced her own action against the insurer. Brandon sent discovery requests to West

Bend's counsel seeking communications between West Bend and the attorney that brought

the subrogation action.

The Iowa Supreme Court held that there was an attorney client relationship between

Brandon and West Bend's counsel in the subrogation action. Specifically, counsel had filed

the subrogation action in Brandon's name as well the insurer. *Id*. at 640-41. Moreover,

Brandon and West Bend maintained a common interest in the subrogation action. *Id.* at 641.

A common interest existed "where two or more parties consulted an attorney for the mutual benefit of the parties." *Id*. The Court held that "[b]ecause West Bend's right of reimbursement was unknown at the time Thill [West Bend's attorney] filed the [subrogation] action, Thill's representation of Brandon in the [subrogation] action was for the mutual benefit of Brandon and West Bend, who had a common interest in a recovery against [the driver]." *Id.* at 642. As a result, the Court held that an attorney-client relationship existed that waived any attorney-client privilege.

Klukwan certainly believed, based upon the course of conduct, that Sokol was pursuing claims against Peterson Sullivan to reduce the common loss for which both Klukwan and Travelers were liable. Everything involving Sokol suggested that he was acting as a protector for their joint interests rather than as an adversary. From the beginning Travelers and Sokol sought Klukwan's assistance. Travelers first sought to have Klukwan send a demand to obtain Peterson Sullivan's working papers in June 2003.[17] When Klukwan was unwilling to immediately send the letter for business reasons, Sokol and Travelers waited until the fall.[18] In October, 2003, again at Sokol's and Travelers' request, Klukwan sent not one, but two letters for turn over of the papers.[19]

---

[17]     Dep. Ex. 80; Crandall Deposition, 296, 11 - 5. Crandall advised Langfitt that in his view the work papers were not necessary to bring the action in light of the other information available. Crandall Dep., 303, 17-22.

[18]     Crandall Dep., 296, 11 - 297, 19.

[19]     Dep. Ex. 81 and 82; Crandall Dep., 299, 8 - 301, 24.

Sokol conferred with Klukwan's counsel, Cabot Christianson, to coordinate the efforts to obtain the work papers.[20] It was during these discussions that Sokol came up with the idea to sue Peterson Sullivan for turnover of the work papers.[21] Sokol pressed Klukwan for its agreement to participate in the federal action, which he would bring in Washington.[22] Klukwan negotiated the terms on which Sokol would be permitted to represent it.[23] These discussions included several exchanges between Christianson and Sokol regarding the application of any proceeds from the substantive action against Peterson Sullivan.[24] It was during these discussions that Christianson told Sokol that if he did sue Peterson Sullivan, Klukwan would not waste their resources filing a separate action against the accountants.[25] This confirmed what Klukwan had been telling Travelers all along; that Travelers should

---

[20]     See letter from Sokol to Peterson attached as Exhibit C to the Christianson Declaration submitted in support of the Cross Motion (Christianson Declaration), emails between Sokol and Christianson dated October 17, 2003, previously attached as Exhibit D to the Christianson Declaration.  Christianson, Boutin & Spraker's billing statements, submitted as Dep. Ex. 170, also reflect discussions between Sokol and Christianson regarding requests to get the working papers.  Copies of Exhibits C and D to the Christianson Declaration are attached to the Spraker Declaration.  *See also* Christanson Dep., p. 180,14- 181, 5

[21]     See Dep. Ex. 263, Deposition of Charles Langfitt (Langfitt Dep.), p. 224, 3-23.

[22]     On January 9, 2004, Sokol wrote to Christianson, "As I previously discussed with you, I believe the petition will be much stronger if Klukwan is party.  Please advise if I can file the petition on behalf of both Travelers and Klukwan."  Dep Ex. 83; see also Dep. Ex. 84, 85, 86, Deposition of Cabot Christianson (Christianson Dep.), p. 114-134.

[23]     At pages 18- 23 of the Cross Motion, Klukwan has detailed the discussions between Christianson and Sokol in which Klukwan sought to have Travelers agree to apply the proceeds from the substantive action against Peterson Sullivan to its repayment obligations.  This discussion, including all exhibits, is specifically incorporated.

