# Exhibit B

Deposition Testimony of

Jan Sokol

Declaration of Gary Spraker
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)

# Index to Sokol Deposition

| Page # |
|--------|
|        |
| 15     |
| 16     |
| 17     |
| 18     |
| 19     |
| 20     |
| 21     |
| 22     |
| 23     |
| 24     |
| 25     |
| 26     |
| 27     |
| 28     |
| 29     |
| 30     |
| 224    |

Jan D. Sokol                                    October 4, 2007

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF ALASKA

 3

 4   TRAVELERS CASUALTY AND SURETY

 5   COMPANY of AMERICA, a Connecticut

 6   corporation,

 7              Plaintiff,

 8   V.        No. A05-00063 (TMB)

 9   SOUTH COAST, INC., an Alaska

10   Corporation, KLUKWAN, INC.,

11   an Alaska Native Village

12   Corporation, and CHILKATS'

13   PORTAGE COVE DEVELOPMENT

14   COMPANY, an Alaska corporation,

15              Defendants.

16   _____

17

18   SOUTH COAST, INC., an Alaska

19   Corporation, KLUKWAN, INC.,

20   an Alaska Native Village

21   Corporation, and CHILKATS'

22   PORTAGE COVE DEVELOPMENT

23   COMPANY, an Alaska corporation,

24   Counterclaim and

25   Third Party Plaintiff,
```



NAEGELI
REPORTING
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA       Spokane, WA      Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000      208.667.1163

Court Reporting      Trial Presentation    Videoconferencing      Videography

Jan D. Sokol

October 4, 2007

2

1   V.

2   TRAVELERS CASUALTY AND SURETY . . .

3   COMPANY of AMERICA, a Connecticut

4   corporation, STEWART SOKOL & GRAY,

5   L.L.C., and JAN D. SOKOL,

6   Counterclaim and

7   Third Party Defendants.

8   _____

9

10          DEPOSITION OF JAN D. SOKOL

11      TAKEN ON BEHALF OF THE PLAINTIFF

12        THURSDAY, OCTOBER 4, 2007

13              - - -

14  BE IT REMEMBERED THAT, pursuant to the Oregon Rules

15  of Civil Procedure, the deposition of JAN D. SOKOL

16  was taken before Janette Dukic, Court Reporter and

17  Notary Public, on Thursday, October 4, 2007,

18  commencing at the hour of 8:35 a.m., the

19  proceedings being reported at 2300 Southwest First

20  Avenue, Suite 200, Portland, Oregon.

21

22

23

24

25


NAEGELI
REPORTING
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR      Seattle, WA      Spokane, WA      Coeur d'Alene, ID
503.227.1544      206.622.3376     509.838.6000      208.667.1163

Court Reporting      Trial Presentation      Videoconferencing      Videography

Jan D. Sokol

October 4, 2007

3

```
1    APPEARANCES
2    RICHARD E. SPOONEMORE
3    Sirianni Youtz Meier & Spoonemore
4    1100 Millenium Tower, 719 Second Avenue
5    Seattle, Washington  98104
6    Phone:  206.223.0303
7    Fax:  206.223.0246
8    E-mail:  rspoonemore@sylaw.com
9    Appearing on behalf of the Plaintiff
10
11   JAMES GILMORE
12   Clapp Peterson VanFlein Tiemessen Thorsness
13   711 H Street, Suite 620
14   Anchorage, Alaska  99501
15   Phone:  907.272.9272
16   Fax:  907.272.9586
17   E-mail:  anch@cplawak.com
18   Appearing on behalf of the Counterclaim and Third Party
19   Defendants Stewart Sokol & Gray, and Jan Sokol
20
21
22
23
24
25
```

**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

| Portland, OR | Seattle, WA | Spokane, WA | Coeur d'Alene, ID |
| 503.227.1544 | 206.622.3376 | 509.838.6000 | 208.667.1163 |

Court Reporting     Trial Presentation     Videoconferencing     Videography

Jan D. Sokol

October 4, 2007

4

1 | APPEARANCES (Continued)

2

3 | GARY A. SPRAKER

4 | Law Office of Christianson & Spraker

5 | 911 West 8th Avenue, Suite 201

6 | Anchorage, Alaska  99501

7 | Phone:  907.258.6016

8 | Fax:  907.258.2026

9 | E-mail:  gary@cslawyers.net

10 | Appearing on behalf of the Defendants South Coast, Inc.,

11 | Klukwan, Inc., and Chilkats' Portage Cove Development

12 | Company

13

14

15

16

17

18

19

20

21

22

23

24

25



**NAEGELI**
**REPORTING**
C O R P O R A T I O N

**800.528.3335**
**www.NaegeliReporting.com**
503.227.7123 FAX

Portland, OR     Seattle, WA     Spokane, WA     Coeur d'Alene, ID
503.227.1544     206.622.3376    509.838.6000    208.667.1163

Court Reporting     Trial Presentation     Videoconferencing     Videography

