# Exhibit E

Deposition Testimony of

Charles W. Langfitt - 2007

Declaration of Gary Spraker
Travelers Casualty and Surety v. South Coast, Inc., et al.
Case No. A06-00063 (TMB)

# Index to Langfitt Deposition

| Page # |
|--------|
|        |
| 209    |
| 210    |
| 212    |
| 220    |
| 221    |
| 224    |
| 248    |
| 253    |
| 254    |
| 315    |
| 316    |

Case 3:06-cv-00063-TMB    Document 155-8    Filed 07/21/2008    Page 3 of 14

Travelers Casualty vs. South Coast, Inc.    Charles Langfitt, Vol. 2    September 11, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

TRAVELERS CASUALTY AND )
SURETY COMPANY OF AMERICA, )
a Connecticut corporation, )
)
        Plaintiff, )
)
  vs. ) No. A06-00063 (TMB)
)
SOUTH COAST, INC., an Alaska )
corporation, KLUKWAN, INC., an )
Alaska Native Village corporation, )
and CHILKATS' PORTAGE COVE )
DEVELOPMENT COMPANY, an Alaska )
corporation, )
)
        Defendants. )
_____)
SOUTH COAST, INC., an Alaska )
corporation, KLUKWAN, INC., an )
Alaska Native Village corporation, )

Deposition Upon Oral Examination

of

CHARLES W. LANGFITT

VOLUME II

Taken at 1601 Fifth Avenue
Seattle, Washington

DATE:  September 11, 2007

REPORTED BY:  Patricia A. Blevins, CCR
              CCR NO. 2484

STARKOVICH REPORTING SERVICES
(206)323-0919

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 4 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

```
and CHILKATS' PORTAGE COVE          )
DEVELOPMENT COMPANY, an Alaska      )
corporation,                        )
                                    )
        Counterclaimants and        )
        Third-Party Plaintiffs,     )
                                    )
    vs.                             )
                                    )
TRAVELERS CASUALTY AND SURETY       )
COMPANY OF AMERICA, a Connecticut   )
corporation, STEWART, SOKOL &       )
GRAY, LLC, and JAN D. SOKOL,        )
                                    )
        Counterclaimants and        )
        Third-Party Defendants.     )
```

STARKOVICH REPORTING SERVICES
(206)323-0919

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 5 of 14

Travelers Casualty vs. South Coast, Inc.    Charles Langfitt, Vol. 2         September 11, 2007

Page 209

1   have any conversations with Tom Crandall or anybody in
2   Klukwan regarding filing against Peterson Sullivan?
3       A.   I'm sorry.  When was your start date?
4       Q.   June.  Actually -- let's go in June.
5       A.   I have an email, I think, exchange with Tom, and
6   basically what I said was we were looking at it, and I'd
7   keep him posted.
8       Q.   Did you ever tell him that Travelers had made a
9   decision to go ahead and sue Peterson Sullivan?
10      A.   No, I didn't.
11      Q.   Why not?
12      A.   I'm not really sure.  I just -- you know, I was up
13  doing something else and hadn't gotten back to telling him.
14  I told him we were thinking about it, keep him posted, and I
15  didn't happen to loop back to him.
16      Q.   Did you send a copy of the complaint to Klukwan?
17      A.   No.  I had no obligation to do so.
18      Q.   Is that the time you were aware that Klukwan was
19  still interested in pursuing Peterson Sullivan?
20      A.   You know, Tom had mentioned, off and on, some
21  thoughts about doing that.  But, I mean, that's his
22  situation, not mine.
23      Q.   Did you have any conversations or discussions
24  about wanting Klukwan to sue Peterson Sullivan?
25      A.   No, I didn't have that type of a conversation.  I

Case 3:06-cv-00063-TMB    Document 155-8    Filed 07/21/2008    Page 6 of 14

Travelers Casualty vs. South Coast, Inc.    Charles Langfitt, Vol. 2    September 11, 2007

Page 210

1  know that Tom wanted to sue them and he expressed an
2  interest of wanting to ride our coattails, and I had told
3  him no.
4      Q.   What do you mean by that?
5      A.   Basically, he wanted us to incur the expense and
6  go ahead and push the litigation against them, and he wanted
7  to try to ride our coattails, just as the term implies, and
8  I had always told him no.
9      Q.   But isn't that really what happened?
10     A.   No.
11     Q.   Why not?
12     A.   Because Tom wanted to and attempted on a couple of
13  occasions to renegotiate the agreement to have whatever is
14  going to come out of these recoveries apply directly against
15  the promissory note, and I told him no.
16     Q.   There's some emails about that, and we'll get to
17  them.
18     A.   Yep.
19     Q.   But you said you wanted him to ride your
20  coattails.
21     A.   I didn't say I wanted him to ride my coattails.
22  I'm saying he wanted to ride my coattails.
23     Q.   Fair enough.
24     A.   And I said, "No thank you."
25     Q.   Understood.

