Garth A. Schlemlein, ASBA # 8602011
James T. Hopkins, *Pro Hac Vice*
Robert L. Olson, *Pro Hac Vice*
Schiffrin Olson Schlemlein & Hopkins, PLLC
1601 Fifth Avenue, Suite 2500
Seattle, WA  98101
Telephone:  (206) 448-8100
Fax:  (206) 448-8514

Richard E. Spoonemore, *Pro Hac Vice*
Sirianni Youtz Meier & Spoonemore
719 Second Avenue, Suite 1100
Seattle, WA  98104
Telephone:  (206) 223-0303
Fax:  (206) 223-0246

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY company of America, A Connecticut corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>SOUTH COAST, INC., an Alaska corporation, KLUKWAN, INC., an Alaska Native Village corporation, and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation,<br><br>        Defendants.<br><hr>SOUTH COAST, INC., an Alaska corporation, KLUKWAN, INC., an Alaska Native Village corporation, and CHILKATS' PORTAGE COVE DEVELOPMENT COMPANY, an Alaska corporation,<br><br>        Counterclaim and<br>        Third Party Plaintiff, | Case No. A06-00063 (TMB)<br><br>TRAVELERS' CONSOLIDATED:<br><br>RESPONSE TO SOKOL'S MOTION FOR SUMMARY JUDGMENT<br><br>AND<br><br>REPLY IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT RE: NEGLIGENCE OF SOKOL |

v.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, a Connecticut
corporation, STEWART SOKOL & GRAY
L.L.C., and JAN D. SOKOL,

           Counterclaim and
           Third Party Defendants.

_____

TRAVELERS CASUALTY AND SURETY
company of America, A Connecticut
corporation,

           Plaintiff and
           Cross Claim Plaintiff;

v.

STEWART SOKOL & GRAY L.L.C., and
JAN D. SOKOL,

           Cross Claim Defendants.

## I.  LAW AND ARGUMENT

Jan Sokol and Stewart Sokol & Gray LLC (collectively "Sokol") failed to do even basic research into Alaska's statute of limitations accrual rule.  If Sokol had, the research would have revealed that the statute accrues on *the earlier* of:

(1)   "the date when [the] plaintiff reasonably should have discovered the existence of all essential elements of the cause of action"

     ***or***

(2)   "the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights."

*John's Heating Service v. Lamb*, 46 P.3d 1024, 1031-1032 (Alaska 2002).[1]

---

[1] *See also Cameron v. State*, 822 P.2d 1362, 1366 (Alaska 1991); *Bauman v. Day*, 892 P.2d 817, 825 (Alaska 1995); *Yurioff v. American Honda Motor Co., Inc.*, 803 P.2d 386, 388 (Alaska 1990); *Sopko v. Dowell Schlumberger, Inc.*, 21 P.2d 1265, 1271 (Alaska 2001); *Wage v. Cutter Biological Div. of Miles Laboratories, Inc.*, 926 P.2d 1145, 1148 (Alaska 1996); *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 (Alaska 1988); *Preblicy v. Zorea*, 996 P.2d 730, 734 (Alaska 2000); *Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 643 (Alaska 1990).

At no time prior to suit being filed did Sokol ever advise Travelers that inquiry notice, the second potential date, was itself sufficient for the statute to accrue. Sokol misinformed Travelers – *twice* – as to the relevant test.  Sokol concedes, as he must, that he only advised Travelers about the first potential date before bringing the underlying action.  He missed the second.  As Sokol wrote:

> "We should be mindful of the statute of limitations; however, it is unclear to me when we would have 'discovered' the wrongful acts because we are still trying to determine if there were wrongful acts."  (Spoonemore Decl. (Dkt. 130), *Exh. C*.)

> "By the way, in Alaska, the statute of limitations for tort claims is 2 years.  While our notice to the insurer was given in June 2003, it is not clear to me when we 'discovered' the misrepresentations."  (Spoonemore Decl., *Exh. D*.)

