Garth A. Schlemlein, ASBA No. 8602011
James T. Hopkins, *Pro Hac Vice*
Robert L. Olson, *Pro Hac Vice*
SCHIFFRIN OLSON SCHLEMLEIN & HOPKINS
1601 Fifth Avenue, Suite 2500
Seattle, Washington 98101-1635
Tel: 206-448-8100; Fax: 206-448-8514
Email: jth@soslaw

Richard E. Spoonemore, *Pro Hac Vice*
SIRIANNI YOUTZ MEIER & SPOONEMORE
719 Second Avenue, Suite 1100
Seattle, Washington 98104-1709
Tel: 206-223-0303; 206-223-0246
Email: rspoonermore@sylaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, | |
| Plaintiff, | |
| v. | Case No. 3:06-cv-00063-TMB |
| SOUTH COAST, INC., an Alaska corporation; KLUKWAN, INC., an Alaska Native Village corporationl; and CHILKATS' PORTGAGE COVER DEVELOPMENT COMPANY, an Alaska corporation, | **DECLARATION OF** <br> **BREWSTER H. JAMIESON** |
| Defendants. | |
| SOUTH COAST, INC., an Alaska corporation; KLUKWAN, INC., an Alaska Native Village corporationl; and CHILKATS' PORTGAGE COVER DEVELOPMENT COMPANY, an Alaska corporation, | |
| Counterclaim and Third-Party Defendants, | |
| v. | |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut | |

| | |
|---|---|
| corporation,; STEWART SOKOL & GRAY LLC; and JAN D. SOKOL;<br><br>              Counterclaim and<br>              Third-Party Defendants.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation,<br><br>              Plaintiff and<br>              Cross Claim Plaintiff,<br><br>v.<br><br>STEWART SOKOL & GRAY LLC; and JAN D. SOKOL;<br><br>              Cross Claim Defendants. | |

      I, Brewster H. Jamieson, being first duly sworn, declares as follows:

      1.    I am a shareholder of Lane Powell PC and am the managing shareholder for this firm's office in Anchorage. I have personal knowledge of the contents of this declaration.

      2.    I graduated from Willamette University College of Law in 1984, *magna cum laude*. While in law school, I was an associate editor of the Willamette Law Review. In 1984 and 1985, I served as clerk to Justice Warren Matthews of the Alaska Supreme Court. On October 1, 1985, I started my private practice career in Seattle, Washington, with my current firm, then known as Lane Powell Moss & Miller. I became a partner in the firm in 1990, and returned to Alaska that same year, where I have continued my practice until this day. I became a member of the Alaska Bar in 1984, and a member of the Washington Bar in 1985.

      3.    My practice has consisted of a wide and extremely diverse variety of civil litigation. Over the years, I have handled civil litigation of virtually every kind—admiralty, aviation, securities, professional negligence (*e.g.,* lawyers, physicians, nurses, accountants, real estate agents), general commercial litigation, insurance bad faith, construction defect, real property disputes, product liability, ERISA, and many others. My practice has typically been on the defense side, although I have also handled a number of plaintiff personal injury and professional negligence cases.

4.  In the course of my practice, I have become familiar with, and have had the opportunity to litigate, statutes of limitations issues. I am familiar with Alaska's version of the "discovery rule," as announced in various decisions of the Alaska Supreme Court.

5.  I have been asked to provide my opinion of whether Jan Sokol and his firm fell beneath the standard of care normally expected of competent lawyers practicing in Alaska, and, specifically, whether Mr. Sokol fell beneath that standard of care in advising his client concerning Alaska's "discovery" rule in general, and the timing of the filing of that certain lawsuit known as *Travelers Casualty and Surety Company of America v. Ronald Gelbrich, et. al.,* filed in the United States District Court for the District of Alaska, Case No. A04-0165 CV (RRB) ("the underlying lawsuit") in particular. In reaching my opinion, I have been provided the following materials:

- Docket 129, Travelers' Motion for Partial Summary Judgment Re: Negligence of Sokol;
- Docket 130, Declaration of Richard E. Spoonemore;
- Docket 130-2 through 130-7, Exhibits A through N to Spoonemore's Declaration;
- Docket 139-2, Sokol's Memorandum in Support of Cross-Motion for Summary Judgment and Opposition to Motion to Motion for Summary Judgment;
- Docket 140, Declaration of James D. Gilmore;
- Docket 140-2 through Docket 140-14, Exhibits 1 through 12 to Gilmore's Declaration.

6.  At the outset, I wish to stress that Mr. Sokol enjoys an excellent reputation as a competent and careful practitioner. His firm enjoys a similar reputation. It is apparent that Travelers benefited from Mr. Sokol's work over many years, and that his services were highly sought after by that company. Even very skilled and committed attorneys such as Mr. Sokol make mistakes, and it appears to me that Mr. Sokol did fall beneath the standard of care in his representation of Travelers in the underlying lawsuit.

7.  It appears that Mr. Sokol fell beneath the standard of care in two respects: (a) by failing to communicate (and perhaps by not appreciating) the precise legal standard employed by Alaska courts when determining when a cause of action accrues, and (b) by not determining to his

own satisfaction precisely when Travelers was placed on inquiry notice that it had a potential cause of action against Peterson Sullivan.