[24]     For the Court's convenience, Dep Ex Nos. 84, 87, 88, 149, and 150, previously attached to the Cross Motion, are attached to the Spraker Declaration.

[25]     Christianson Dep., 281, 14-20,"I did tell him [Sokol] that if he was going to go forward that there was very little chance that we [Kluwkan] would go forward." *See also* 196, 15 - 197, 1 ("... I had told Jan that, you know, if he brings a suit there's no real point in us bringing a suit because it's the same dollars that are being chased and he's got a stronger case.")

take the lead in recovering against Peterson Sullivan.[26]  The reasons for this were well

understood by Sokol and Travelers, and lead Langfitt to complain to Sokol that Klukwan

was "riding Travelers' coattails" and getting a "free ride."[27]  Neither Travelers, nor Sokol,

ever did anything about it, and Sokol prosecuted a joint action to recover the work papers.

When that failed, Travelers told Klukwan they were reviewing filing suit.  The next thing

Klukwan learned was that Sokol had actually sued Peterson Sullivan.

Klukwan had no interest in merely recovering the accountant's work papers.[28]  That

act, by itself, provided no benefit to Klukwan.  Rather, that effort was a continuation of their

---

[26]     Crandall testified at his deposition:

Q:     I have not found nor seen in any of the records in this proceeding anything in written form
       from Klukwan that states and tells Travelers that Klukwan was relying exclusively on action.
       Are you aware of any such document?

A:     Not as a document, no.

Q:     Did you make that statement to Chuck Langfitt?

A:     I did talk to Chuck Langfitt on more than one occasion that one of the issues out there is
       Klukwan basically is broke, two, anything we -- that Travelers received as a – on a settlement
       with P&S or as a direct result of the claim against P&S would benefit Klukwan either to the
       point of against the note or against the deficiency.

Crandall Deposition, 389, 2-14; *see also* 312, 8 - 21; 376, 21 - 377, 16; 470, 13 - 472,9; 474, 8 - 475, 2; 477, 5 -
13; 482, 12 - 22; 492, 14 - 493, 19; Christianson Deposition, 196, 15 - 197, 1; 309, 4 - 310, 12; 328, 13 - 329,
18; Langfitt Dep. 209, 18 - 210, 15; 248, 2-18.

[27]     Deposition Exhibits 121 and 149.  *See also* Langfitt Dep., pp.209, 18 - 210, 15; 220, 3 - 221,
21;  248, 2-18; Christianson Dep. 285, 4-18.

[28]     Christianson Dep., 294, 24 - 295, 7; *see also* Crandall Dep., 475, 20 - 476, 17.

joint efforts, and was a prelude to the action to recover from Peterson Sullivan.[29]  Klukwan

and Travelers shared a mutual interest in such recovery to reduce their common loss.

Sokol knew when he sought and accepted the joint representation that Klukwan was

looking to him to pursue the accounting claims for the mutual benefit of Travelers and

Klukwan.  While Klukwan was prepared to go ahead on its own if Sokol and Travelers chose

not to do so, Sokol also knew that Klukwan would forego its action if he commenced an

action against Peterson Sullivan because Christianson had told him so.[30]  Crandall had

similar discussions with Langfitt.[31]  This lead Klukwan to believe that Sokol represented

their mutual interest in pursuing the accountants.[32]  Sokol did nothing to refute this.  Based

---

[29]    In response to a question that the Sokol's representation was limited to the work paper action, and sought no monetary recovery, Christianson explained Klukwan's stated reasons for agreeing to the action:

> The obvious intent of that is that when I talk about proceeds from the litigation it's the litigation against – substantive litigation against Peterson Sullivan because, actually he's right, this statement would make no sense whatsoever if I was referring just to the work papers, and sort of illustrates, and pretty clearly, I think, that I saw the work papers was simply a prelude to the main action, not a stand-alone suit that was brought.

Christianson Dep., 293, 7-17.

[30]    Christianson has testified that:

Q:    And that reflected the fact Klukwan was continuing to consider its own action against Peterson Sullivan, correct?

A:    It was, although the real thrust of that was Tom's pretty strong desire, to, you might say, drop the bread crumbs in front of Travelers to lead Travelers to the correct set of facts it would need to develop a case against Peterson Sullivan. There was also the possibility of us bringing a suit, but I had told Jan that, you know, if he brings a suit there's no real point in us bringing a suit because it's the same dollars that are being chased and he's got a stronger case.