```
 1   BY MR. SPOONEMORE:
 2        Q.    Let me have you look at the first page of what
 3   was marked as Exhibit 83.
 4              Can you identify that e-mail for me?
 5        A.    Oh, I am sorry.  I thought I did.
 6              Yes, this is one that I sent to Cabot
 7   Christianson.  This was sent on January 9th, 2004.
 8        Q.    Again, I am looking at the very last sentence
 9   of the text of this e-mail.  It says:
10              (Reading)  Please advise if I can file the
11   petition on behalf of both Travelers and Klukwan.
12              And was the intent and the context of this
13   e-mail in the reference to petition only the petition
14   that you were proposing to file in the United States
15   District Court, Western District of Washington, to
16   obtain work papers?
17        A.    Yes.
18        Q.    With respect to the idea of seeking work
19   papers through a Federal Rule of Civil Procedure 27
20   petition, whose idea was that originally?
21        A.    I believe it was mine.
22        Q.    Did you discuss that idea with
23   Mr. Christianson?
24        A.    I believe that initially I discussed it with
25   Mr. Langfitt, and I believe we had a telephone
```

**NAEGELI**
**REPORTING**
**CORPORATION**

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

| Portland, OR | Seattle, WA | Spokane, WA | Coeur d'Alene, ID |
|---|---|---|---|
| 503.227.1544 | 206.622.3376 | 509.838.6000 | 208.667.1163 |

Court Reporting    Trial Presentation    Videoconferencing    Videography

1   conference.  I don't know if it was before this e-mail
2   or after this e-mail.
3            I would think it would have been before --
4   where we discussed the fact that neither Klukwan --
5   well, Klukwan was not able to obtain the work papers,
6   and I believe I had sent a letter requesting the work
7   papers directly from Peterson Sullivan and hadn't had
8   any success, and we suggested following filing this
9   petition under Federal Rule 27.
10       Q.    And why was it that you were asking for
11   Klukwan's involvement with respect to obtaining the work
12   papers?
13       A.    Well, I discussed this with Mr. Langfitt.  We
14   felt that the Court would be much more sympathetic if
15   the client, Klukwan/South Coast, was requesting work
16   papers from their own accountants than if some third
17   party such as Travelers was requesting them, and
18   Mr. Langfitt agreed, and that's why I think we had a
19   conference call with Mr. Christianson, and I think
20   Mr. Crandall was on the line, also.
21       Q.    Do you recall Mr. Christianson or Mr. Crandall
22   ever indicating to you at any time that they felt that
23   the petition would not be successful?
24       A.    No.
25            I am not sure they had an opinion at all on

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

**NAEGELI**
**REPORTING**
**CORPORATION**

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376          509.838.6000          208.667.1163

Court Reporting          Trial Presentation          Videoconferencing          Videography

Jan D. Sokol

1    it, but they never -- certainly never said it.

2        Q.    That was never, never expressed to you, that

3    yo recall?

4        A.    Not communicated to me, no.

5        Q.    Okay.  I am going to hand you to two more

6    exhibits that have previously been marked.

7              I have handed to you what has been previously

8    marked as Exhibit 84 to the Crandall deposition and

9    Exhibit 87 to Mr. Crandall's deposition.  Let me give

10   you a moment just to take a look at those.

11       A.    Okay.

12       Q.    Do you recall Mr. Christianson and/or

13   Mr. Crandall asking you if Travelers would be willing to

14   make concessions with respect to repayment agreement if

15   they participated in the petition process in the Western

16   District of Washington?

17       A.    I remember Mr. Christianson requesting such a

18   concession.

19       Q.    And what do you remember?

20             What concessions do you remember that he was

21   requesting to Travelers?

22       A.    Well, as I recall, I think the concession was

23   some portion of the net proceeds of any recovery in the