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 7 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

Page 220

1            (Exhibit 146 marked for
2                identification.)
3    Q.   Document 146 is what appears to be an email from
4  you, to Jan Sokol and Jordan Rosenfeld. Actually, I
5  apologize. This was previously marked as 121. We're
6  duplicating, here. And this is continuing the conversation
7  regarding the work paper.
8            Do you recall if this is the result of a
9  conversation that you had with Mr. Crandall?
10           MR. HOPKINS: Objection; vague and ambiguous,
11 foundation.
12   A.   I did have a conversation with Tom.
13   Q.   Do you recall the substance of that conversation?
14   A.   Tom indicated he wanted to pursue Peterson, too,
15 and despite me continuing trying to cut my coattails off, he
16 suggested he wanted to ride them, and I was discouraging him
17 from doing so, saying no.
18   Q.   And the email does state, "Tom advised that they
19 intend to pursue Peterson, too, although I anticipate they
20 will want to ride our coattails."
21           So this is not the first time you've used "ride
22 our coattails." You are interpreting or meaning "ride our
23 coattails" as having Travelers sue Peterson Sullivan,
24 correct?
25   A.   I don't know what Tom -- what I know is that Tom,

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 8 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

Page 221

1  in one fashion or another, wanted to have the benefit of
2  whatever we were doing, even though I expressly told him no,
3  that this is not the case. So I don't know whether he's
4  talking about filing a suit and just trying to get what he
5  can off of what information we've got. But anything else, I
6  mean, I was very consistent in telling him, Tom, no. I mean
7  you're not -- this is our piece, not yours. I'll keep you
8  posted.
9      Q.  Okay. But it sounds like, when you've given me
10  that answer, you're focusing on the ultimate recovery and
11  application of any proceeds.
12      A.  No. I mean even the process, because, you see,
13  Tom -- if you look at what I wrote here, Tom advised he
14  intended to pursue Peterson, too, so that means him
15  independently filing their own litigation against Peterson.
16  And I'm saying although I anticipate they want to ride our
17  coattails, okay, experts, a lot of other stuff, you know,
18  I've already got someone looking at it. So, I mean, riding
19  coattails is I pay for things, they get to use it, and I
20  don't want to have any part of that, and it's not part of
21  the deal.
22      Q.  And when you say "the deal," what do you mean?
23      A.  Repayment agreement.
24      Q.  Okay. We talked about differences between
25  Travelers' lawsuit against directors and officers versus

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 9 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

Page 224

1          (Exhibit 147 marked for
2          identification.)
3     Q.   Okay.  This is Document 147.  I'm handing you
4 Document 147, an email from Jan Sokol, to Cabot
5 Christianson, and copied to you, dated Friday, January, 9,
6 2004, regarding Travelers/South Coast/Accountant work
7 papers.  Do you recall this email?
8     A.   Yes.
9     Q.   It states, "I have had no further response to my
10 request for the work papers from either the accounting firm
11 or the lawyer."  That's the subject matter we've just been
12 talking about regarding Jordan conferring with Tom, Tom
13 sending letters; is that correct?
14     A.   Yes.
15     Q.   "I want to proceed with the filing of the petition
16 under Fed. R. Civ. P. 27."  Did you have an understanding
17 what Federal Rules Civil Procedure 27 was?
18     A.   I believe there's some emails where Jan, in
19 response to -- a response to my September 9 email, Jan
20 brought up using this process with Rule 27, and I think he
21 may have recited it off the email.  Again, I can't remember
22 whether I was cross-copied on it or not, but there's an
23 explanation about what it is.
24          And so in response to that email, there is an
25 email from Jan, because I'm saying there I don't know what

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 10 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

Page 248

1    A.   Yes.

2    Q.   Okay. The second line of your response, "We are
3 paying the costs, they are getting a free ride, and it was
4 never part of the deal," I'm interpreting "they are getting
5 a free ride" -- actually, what do you mean, "they are
6 getting a free ride"?

7    A.   Since they were going to be signing the petition,
8 but we're paying for it, whatever we're going to dig up out
9 of it is something that they're going to have access to. So
10 I'm paying the costs, and that information that gets coughed
11 up out of it, they're going to get access to the
12 information.

13   Q.   Well, it sounds like it actually is applying to
14 any substantive action that is later filed, as well, because
15 the next line reads, "We will have a loss in excess of the
16 note, and we should be able to apply any recovery there, not
17 against the note."