Sokol's advice to Travelers was wrong.  *Compare* Spoonemore Decl., *Exhs. C* and *D* with *John's Heating Service*, 46 P.3d at 1031-1032.  It was wrong because Sokol never researched Alaska statute of limitations law until after the action had been filed.  Spoonemore Decl., *Exh. M*, p. 18 (no research on Alaska's accrual rule conducted before filing); *Exh. N* (same); *Exh. M*, pp. 19, pp. 13-14, 16 (accrual research conducted, for the first time, after filing complaint).  By the time Sokol realized that Alaska law included the second potential date, it was too late. The statute of limitations had passed.  Spoonemore Decl., *Exh. E, Exh. B*, p. 8.

Sokol failed in his duty to ascertain when the statute of limitations accrued.  As Mallen explains:

> The most frequent situation, not requiring expert testimony, is a statute of limitations or other time limitation *missed because of the attorney's inadvertent failure to ascertain* or properly calendar the date *when suit or action must be pursued*.

Mallen, Ronald E. and Smith, Jeffrey M., LEGAL MALPRACTICE § 34:20, pp. 1178 (2008 Ed.).   Although expert testimony is not necessary, Travelers nevertheless has an opinion that Sokol fell below the standard of care for attorneys in Alaska. Declaration of Brewster H. Jamieson, ¶¶ 7-10.  Mr. Jamieson explains the obvious – Sokol breached his duty to ascertain when the statute would run:

> By early June 2004, Mr. Sokol had everything he needed to file suit against Peterson Sullivan (and he could have had all of this well prior, if he would have made himself aware of the statute of limitations date), including a belief that such a suit would satisfy the requirements of Civil Rule 11. But what he did not have was a clear understanding of *when* time would run out for filing of that lawsuit.  **He had a duty to determine that, but did not, and the consequence was that the suit was untimely and ultimately dismissed for that reason.  This was a breach of the standard of care that a lawyer owes to his client**.

Jamieson Decl., ¶ 10 (italic in original; bold, italic added).

Not only was Sokol's failure to properly ascertain the relevant accrual date a breach of duty, his admitted failure to research Alaska law and resulting errant advice to Travelers is also a breach of duty:

> When rendering advice to a client, '[A]n attorney assumes an obligation to his client to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem.'   This includes a duty to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques."

*Janik v. Rudy, Exelrod & Zieff*, 119 Cal.App.4th 930, 937 (Cal. App. 2004) (citation omitted).  *See also Doe v. Hughes, Thorsness, Gantz, Powell & Brundin*, 838 P.2d 804, 807 (Alaska 1992) ("An important part of an attorney's duty to a client is the duty to *advise* the client of action the client should take in a given set of circumstances"); *Bush*

*v. O'Conner*, 791 P.2d 915, 920 (Wash. App. 1990) ("Under common law, an attorney unquestionably has a duty to investigate the applicable law and disclose the results to his clients . . .").

There is no factual dispute over whether Sokol was retained by Travelers to pursue the Peterson Sullivan litigation.  He was.  From that retention flows common law legal duties, including the duties to ascertain the statute of limitation accrual date and conduct basic research.  The precise "nature and extent" of these legal duties must be decided by the Court, and can be determined on summary judgment. *Smith v. State*, 921 P.2d 632, 634 (Alaska 1996)[2]; *Doe v. Hughes, Thorsness, Gantz, Powell & Brundin*, 838 P.2d 804, 807 (Alaska 1992) (lawyer's duty determined as a matter of law); *Nichols v. Keller*, 15 Cal.App.4th 1672, 1682 (Cal App. 1993) (In legal malpractice case "[t]he question of the existence of a legal duty of care in a given factual situation presents a question of law which is to be determined by the courts alone.").

In response, Sokol argues that (1) Travelers had a duty to inform him of when it was on inquiry notice[3]; (2) the two reports provided to him by Travelers did not contain evidence of wrongdoing[4]; (3) a complaint could not be ethically filed until an opinion from an expert was obtained[5]; (4) he knew the correct law all along[6]; and (5) the experts he retained opine that he met the standard of care.[7]  Travelers responds to each defense below.