8. The question of when a statute of limitation begins to run is easy in many contexts—many times a precise event, such as an unsuccessful surgery, a car accident, or an injury, starts the running of the clock. However, many times, particularly in the professional negligence context, it can be difficult to tell exactly when a cause of action "accrues" under Alaska law. The very standard used by Alaska courts for this purpose—when the proverbial "reasonable person" has "sufficient information to prompt an inquiry"—is inherently vague and subject to debate. For this reason, a lawyer must never allow his client to become embroiled in such a debate (*i.e.*, a motion for summary judgment) where the lawyer has the ability to avoid it. The consequences of being adjudged wrong on this point are exceedingly severe—the client loses all rights to pursue recovery. Obviously, a lawyer may find him or herself in the position of having to engage in motion practice over this issue because the client came into his office late in the game. However, where, as was the case here, the lawyer is retained well prior to the running of the statute of limitations, that lawyer has a duty to advise the client regarding the correct legal standard, and the lawyer also has the duty to make certain that the lawsuit is filed at a time when there can be no reasonable debate but that it was timely filed. If there is any uncertainty about when the statue of limitations could be argued to run, the lawyer has a duty to err on the side of extreme caution—again, because the consequences of being wrong are so severe and final.

9. In this case, Mr. Sokol was hired to represent Travelers with respect to a potential suit against Peterson Sullivan in April 2003, more than a year before the statute of limitations ran. He was provided, among other items, the Sutor and Peterson Sullivan reports, and was advised that Travelers began its investigation into SCI's collapse in May 2002. A year later, it appears that Mr. Sokol rightly identified that the statute of limitations was something to be concerned about, together with the uncertainty that surrounded the question in his mind. In an email to Charles Langfitt, dated April 14, 2004, Mr. Sokol noted: "We should be mindful of the statute of limitations; however, it is unclear to me when we would have 'discovered' the wrongful acts because we are still trying to determine if there were wrongful acts." Likewise, in his email to Charles Langfitt, dated May 25, 2004, Mr. Sokol correctly identified that a two-year statute of limitations applied to Traveler's potential claims against Petersen Sullivan. He went on to state:

"... it is not clear to me when we 'discovered' the misrepresentations." It could be argued that these statements demonstrate that Mr. Sokol did not fully understand Alaska law on the topic of when a cause of action accrued[1]; it is also evident that this statement is, at the very least, an incomplete statement of Alaska law on the topic. But even more importantly, these statements show that Mr. Sokol was uncertain as to, and therefore ignorant of, the applicable statute of limitations date. Proceeding in ignorance of this issue carried with it the risk, which unfortunately was realized in this case, that the complaint would not be filed in a timely manner. Subjecting Travelers to this risk was both unnecessary and beneath the standard of care that a lawyer owes his client.

10. Assuming for the purposes of this declaration that Mr. Sokol actually knew of Alaska's accrual rule, and given the uncertainty he expressed in his emails about when Travelers "discovered" the wrongful acts, Mr. Sokol should and could easily have clarified this issue in ample time to file the underlying lawsuit in a timely fashion. It does not appear that Mr. Sokol, or anyone in his firm, asked the precise question of Travelers—when did Travelers first suspect Peterson Sullivan negligently misrepresented the financial condition of Klukwan? The answer to that question, conclusively demonstrated in Travelers' own emails, was in June 2002.[2] By early June 2004, Mr. Sokol had everything he needed to file suit against Peterson Sullivan (and he could have had all of this well prior, if he would have made himself aware of the statute of limitations date), including a belief that such a suit would satisfy the requirements of Civil Rule 11. But what he did not have was a clear understanding of *when* time would run out for filing of that lawsuit. He had a duty to determine that, but he did not, and the consequence was that the suit was untimely and ultimately dismissed for that reason.. This was a breach of the standard of care that a lawyer owes to his client.

---

[1] Indeed, Mr. Sokol testified that he had not conducted any research on Alaska law in this regard, and no one in his firm appears to have done so before the summer of 2005, by which time Petersen Sullivan had filed its motion for summary judgment seeking dismissal of Travelers' complaint on the basis of the statute of limitations.

[2] "What about their wonderous CPA firm [Peterson Sullivan] who obviously must have missed a whole [sic] in the boat in their 12/31/00 audit? May be crying in spilled milk, Chuck, but the bastards must be tagged somehow . . . ." Exhibit J to Docket 130-7.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 30th day of July, 2008.

_____
Brewster H. Jamieson

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **James D. Gilmore**
  USDC-ANCH-Ntc@cplawak.com,jgilmore@olypen.com,anch@cplawak.com

- **James T. Hopkins**
  jth@soslaw.com,lsb@soslaw.com

- **Robert L. Olson**
  rlo@soslaw.com,cc@soslaw.com

- **Garth A. Schlemlein**
  gas@soslaw.com,jth@soslaw.com,rlo@soslaw.com,lsb@soslaw.com,cc@soslaw.com

- **Richard E. Spoonemore**
  rspoonemore@sylaw.com,matt@sylaw.com,rspoonemore@hotmail.com,theresa@sylaw.com

- **Gary A. Spraker**
  gary@cslawyers.net,susan@cslawyers.net,ecf@cslawyers.net

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

- (No manual recipients)

DATED: August 1, 2008, at Seattle, Washington.

_____
Theresa A. Redfern