Christianson Dep., 196, 15 - 197, 1; *see also* 281, 18-20.

[31]    Crandall Deposition, 389, 2-14; *see also* 312, 8 - 21; 376, 21 - 377, 16; 470, 13 - 472,9; 474, 8 - 475, 2; 477, 5 - 13; 482, 12 - 22; 492, 14 - 493, 19.

[32]    Christianson Dep., 285, 4-18; see also p. 291, 14 - 293, 17; 294, 24 - 295, 7; Crandall Dep., 492, 10 - 493, 1.

upon this undisputed course of conduct, Sokol expressly invited Klukwan to be his client and acquiesced in the scope of the representation.  In doing so, he created an attorney-client relationship, which gave rise to a duty to timely file the Peterson Sullivan lawsuit.

## II.    KLUKWAN WAS A KNOWN BENEFICIARY OF SOKOL'S REPRESENTATION IN THE PETERSON SULLIVAN ACTION

In the most recent edition of their treatise on legal malpractice, Jeffrey M. Smith and Ronald E. Mallen recognize that "[t]he modern trend in the United States is to recognize the existence of a duty beyond the confines of those in privity to the attorney client contract." Mallen, Ronald E. and Smith, Jeffrey M., *Legal Malpractice* , ( 2008), § 7.8 at 886; see also *Chem Age Industries, Inc. v. Glover,* 652 N.W. 2d 756, 769 (S.D. 2002) ("there has been a notable increase 'in case law and professional literature on attorney liability to third parties.'")  Alaska has not yet considered the exact parameters of when an attorney owes a duty of care in tort to a non-client third party.  It has, however, rejected the strict requirements of privity, and has held that in the appropriate circumstances other professionals owe identifiable third parties a duty of care to avoid foreseeable harm.

In *Selden v. Burnett,* 754 P.2d 256 (Alaska 1988), the Alaska Supreme Court expanded tort liability beyond those in direct contractual privity to those for whom the services were intended.  There, the Court stated that "if an accountant were to give investment advice to the representative of a group of investors, explicitly intending the information to be for the benefit and guidance of each member of the group, the accountant would owe a duty of care to each member." *Id*. at 259-60.  In *Selden*, however, the accountant had been retained to provide tax advice, not investment advice.  The Court contrasted the private nature of the advice at issue in the case before it with the judicial trend

to find an "expansive duty of care on the part of accountants in those situations in which accountant performed a public role in preparing and certifying financial statements." *Id*. at 259.

The Alaska Supreme Court has also held that engineers or architects may owe legal duties to third parties in tort. In *Moloso v. State of Alaska*, 644 P.2d 205 (Alaska 1982), the Court held that regardless of contractual privity, design professionals owed a legal duty "to exercise reasonable care, or the ordinary skill of the profession, for the protection of anyone lawfully upon the premises whose injury is reasonably foreseeable as the result of negligent design, plans, orders, or directions." *Id*. at 217. Specifically, the Court explained that:

> Their liability is not limited to the owner who employed them. Privity of contract is not a prerequisite to liability. They were under a duty to exercise ordinary, reasonable care, technical skill, and ability and diligence, as are ordinarily required of architects, in the course of their plans, inspections, and supervision during construction for the protection of any person who foreseeably and with reasonable certainty might be injured by their failure to do so ....

*Id*. at 271 n .12.

More recently, the Supreme Court of Alaska adopted a section of Restatement (Third) of the Law Governing Lawyers § 51 as declarative of Alaska common law. In *Pederson v. Barnes*, 139 P.3d 552 (Alaska 2006), the Supreme Court held that under § 51(4) of the Restatement, a guardian's attorney owed a duty of care to the guardian's ward, and was liable for the guardian's theft of the ward's assets.