24   substantive action against the accountants.

25       Q.    When you say that the concession that they

**NAEGELI**

**REPORTING**

C O R P O R A T I O N

**800.528.3335**

www.NaegeliReporting.com

503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376        509.838.6000        208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

Jan D. Sokol

1    were asking for is the sum amount of the proceeds in a

2    potential action against Peterson and Sullivan would be

3    applied against the obligation or repayment agreement,

4    is that your understanding of what they were asking for?

5        A.    Yes, I believe that's accurate.

6        Q.    Okay.  Do you recall that that request was

7    made of you on multiple occasions?

8        A.    I can't say that for sure.  I do recall

9    talking to Chuck Langfitt, and he indicated to me that

10   Mr. Crandall and perhaps Mr. Christianson, combined, had

11   made that request on a number of occasions, and he

12   refused the request.

13            I can't tell you sitting here right now

14   whether Mr. Christianson made that request of me on a

15   number of occasions, but I do recall the issue.

16            I never spoke to Mr. Crandall separately from

17   Mr. Christianson.

18       Q.    Okay.  I understand.

19            Let me have you take a look at what was

20   previously marked as Exhibit 87, the second sentence.

21            I should ask you.  First of all, this is an

22   e-mail that you received from Mr. Christianson on or

23   about February 10th, 2004, correct?

24       A.    Correct.

25       Q.    I am looking now at the second paragraph.



**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

| Portland, OR | Seattle, WA | Spokane, WA | Coeur d'Alene, ID |
| 503.227.1544 | 206.622.3376 | 509.838.6000 | 208.667.1163 |

Court Reporting    Trial Presentation    Videoconferencing    Videography

1    There is like a sentence that says:

2                (Reading)   This e-mail will confirm our

3    previous discussions that Travelers will bear all costs

4    associated with bringing the suit and will indemnify

5    Klukwan from any claims associated with bringing or

6    prosecution of this suit.

7                My question to you is, do you recall prior to

8    February 10th, 2004, promising Mr. Christianson that

9    Travelers would, quote, indemnify Klukwan from any

10   claims associated with bringing a prosecution of this

11   suit?

12       A.    I recall there was a discussion.   I don't know

13   if it was between me and Mr. Christianson or whether

14   Mr. Langfitt and Mr. Crandall were also on the phone,

15   but they were concerned about if we lost the suit for

16   any reason -- well, number 1, they were concerned who

17   was gonna pay for my time bringing the suit.   And,

18   number 2, I think there was a concern expressed by

19   Mr. Christianson, well, what happens if there is a cost

20   bill or some other kind of fees that they try to seek

21   against them.

22                And I had a discussion with Mr. Langfitt about

23   that, and we agreed that Travelers would bear the cost

24   to bring that suit, and to the extent there was any cost

25   bill or anything associated with the prosecution, that



# NAEGELI
# REPORTING
## CORPORATION

**800.528.3335**
www.NaegeliReporting.com

503.227.7123 FAX

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376          509.838.6000          208.667.1163

Court Reporting          Trial Presentation          Videoconferencing          Videography

Jan D. Sokol

October 4, 2007

20

1    Travelers would pay those costs.

2        Q.    And this entire conversation about

3    indemnifying Klukwan and cost of suit was specific to

4    the petition to seek work papers in the Western District

5    of Washington, correct?

6        A.    Well, absolutely.    That's the context that

7    came up.

8              In fact, my recollection is it never came up

9    until the documents were sent to them, and then they

10   imposed this condition, which we agreed to, but it had

11   nothing to do with anything, but the petition.

12       Q.    And when you said the petition, you are

13   referring to the indemnification?

14       A.    Right, and it specifically only related,