18   A.   Yep. It applies to both.

19   Q.   Okay. And that language seems to be addressing,
20 if you'll turn back to the February 10, 2004, email, the
21 third paragraph from Cabot, which reads, "If Travelers
22 wishes to bring a substantive cause of action against P & S,
23 Klukwan's expectation is that the net litigation proceeds
24 from that suit will be applied first to the Klukwan/SCI note
25 to Travelers. Also, as you are aware, Klukwan is

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 11 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

Page 253

1  would bring it up, and he was looking for an opportunity to
2  have it credited against -- this recovery credited against
3  the note, and I told him no.
4      Q.  So a couple days before?  A couple of weeks
5  before?  A couple of months before?
6      A.  A couple of times.
7      Q.  And the most recent?
8      A.  Would have been months before this particular
9  conversation.
10     Q.  Okay.  Flipping back to 149, the top of that email
11 is -- it looks like a transmittal from you, to Kevin Lybeck,
12 which I believe you testified yesterday is your direct
13 superior.
14     A.  Yes.
15     Q.  Why is that being sent to Mr. Lybeck on May 5,
16 2006?
17     A.  Probably just to bring him up to date about what's
18 going on in this current litigation, just sending him some
19 of the file material.
20     Q.  Okay.  And this is May 05, 2006, which would have
21 been after Klukwan's answer, counterclaim and third-party
22 claim against Mr. Sokol.  Are you having discussions with
23 Mr. Lybeck regarding any potential claims against Mr. Sokol?
24     A.  Yes.  I mean the discussion was, This is what's
25 happened.  This is the situation.  Here are some documents

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 12 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

Page 254

1   that relate to that time frame.
2       Q.   Is that for the purpose of evaluating any claims
3   against Mr. Sokol?
4       A.   More for the purpose of just having a discussion
5   with Kevin and showing him what was going on at that time
6   frame.
7       Q.   My understanding is that Travelers had entered
8   into a tolling agreement with Mr. Sokol regarding any
9   negligence claims they may have against them for filing the
10  lawsuit against Peterson Sullivan. Was such a tolling
11  agreement entered?
12      A.   Yes.
13      Q.   Was there ever any discussions about getting a
14  tolling agreement with Peterson Sullivan?
15      A.   No.
16           I don't mean to interrupt. Any ideas on lunch?
17                          (Discussion off the record.)
18                          (The noon recess was taken
19                           at 11:35 a.m.)
20
21
22
23
24
25

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 13 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

Page 315

1  that the underwriters knew about other underbids and were
2  satisfied by discussions with South Coast and then went
3  ahead and wrote the bonds anyway?
4      A.   I don't know.  I know that this one, in
5  particular, and I'm not sure what other information was in
6  there.
7      Q.   Your source of information in this was your review
8  of the underwriting file as opposed to a conversation you
9  may have had with Mr. Heilisen or Mr. Hombach?
10     A.   Yeah.  I mean it was in a memo in the file is what
11 I remember.  I think Brent was the author.
12     Q.   Okay.  You had mentioned also earlier today or
13 possibly late yesterday afternoon that there was no
14 retention letter with the Sokol firm for the representation
15 the Sokol firm provided on the South Coast CPA lawsuit.
16     A.   Yeah.  We did not have a separate scope letter
17 with a retention letter for this engagement.
18     Q.   And you said sometimes you did have such a letter
19 with the Sokol firm on some other assignments.
20     A.   Pretty rare.  I mean we've been doing business
21 with them for so long, it's not often that I ever got such a
22 letter.
23     Q.   My sense is, and correct me if I'm wrong, but that
24 your relationship was such that you could pick up the phone
25 and call John Sokol or perhaps another member of the firm

Case 3:06-cv-00063-TMB   Document 155-8   Filed 07/21/2008   Page 14 of 14

Travelers Casualty vs. South Coast, Inc.   Charles Langfitt, Vol. 2   September 11, 2007

Page 316

1  and say, I've got this specific question about this specific
2  issue, what's your take on this. Is that basically what
3  your relationship was like?
4       A.   It was a close relationship, yes.
5       Q.   All right. And the point I'm trying to make is
6  you could go to the firm for a quick opinion about an
7  isolated legal issue without involving the firm in the
8  bigger picture, the bigger concern that you may have had; is
9  that correct?
10      A.   Yes.
11      Q.   And wasn't that the sense of that first email that
12 you sent to Jan Sokol in this case about the D & O claim,
13 where you sent him those materials, that this was, at that
14 time, a specific request for him to consider the D & O
15 claims?
16      A.   Not really, because what we were looking at is a
17 situation where here's the D & O material. Here's
18 everything else we're looking at. We've got to make sure
19 that we're not going to have a problem claims made policy,
20 to make sure that's squared away, and then we had more
21 coming. And so basically within that short time frame, I
22 had Jan working on both the CPA matter as well as the D & O
23 matter.
24      Q.   Why is there, for that email, no reference, in any
25 communication I've seen, with Jan about the CPA matter?