---

[2]  Sokol is correct that, in *Smith*, there was a factual dispute over "the scope of assumed duty" by one of the parties to a contract.  *Smith*, 921 P.2d at 635.  Given this dispute, the court could not define the duty as a matter of law.  Here, however, there is no dispute over the scope of Sokol's duty.  He has all of the duties imposed upon him by common law in representing a client.  The general rule applies.

[3]  Defs' Mem., pp. 6, 8, 13, 15; Declaration of James D. Gilmore, *Exh. 7*, ¶ 9

[4]  Defs' Mem., pp. 3-4, 8, 14-15; Gilmore Decl., *Exh. 7*, ¶¶ 11-12.

[5]  Defs' Mem., pp. 4-5, 8; Gilmore Decl., *Exh. 7*, ¶ 10.

[6]  Gilmore Decl., *Exh. 7*, ¶ 5.

[7]  Gilmore Decl., *Exh. 10*; *Exh. 11*.

A.    **Travelers Had No Reason To Believe That The June 2002 E-mail Exchange Was Relevant Under Alaska Law Because Sokol Gave Travelers Incorrect Legal Advice Based On No Legal Research.**

Sokol and his experts argue that he should be exonerated from malpractice because Travelers did not provide him with an e-mail chain dated June 19 and 20, 2002.  This e-mail indicated that Travelers commenced an inquiry into possible negligence by Peterson Sullivan around those dates.  Sokol argues that (1) Travelers should have provided that e-mail to him before the litigation was filed and (2) if it had been provided then he would have timely filed the action.  Sokol's "blame the victim" approach fails to acknowledge the effect of his malpractice.

Sokol told Travelers that the statute of limitations did not accrue until *discovery* of wrongdoing.  Spoonemore Decl., *Exh. C*, *Exh. D*.  The June 19-20 e-mail, however, has nothing to do with "discovery" of wrongdoing.  Spoonemore Decl., *Exh. J*.  It only discusses when Travelers commenced an inquiry.  *Id*. ("I have Jordan looking at E&O claims against the CPA's.").  *Travelers was totally unaware that commencement of an inquiry had any relevance under the statute of limitations in Alaska*.[8]  Langfitt Decl., ¶¶ 2-4.  From Travelers' perspective, discovery of wrongdoing was the critical date.  Why?  Because that is what Sokol told Travelers – twice.  Spoonemore Decl., *Exh. C*, *Exh. D*; Langfitt Decl., ¶ 4.  How was Travelers supposed to know that the date it commenced an inquiry, as opposed to the date it discovered wrongdoing, was the critical date under Alaska law when Sokol had specifically informed it otherwise?

Sokol is really claiming that:

(1)    Travelers should have known his e-mails misstated Alaska law; and

(2)    ignored his legal advice; and

---

[8]  Sokol has no evidence that Mr. Langfitt knew that Alaska's statute of limitations could accrue when an investigation was commenced.  The undisputed fact is that he did not.  Langfitt Decl., ¶ 3.

(3)     independently researched the statute of limitations in Alaska; and then

(4)     collected and provided to Sokol all documents relevant to when it commenced an inquiry (without Sokol ever asking for them).

Travelers, however, had no duty to independently research Alaska law – that's why Sokol was hired. *Hart v. Carro, Spanbock, Kaster & Cuiffo*, 211 A.D.2d 617, 619 (N.Y. App. 1995). As the *Hart* court noted in affirming a finding of a breach of duty as a matter of law:

> When, as here, counsel is retained in a matter involving foreign law, it is counsel's responsibility to conduct the matter properly and to know, or learn, the law of the foreign jurisdiction. Counsel may not shift to the client the legal responsibility it was specifically hired to undertake because of its superior knowledge.

*Id*. (citations omitted).

If Sokol had properly articulated the test to Travelers and asked it when an inquiry first commenced, then Sokol would have been aware of the deadline. We know this fact because, when Sokol finally did ask the right question, Travelers provided the correct information. Sokol's office documented that it was told that Travelers commenced an inquiry in "summer or early fall of 2002":

> . . . . I spoke with Chuck [Langfitt] about this issue when we were responding to Peterson Sullivan's motion for sanctions. *He recalled that sometime in the summer or early fall of 2002, prior to the October Large Loss analysis he prepared,* you sent him additional (i.e., after your May/June analysis) information regarding losses and likely losses on South Coast's ongoing projects. *Chuck believes that was likely the last piece of information he needed to realize that an inquiry into the accuracy of the audited 2000 financial statements was appropriate* . . . .