The Alaska Supreme Court's decisions in *Selden*, *Moloso,* and *Pederson* establish that Alaska would recognize an attorney's tort liability to a third party in the appropriate

circumstance.[33] Courts have generally used one of three tests to evaluate whether an attorney owed a duty of care to a third party in a specific situation. California courts have adopted a six factor balancing test to ascertain whether an attorneys owes a legally cognizable duty of care to a third party:

1.    The extent to which the transaction was intended to affect the plaintiff'

2.    The foreseeability of harm to the plaintiff;

3.    The degree of certainty that the plaintiff suffered injury;

4.    The closeness of the connection between the defendant's conduct and the injury;

5.    The policy of preventing future harm; and

6.    Whether recognition of liability under the circumstances would impose an undue burden on the profession.

*Lucas v. Hamm,* 364 P.2d 685 (Cal. 1961).

The third party beneficiary test has been summarized by the Supreme Court of Maryland in *Flaherty v. Weinburg*, 492 A.2d 618, 625 (Md. 1985), in which it held that the:

scope of duty concept in negligence actions may be analogized to the third party beneficiary concept in the context of attorney malpractice cases. Thus, to establish a duty owed by the attorney to the nonclient the latter must allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship. In this regard, the test for third

---

[33]    The Arizona Supreme Court has traveled a similar path. In *Paradigm Ins. Co. v. Langerman Law Offices, P.A.,* 24 P.3d 593 (Ariz. 2001), the Court concluded that Arizona case law established that an attorney could owe a duty of care to a third party. The Arizona courts had previously held that (1) counsel for a guardian may could be liable for negligence to the guardians ward. *Fickett v. Superior Court,* 558 P.2d 988 (Ariz. App. 1976); and (2) architects were liable for foreseeable injuries to foreseeable victims which proximately result from their negligent performance of their professional services." *Donnelly Construction Co. v. Oberg/Hunt /Gilleland,* 677 P.2d 1292 (Ariz. 1984). These decisions lead the Court to conclude that, "[i]f design professionals cannot escape liability to foreseeably injured third parties who, although lacking privity, are harmed by a designer's negligence, we cannot see why lawyers should not likewise be held to a similar standard." *Paradigm,* 24 P.3d at 601. As noted above, Alaska has similarly held that counsel for a guardian, design professionals and accountants, could owe duties to third parties.

party recovery is whether the intent to benefit actually existed, not whether there could have been an intent to benefit the third party.

The third test is based upon the Restatement (Third) of the Law Governing Lawyers, § 51 which provides in pertinent part:

> For purposes of liability under sec. 48, a lawyer owes a duty of care within the meaning of sec. 52 in each of the following circumstances:
>
> (2)     to a nonclient when and to the extent that :
>
>         (a) the lawyer of (with the lawyer's acquiesence) the lawyer's client invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and
>
>         (b) the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection;
>
> (3)     to a nonclient when and to the extent that:
>
>         (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;
>
>         (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and
>
>         (c) the absence of such a duty would make enforcement of those obligations to the client unlikely.

Application of the three tests have substantially overlapped. Each test begins with an examination of the extent to which the transaction was intended to affect or benefit the third party. *See Lucas v. Hamm,* 364 P.2d 685 (Cal. 1961) (California test); *Flaherty v. Weinburg*, 492 A.2d 618, 625 (Md. 1985) (third party beneficiary test); *Chem-Age Industries, Inc. v. Glover*, 652 N.W 2d 756, (S.D. 2002) (applying Restatement tests). The differences between the tests involves the degree of intent to benefit the third party that is required before a court recognizes a legal duty. The Restatements test are thought to be the least restrictive analysis requiring only that "one of the primary objectives of the

representation" be to benefit the non-client.[34] *See* Mallen and Smith *Legal Malpractice*, § 7:8 at 892.  The third party beneficiary test is considered to be more restrictive test than the multi- factor test balances. Within the balancing test, it is only necessary to establish that the non-client was *a* beneficiary of the representation.  *See Jones v. Allstate Ins. Co.,* 45 P.3d 1068 (Wash. 2002) (applying a modified balance test, the Washington Supreme Court found a duty where, "[t]he [plaintiffs] were at least one of the intended beneficiaries of the transaction to which [counsel's] advice pertained.")  Courts construing the third party beneficiary test appear to require a heightened connection  between the client and the non-client.