15   because there was nothing else pending.

16       Q.    Was there any -- ever any discussion, that you

17   are aware of or that you participated in, where

18   Travelers made any commitments to the Klukwan Entities

19   or its counsel that it would bear costs associated with

20   bringing a subsequent action against Peterson and

21   Sullivan, if one was deemed appropriate?

22       A.    No.

23       Q.    Let me have you take a look at the third

24   paragraph of the first page of Exhibit 87.

25             I am going to hand you one other exhibit to



**NAEGELI**

**REPORTING**

C O R P O R A T I O N

**800.528.3335**

www.NaegeliReporting.com

503.227.7123 FAX

Portland, OR        Seattle, WA       Spokane, WA      Coeur d'Alene, ID
503.227.1544      206.622.3376      509.838.6000      208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

 1   read in connection with that, which is a document that

 2   was previously marked as Exhibit 88, and give you a

 3   moment to read and focus on the first e-mail block of

 4   that document.

 5        A.    Okay.

 6        Q.    Okay.  With respect to the third paragraph on

 7   Exhibit 87, it appears to be three sentences, which

 8   says:

 9             (Reading)  If Travelers wishes to bring a

10   substantive cause of action against P&S, Klukwan's

11   expectation is that the net litigation proceeds from

12   that suit will be applied first to the Klukwan/SCI note

13   to Travelers.  Also, as you are aware, Klukwan is

14   considering its own action against P&S and has developed

15.  some ideas about how to proceed.  You and I should

16   discuss.

17             With respect to that paragraph -- first of

18   all, did I read that correctly?

19        A.    That's what it appears to say, yes.

20        Q.    Okay.  Did you understand that, by this

21   paragraph, Klukwan was imposing a condition upon their

22   participation in the petition to be filed in the Western

23   District of Washington?

24        A.    No.

25        Q.    Did Mr. Christianson in any telephone


**N**AEGELI
**R**EPORTI**N**G
**C O R P O R A T I O N**

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR          Seatle, WA         Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000        208.667.1163

Court Reporting      Trial Presentation    Videoconferencing     Videography

1   conference or discussion with you, indicate to you that

2   as a condition of participating with Travelers in the

3   petition of the Western District of Washington, that

4   they would require Travelers to apply some or all of the

5   proceeds to the Klukwan/SCI note to Travelers?

6       A.    No.

7           What stands out and stands out to me right

8   here again is the word "expectation," and it was their

9   expectation all the time, and that was contrary to what

10   Mr. Langfitt had told Mr. Crandall and Mr. Christianson

11   and what he told me.

12       Q.    And did you at any time imply or suggest or

13   allude to the fact that Travelers might be willing to

14   consider the application of some of the Peterson and

15   Sullivan proceeds to the note to Travelers?

16       A.    I didn't, no.

17       Q.    Okay.

18           Let me have you take a look at what was

19   previously marked as Exhibit 88. I am looking at the

20   second paragraph, and that paragraph is referring to the

21   third paragraph on Exhibit 87, correct?

22       A.    That's correct.

23       Q.    And the first sentence reads:

24           With respect to the third paragraph, I know

25   Chuck and Tom have discussed this.



**NAEGELI**

**REPORTING**

C O R P O R A T I O N

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR
503.227.1544

Seattle, WA
206.622.3376

Spokane, WA
509.838.6000

Coeur d'Alene, ID
208.667.1163

Court Reporting      Trial Presentation      Videoconferencing      Videography

Jan D. Sokol

1          Did I read that correctly?

2     A.    Yeah.

3     Q.    Is that based on a conversation that you had

4  with Mr. Langfitt?

5     A.    Yes.

6          Mr. Langfitt told me a number of times, Tom

7  wanted this, would like that to happen, and he had that

8  conversation with Tom.