Spoonemore Decl., *Exh. K* (emphasis added). Sokol ignores this key piece of evidence, from its own files, in responding to Traveler's motion.

**B.    Peterson Sullivan and Sutor Reports Provided Inquiry Notice To Travelers, Not The June 2002 E-mail.**

Sokol argues that a June 19-20, 2002 e-mail was the "trigger" that commenced the statute of limitations.  Not so.  The June 19-20, 2002 e-mail does not itself contain evidence that would prompt an inquiry.  Langfitt Decl., ¶ 6.  All the e-mail shows is Travelers did, in fact, begin an inquiry by that date.   As Sokol's office concluded, "[t]he June 20, 2002 e-mail from Mr. Langfitt to Mr. Hombach effectively precludes any argument regarding *when* Travelers had inquiry notice of its causes of action." Spoonemore Decl., *Exh. E*, p. 2 (emphasis added).  That inquiry was not based on the e-mail, but on other factual information that Travelers had already gathered (and provided to Sokol long before the statute ran).  Langfitt Decl., ¶ 6.

The information that prompted the inquiry was the Sutor Report and Peterson Sullivan Report.  Sokol admits he received these reports long before the statute ran. Spoonemore Decl., *Exh. H* (e-mail indicating transmittal of reports to Sokol over a year before statute ran); Langfitt Decl., ¶ 6.  He, however, downplays their importance.  He argues that neither the Sutor Report nor the Peterson Sullivan reports "contained information which would support a claim against the auditors, Peterson Sullivan."  Defs' Mem., p. 8, lns. 1-3.  *See also* Defs' Mem., pp. 3-5 (arguing that the reports did not contain evidence to support a claim against Peterson Sullivan); Gilmore Decl., *Exh. 7*, ¶¶ 11-12. Sokol's argument that the reports did not impart *actual knowledge* of wrongdoing misses the point.

The relevant question is not, as Sokol attempts to frame it, whether the reports themselves provided specific evidence of actual wrongdoing.  Rather, the issue is whether the reports contained information that would prompt a reasonable person to commence an inquiry in an effort to find evidence of wrongdoing.  Sokol should have realized that while the reports did not impart *knowledge* of wrongdoing, they did provide "sufficient information to prompt any inquiry into the cause of action."

Judge Beistline addressed the relevant issue directly. He concluded that, as a matter of law, inquiry notice was evident from the documents, including the two reports:

> Even so, the evidence and affidavits thus proffered, see, e.g., *the Sutor Report and Peterson Sullivan Report*, Mr. Langfit's [sic] deposition and affidavit, and [Plaintiff's] Large Loss Analysis" as well as the "June 19 and 20, 2002, emails submitted in the joinder to the motion filed by [D]efendant Jerald Renich," further convince the Court that Plaintiff had "*sufficient* information to prompt an inquiry into the cause of action."

*Exh. B*, pp. 6-7 (emphasis added).[9] He did not conclude that the Sutor Report or the Peterson Sullivan Report themselves contained evidence of wrongdoing. He only concluded that such evidence provided Travelers with sufficient information to prompt an inquiry. Sokol's argument that the reports did not themselves contain evidence of wrongdoing is irrelevant. As Judge Beistline concluded, the material provided inquiry notice as to a matter of law.