The Restatement tests, like the balancing test, call for additional examination of the facts and circumstances surrounding the transaction.  Section 51(2)(b) specifically includes the concept of forseeability and reliance.[35]  Section 51(3)(b) specifically raises concerns regarding conflicts of interests by requiring consideration of the impact on the attorney's obligations to the client.  Subsection 51(b)(c) also questions whether anyone would enforce the obligations if a duty was not recognized.  This factor is significant because prior to

---

[34]    In the comment f to § 51(3), the Restatement explains that:

> A nonclient's claim under Subsection (3) is recognized only when doing so will both implement the client's intent and serve to fulfill the lawyer's obligations to the client without impairing performance of those obligations in the circumstances of the representation.  A duty to a third person hence exists only when the client intends to benefit the third person as one of the primary objectives of the representation.

[35]    Comment (e) to § 51 of the Restatement is particularly instructive: "When a lawyer or that lawyer's client (with the lawyer's acquiescence) invites a nonclient to rely on the lawyer's opinion or other services, and the nonclient reasonably does so, the lawyer owes a duty of care to the nonclient to use care, unless the jurisdiction's general tort law excludes liability on the ground of remoteness"

Klukwan's counter-claims against Sokol, it appears that Travelers had not asserted any claims. It was only afterwards that Travelers began to consider claims against Sokol.[36]

In their survey of jurisdictions, Mallen and Smith concluded that, "[t]he balancing test has been cited with approval and accepted, sometimes with modification, by most jurisdictions that have examined the issue." Mallen, *Legal Malpractice,* § 7:8 at 887. Washington is one of the states that has modified the California test. In *Bohn v. Cody*, 832 P.2d 71 (Wash. 1992) and *Stangland v. Brock*, 747 P.2d 464 (Wash. 1987), the Washington Supreme Court adopted the balancing test under which, the important inquiry was whether the attorney services were intended to "affect" the plaintiff. *Stangland*, 747 P.2d at 464.

Two years after *Bohn,* the Washington Supreme Court refined the California test. In *Trask v. Butler,* 872 P.2d 1080 (Wash. 1994), the heirs of a probate estate sued the attorney for the personal representative for negligence. The Court noted that in addition to the multi-factor test, some courts have "extended the traditional concept of attorney liability to include third parties who were 'intended beneficiaries of the relationship between the client and the attorney." *Id.* at 842 (quoting *Neal v. Baker,* 552 N.E. 2d 704 (Ill. App.), *appeal denied* 555 N.E. 2d 378 (1990). Reconciling the two tests, the Washington Supreme Court concluded that the "two tests were indistinguishable in that their primary inquiry focuses on the purpose for establishing the attorney client relationship." *Trask,* 872 P.2d at

---

[36] Judge Beistline dismissed the Peterson Sullivan action on September 27, 2005. There is no evidence that Travelers considered any action against Sokol for missing the statute of limitations until after Klukwan filed its cross claim. Attached as Exhibit G to the Spraker Declaration is an email from Charles Langfitt to his superiors in Travelers forwarding Klukwan's counterclaim, stating that "[t]his is the bad faith case I emailed you about yesterday. For obvious reasons, please call at your convenience." Only following that did Travelers "request that you put your malpractice carrier on notice." See Spraker Declaration, Exhibit G. Langfitt has admitted that his relationship with Sokol was a "close" one that spanned over 20 years. Langfitt Dep., 212, 13 - 19; 253, 10 - 254, 6; 315, 23 - 316, 4. There is no evidence that absent Klukwan's suit Travelers would have ever pursued the claims against Sokol.

842. The Court promulgated a revised balancing test to "eliminate any confusion." *Id*. Under the revised test, "[t]he intent to benefit the plaintiff is the first and threshold inquiry in our modified multi-factor balancing test...." *Id*. Accordingly, the Court revised the first factor to be, "[t]he extent to which the transaction was intended to benefit the plaintiff," and left the remaining factors unchanged. *Id*. at 843.

The Supreme Court of Montana in *Redies v. Attorneys Liability Protection Soc.,* 150 P.3d 930 (Mont. 2007), recently reviewed the modified balancing test, and the scope of attorney liability to third parties. There, the Court also noted the "demise" of privity as a barrier to third party tort actions against attorneys. The Court explained that, "in recognizing tort liability in the absence of privity, we have concomitantly limited the class of plaintiffs to identifiable third parties, typically, those who are known or are reasonably foreseeable by the professional ...." *Id*. at 942. Interestingly, the Montana Supreme Court applied the California requirements that "the transaction was intended to affect the plaintiff." *Id*. (citing *Rhode v. Adams,* 957 P2d 1124, 1126-27 (Mont. 1998)).