9     Q.    And did Mr. Langfitt indicate to you that he

10  had always rejected Tom's request to apply any proceeds

11  in a potential suit against Peterson and Sullivan to the

12  note owed to Travelers?

13    A.    Yes.

14    Q.    Did Chuck tell you at any time that he was

15  willing to apply proceeds of a potential case against

16  Peterson and Sullivan to the note?

17    A.    No, he never told me he ever agreed to it.

18    Q.    Okay.

19    A.    I mean it was always a discussion point, but

20  as far as I knew, he never agreed to that.

21    Q.    And, in fact, he told you on a number of

22  occasions that he had not agreed to that, correct?

23    A.    That's correct.

24    Q.    The next sentence reads:

25          While Travelers understands Klukwan's



**NAEGELI**
**REPORTING**
**C O R P O R A T I O N**

**800.528.3335**
**www.NaegeliReporting.com**
**503.227.7123 FAX**

Portland, OR          Seattle, WA          Spokane, WA          Coeur d'Alene, ID
503.227.1544          206.622.3376          509.838.6000          208.667.1163

Court Reporting          Trial Presentation          Videoconferencing          Videography

1    expectation, it is not consistent with the prior

2    arrangement between Klukwan and Travelers.

3            What was your intent in conveying that

4    sentence to Mr. Christianson?

5        A.    Well, I was just trying to tell him that based

6    on the conversations that I was aware of between

7    Mr. Langfitt and Mr. Crandall that that wasn't the

8    arrangement that they had made, and I was just

9    reiterating that.

10       Q.    And was it part of your point in writing that

11   sentence to disabuse them that that was Travelers'

12   expectation?

13           MR. SPRAKER:    Objection; form and foundation.

14           THE WITNESS:    Well, I think it is pretty

15   clear.    It says, Travelers understood Klukwan's

16   expectations, but that wasn't Travelers' expectation,

17   and that was the import of it.

18   BY MR. SPOONEMORE:

19       Q.    And the next sentence says:

20           Rather than continuing to disagree at this

21   point, let's get the petition filed and review the

22   documents received.

23           The next sentence:

24           We may be disagreeing about nothing if the

25   documents do not yield to viable claims.

**NAEGELI**

**REPORTING**

**C O R P O R A T I O N**

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR       Seattle, WA       Spokane, WA       Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000       208.667.1163

Court Reporting       Trial Presentation       Videoconferencing       Videography

1          And my question to you, first of all is, did I

2   read that correctly?

3      A.    Yes.

4      Q.    And was it your point in those two sentences

5   to indicate that Travelers did have a disagreement with

6   Klukwan and the Klukwan Entities, but that disagreement

7   shouldn't stand in the way of filing the petition?

8      A.    Yeah, there was a disagreement over that

9   issue.

10     Q.    I have just handed you an additional document

11  that was previously marked as Exhibit 89 to

12  Mr. Crandall's deposition.

13          Let me ask you, first of all, if you can

14  identify this document for me.

15     A.    It appears to be a fax to me from

16  Mr. Crandall, with a copy to Mr. Christianson.  It looks

17  like the Klukwan Board of Directors, and it enclosed a

18  copy of the petition that I believe was verified by

19  Mr. Crandall.

20     Q.    And to file the petition in the Western

21  District of Washington under Federal Rule 27, you needed

22  a signature from Mr. Crandall to indicate that he was

23  participating as a petitioner, correct?

24     A.    Yes.

25     Q.    And the date on what has been marked as



**NAEGELI
REPORTING**
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000        208.667.1163

Court Reporting      Trial Presentation      Videoconferencing      Videography

Jan D. Sokol

1  Exhibit 89 is February 17th, correct?

2      A.    The date on the fax cover sheet, and I believe

3  the date on the verification is the same.

4      Q.    And that's February 17th, 2004?

5      A.    '4, correct.

6      Q.    And that is after your e-mail marked as