Sokol had the two reports before the statute ran. He had the Large Loss Analysis before the statute ran. The information that came out of Mr. Langfitt's deposition and that was in his affidavit was either information that was provided to Sokol, or information he could have obtained from Mr. Langfitt if he had simply asked the relevant questions. Langfitt Decl., ¶ 6. The only piece of evidence Sokol did not have was the internal June 19-20 e-mail which, as noted above, does not itself

---

[9] Sokol, representing Travelers, had conceded that Travelers had inquiry notice as of June 19-20, 2002. Spoonemore Decl., *Exh. B*, p. 5 ("Plaintiff concedes that it had inquiry notice of its cause of action against Defendant as of June 19-20, 2002"). Sokol's argument was that because Travelers needed Peterson Sullivan's work papers, "there are genuine issues of material facts that preclude using the date of inquiry notice as the date upon which its cause of action accrued." *Id.*, p. 5. Judge Beistline had little trouble rejecting that defense, give that Sokol filed the complaint without the work papers. Spoonemore Decl., p. 6 ("For this reason alone, the Court concludes Plaintiff's argument lacks merit"). Sokol does not maintain that Judge Beistline's order was erroneous in any respect.

provide any new factual information which would prompt an inquiry.[10]  It simply confirmed that an inquiry had commenced based on facts that were provided to Sokol.  The actual *facts* which led Judge Beistline to conclude an inquiry should have commenced were in Sokol's possession long before the statute ran.

### C.    Sokol Knew Travelers Had A Case Against Peterson Sullivan Prior to the Expiration of the Statute of Limitations.

Sokol implies that Travelers' action against Peterson Sullivan could not be filed timely because "Jan Sokol was ethically unable to file a Complaint against Peterson Sullivan until he received an opinion from an expert accountant that the accountants had erred in performing the year-end audit of South Coast."  Defs' Mem., p., 8, lns. 9-13.  *See also* Gilmore Decl., *Exh. 7*, ¶ 10.  The undisputed facts belie the suggestion that the action could not have been filed timely.

On June 8, 2004 Sokol asked his expert, for the first time, whether there was sufficient evidence under Rule 11 to institute an action against Peterson Sullivan. Spoonemore Decl., *Exh. A*, p. 2 ("The question to you is do we have sufficient factual evidence to make these assertions and file an action asserting these claims.").  Sokol is unable to explain why he waited until June 8, 2004 to first articulate the CR 11 standard to his expert in order to ask whether there was sufficient evidence to meet that standard.  There was nothing that prevented him from asking this same question much earlier in his representation of Travelers.

In any event, the expert promptly responded to Sokol, leading Sokol to conclude, before the statute ran, that "[b]ased on [the expert's] conclusions below, and my review of the material and the law, I believe we have sufficient factual evidence to support claims against the directors and officers and the accounting firm."  *Id.*, p. 1.

---

[10] It is telling that Peterson Sullivan itself did not rely upon the June 19-20 e-mail when it moved for summary judgment.  It relied upon the two reports because it was the information in those reports that should have prompted an investigation. Spoonemore Decl., *Exh. I*, pp. 11-12.

On that same day he promised to "prepare a draft complaint for your review." *Id.*  It is, in fact, admitted that a complaint against Peterson Sullivan could have been drafted and filed before the deadline.  Spoonemore Decl., *Exh. M*, p. 12.

The problem was not, as Sokol suggests, that an action could not ethically be filed before the statute of limitations ran.  It was that Sokol, due to the lack of any legal research prior to filing, was unaware that the statute started to run when a reasonable person should have commenced an inquiry.

> **D.**  **Sokol Was Unaware Of Alaska's Statute of Limitations Rule Prior To Filing Travelers' Action.  In Any Event, Sokol's Knowledge Is Not Relevant – What He Informed Travelers Is.**

As noted above, Alaska law sets forth two potential dates for the accrual of the statue of limitations:    (1) the date the plaintiff should have discovered the wrongdoing or (2) the date the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry.  *John's Heating Service*, 46 P.3d at 1031-1032. Sokol, in his affidavit, asserts that "at all relevant times" he "knew that, in Alaska, the statute of limitations begins to run when a putative party has 'information sufficient to alert a reasonable person to *begin an inquiry* to protect his rights.'" Gilmore Decl., *Exh. 7*, ¶ 5 (emphasis added).  Sokol therefore suggests that he was aware of the second potential date of the test, and not just the first potential date.