In *Paradigm Ins. Co. v. Langerman Law Offices, P.A.,* 24 P.3d 593 (Ariz. 2001), the Arizona Supreme Court considered the relationship between an insurer and insured in holding that where an insurer hires counsel for an insured, that counsel owes a duty of care to the insured. In reviewing the law regarding claims by third parties against attorneys, the Court recognized that,

> although the "general rule is that a professional owes not duty to a non-client unless circumstances require otherwise," there are 'special circumstances' where we have 'imposed liability on a professional to the extent that a foreseeable and specific third party is injured by the professional's actions." As the cases already discussed demonstrate, these circumstances are found in a myriad of contexts. [citations omitted] The "common thread [that] exists

> between' between such cases is that 'there was a foreseeable risk of harm to
> a foreseeable non-client whose protection depended on the actor's conduct."

*Id*. at 601 (citing *Napier v. Bretram*, 954 P.2d 1389, 1393 (Ariz. 1998)).

   *Paradigm* also includes a pertinent discussion of the insurer's right to protect itself by hiring separate counsel.  While recognizing that the insurer must take such steps where the a conflict exists or is imminent, the Court noted that "[w]here the interests of insurer and insured coincide, as they often do, it makes neither economic nor practical sense for an insurer to hire another attorney to monitor the actions and decisions of the attorney assigned to the insured." *Id*. at 601.  Similarly, in the instant case, it made neither economic or practical sense for Klukwan to pursue Peterson Sullivan where Travelers, through Sokol, was doing so.  As in *Paradigm*, the interests of Travelers and Klukwan coincided and were mutual.  As such, it was eminently foreseeable that Kluwkan would be injured by Sokol's failure to timely file the accounting malpractice suit, and there is no reason to separate attorneys from any other professional.

   Alaska has already adopted one section of Restatement to hold that counsel for guardians may be liable to wards for negligence.  Additionally, in *Selden* the Court explained its limitation of the duty of care under a balancing approach.  Such an approach is consistent with Alaska's existing multi-factor approach to determine whether a cognizable duty exists to support a negligence action as generally set forth in *D.S.W. v Fairbanks N. Star Borough School District,* 628 P.2d 554 (Alaska 1981).[37]   Indeed, the Alaska Supreme Court has

---

[37]     The *D.S.W.* factors are: "[1] The foreseeability of harm to the plaintiff, [2] the degree of certainty that the plaintiff suffered injury, [3] the closeness of the connection between the defendant's conduct and the injury suffered, [4] the moral blame attached to the defendant's conduct, [5] the policy of preventing future harm, [6] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [7] the availability, cost and prevalence of insurance

repeatedly stated, "the most important single *D.S.W.* factor is foreseeability...." *Department of Health & Social Services v. Sandsness*, 72 P.3d 299, 305 (Alaska 2003); *see also Mesiar v. Department of Fish and Game*, 964 P.2d 445, 450 (Alaska 1998). Like Arizona, it appears that Alaska would emphasize the foreseeability of harm and certainty in which the counsel could identify the third party in any test adopted.

Under either the California balancing test or the Restatement test, it is clear that joint pursuit of the accounting claims in the common interests of both Travelers and Klukwan created a unique situation where Sokol's representation was certainly intended to affect or benefit Klukwan. Foreseeability of harm is clear in this case. Travelers and Sokol knew that Klukwan was relying upon Sokol to reasonably prosecute the Peterson Sullivan claims, and had elected not to pursue its claims in reliance upon Sokol's lawsuit. Sokol's failure to timely file the Peterson Sullivan action, therefore, had the same impact upon Klukwan as it did Travelers: i.e. both lost a multi-million claim that would have mitigated the total losses and reduced Klukwan's liability to Travelers.

Klukwan has presented sworn statements that it told both Travelers and Sokol that it would forego its separate action if Sokol sued Peterson Sullivan. With such knowledge, it was clearly foreseeable that the failure to timely sue Peterson Sullivan would damage Klukwan, just as it damaged Travelers. The certainty of damages and connection between Sokol's untimely complaint and the injury are just as certain and close as Travelers' damages, which Sokol pursued against Peterson Sullivan.