7  Exhibit 88, which was February 13th, 2004, correct?

8      A.    Yes.

9      Q.    And on Exhibit 88, your e-mail to

10 Mr. Christianson, you sent a copy of that e-mail to

11 Mr. Crandall, correct?

12     A.    To Mr. Crandall and Mr. Langfitt.

13     Q.    When you received Mr. Crandall's signature on

14 the verification page on February 17th of 2004, did you

15 believe that Klukwan was authorizing you to proceed with

16 filing a petition in the Western District of Washington?

17     A.    Yes.

18     Q.    Were there any discussions that occurred

19 between February 13th and February 17th between you and

20 Mr. Crandall or you and Mr. Christianson where the topic

21 of the discussion was whether proceeds of a prior

22 suit -- or excuse me -- of a potential suit against

23 Peterson and Sullivan would be applied to the repayment

24 agreement on the note to Travelers?

25     A.    I don't believe so.  I don't recall any.

**NAEGELI**
**REPORTING**
**C O R P O R A T I O N**

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376        509.838.6000        208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

1    Sitting here today, I don't recall any.

2         I think the last thing was, let's agree to

3    disagree and see what happens in the petition lawsuit.

4    Q.    Do you recall any conversation between

5    February 13th, 2004 and February 17th, 2004, where

6    Travelers changed or altered their position with respect

7    to whether they would agree to apply the proceeds of any

8    suit against Peterson and Sullivan to the repayment

9    agreement and the note due to Travelers?

10   A.    No, they never changed that position.

11   Q.    I am handing you another document previously

12   marked in this case, Exhibit 49 to Mr. Langfitt's

13   deposition.

14        Let me give you a moment to review this

15   document.

16   A.    Okay.

17   Q.    I am focusing on the second, third and fourth

18   e-mail blocks on the first page of this exhibit.

19        Let me ask if you can identify the second

20   e-mail block as an e-mail that you sent to Mr. Langfitt

21   on or about February 11th, 2004.

22   A.    Yes.

23   Q.    And that was in response to an e-mail that

24   Mr. Langfitt sent you on that same date?

25   A.    Yes.



NAEGELI
REPORTING
C O R P O R A T I O N

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA      Spokane, WA      Coeur d'Alene, ID
503.227.1544       206.622.3376     509.838.6000     208.667.1163

Court Reporting     Trial Presentation    Videoconferencing    Videography

Jan D. Sokol

1      Q.    Which is, in return, in response to an e-mail

2   that you sent to Mr. Langfitt on February 10th, 2004,

3   correct?.

4      A.    Yes.

5             I believe I simply forwarded the e-mail that I

6   had gotten from Cabot Christianson, which,

7   interestingly, he did not copy Mr. Langfitt on, so

8   that's why I forwarded it to him with my comment.

9      Q.    And your comment here is:

10            (Reading)  FYI.  I never agreed that we would

11  indemnify Klukwan.  However, I don't see much risk.

12  What do you think?

13            Do I read that correctly?

14     A.    Yes.

15     Q.    And that comment is focused on the second

16  paragraph, Mr. Christianson's February 10th, 2004 e-mail

17  to you, correct?

18     A.    The second paragraph, right.

19     Q.    Correct.

20            Is there a particular reason why you didn't

21  comment on the third paragraph in your e-mail to

22  Mr. Langfitt?

23     A.    Well, I wasn't really involved in

24  conversations between Mr. Langfitt, Mr. Christianson and

25  Mr. Crandall regarding credits for litigation, so I was

NAEGELI
REPORTING
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544        206.622.3376       509.838.6000       208.667.1163

Court Reporting      Trial Presentation      Videoconferencing      Videography

1    just passing that information on to him.

2         Reading this, it would lead me to believe at

3    this time that that's probably the first time I heard

4    that, and that's why I was just passing it on to him.

5         Q.    And in Mr. Langfitt's e-mail to you of

6    February 11th, 2004, 1233, does he indicate to you what