Sokol gave a very different answer at his deposition in this case.  In his deposition Sokol said that his understanding of Alaska law was that the statute did not begin to run until "a person discovered or originally should have discovered" wrongdoing:

> I had – sitting here today, I have the general recollection *that Alaska had a discovery rule, meaning that a claim accrued when a person discovered or originally should have discovered*, but I can't tell you that I did any specific – I can't remember any specific research either for this case prior to June of '04 or these other cases.

* * *

> I generally knew that *it was discovered or reasonably*
> *should have discovered*, but I can't tell you any specific
> research that I would have done.

Supp. Spoonemore Decl., *Exh. O*, pp. 43-44.  At his deposition, he never mentioned,
and was oblivious to, the second part of Alaska's test.  In fact, at no time during the
course of his day-long deposition did Sokol ever utter the words "inquiry" or
"inquire."  Supp. Spoonemore Decl., *Exh. B*, index.

Sokol's deposition testimony is consistent with the two e-mails he sent to
Travelers.  Spoonemore Decl., *Exh. C, Exh. D*.  Sokol cannot now claim that he knew
"at all relevant times" that the statute of limitations could accrue on inquiry notice
when he unequivocally testified otherwise in his deposition.[11]  *Kennedy v. Allied Mut.*
*Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that
a party cannot create an issue of fact by an affidavit contradicting his prior
deposition testimony.").

In any event, Sokol's new affidavit testimony does not provide him a defense.
Under Alaska law, a lawyer has a duty to "*advise* the client of action the client should
take in a given set of circumstances."  *Doe*, 838 P.2d at 807 (emphasis in original).  It is
undisputed that, at no time prior to filing, did Sokol ever *advise Travelers* that the
statute of limitations started to run once a reasonable person should have
commenced an inquiry.  On the contrary, he articulated only half the test.  As a

---

[11] Nor can Sokol claim that Traveler's Chuck Langfitt knew that the statute of limitations in
Alaska commenced when inquiry should have begun.  Although Sokol now states that it was his
"understanding" that Langfitt was not misled by his e-mails, *see* Gilmore Decl., *Exh. 7*, ¶ 6, in his
deposition he testified that he had *no idea* how Langfitt interpreted his e-mail.  Supp. Spoonemore
Decl., *Exh. O*, p. 94 (. . . "I have no idea if that's what Chuck interpreted.")  In any event, Sokol's
"understanding" – which is based on no facts and is contradicted by the evidence – is insufficient to
create a material issue of fact to defeat summary judgment.  *Cermetek, Inc. v. Butler Avpak, Inc.*, 573
F.2d 1370, 1377 (9th Cir. 1978) ("Those facts alleged on "understanding" like those based on "belief" or
on "information and belief", are not sufficient to create a genuine issue of fact."); Langfitt Decl., ¶ 3
(Mr. Langfitt, in fact, was misled by Sokol's e-mails).

result, Travelers was unaware that the date it commenced an inquiry, as opposed to the date it discovered wrongdoing, was critical.  Langfitt Decl., ¶¶ 4-5.

###### E.      The Opinions Of Sokol's Experts Are Flawed As A Matter Of Law.

Sokol has retained two experts who each opine that the standard of care was met in various circumstances.  Gilmore Decl., *Exh. 10*; *Exh. 11*.  Both opinions, however, fail to address the key breaches of duty alleged here.  Neither expert opines that Sokol fulfilled his duty to ascertain when the statute of limitations accrued under Alaska law.  Nor does either expert opine that Sokol sufficiently researched Alaska's statute of limitations prior to filing Travelers actions.  Rather, each assumes that Travelers had a duty to provide Sokol with the June 19-20 e-mail and, from that premise, concludes that Sokol behaved reasonably.

Mr. Sanders' opinion that Sokol met the standard of care is explicitly premised on the assumption that Travelers had a duty to affirmatively provide the June 19-20 e-mail to Sokol.  Gilmore Decl., *Exh. 10*, ¶ 21.  As he opined:

> In fact, the problem was Mr. Langfitt's failure to furnish his June 20, 2002 email to Mr. Sokol.  Had this critically important document been provided to Mr. Sokol at the beginning of his engagement, as other key documents were, it would have disclosed that the cause of action against Peterson Sullivan accrued as early as June 2002.