_____

for the risk involved." *D.S.W.,* 628 P.2d at 555.

Both the balancing and Restatement tests raise concerns with the burden on the legal profession.  Sokol attempts to project a conflict of interest regarding Traveler's action against *South Coast's former directors and officers* as a reason for not imposing a duty of care.  In support of this argument, he notes a disagreement regarding the extent to which the settlement agreement between Travelers and Klukwan addressed any actions against the officers.  Any such disagreement, however, was contained exclusively to the separate claims against South Coast's officers.  There was no conflict of interest in the pursuit of the claims against Peterson Sullivan.  This was inherently recognized by Sokol's express representation of Klukwan in the effort to recover Peterson Sullivan's work papers.  As explained above, the common interest in the accountant claims supports a finding of a direct attorney client relationship.  *Brandon*, 681 N.W.2d at 641-42; *see also Bohn v. Cody,*, 832 P.2d at 76 (discussing policy of preventing harm and burden on legal profession).

The strict application of the third party beneficiary test is the most stringent test.  However, Sokol has misapplied the test.  The intent to benefit a third party is measured objectively. *Ramos v. Arnold*, 169 P.3d 482 (Wash. App. 2007); *Hickman v. Safeco Ins. Co. of America,* 695 N.W.2d 365 (Minn. 2005).  As explained in *Ramos*, "the key is whether performance of the contract would necessarily and directly benefit the party claiming to be a third party beneficiary."  *Ramos,* 169 P.3d at 487.  Here, the intent of the parties was always to reduce the total loss on the bonded projects. As such, Klukwan, who was ultimately responsible for the loss, was always a direct, necessary, and intended beneficiary of the Peterson Sullivan action.  Sokol himself recognized this when he complained that

Klukwan was interfering with Travelers' mitigation of the loss.[38]  What Sokol says now about his subjective intent is irrelevant, and wholly contrary to the undisputed course of conduct.   Even under the third party beneficiary test, the unique set of facts and circumstances require that the law recognize that Sokol owed Klukwan a duty of care when filing the Peterson Sullivan action.

## CONCLUSION

Given the mutuality of interest in reducing the losses on South Coast's construction jobs, the joint pursuit of the accountant's work papers, the course of dealing between the parties, and Klukwan's known reliance, Sokol owed Kluwkan an enforceable duty of care to timely file the Peterson Sullivan lawsuit.  Travelers and Sokol invited Klukwan to rely upon its pursuit of the Peterson Sullivan claims.  Sokol never defined the extent of his express representation of Klukwan and acquiesced in Klukwan's understanding that any action against Peterson Sullivan would be pursued for their mutual benefit.  Whether treated as an express attorney client relationship, or a duty to a third party, Klukwan was a clearly known party that would foreseeably be harmed if Sokol failed to timely file the Peterson Sullivan action.  There are no legal, or policy reasons why Sokol should be excused from the legal duties placed on other professionals for their negligent behavior.  Accordingly, Sokol's motion for summary judgment should be denied, and summary judgment should be entered that Sokol owed Klukwan a legal duty of care to timely file the Peterson Sullivan action.

---

[38]        Deposition Exhibit 79.

Respectfully submitted in Anchorage, Alaska, this 21st day of July, 2008.

CHRISTIANSON & SPRAKER
Counsel for Defendants Klukwan, Inc., South
Coast, Inc. and Chilkat's Portage Cove
Development Company

By: /s/ Gary Spraker
    Gary Spraker
    CHRISTIANSON & SPRAKER
    911 West 8th Avenue, Suite 201
    Anchorage, AK 99501
    Phone: (907) 258-6016
    Fax: (907) 258-2026
    Email: gary@cslawyers.net
    Alaska Bar No. 9107066
    Attorneys for Defendants

Undersigned certifies that on July 21, 2008, a true and correct copy of the above document was served on:

James D. Gilmore, Esq.
James T. Hopkins, Esq.
Robert L. Olson, Esq.
Garth A. Schlemlein, Esq.
Richard E. Spoonemore, Esq.

By first class mail, if noted above or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.
By: /s/ Susan Vanschooten
    Susan Vanschooten