7    Travelers' position is with respect to crediting any

8    proceeds of a potential Peterson and Sullivan suit

9    against the note of the Travelers?

10        A.    Absolutely.

11        Q.    And what is his position or Travelers'

12   position?

13        A.    That they were going to have a loss in excess

14   of the note, and any proceeds would be applied there

15   first.

16        Q.    And in any conversations that you ever had

17   with Mr. Langfitt or anybody else at Travelers, did that

18   position ever change?

19        A.    No, it did not.

20             I may have even had a conversation with

21   Mr. Langfitt about this during this time period, but he

22   had said before that Tom had requested that and that he

23   had refused to, and I think he is just putting that in

24   writing.

25        Q.    In your e-mail to Mr. Langfitt of February

**NAEGELI**

**REPORTING**

C O R P O R A T I O N

**800.528.3335**

www.NaegeliReporting.com

503.227.7123 FAX

Portland, OR        Seattle, WA        Spokane, WA        Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000      208.667.1163

Court Reporting        Trial Presentation        Videoconferencing        Videography

1  11th, 2004 at 12:50 p.m., you say:  Will do.

2          Then there are two more sentences.  The last

3  sentence says:  I will advise Cabot of the situation.

4          And the last sentence, I will advise Cabot of

5  the situation, was that -- well, what were you going to

6  advise Cabot of?  What specifically?

7      A.    I was going to tell them -- well, I was going

8  to respond to his request that, number 1, we indemnify

9  them, and, number 2, that his expectation, while we

10  acknowledged that was South Coast/Klukwan's expectation,

11  that's not the way it was gonna be with respect to

12  applying any proceeds on the note.

13      Q.    And is that what you, in fact, did in your

14  e-mail dated February 13th, 2004 that appears in Exhibit

15  88?

16      A.    Yes, that was the response based on my --

17  based on the e-mail with Mr. Langfitt, and, again, I

18  believe I had a conversation with him, also.

19      Q.    Do you recall having any telephone conference

20  or conversation with Mr. Christianson after February 11,

21  2004, 12:50 p.m., where you advised him of the situation

22  or endeavored to do so?

23      A.    I can't recall, sitting here at this time.

24          We had a couple of conversations about the

25  petition.  They may have included this expectation, may

NAEGELI
REPORTING
CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR      Seattle, WA       Spokane, WA       Coeur d'Alene, ID
503.227.1544      206.622.3376      509.838.6000      208.667.1163

Court Reporting      Trial Presentation      Videoconferencing      Videography

Jan D. Sokol

1    Q.    Did anyone ever tell you that Klukwan had

2    decided not to sue Peterson and Sullivan?

3    A.    At this time?

4    Q.    At any time.

5    A.    No.  No one ever formally told me that.

6    Q.    Did you ever send an engagement letter to

7    Klukwan for any matter?

8    A.    No.

9    Q.    After the work product action, did you ever

10   send a disengagement letter?

11   A.    No.

12            (Whereupon, Letter, 12-16-04, 001129 - 132,

13   was marked Exhibit 267 for identification.)

14   BY MR. SPRAKER:

15   Q.    Could you take a look at what has been marked

16   as 267 and identify it for the record, please.

17   A.    It appears to be a letter I wrote Cabot

18   Christianson, dated December 16th, 2004.

19   Q.    And the primary focus of this letter, as I

20   understand it, is a discussion regarding what has been

21   referred to as the affiliate defense.

22            Is that a fair characterization?

23   A.    That was the substantial reason for this, I

24   think it had also to do with, apparently, they had some

25   default in payments.

**800.528.3335**
www.NaegeliReporting.com
503.227.7123 FAX

**NAEGELI**
**REPORTING**
**C O R P O R A T I O N**

Portland, OR       Seattle, WA       Spokane, WA       Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000      208.667.1163

Court Reporting     Trial Presentation     Videoconferencing