Gilmore Decl., *Exh. 10*, ¶ 21.  *See also id.*, ¶ 20, 22, 24.  Likewise, Mr. Gagnon premises his opinion on the fact that Sokol did not have the e-mail prior to filing suit:

> It also appears that Attorney Sokol was not aware of, and did not possess, copies of the two key Travelers' emails of June 19 and 20, 2002, which  pointed to a much earlier start date for limitations purposes.  Attorney Sokol accordingly met the applicable standard of care when he filed the lawsuit in August 2004.

Gilmore Decl., *Exh. 11*, p. 4.

Sokol's experts assume that he did not have sufficient information to lead him to believe that the statute of limitations might be triggered. Thus, they assert Sokol did not breach his duty in filing the action late. Sokol's experts imply that Travelers had the affirmative duty to inform Sokol when it began its investigation, even though Sokol never advised Travelers that the date of its inquiry would be important. As detailed above, an attorney has a duty to ascertain a statute of limitations deadline. An attorney also has a common law duty to conduct basic research and not misinform his client. Since Sokol failed in those duties and provided incorrect information Alaska law, Travelers had no way of knowing that the date it commenced an inquiry was relevant. *See*, Section A, *above*.

Mr. Sanders also opines that Sokol accurately stated Alaska law when he testified that a "claim accrued when a person discovered or reasonably should have discovered that a claim exists." Gilmore Decl., *Exh. 10*, ¶ 14. Mr. Sanders is only half right.[12] While Sokol properly articulated half of Alaska law, he neglected the half that doomed Travelers' case. It was that critical omission that caused Travelers' loss here.

Finally, both experts assert that it is difficult to determine exactly when inquiry notice begins. That may be true, but it is not relevant here. It is undisputed that prior to filing Sokol made no effort to determine when exactly Travelers was on inquiry notice. Even if Sokol had attempted to ascertain the date and found the potential date unclear, he had a duty to file so as to avoid any chance of the claim being barred. Jamieson Decl., ¶ 8 ("If there is any uncertainty about when the statute of limitation could be argued to run, the lawyer has a duty to err on the side of extreme caution – again, because the consequences of being wrong are so severe and

---

[12] *See generally*, cases cited in fn. 1, above.

TRAVELERS' RESPONSE/REPLY
RE: NEGLIGENCE OF SOKOL - 14
*Travelers v. South Coast, Inc., et al.,* Case No. A06-00063 (TMB)

final."). Case law is in accord. *Copeland Lumber Yards, Inc. v. Kincaid*, 684 P.2d 13, 14-15 (Or. 1984).

In *Copeland*, an attorney who missed a deadline argued that the date was unclear and difficult to discern. The Court agreed with the premise that an attorney who **actually conducts legal research** and makes an error in judgment may argue that as a defense. The judgment must be an informed one:

> We agree generally with the proposition that a lawyer should not be held liable for a mistake in the exercise of professional judgment. When an area of law is unsettled, a choice between possible courses of action necessarily involves judgment. However, professional judgment, by definition, must be *informed*, and that requires a lawyer to make a reasonable effort to develop an understanding of the problem.

*Id*. at 14. The inherent difficulty in ascertaining the exact date inquiry notice begins does not provide Sokol a defense when he did not even attempt to determine that date.

In addition, an attorney has a duty to act so as to avoid an uncertain area of the law when there is lack of clarity. *Id*. at 15 ("Had he undertaken the appropriate research, he would have become aware of the uncertainty, in which event his only exercise of an informed judgment would have been to seek a timely foreclosure."). Here, even if Sokol had actually conducted research into Alaska law and found the exact date unclear, he was under a duty to file the action so as to avoid any potential time bar. Any lack of clarity requires action to avoid a potential issue. *See Doe v. Hughes, Thorsness, Gantz, Powell & Brundin*, 838 P.2d 804, 807 (Alaska 1992).

In *Doe*, a law firm was hired to perfect an adoption. At the time the law firm worked for the client, it was unclear whether compliance with the Indian Child Welfare Act was necessary. *Id*. at 805. The law firm did not perfect the adoption in

accordance with the Indian Child Welfare Act and the natural mother sued to get the child back. The law firm, sued by the adoptive parents who were forced to defend the adoption, asserted that the uncertainty surrounding the application of the Indian Child Welfare Act protected them under the judgment defense. The Alaska Supreme Court disagreed, finding the law firm negligent *as a matter of law* because it failed to take a prudent route in light of the uncertainty:

> An important part of an attorney's duty to a client is the duty to *advise* the client of action the client should take in a given set of circumstances. Given the circumstances present in this case, we believe *there was only one prudent course of action open to the Does*-namely, to obtain the natural mother's consent to the adoption in full conformity with the more onerous and costly consent requirements of the Indian Child Welfare Act. ***By failing to advise its clients to take this added step, despite the cost, Hughes, Thorsness also failed in its duty to use the skill, prudence, and diligence required of an attorney practicing within this jurisdiction. By doing so, Hughes, Thorsness breached the duty of care owed to its clients, rendering the firm guilty of negligence, or professional malpractice, as a matter of law.***[FN7]
>
> FN7. Unlike the superior court, we are not impressed with Hughes, Thorsness' argument that it cannot be found liable because it was guilty of only an "error in judgment" concerning a matter about which the law remained unsettled. *Any uncertainty there might have been about the applicability of the Indian Child Welfare Act made Hughes, Thorsness' failure to obtain compliance with the Act more, rather than less, blameworthy. The cost of compliance with the act would be by all measures slight when compared to the potential cost of not complying with the Act. The decision to ignore the additional steps required for a "valid" consent was anything but the act of a reasonably prudent lawyer.*

*Id.* at 807 (emphasis added). Here, Sokol was under a duty, as a matter of law, to file Travelers' action so as to avoid any statute of limitations issue. He failed to do so.

## II.   CONCLUSION

Sokol breached his duty, as a matter of law, to Travelers.  He failed to ascertain when the statute of limitations accrued.  He was unable to do so because he failed to conduct even basic legal research into Alaska law on accrual.  As a result, he misadvised Travelers as to the relevant trigger.  (And, having misadvised Travelers, Sokol cannot claim that Travelers should have provided him information, such as the June 19-20 e-mail, that had nothing to do with the test he articulated.)  The end result of Sokol's conduct is the undisputed fact that Sokol missed the statute of limitations.  This Court should grant Travelers' motion for partial summary judgment, and deny Sokol's motion for summary judgment.

Respectfully submitted this 1st day of August, 2008.

SIRIANNI YOUTZ MEIER & SPOONEMORE

/s/ Richard E. Spoonemore
Richard E. Spoonemore, pro hac vice
    719 Second Avenue, Suite 1100
    Seattle, WA  98104
    Telephone:  (206) 223-0303
    Fax:  (206) 223-0246
    Email:  rspoonemore@sylaw.com

Attorneys for Plaintiff

and

SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS, PLLC
Garth A. Schlemlein, ASBA # 8602011
James T. Hopkins, Pro Hac Vice
    1601 Fifth Avenue, Suite 2500
    Seattle, WA  98101
    Telephone:  (206) 448-8100
    Fax:  (206) 448-8514
    Email:  jth@soslaw.com

Attorneys for Travelers

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **James D. Gilmore**
  USDC-ANCH-Ntc@cplawak.com,jgilmore@olypen.com,anch@cplawak.com

- **James T. Hopkins**
  jth@soslaw.com,lsb@soslaw.com

- **Robert L. Olson**
  rlo@soslaw.com,cc@soslaw.com

- **Garth A. Schlemlein**
  gas@soslaw.com,jth@soslaw.com,rlo@soslaw.com,lsb@soslaw.com,cc@soslaw.com

- **Richard E. Spoonemore**
  rspoonemore@sylaw.com,matt@sylaw.com,rspoonemore@hotmail.com,theresa@sylaw.com

- **Gary A. Spraker**
  gary@cslawyers.net,susan@cslawyers.net,ecf@cslawyers.net

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

- (No manual recipients)

DATED:  August 1, 2008, at Seattle, Washington.

_Theresa A. Redfern_

Theresa A. Redfern